1   GIBSON, DUNN & CRUTCHER LLP
    DANIEL W. NELSON, *pro hac vice*
2   DNelson@gibsondunn.com
    ANDREW TULUMELLO, SBN 196484
3   ATulumello@gibsondunn.com
    1050 Connecticut Avenue, N.W.
4   Washington, DC  20036
    Telephone:  202.955.8500
5   Facsimile:   202.467.0539

6   CHRISTOPHER CHORBA, SBN 216692
    CChorba@gibsondunn.com
7   DHANANJAY S. MANTHRIPRAGADA, SBN 254433
    DManthripragada@gibsondunn.com
8   333 South Grand Avenue
    Los Angeles, CA  90071-3197
9   Telephone:  213.229.7000
    Facsimile:  213.229.7520
10
    Attorneys for Defendant Naked Juice Co. of Glendora, Inc.
11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                   WESTERN DIVISION

15  NATALIE PAPPAS,                    CASE NO. LA CV 11-08276-JAK
                                       (PLAx), Lead Case
16            Plaintiff,               (Consolidated with LA CV 11-08007;
                                       SA CV 11-01701; LA CV 11-09412;
17       v.                            LA CV 11-09677)

18  NAKED JUICE CO. OF GLENDORA,       **DEFENDANT'S NOTICE OF**
    INC., a California corporation,    **MOTION AND MOTION TO**
19                                     **DISMISS PLAINTIFFS'**
              Defendant.               **CONSOLIDATED CLASS ACTION**
20                                     **COMPLAINT**

21                                     **REQUEST FOR JUDICIAL**
                                       **NOTICE AND REGULATORY**
22                                     **APPENDIX FILED**
                                       **CONCURRENTLY UNDER**
23                                     **SEPARATE COVER**

24                                     Hearing Date:  May 14, 2012
                                       Time:  8:30 a.m.
25                                     Place:  Courtroom 750, 7th Floor
26
                                       Consolidated Class Action Complaint
27                                     Filed:  March 19, 2012
28

Gibson, Dunn &
Crutcher LLP

TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 14, 2012, at 8:30 a.m., or as soon thereafter as they may be heard, in Courtroom 750, 7th Floor, of this Court, located at 255 East Temple Street, Los Angeles, California, 90012, Defendant Naked Juice Co. of Glendora, Inc. ("Defendant" or "Naked Juice") will and hereby does move this Court for an order pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) dismissing all of the claims contained in the Consolidated Class Action Complaint ("Complaint").

This Motion is based on the fact that the Complaint fails to state a claim upon which relief can be granted on any of the legal theories offered by Plaintiffs (alleged violations of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*), the False Advertising Law (*id.* § 17500 *et seq.*), the Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*), and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*).  For the reasons set forth in greater detail in the accompanying Memorandum of Points and Authorities, Plaintiffs fail to allege plausible and/or particularized claims relating to any of the labeling statements identified in the Complaint ("100% Juice," "All Natural Fruit + Boosts," "non-GMO," and "from concentrate"), and federal law expressly preempts several of these claims.

Defendant makes this Motion following the conference of counsel pursuant to L.R. 7-3, which took place on March 15, 2012.  The parties also discussed the legal issues presented in this Motion at various other points in time.  Despite their good faith efforts, counsel were unable to resolve the issues raised in this Motion.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice and Regulatory Appendix filed concurrently herewith, the pleadings and papers on file herein, and such other matters as may be presented to the Court at the time of the hearing.

DATED:  April 9, 2012                      GIBSON, DUNN & CRUTCHER LLP


By:  _____
                          /s/
                    Andrew Tulumello

1

# **TABLE OF CONTENTS**

2

Page

3

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ................................ 1

4

II.   SUMMARY OF ALLEGED FACTS ................................................. 2

5

III.   THE LEGAL STANDARDS GOVERNING THIS MOTION .......................... 5

6

IV.   FEDERAL LAW EXPRESSLY PREEMPTS PLAINTIFFS'
      CLAIMS BASED ON THE "100% JUICE" STATEMENT .......................... 6

7

      A.   FDA Regulations Authorize The "100% Juice" Claim ................. 6

8

      B.   The Labels Adequately And Accurately Disclose Non-Juice
9          Ingredients ................................................................. 9

10

V.   FEDERAL LAW ALSO PREEMPTS PLAINTIFFS' CHALLENGE
     TO THE "FROM CONCENTRATE" LABEL ................................... 10

11

12

VI.   PLAINTIFFS' CLAIMS MISSTATE THE "ALL NATURAL FRUIT
      + BOOSTS" LABEL AND FAIL AS A MATTER OF LAW
13    BECAUSE THEY ARE NOT LIKELY TO DECEIVE A TRULY
      REASONABLE CONSUMER ............................................... 13

14

VII.   PLAINTIFFS' CHALLENGE TO THE "NON-GMO" STATEMENT
       IS NOT PLEADED WITH PARTICULARITY AND IS NOT
15     PLAUSIBLE ............................................................... 17

16

VIII.   PLAINTIFFS' CLAIMS FAIL FOR SEVERAL OTHER REASONS ............. 18

17

        A.   Plaintiffs Do Not Plead Their Claims With The Requisite
             Particularity ............................................................. 18

18

        B.   Plaintiffs Fail To State A Federal Warranty Act Claim ........... 22

19

IX.   CONCLUSION ............................................................... 24

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Abraham v. Volkswagen of Am., Inc.,*
   795 F.2d 238 (2d Cir. 1986) ................................................................24

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...........................5, 8

*Bardin v. DaimlerChrysler Corp.,*
   136 Cal. App. 4th 1255, 39 Cal. Rptr. 3d 634 (2006) ........................................21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...................5, 14, 18

*Birdsong v. Apple, Inc.,*
   590 F.3d 955 (9th Cir. 2009) ..............................................................22

*Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) ...............................................................6

*Buckman Co. v. Plaintiffs' Legal Comm.,*
   531 U.S. 341, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001) ........................10, 12

*Cafasso v. Gen. Dynamics C4 Sys., Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ............................................................18

*Carrea v. Dreyer's Grand Ice Cream, Inc.,*
   No. 10-01044, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), *aff'd,*
   No. 11-15263, 2012 U.S. App. LEXIS 6851 (9th Cir. Apr. 5,
   2012) ..................................................................................16

*Chacanaca v. Quaker Oats Co.,*
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...........................................7

*Cronson v. Clark,*
   810 F.2d 662 (7th Cir. 1987) ..............................................................22

*Edwards v. Marin Park, Inc.,*
   356 F.3d 1058 (9th Cir. 2004) ..............................................................21

*Freeman v. Time, Inc.,*
   68 F.3d 285 (9th Cir. 1995) ................................................................15

*Haskell v. Time, Inc.,*
   857 F. Supp. 1392 (E.D. Cal. 1993) ......................................................16

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...............................................18

*In re Ferrero Litig.,*
   794 F. Supp. 2d 1107 (S.D. Cal. 2011) ..................................................9

*In re Sears, Roebuck & Co.,*
   MDL 1703, 2006 WL 1443737 (N.D. Ill. May 17, 2006) ...........................23

*In re Stac Elecs. Sec. Litig.,*
   89 F.3d 1399 (9th Cir. 1996) .................................................................4

*Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009) ......................................................6, 18, 22

*Kelley v. Microsoft Corp.*,
   No. 07-0475, 2007 WL 2600841 (W.D. Wash. Sept. 10, 2007)........................23

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310, 120 Cal. Rptr. 3d 741 (2011)................................22

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003).........................16

*McKinniss v. Kellogg, Co.*,
   No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..................16

*Moore v. Brewster*,
   96 F.3d 1240 (9th Cir. 1996).................................................6

*Moore v. Kayport Package Express*,
   885 F.2d 531 (9th Cir. 1989)................................................18

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
   653 F.3d 241 (3d Cir. 2011).................................................13

*Peviani v. Hostess Brands, Inc.*,
   750 F. Supp. 2d 1111 (C.D. Cal. 2010)........................................9

*Pom Wonderful LLC v. Coca Cola Co.*,
   No. 08-06237, 2009 WL 7050005 (C.D. Cal. Feb. 10, 2009)....................9

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
   642 F. Supp. 2d 1112 (C.D. Cal. 2009).......................................7

*Red v. Kraft Foods*,
   754 F. Supp. 2d 1137 (C.D. Cal. 2010).......................................7

*Red v. Kroger Co.*,
   No. 10-01025, 2010 WL 4262037 (C.D. Cal. Sept. 2, 2010) ..................10

*Rubke v. Capitol Bancorp, Ltd.*,
   551 F.3d 1156 (9th Cir. 2009)...............................................8

*Semitekol v. Monaco Coach Corp.*,
   582 F. Supp. 2d 1009 (N.D. Ill. 2008).......................................23

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010)...............................................8

*Shvarts v. Budget Grp., Inc.*,
   81 Cal. App. 4th 1153, 97 Cal. Rptr. 2d 722 (2000).........................12

*Skelton v. GM Corp.*,
   660 F.2d 311 (7th Cir. 1981)................................................23

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)...............................................5

*Sugawara v. PepsiCo*,
   No. 08-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009)....................15

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008)..............................................12

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011)................................................7

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)...............................................6

*Von Kaenel v. Skinnygirl Cocktails, LLC,*
  No. 11-07305, ECF No. 66 (C.D. Cal. Mar. 19, 2012) ....................................21

*Warth v. Seldin,*
  422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ..............................22

*Waste Mgmt. of N. Am., Inc. v. Weinberger,*
  62 F.2d 1393 (9th Cir. 1988) ....................................................22

*Wehlage v. Empres Healthcare, Inc.,*
  791 F. Supp. 2d 774 (N.D. Cal. 2011) ....................................................8

*Werbel ex rel. v. PepsiCo, Inc.,*
  No. 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ........................15, 16

*Williams v. Gerber,*
  552 F.3d 934 (9th Cir. 2008) ....................................................15

*Yumul v. Smart Balance, Inc.,*
  733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................................................6, 19

## Statutes

15 U.S.C. § 2301 ....................................................23
15 U.S.C. § 2310 ....................................................24
15 U.S.C. § 2311 ....................................................24
21 U.S.C. § 301 ....................................................1
21 U.S.C. § 337 ....................................................10, 12
21 U.S.C. § 343-1 ....................................................6, 7, 8
Cal. Health & Safety Code § 110290 ....................................................13

## Rules

Fed. R. Civ. P. 12(b)(6) ....................................................5
Fed. R. Civ. P. 9(b) ....................................................1, 2

## Regulations

16 C.F.R. § 700.3 ....................................................23
21 C.F.R. § 100.1 ....................................................6, 7
21 C.F.R. § 101.22 ....................................................15
21 C.F.R. § 101.30 ....................................................1, 6, 7, 8, 9
21 C.F.R. § 101.4 ....................................................11
21 C.F.R. § 102.33 ....................................................1, 11

## Other Authorities

119 Cong. Rec. 967 (Jan. 12, 1973) ....................................................23
57 Fed. Reg. 22,984 (May 29, 1992) ....................................................18
58 Fed. Reg. 2302 ....................................................14
58 Fed. Reg. 2897 ....................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FDA, Draft Guidance for Industry: Voluntary Labeling Indicating
        Whether Foods Have or Have Not Been Developed Using
        Bioengineering (Jan. 2001) ............................................................................18
FDA, Guidance for Industry: A Food Labeling Guide, "Name of Food:
        Juices" (Oct. 2009) .................................................................................10, 11

# I.  INTRODUCTION AND SUMMARY OF ARGUMENT

This is one of many recent food and beverage labeling class actions that are crowding state and federal court dockets.  In this case, Plaintiffs raise four challenges to the labeling of Naked Juice Co. of Glendora, Inc.'s juice and blended smoothie beverages.  Plaintiffs' challenges are directly foreclosed by the express preemption provisions in the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*, and by specific juice labeling regulations promulgated by the Food and Drug Administration ("FDA").  It is by now well-established in FDCA preemption cases that private plaintiffs cannot impose state-law liability on beverage companies for labeling that complies with the FDA's detailed labeling regime.  To the extent the claims are not preempted, they should be dismissed for pleading deficiencies under Federal Rule of Civil Procedure 9(b) and because they otherwise fail to state a valid claim for relief.

Each of Plaintiffs' four challenges should be dismissed as a matter of law.

*First*, Plaintiffs contend that Naked Juice beverages cannot be labeled "100% Juice" if they contain non-juice or synthetic substances.  (Consolidated Class Action Complaint ("Compl.") ¶¶ 64-68.)  But FDA regulations expressly permit a beverage to be labeled "100% Juice"—even if it includes non-juice or synthetic substances.  *See* 21 C.F.R. § 101.30(b)(3).  Plaintiffs' theory attempts to impose state-law liability on Naked Juice for using 100% Juice labeling that fully complies with FDA regulations.  Plaintiffs' claim is accordingly preempted.

*Second*, Plaintiffs contend that Naked Juice beverages do not "adequately disclose that the products are from concentrate."  (Compl. ¶¶ 73, 74.)  But the challenged products *do in fact* disclose that the products are made from concentrate, and contrary to Plaintiffs' claims that the disclosures are not sufficiently conspicuous (*see id.* ¶ 6), the disclosures track the form and size expressly prescribed by the "concentrate" labeling requirement in 21 C.F.R. § 102.33.  Accordingly, this claim also fails on preemption grounds.

*Third*, Plaintiffs contend that the Naked Juice products are mislabeled as "All

Natural" because they contain synthetic vitamins.  (*Id.* ¶¶ 21-23.)  But Plaintiffs ignore that 11 of the 15 challenged products bear the label "All Natural Fruit + Boosts" in which the "natural" claim applies to natural *fruit* and not to the vitamin "boosts."

Moreover, one of the products, TROPICAL MANGO, does not contain a "natural" claim at all.  As for the two products, POMEGRANATE BLUEBERRY and POMEGRANATE AÇAÍ, that say "All Natural" on the front labels, the ingredient panels fully disclose all of the products' ingredients.  Indeed, the side panels and ingredient statements on every product fully disclose the contents of all of the products.  Accordingly, these claims should be dismissed because the labels—when read in full and not selectively—are not likely to deceive reasonable consumers.

*Fourth*, Plaintiffs contend that the "non-GMO" statements on Naked Juice beverages are deceptive and misleading.  (Compl. ¶¶ 69-72.)  Plaintiffs do not dispute that Naked Juice can make a non-GMO claim.  Instead, plaintiffs allege—solely on "information and belief"—that the beverages contain GMO ingredients.  (*See id.* ¶ 72.)  The "information and belief" allegations are plainly insufficient as a Rule 9(b) or Rule 8 pleading matter to sustain a claim that the non-GMO statements on Naked Juice products are deceptive or misleading.

Finally, Plaintiffs' federal warranty law claim fails for the basic reason that the labels on Naked Juice products do not constitute a written warranty as defined in the Magnuson-Moss Warranty Act.

In sum, the Complaint ignores the disclosures made on the Naked Juice labels that fully comply with federal law and regulations.  Plaintiffs do not state facts to support any actionable claim, and the Court should dismiss this action.

## II.  <u>SUMMARY OF ALLEGED FACTS</u>

Defendant Naked Juice (a wholly owned subsidiary of Naked Juice Co., which is a wholly owned subsidiary of PepsiCo, Inc.) manufactures and distributes several juice and blended smoothie beverage products.  (Compl. ¶ 20.)  The beverages at issue in this case are: AÇAÍ MACHINE, BERRY VEGGIE, BLUE MACHINE, GOLD MACHINE, GREEN

MACHINE, MANGO VEGGIE, MIGHTY MANGO, POMEGRANATE AÇAÍ, POMEGRANATE BLUEBERRY, POWER-C MACHINE, PROTEIN ZONE, PROTEIN ZONE DOUBLE BERRY, PROTEIN ZONE MANGO, RED MACHINE, and TROPICAL MANGO.  (*Id.* ¶¶ 2, 75; Ex. A.)

Plaintiffs are California residents who allege that they purchased certain unidentified Naked Juice beverages and were misled by various representations on the products' labels.  (*Id.* ¶¶ 16-19.)  Plaintiffs allege that Naked Juice falsely and misleadingly labeled the products by including "100% Juice," "non-GMO," and "All Natural," on the product labels, and by failing to provide an adequate disclosure of juices made "from concentrate."  (*Id.* ¶ 3.)  Attached as Appendix "A" to this brief is a chart summarizing which challenges Plaintiffs make to each product.  Their four challenges to the labels are as follows:

1. <u>100% Juice</u>:  Plaintiffs contend that they were misled because eleven of the "Naked Juice Products are labeled as 100% Juice but contain non-natural and/or non-juice ingredients and are therefore not '100% Juice.'"  (*Id.* ¶ 65.)  Plaintiffs do not dispute that Naked Juice fully disclosed all product ingredients as required by federal law.

2. <u>Concentrate</u>:  Plaintiffs do not dispute that the six challenged Naked Juice products include the statement, "[Partially] From Concentrate"; they allege that this statement is not "adequate[]."  (*Id.* ¶ 73.)

3. <u>"Natural"</u>:  The Complaint alleges that Naked Juice beverages are falsely labeled as "All Natural" because some contain synthetic vitamins, synthetic fiber, processed soy, or a variety of other natural (but non-juice) ingredients.  (*Id.* ¶ 4.)  In fact, only two of the products are labeled "All Natural" (POMEGRANATE BLUEBERRY and POMEGRANATE AÇAÍ).  The remaining products carry the label "All Natural Fruit + Boosts" (11 of the 15 products), "All Natural Fruit" (MIGHTY MANGO), or no "natural" claim at all (TROPICAL MANGO).

Here are examples of these variations attached to the Complaint:

 

(*Id.*, Ex. A; Request for Judicial Notice ("RJN"), Exs. 7, 14, 15.)[1]

4.   <u>Non-GMO</u>:  The Naked Juice product labels state "non-GMO" and contain a disclosure statement:  "While many ingredients do not exist in bioengineered varieties, Naked Juice does not use ingredients that were produced using biotechnology as a matter of principle."  (RJN, Exs. 1-15.)  Plaintiffs claim that the labels for seven of the products are "false and deceptive" because these products contain ingredients "made from genetically modified plants and organisms."  (Compl. ¶ 72.)  Before consolidation and the filing of this Complaint, none of the four named Plaintiffs had challenged the "non-GMO" claim or disclosure statement.

The Complaint asserts claims for alleged violations of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750 *et seq*.; "CLRA"), the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq*.; "FAL"), the Unfair Competition Law

---

[1]   Because Plaintiffs attach only selected excerpts from the labels, Naked Juice has submitted complete copies in its accompanying RJN.  This Court may take judicial notice of these labels because their contents are alleged selectively in the Complaint.  *See, e.g., In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

1   (*id*. § 17200 *et seq.*; "UCL"), and the federal Magnuson-Moss Warranty Act (15

2   U.S.C. § 2301 *et seq.*; "MMWA").  (Compl. ¶¶ 84-115.)  Plaintiffs seek to represent a

3   putative nationwide class of all purchasers of the Naked Juice products identified in the

4   Complaint, and they request damages, restitution, injunctive and declaratory relief,

5   attorneys' fees and costs, and pre-judgment interest.  (*Id.* ¶ 115.)

6   ### III.  <u>THE LEGAL STANDARDS GOVERNING THIS MOTION</u>

7   A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of

8   Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state

9   a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129

10   S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 874 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

11   550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Although the Court

12   must accept factual allegations as true for purposes of a motion to dismiss, this tenet is

13   "inapplicable to legal conclusions."  *Id.*  After stripping away the "conclusory

14   statements" in the Complaint, the remaining factual allegations must do more than

15   "create[] a suspicion of a legally cognizable right of action"; they must "raise a right to

16   relief above the speculative level."  *Twombly*, 550 U.S. at 555 (quotations omitted).  In

17   making this "context-specific" determination, the Court must "draw on its judicial

18   experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.  This analysis provides a

19   critical gatekeeping function, because claims must be sufficiently plausible such "that

20   it is not unfair to require the opposing party to be subjected to the expense of discovery

21   and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

22   Plaintiffs allege a unified course of fraudulent conduct.  (Compl. ¶¶ 84-108.)

23   The gravamen of the Complaint is Plaintiffs' allegation that Naked Juice's labeling is

24   "false, deceptive, and misleading."  (*Id.* ¶¶ 10, 11.)  Plaintiffs allege that Naked Juice

25   "knows that its labeling claims and omissions are false, deceptive, and likely to

26   mislead reasonable consumers" (*id.* ¶ 9; *see also id.* ¶ 94), and that Naked Juice acted

27   with "inten[t]" (*id.* ¶¶ 8, 86, 87, 93, 112).  Plaintiffs allege that they "reasonably

28   relied" on Naked Juice's statements (*id.* ¶¶ 10, 82, 88, 95) and they seek damages and

1  allege that they "lost money" (*id.* ¶¶ 10, 89, 96, 103).  These are the "indispensable

2  elements" of fraud claims.  *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996)

3  (listing fraud elements as "false representation, knowledge of its falsity, intent to

4  defraud, justifiable reliance, and damages" (internal quotation omitted)).  Accordingly,

5  the Complaint must "state with particularity the circumstances constituting fraud" to

6  comply with Rule 9(b) of the Federal Rules of Civil Procedure.  *See Kearns v. Ford*

7  *Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (applying Rule 9(b)'s particularity

8  requirement to UCL and CLRA claims); *Yumul v. Smart Balance*, *Inc.*, 733 F.

9  Supp. 2d 1117, 1122-23 (C.D. Cal. 2010) (same; FAL, UCL, and CLRA claims).

10       Rule 9(b) requires that the allegations must be "specific enough to give

11  defendants notice of the particular misconduct," including "'the who, what, when,

12  where, and how' of the misconduct charged."  *Kearns*, 567 F.3d at 1124 (quoting *Vess*

13  *v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  The purpose of Rule 9

14  is to provide defendants with notice of "the specific fraudulent conduct against which

15  they must defend."  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

## IV.  FEDERAL LAW EXPRESSLY PREEMPTS PLAINTIFFS' CLAIMS BASED ON THE "100% JUICE" STATEMENT

### A.       FDA Regulations Authorize The "100% Juice" Claim

19       Plaintiffs allege that eleven Naked Juice products are deceptively labeled

20  because the labels state "100% Juice" but the products contain "non-juice substances,

21  synthetic substances, or substances created via chemical processing."  (Compl. ¶ 64.)

22  Plaintiffs' claim is preempted by the FDCA and related regulations (*see* 21 C.F.R.

23  § 101.30(b)(3)).

24       The Supremacy Clause (U.S. Const., art. VI, cl. 2) commands that federal law is

25  the "supreme law of the land."  With respect to the labeling of foods and beverages,

26  Congress, through the FDCA, and the FDA, through regulation, have established a

27  national labeling regime with express preemption provisions.  *See*, *e.g.*, 21 U.S.C.

28  § 343-1(a)(4) (Regulatory Appendix, Tab 1); *see also* 21 C.F.R. § 100.1(c)(4) (Tab 2).

Gibson, Dunn &
Crutcher LLP

The FDCA's preemption provisions reflect a strong federal preference for a uniform national system for food and beverage labeling.  This avoids a 50-state patchwork of conflicting regulations and requirements about when companies can make a "100% juice" claim, for example.  The FDCA therefore expressly preempts "any requirement for nutrition labeling of food that is not ***identical*** to" federal regulations.  21 U.S.C. § 343-1(a)(4) (emphasis added).  State "requirements" include state-law based consumer deception lawsuits.  *See Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010).  The implementing regulation for the FDCA's preemption provision defines the key statutory phrase "not identical to" broadly.  21 C.F.R. § 100.1(c)(4).  The regulation prohibits state requirements that directly or indirectly "impose[] obligations" that concern labeling if those obligations "differ from those specifically imposed by or contained in" federal law or regulations.  *Id.* § 100.1(c)(4)(ii).

Thus, the FDCA expressly prohibits Plaintiffs from seeking to impose requirements via state law that are in any way different from those mandated by federal statutes and regulations.  *See*, *e.g.*, *Turek v. Gen. Mills*, *Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) ("[A]ny labeling disclosures required by a state must be identical."); *Red v. Kraft Foods*, 754 F. Supp. 2d 1137, 1139 (C.D. Cal. 2010) ("[T]he FDCA includes a provision that expressly preempts state regulation of specific topics related to food labeling and provides that states may not establish any requirement respecting these specified topics 'that is not identical' to the requirements in the FDCA . . . ."); *Pom Wonderful LLC v. Ocean Spray Cranberries*, *Inc.*, 642 F. Supp. 2d 1112, 1121-22 (C.D. Cal. 2009) ("Plaintiff . . . is preempted from extending its claims in a manner that would impose requirements that are different from federal standards under the [FDCA] and FDA.").

The FDA specifically regulates percentage juice declarations on fruit or vegetable juice.  *See* 21 C.F.R. § 101.30(b) (Regulatory Appendix, Tab 5).  The regulation requires that if a beverage contains fruit or vegetable juice, the juice percentage must be "declared by the words 'Contains __ percent (or %) ___ juice' or '_ percent (or %) juice.'"  *Id.* § 101.30(b)(1).  Specific rules govern the labeling of 100% juice beverages.

Section 101.30(b)(3) expressly allows a "100% Juice" label on a beverage that is 100% juice with added ingredients, if the added ingredients do not dilute the juice or change its volume.  The FDA has affirmatively stated that a "100% Juice" claim does not "mean that only juice is present," explaining that "limiting the 100 percent juice declaration to juice beverages that contain no additives, such as vitamin C, would discourage some manufacturers from producing beverages that contain such useful added ingredients." 58 Fed. Reg. 2897, 2915 (Jan. 6, 1993) (Regulatory Appendix, Tab 9).

Therefore, the FDA explicitly permits a "100% Juice" claim even if the beverage contains non-juice ingredients, as long as there is no reduction in juice soluble solids (for juices made from concentrate) or a change in juice volume (for juices not made from concentrate).  21 C.F.R. § 101.30(b)(3).  Here, Plaintiffs claim that the "100% Juice" statements are misleading because the products contain non-juice ingredients, such as added vitamins.  (Compl. ¶¶ 13, 64-66.)  But Section 101.30(b)(3) expressly allows a "100% Juice" claim even for beverages that contain non-juice ingredients (subject to the conditions in the regulation).  Therefore, federal law expressly preempts Plaintiffs' attempt to impose a *different* labeling requirement that would prohibit a "100% juice" claim for beverages containing any non-juice ingredients.  21 U.S.C. § 343-1(a)(4).[2]

Courts routinely dismiss as preempted claims that attempt to impose labeling schemes that differ from those imposed by the federal regulations.  For example, another court in this district recently rejected, as preempted, a state-law challenge seeking to impose juice labeling requirements that differed from the federal scheme.  *Pom*

---

[2] Plaintiffs' allegation, based solely "on information and belief," that the "added ingredients either dilute the juice soluble solids or change the volume of the juice" (Compl. ¶ 67), must be dismissed for failure to comply with requisite pleading standards.  *See, e.g., Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009) (explaining requirement that claims based in fraud specify facts on which "information and belief" are formed); *Shroyer v. New Cingular Wireless Servs.*, *Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) ("Claims made on information and belief are not usually sufficiently particular, unless they accompany a statement of facts on which the belief is founded.").  Plaintiffs provide no facts to demonstrate any foundation for this allegation as required by Rule 8 or Rule 9(b).  *Iqbal*, 129 S. Ct. at 1949-50; *See Wehlage v. Empres Healthcare, Inc.*, 791 F. Supp. 2d 774, 789 (N.D. Cal. 2011) (dismissing CLRA claim pleaded "on information and belief").

1  *Wonderful LLC v. Coca Cola Co.*, No. 08-06237, 2009 WL 7050005 (C.D. Cal. Feb. 10,

2  2009).  In that case, the plaintiff claimed that defendant's "Pomegranate Blueberry

3  Flavored 100% Juice Blend" label was misleading because the beverage contained more

4  apple and grape juice than pomegranate and blueberry juice.  But the court concluded

5  that the juice regulation in 21 C.F.R. § 102.33 allows a multiple-juice blended beverage

6  to identify juices on the ingredient statement but not on the front label.  *Id.* at *5.

7  Because the product complied with that requirement, federal law preempted plaintiff's

8  state-law claim that attempted to impose a new labeling requirement that differed from

9  FDA regulations.  *Id.*; *see also In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1113-14 (S.D.

10  Cal. 2011) (dismissing attempt to impose a new labeling requirement that was "not

11  identical" to federal regulations); *Peviani v. Hostess Brands*, *Inc.*, 750 F. Supp. 2d 1111,

12  1119 (C.D. Cal. 2010) ("[C]laims must therefore fail because they would necessarily

13  impose a state-law obligation . . . that is not required by federal law.").

14          The same result should follow here.

15  **B.     The Labels Adequately And Accurately Disclose Non-Juice Ingredients**

16          In one paragraph, Plaintiffs also allege that the labels lack "the following phrase,

17  'with added ___' to alert consumers that the Products contained other ingredients aside

18  from juice." (Compl. ¶ 68.)  But Naked Juice *did* disclose that there are non-juice

19  ingredients:  the front labels contain a "WITH OTHER INGREDIENTS" disclaimer revealing

20  the presence of non-juice ingredients.  (Compl., Ex. A; RJN, Exs. 1-7, 10, 14.)  And

21  the ingredient panel lists each ingredient, including any non-juice ingredients.  (*Id.*)

22  Plaintiffs appear to base their claim on the lack of the word "added" on the Naked

23  Juice labels.  (*Id*. ¶ 68.)  The regulation states that if a "100% Juice" claim appears on a

24  different panel of the label from the list of ingredients, there must be an accompanying

25  phrase "with added ___," where terms such as "ingredient(s)" fill in the blank.  21

26  C.F.R. § 101.30(b)(3).  But this wording is just one *example* that the regulation

27  authorizes.  *See id.*  FDA juice labeling guidance explains that a permitted and

28  appropriate label for a 100% juice with added Vitamin C as a preservative would be

1   "100% juice *with preservative*."  (FDA, Guidance for Industry: A Food Labeling

2   Guide, "Name of Food: Juices" at J24 (emphasis added) [Regulatory Appendix,

3   Tab 10].)  The word "added" is not used.  Plaintiffs' position that the words "added

4   ingredients" must be used instead of "other ingredients" elevates form over function.

5   The label's "WITH OTHER INGREDIENTS" statement complies with FDA regulations.

6          For the reasons discussed above, Plaintiffs' "100% Juice" allegations fail to state

7   a claim under state law because the "100% Juice" statement is accurate and authorized

8   by the FDCA and FDA regulations.  *See Red v. Kroger Co.*, No. 10-01025, 2010 WL

9   4262037, at *4-5 (C.D. Cal. Sept. 2, 2010) (rejecting attempt to use state law claims to

10  impose nutrition labeling different from federal scheme).

11         Moreover, Plaintiffs' claim in essence is that Naked Juice does not comply with

12  the FDA 100% juice requirements in 21 C.F.R. § 101.30(b)(3).  But there is no private

13  right of action to enforce the FDCA, as Congress vested exclusive enforcement authority

14  in the FDA, and Plaintiffs may not enforce federal regulations such as the "100% juice"

15  regulation through this action.  *See* 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal

16  Comm.*, 531 U.S. 341, 352, 121 S. Ct. 1012, 148 L. Ed. 2d 854 (2001).

17  ## V.  FEDERAL LAW ALSO PREEMPTS PLAINTIFFS' CHALLENGE TO THE
18  ##     "FROM CONCENTRATE" LABEL

19         Plaintiffs claim that six Naked Juice products "do not adequately disclose that

20  [certain] products are from concentrate and/or reconstituted" (Compl. ¶ 73), but their

21  claim is preempted as well as not plausible.  Plaintiffs do not dispute that "FROM

22  CONCENTRATE" appears in the ingredient list for each juice made from concentrate, and

23  Plaintiffs acknowledge that the front labels contain a statement disclosing products

24  made from concentrate; they complain only that this disclosure is not "adequate."  (*Id.*)

25  But as the statement "PARTIALLY FROM CONCENTRATE" appears directly adjacent to

26  language that Plaintiffs admit they reviewed (*id.*, Ex. A; RJN, Exs. 1-2, 6, 8-9, 14),

27  their claim to have been deceived by the allegedly inconspicuous label is not plausible.

28         Examples (from the AÇAÍ MACHINE product) of the "PARTIALLY FROM

1    CONCENTRATE" statement on the front of the label and the "FROM CONCENTRATE"

2    disclosure in the ingredient list appear below (RJN, Ex. 1):




13   The FDA regulation addressing the term "from concentrate" provides that if a

14   beverage contains juice made from concentrate, then the name of the juice "must

15   include a term indicating that fact, such as 'from concentrate,' or 'reconstituted.'"  21

16   C.F.R. § 102.33(g)(1) (Regulatory Appendix, Tab 6).  The regulation requires that the

17   "concentrate" disclosure be "in a type size no less than one-half the height of the letters

18   in the name of the juice."  *Id.*

19   FDA guidance makes clear that the "concentrate" information does not need to

20   appear in the *product's* name; rather the information must appear where the *juice* is

21   named.  For example, the FDA has explained that a fruit punch does not have to be

22   named "fruit punch from concentrate" because "fruit punch" is not the name of a

23   particular juice, so it does not have to contain the "concentrate" terminology.  (FDA

24   Juice Guidance at J25 [Regulatory Appendix, Tab 10].)  Instead, the "from

25   concentrate" statement must appear where the juices are referenced.  *Id.*

26   The Naked Juice labels fully comply with FDA regulations and guidance.  The

27   side panel (where all of the specific juices are identified) discloses each ingredient and

28   whether the juice is "from concentrate."  *See* 21 C.F.R. § 101.4 (Regulatory Appendix,

1    Tab 3).  The example above from AÇAÍ MACHINE illustrates concentrate disclosure on the

2    ingredient panel (e.g., "CONCORD GRAPE JUICE FROM CONCENTRATE (WATER, CONCORD

3    GRAPE JUICE CONCENTRATE)").  (RJN, Ex. 1.)  The ingredient panels of the remaining

4    five products that Plaintiffs challenge also contain similar disclosures.  (RJN, Exs. 2, 6,

5    8-9, 14.)  The side labels accordingly satisfy the concentrate regulation and any

6    challenge to them is preempted.

7         Nor may Plaintiffs base their claims on the additional "concentrate" disclosure on

8    the front of the bottles.  For example, as depicted above, AÇAÍ MACHINE states

9    "PARTIALLY FROM CONCENTRATE" directly below "AÇAÍ FLAVORED 5 JUICE BLEND WITH

10   OTHER INGREDIENTS" on the front of the label.  (RJN, Ex. 1.)  Plaintiffs' claim appears

11   to boil down to a technical regulatory compliance argument about whether the font size

12   and location on the label of "partially from concentrate" complies with FDA

13   regulations.  As discussed above, however, there is no private right of action to enforce

14   the FDCA, and Congress vested exclusive enforcement authority in the FDA.  21

15   U.S.C. § 337(a).  Thus, Plaintiffs lack authority to enforce federal regulations such as

16   the "partially from concentrate" regulation through this lawsuit.  *See Buckman*, 531

17   U.S. at 352.

18        Nor may Plaintiffs state a claim based on "concentrate" under any of the UCL,

19   CLRA, or FAL.  The presence of ingredients "from concentrate" was properly

20   disclosed in the ingredients list (and on the front label), making the labels fair and

21   truthful.  *See Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160, 97 Cal.

22   Rptr. 2d 722 (2000) (affirming dismissal of UCL claim where car rental company's

23   "refueling" option was not likely to deceive because payment options were "clearly

24   printed, in boldface, in the rental agreement provided . . . at the time of rental").  The

25   "concentrate" statement complies with the FDCA and FDA regulations, making it

26   "lawful."  *See Sybersound Records*, *Inc. v. UAV Corp.*, 517 F.3d 1137, 1152-53 (9th

27   Cir. 2008) (affirming dismissal of UCL claim because alleged conduct upon which

28   claim was based was not unlawful).  Nor may Plaintiffs show any injury flowing from

any alleged regulatory noncompliance.  (*Infra* p. 22.)

## VI.  PLAINTIFFS' CLAIMS MISSTATE THE "ALL NATURAL FRUIT + BOOSTS" LABEL AND FAIL AS A MATTER OF LAW BECAUSE THEY ARE NOT LIKELY TO DECEIVE A TRULY REASONABLE CONSUMER

Plaintiffs allege that the Naked Juice products are deceptive because they "are labeled 'All Natural' but contain non-natural ingredients." (Compl. ¶ 23.)  But the foundation of their "natural" claim is a selective and unreasonable reading of the label that misstates the actual labeling of the majority of the challenged products:

- 11 of the 15 challenged products are labeled "All Natural Fruit + Boosts" (AÇAÍ MACHINE, BERRY VEGGIE, BLUE MACHINE, GOLD MACHINE, GREEN MACHINE, MANGO VEGGIE, POWER-C MACHINE, PROTEIN ZONE, PROTEIN ZONE DOUBLE BERRY, PROTEIN ZONE MANGO, and RED MACHINE);
- MIGHTY MANGO is labeled "All Natural Fruit";
- TROPICAL MANGO contains no "natural" claim at all; and
- only POMEGRANATE BLUEBERRY and POMEGRANATE AÇAÍ are labeled "All Natural."

(Compl. Ex. A; RJN, Exs. 1-15.)

Obviously, Plaintiffs cannot base their claims on TROPICAL MANGO because it contained no "natural" statement.  Nor can they pursue claims based on MIGHTY MANGO, because they do not (and cannot) allege that the "fruit" in this beverage was not "all natural."  Nor may Plaintiffs contest the eleven products labeled as "All Natural Fruit + Boosts."  These labels distinguish between the natural "fruit" and other ingredients, such as the "boosts," which are largely added vitamins.  If "All Natural" modified both the "fruit" and the "boosts," then the additional language (and the separate "All Natural Fruit" and "All Natural" labels) would be unnecessary.  *See* Cal. Health & Safety Code § 110290 (requiring that all representations, statements, and designs made in the labeling or advertising of a food product be "taken into account"); *Pernod Ricard USA*, *LLC v. Bacardi U.S.A.*, *Inc.*, 653 F.3d 241, 251 (3d Cir. 2011) (prohibiting plaintiffs in false advertising cases from reading of challenged statements "in isolation").  The side panel of each product also prominently separates into two columns the ingredients that make up the "All Natural Fruit" and the "Boosts" (from

BERRY VEGGIE and RED MACHINE, *see* RJN, Exs. 2, 14):



For purposes of *Twombly*, it is not plausible that consumers read "all natural" as modifying "boosts," otherwise "red beans and rice" would feature red rice and "sour cream and onion" would mean "sour cream and sour onion." Anyone who has been to a gym or retail establishment and asks for a smoothie and a "boost" understands that the "boost" (usually a scoop of powder) is not a natural fruit and is certainly not "natural" as Plaintiffs define the term in their Complaint. (Compl. ¶ 21 [defining "natural" as "existing in or produced by nature"].)[3]

---

[3] This action is part of a wave of "natural" labeling class actions flooding the federal courts in an attempt to take advantage of the lack of an FDA-authorized definition for "natural." *See* 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) (Regulatory Appendix, Tab 8) (declining to undertake rulemaking to define "natural"). Instead, the FDA maintains a policy "not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors." *Id.*

Plaintiffs cannot selectively ignore the portions of the label that undermine their allegations. *See*, *e.g.*, *Werbel ex rel. v. PepsiCo, Inc.*, No. 09-04456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (requiring that consumers act "reasonabl[y]" when viewing packaging). Consumers have a responsibility to look at the packaging as a whole and to read it reasonably. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (rejecting argument that "reasonable" consumers can selectively review challenged advertising and ignore additional relevant information); *Sugawara v. PepsiCo*, No. 08-01335, 2009 WL 1439115, at *5 (E.D. Cal. May 21, 2009) (allowing plaintiff to ignore the qualifying language on a cereal box "would require this Court to ignore all concepts of personal responsibility and common sense").

Nor may Plaintiffs contest the "All Natural" labeling of POMEGRANATE BLUEBERRY and POMEGRANATE AÇAÍ. As for POMEGRANATE BLUEBERRY, that product contains only fruit, fruit juice, and "natural flavors." (Compl., Ex. A; RJN, Ex. 9.) Plaintiffs do not (and cannot) contend that the fruit or fruit juices in the products were not "natural." Nor may they base their claim on "natural flavors," because FDA regulations expressly allow this statement and any contrary requirements would be preempted by the FDCA. 21 C.F.R. § 101.22(a)(3); *see also id*. § 101.22(a)(1) (defining "artificial flavoring") (Regulatory Appendix, Tab 4). POMEGRANATE AÇAÍ contains the same ingredients plus soy lecithin. Plaintiffs claim that this ingredient is "outside of a reasonable consumer's definition of 'All Natural'" (Compl. ¶ 56), but the information panels (on this and all other products) also disclosed all of the product ingredients. To the extent any consumers, such as Plaintiffs, have a restrictive definition of "natural" that would not include this ingredient, the side panel disclosures would have dispelled any confusion. (*Id*., Ex. A; RJN, Ex. 8.)[4]

---

[4] The Naked Juice labels are thus distinguishable from the advertising challenged in *Williams v. Gerber*, 552 F.3d 934, 939 (9th Cir. 2008), where the front label depicted images of fruits, but the product did not contain those fruits. In contrast, the Naked Juice labels only depict fruits that are included as ingredients in the beverages. A reasonable consumer viewing the "All Natural Fruit + Boosts" statement on the front of a Naked Juice label would find no surprises when reading

[Footnote continued on next page]

1       The Naked Juice labels do not claim that anything synthetic is natural, and

2   Plaintiffs cannot dispute that the juice and fruit puree ingredients are "natural" under

3   their own definition of the term.  That Plaintiffs force a reading of "all natural" to also

4   describe the "boosts" is idiosyncratic and non-actionable.  *See*, *e.g.*, *McKinniss v.*

5   *Kellogg*, *Co.*, No. 07-2611, 2007 WL 4766060, at *4-5 (C.D. Cal. Sept. 19, 2007)

6   (dismissing UCL, FAL, and CLRA claims with prejudice where reasonable consumers

7   would not be misled by product packaging).

8       Under the UCL, FAL, and CLRA, an advertisement is not deceptive "merely

9   because it will be unreasonably misunderstood by an insignificant and unrepresentative

10   segment of the class of persons to whom the representation is addressed."  *Lavie v.*

11   *Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507, 129 Cal. Rptr. 2d 486 (2003)

12   ("Perhaps a few misguided souls believe, for example, that all 'Danish pastry' is made

13   in Denmark.  Is it, therefore, an actionable deception to advertise 'Danish pastry' when

14   it is made in this country?  Of course not.").  Rather, the statement must be such that it

15   is "probable that a significant portion of the general consuming public or of targeted

16   customers, acting reasonably in the circumstances, could be misled."  *Id.* at 508.

17       This Court may examine the labels and decide as a matter of law if a reasonable

18   consumer would be misled.  *See*, *e.g.*, *Haskell v. Time*, *Inc.*, 857 F. Supp. 1392, 1405

19   (E.D. Cal. 1993) (concluding, on motion to dismiss, that reasonable consumers would

20   not be deceived by advertising and dismissing FAL and UCL claims "in major part");

21   *Werbel*, 2010 WL 2673860, at *3 (dismissing UCL, FAL, and CLRA claims after

22   "review of the product packaging"); *Carrea v. Dreyer's Grand Ice Cream*, *Inc.*,

23   No. 10-01044, 2011 WL 159380, at *5-6 (N.D. Cal. Jan. 10, 2011) (dismissing class

24   action alleging false and misleading ice cream packaging where after "review[ing] the

25   product packaging itself, the court concludes as a matter of law that a reasonable

26   _____

27   [Footnote continued from previous page]

28       the ingredients on the side label, as the ingredients are fully consistent with the
    package labeling.  Plaintiffs cannot selectively read the label to ignore "+ Boosts."

consumer would not likely be deceived"), *aff'd*, No. 11-15263, 2012 U.S. App. LEXIS 6851, at *3 (9th Cir. Apr. 5, 2012).

Under these precedents, Plaintiffs' "natural" claims also must be dismissed.

## VII.  PLAINTIFFS' CHALLENGE TO THE "NON-GMO" STATEMENT IS NOT PLEADED WITH PARTICULARITY AND IS NOT PLAUSIBLE

The labels on certain Naked Juice products contain the term "non-GMO."  The statement appears as below (from MANGO VEGGIE, *see* RJN, Ex. 6):



Plaintiffs expressly declined to assert a non-GMO claim in their original four complaints.  In fact, Plaintiffs' counsel requested that this Court hear them *in camera* about why the non-GMO claims could not be pursued.[5]

Now, Plaintiffs challenge as "false and deceptive" the "non-GMO" statements on seven Naked Juice labels because these products allegedly contain non-GMO "sweet corn puree, soy protein isolate, and/or soy lecithin."  (Compl. ¶ 72.)  However, the Complaint is devoid of any *specific facts* demonstrating why or how the "non-

---

[5]  *See* Pappas Pls.' Reply Memo. of Ps. & As. in Support of Jt. Mot. for Consol. & Appt. of Co-Lead Counsel, at 9 n.10 (ECF No. 32, Jan. 27, 2012) ("If the Court is concerned with the Pappas Group's decision to exclude a Non-GMO claim, the Pappas Group asks this Court [to] conduct an in camera hearing so as to not prejudice or waive any arguments Plaintiffs may have.").

1   GMO" labeling statement is misleading as to these three ingredients.  (*Id*.)  Once

2   again, Plaintiffs merely hypothesize "on information and belief" that these particular

3   ingredients are GMO ingredients.  (*See id*.)

4        To the extent that Plaintiffs are "inform[ed] and belie[ve]" any ingredients are

5   made through bioengineering (*id*.), their fraud-based claims require that they comply

6   with Federal Rule of Civil Procedure 9(b) and include particularized factual allegations

7   to support these claims.  *See*, *e.g.*, *Moore v. Kayport Package Express*, 885 F.2d 531,

8   540 (9th Cir. 1989) (rejecting fraud claims pleaded on "information and belief");

9   *Cafasso v. Gen. Dynamics C4 Sys.*, *Inc.*, 637 F.3d 1047, 1055-56 (9th Cir. 2011)

10  (requiring fraud claims be both plausible and particularized).  Even under Rule 8,

11  Plaintiffs' bare allegations lack sufficient facts "to raise a reasonable expectation that

12  discovery will reveal evidence" to support their claim.  *Twombly*, 550 U.S. at 556.  As

13  they plead no facts to justify their complaint about the "non-GMO" statements,

14  Plaintiffs fail to state a claim under the UCL, CLRA, or FAL.  *See In re Apple &*

15  *AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011)

16  (applying Rule 9(b) particularity requirements to FAL, UCL, and CLRA claims).[6]

17  **VIII.  PLAINTIFFS' CLAIMS FAIL FOR SEVERAL OTHER REASONS**

18  **A.    Plaintiffs Do Not Plead Their Claims With The Requisite Particularity**

19        Plaintiffs allege that the Naked Juice labels are "false, deceptive, and

20  misleading" (Compl. ¶ 11), but they do not plead these claims with particularity as

21  required by Rule 9(b).  *See Kearns*, 567 F.3d at 1124.  For example, in *Kearns*, the

22  Ninth Circuit rejected the plaintiff's allegations under the UCL and CLRA for failure

23  to satisfy the specific pleading requirements of Rule 9(b).  The *Kearns* complaint

24  _____

25  [6]  Naked Juice designed its non-GMO claim in accordance with FDA guidance.  *See*
    FDA, Draft Guidance for Industry: Voluntary Labeling Indicating Whether Foods
26  Have or Have Not Been Developed Using Bioengineering (Jan. 2001) (Regulatory
    Appendix, Tab 11).  The FDA has stated for purposes of health and safety, there is
27  no difference between GMO and non-GMO products.  *See also* 57 Fed. Reg.
    22,984, 22,991 (May 29, 1992) (Regulatory Appendix, Tab 7) (statement by FDA
28  that bioengineering is not a "material" fact).

1    failed to identify what the advertisements stated, when the plaintiff was exposed to

2    them, and the sales materials upon which the plaintiff relied.  *Id*. at 1126.  Similarly, an

3    allegation that a plaintiff purchased a product "repeatedly" does not provide the

4    specificity required.  *Yumul*, 733 F. Supp. 2d at 1124.

5         As in *Kearns*, Plaintiffs here fail to allege their claims with the requisite

6    particularity.  The Complaint contains only vague allegations that Plaintiffs purchased

7    "numerous Naked Juice Products in California over the past four years."  (Compl.

8    ¶¶ 16-19.)  There are no allegations as to **who** (which Plaintiff) purchased **what**

9    product (among the 15 challenged beverages).  Plaintiffs also do not identify **where**

10   they purchased the products, **how** much they paid (or the prices of comparable

11   beverages), or **when** (how frequently) they bought Naked Juice beverages.  The

12   Complaint contains four nearly identical paragraphs of each Plaintiff's allegations, but

13   each is conclusory and generalized:

14        •    As to Plaintiff Pappas, the Complaint alleges merely that she "purchased

15   numerous Naked Juice Products" without any specification of *which* beverages she

16   bought.  (Compl. ¶ 16.)  She alleges that she bought the beverages "in California over

17   the past four years," but she fails to state where in California, at which stores, or how

18   frequently she bought Naked Juice beverages.  (*Id.*)  The Complaint alleges that

19   Plaintiff Pappas made her purchases "in reliance on Defendant's representations that

20   the Products contained 'All Natural' ingredients, were '100% Juice,' were 'non-

21   GMO,' *and/or* did not contain juice from concentrate," but the Complaint is not clear

22   as to *which* particular statements she saw and relied upon in making her purchases.

23   (*Id.* [emphasis added].)  She alleges that she "would have purchased alternative

24   products," but there is no indication as to what alternatives she would have purchased

25   or how much she would have paid for them.  (*Id.*)  She does not allege how much she

26   paid for any one Naked Juice beverage or how much in total she spent on Naked Juice

27   products "over the past four years."  (*Id.*)

28        •    As to Plaintiff Marchewka, the Complaint alleges merely that he

Gibson, Dunn &
Crutcher LLP

19

"purchased Naked Juice Products" without any specification of *which* beverages he bought. (Compl. ¶ 17.) He states he bought the beverages "in California, over at least the past four years," but he fails to state where in California, at which stores, or how frequently he bought Naked Juice beverages. (*Id.*) The Complaint alleges that Plaintiff Marchewka made his purchases "in reliance on Defendant's representations that the Products contained 'All Natural' ingredients, were '100% Juice,' were 'non-GMO,' *and/or* did not contain juice from concentrate," but the Complaint is not clear as to *which* particular statements he saw and relied upon in making his purchases. (*Id.* [emphasis added].) He alleges that he "would have purchased alternative products," but there is no indication as to what alternatives he would have purchased or how much he would have paid for them. (*Id.*) He does not allege how much he paid for any one Naked Juice beverage or how much in total he spent on Naked Juice products "over the past four years." (*Id.*)

- As to Plaintiff Evans, the Complaint alleges merely that he "purchased numerous Naked Juice Products" without any specification of *which* beverages he bought. (Compl. ¶ 18.) He states he bought the beverages "in California over the past four years," but he fails to state where in California, at which stores, or how frequently he bought Naked Juice beverages. (*Id.*) The Complaint alleges that Plaintiff Evans made his purchases "in reliance on Defendant's representations that the Products contained 'All Natural' ingredients, were '100% Juice,' were 'non-GMO,' *and/or* did not contain juice from concentrate," but the Complaint is not clear as to *which* particular statements he saw and relied upon in making his purchases. (*Id.* [emphasis added].) He alleges that he "would have purchased alternative products," but there is no indication as to what alternatives he would have purchased or how much he would have paid for them. (*Id.*) He does not allege how much he paid for any one Naked Juice beverage or how much in total he spent on Naked Juice products "over the past four years." (*Id.*)

- As to Plaintiff Park, the Complaint alleges merely that she "purchased

numerous Naked Juice Products" without any specification of *which* beverages she bought.  (Compl. ¶ 19.)  She states she bought the beverages "in California over the past four years," but she fails to state where in California, at which stores, or how frequently she bought Naked Juice beverages.  (*Id.*)  The Complaint alleges that Plaintiff Park made her purchases "in reliance on Defendant's representations that the Products contained 'All Natural' ingredients, were '100% Juice,' were 'non-GMO,' *and/or* did not contain juice from concentrate," but the Complaint is not clear as to *which* particular statements she saw and relied upon in making her purchases.  (*Id.* [emphasis added].)  She alleges that she "would have purchased alternative products," but there is no indication as to what alternatives she would have purchased or how much she would have paid for them.  (*Id.*)  She does not allege how much she paid for any one Naked Juice beverage or how much in total she spent on Naked Juice products "over the past four years."  (*Id.*)

The Complaint leaves completely unanswered whether one Plaintiff actually saw and relied on all of the challenged statements, or if not all, which ones and how many.  Instead of providing the required level of detail, the Complaint is laced with conclusory assertions such as:  "Defendant knows that its labeling claims and omissions are false, deceptive, and likely to mislead reasonable consumers."  (Compl. ¶ 9.)  These conclusory allegations are legally insufficient to state a claim for fraud.  Without the "who, what, when, where, and how," the Complaint must be dismissed. *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (affirming dismissal of fraud claims because plaintiff failed to specify content of fraudulent representation); *see also Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1274-75, 39 Cal. Rptr. 3d 634 (2006) (holding that allegation that "members of the public were likely to have been deceived" "merely concludes the public would likely be deceived, without pleading any facts showing the basis for that conclusion").[7]

---

[7]  Defendant is aware of this Court's recent ruling in *Von Kaenel v. Skinnygirl Cocktails, LLC*, No. 11-07305, ECF No. 66 (C.D. Cal. Mar. 19, 2012), that "[f]raud
[Footnote continued on next page]

Nor do Plaintiffs plead their alleged injury in fact and/or damages with any precision.  Specifically, they do not allege with particularity how they suffered any harm from a "concentrate" label that is supposedly too small, or a "juice" label that says "other ingredients" instead of "added ingredients."  (Compl. ¶¶ 6, 68.)  Plaintiffs cannot establish Article III standing by simply alleging a technical statutory violation. *See*, *e.g.*, *Waste Mgmt. of N. Am.*, *Inc. v. Weinberger*, 862 F.2d 1393, 1397-98 (9th Cir. 1988); *Cronson v. Clark*, 810 F.2d 662, 664 (7th Cir. 1987); *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ("[T]he plaintiff . . . must allege a distinct and palpable injury *to himself* . . . .") (emphasis added); *Birdsong v. Apple*, *Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (no Article III standing where plaintiffs failed to allege injury that was "concrete and particularized *as to themselves*").  Their conclusory allegations also do not establish sufficient injury-in-fact to state a UCL, FAL, or CLRA claim.  *See*, *e.g.*, *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324, 120 Cal. Rptr. 3d 741 (2011) (noting that private party standing under the UCL and FAL is "substantially narrower" than Article III requirements).

**B.    Plaintiffs Fail To State A Federal Warranty Act Claim**

Plaintiffs' MMWA claim fails for a very basic reason:  they have not alleged that statements on the Naked Juice labels created a "written warranty" within the meaning of the Act.  The Act narrowly defines "written warranty" as:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship *and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product *to refund*, *repair*, *replace*, *or take other remedial action*

---

[Footnote continued from previous page]

is not an essential element" of claims brought under the UCL, FAL, and CLRA. Defendant offers that when these claims do sound in fraud, pleading with particularity is required.  *See Kearns*, 567 F.3d at 1125 ("While fraud is not a necessary element of a claim under the CLRA and UCL, a plaintiff may nonetheless allege that the defendant engaged in fraudulent conduct. . . .  In that event, . . . the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).").

*with respect to such product* in the event that such product fails to meet the specification.

15 U.S.C. § 2301(6) (emphases added).[8]

The Naked Juice beverage labels do not fall within this definition because they do not promise a defect-free product or guarantee a level of performance over a specific time period.  As an initial matter, the challenged statements—"All Natural Fruit + Boosts," "100% Juice," and/or "non-GMO" (Compl. ¶ 111)—are "product descriptions" and not a promise that the beverages are defect-free or a guarantee of a specified level of performance.  *See*, *e.g.*, *In re Sears*, *Roebuck & Co.*, MDL 1703, 2006 WL 1443737, at *3-4 (N.D. Ill. May 17, 2006) (dismissing MMWA claim because "Made in USA" is a "product description" providing no promise of performance).  Another indication of the "round peg, square hole" nature of this claim is that the labels also do not promise to refund, repair, or replace the beverage if it fails to meet specifications.  *See* 15 U.S.C. § 2301(6)(B); *In re Sears*, 2006 WL 1443737, at *3-4 (rejecting claim because no promise of refund or repair); *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1027-28 (N.D. Ill. 2008) (same).

But even if the labels somehow constituted such a "promise" or guarantee (which would strain any plausible reading of the words), they plainly do not "specif[y] a level of performance over a specified period of time" and the MMWA claim fails for this reason alone.  *See*, *e.g.*, *Skelton v. GM Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) ("A product information disclosure without a specified time period to which the disclosure relates is . . . not a written warranty."); *Kelley v. Microsoft Corp.*, No. 07-0475, 2007 WL 2600841, at *5 (W.D. Wash. Sept. 10, 2007) (dismissing MMWA claim because "Windows Vista Capable" stickers lacked a "temporal element" to

---

[8]  The Act's definition of "written warranty" is narrower than that of many state warranty laws and the Uniform Commercial Code.  *See* 16 C.F.R. § 700.3 (acknowledging that "express warranties under the [UCC]" may not be "written warranties under this Act.").  The legislative history reveals that the Act was intended to cover motor vehicles or appliances, and not food or beverage products. 119 Cong. Rec. 967 (Jan. 12, 1973) (Sen. Magnuson identified "automobiles, televisions, washers, dryers" as products of concern).

1   constitute a warranty).  Nor may Plaintiffs amend to allege these facts; the Naked Juice
2   beverages are intended to be consumed shortly after purchase.

3          Plaintiffs also face an insurmountable contradiction in their MMWA claim.  The
4   MMWA is "inapplicable to any written warranty the making or content of which is
5   otherwise governed by Federal law."  15 U.S.C. § 2311(d).  But Plaintiffs cannot deny
6   that the FDCA governs the statements made on the Naked Juice labels.  If Plaintiffs
7   both (i) claim that the label statements are warranties and (ii) do not dispute that the
8   FDCA applies, then Plaintiffs cannot bring a claim under the MMWA.

9          Finally, Plaintiffs have not complied with the pre-litigation notice required by
10  the MMWA.  *See* 15 U.S.C. § 2310(e) (requiring the seller to be given a "reasonable
11  opportunity to cure such failure to comply" with a warranty obligation).  Nor have they
12  alleged that each individual claim exceeds "the sum or value of $25," an essential
13  element for federal jurisdiction over this claim.  *See id*. § 2310(d)(3); *Abraham v.*
14  *Volkswagen of Am.*, *Inc.*, 795 F.2d 238, 243-45 (2d Cir. 1986).

15                              IX.  **CONCLUSION**

16         Plaintiffs' Complaint suffers from several flaws: (1) federal law preempts their
17  claims as to the "100% Juice" and "from concentrate" statements; (2) the challenge to
18  the "All Natural Fruit + Boosts" statement is implausible and based on an incomplete
19  reading of the label; (3) the challenge to the "non-GMO" statements contains no facts
20  whatsoever to allege that Naked Juice uses any GMO ingredients; (4) Plaintiffs fail to
21  plead their fraud claims with particularity as required by Rule 9(b); and (5) the
22  Complaint fails to state a claim under the CLRA, FAL, UCL, or MMWA.  Naked Juice
23  respectfully requests that the Court dismiss this action with prejudice.

24  DATED:  April 9, 2012          GIBSON, DUNN & CRUTCHER LLP

25
26                              By: _____/s/_____
                                        Andrew Tulumello
27                              Attorneys for Defendant Naked Juice Co. of
                                Glendora, Inc.
28  101269288.3

Gibson, Dunn &
Crutcher LLP

24

**APPENDIX "A"**

**Plaintiffs' Challenges to Naked Juice Products**

| Product | Statements Challenged by Plaintiffs | | | |
|---|---|---|---|---|
| | **"100% Juice"** | **"Partially From Concentrate"** | **"Non-GMO"** | **"Natural"** |
| AÇAÍ MACHINE | X | X | X | X |
| BERRY VEGGIE | X | X | X | X |
| BLUE MACHINE | X | | | X |
| GOLD MACHINE | X | | | X |
| GREEN MACHINE | X | | | X |
| MANGO VEGGIE | X | X | | X |
| MIGHTY MANGO | X | | | X |
| POMEGRANATE AÇAÍ | X | X | X | X |
| POMEGRANATE BLUEBERRY | | X | | |
| POWER-C MACHINE | X | | | X |
| PROTEIN ZONE | | | X | X |
| PROTEIN ZONE DOUBLE BERRY | | | X | X |
| PROTEIN ZONE MANGO | | | X | X |
| RED MACHINE | X | X | | X |
| TROPICAL MANGO | X | | | X |

Gibson, Dunn &
Crutcher LLP

Appendix A