1   TINA WOLFSON, SBN 174806
    twolfson@ahdootwolfson.com
2   ROBERT AHDOOT, SBN 172098
    rahdoot@ahdootwolfson.com
3   **AHDOOT & WOLFSON, P.C.**
    10850 Wilshire Boulevard, Suite 370
4   Los Angeles, California 90024
    Tel: 310-474-9111; Fax: 310-474-8585

5   *Interim Co-Lead Counsel for Plaintiffs*

6

7   CHRISTOPHER RIDOUT, SBN 143931
    c.ridout@ridoutlyonlaw.com
8   DEVON LYON, SBN 218293
9   d.lyon@ridoutlyonlaw.com
    **RIDOUT & LYON, LLP**
10  555 E. Ocean Blvd., Ste. 500
11  Long Beach, California  90802
    Tel: 562-216-7380; Fax: 562-216-7385
12

13  *Interim Co-Lead Counsel for Plaintiffs*

14  [*Additional Counsel Listed on Signature Page*]

ROSEMARY M. RIVAS, SBN 209147
rrivas@finkelsteinthompson.com
DANIELLE STOUMBOS, SBN 264784
dstoumbos@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, CA 94104
Tel: 415-398-8700; Fax:  415-398-8704

*Interim Co-Lead Counsel for Plaintiffs*

FILED
CLERK, U.S. DISTRICT COURT

JUN -5 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

15

16          **UNITED STATES DISTRICT COURT**

17          **CENTRAL DISTRICT OF CALIFORNIA**

18

19

20  IN RE NAKED JUICE CASES

21

22  This Document Relates To:

23

24  All Actions.

25

26

27

28

Case No. 2:11-cv-8276-JAK-PLA

**AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

RECEIVED
BUT NOT FILED

JUN  5 2012

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
BY                           DEPUTY

---

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Natalie Pappas, Russell Marchewka, Christopher Evans, and Gina Park ("Plaintiffs"), by and through their counsel, bring this Consolidated Class Action Complaint against Naked Juice Co. of Glendora, Inc. ("Defendant"), on behalf of themselves and all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1.      In recent years, consumers have become more willing to pay a premium for food and beverages that they perceive to be healthy, organic, natural and/or non-genetically modified.  As a result, the market for natural or organic foods and beverages has grown rapidly, yielding billions of dollars in revenue for food and beverage manufacturers.

2.      Defendant manufactures, markets and sells beverages nationwide from its headquarters in Monrovia, California under the brand name "Naked" and offers the following products: (1) Acai Machine; (2) Berry Veggie; (3) Blue Machine; (4) Gold Machine; (5) Green Machine; (6) Mango Veggie; (7) Mighty Mango; (8) Pomegranate Acai; (9) Power C Machine; (10) Protein Zone; (11) Protein Zone Double Berry; (12) Protein Zone Mango; and (13) Red Machine (collectively, the "Naked Juice Products" or the "Products"), which are the subject matter of this action.  Attached as **Exhibit A** are ingredient lists and images of the labeling for these Products.

3.      In an effort to capture a segment of the lucrative natural juice market, Defendant engages in deceptive advertising that includes, but is not limited to, prominent labeling of its Products with claims such as "All Natural" and "non-GMO," (i.e., free of genetically modified organisms ("GMOs")).

4.      In fact, many Naked Juice Products are not "All Natural" because they contain unnaturally processed and synthetic ingredients, and because they include ingredients derived from genetically modified crops and other synthetic substances.

Further, Naked Juice Products are labeled as containing certain vitamins and nutrients, when in fact they contain chemically distinct vitamin substitutes, often produced via chemical processing.

5.  The genetic makeup of GMO plants has been altered by scientists in a lab for the express purpose of causing such plants to exhibit traits that are not naturally their own.  GMOs therefore are not natural by design, and entirely incompatible with Defendant's "All Natural" representations, as well as Defendant's specific "non-GMO" claims.

6.  Defendant identifies its non-natural and non-juice ingredients in fine print on the back of the Products' packaging.  The size and placement, however, are in stark contrast to the conspicuous "All Natural" and "non-GMO" claims, appearing in larger print in more prominent locations on the packaging.

7.  Reasonable consumers, including Plaintiffs, do not have the specialized knowledge necessary to identify ingredients in Naked Juice products as being inconsistent with the "All Natural" and "non-GMO" claims.

8.  Defendant knows that consumers are willing to pay for all natural, and GMO-free products, and advertises its products with the intention that consumers rely on the affirmative misrepresentations on its labeling that the products are "All Natural" and "non-GMO."  Further, Defendant's omissions of the material fact that the Products include ingredients that are not "All Natural," but rather are synthetic and/or genetically modified, are likely to deceive reasonable consumers.

9.  Defendant knows that its labeling claims and omissions are false, deceptive, and likely to mislead reasonable consumers.

10.  Plaintiffs relied on Defendant's false, deceptive, and misleading labeling claims and omissions and suffered injury in fact and a loss of money with each purchase of Defendant's Products.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

11.     As a result of Defendant's false, deceptive, and misleading labeling and omissions, consumers such as Plaintiffs do not receive the benefit of their bargain when they purchase Naked Juice Products.  They pay money for a product that is not what it claims to be or what they bargained for.  They pay a premium for the Naked Juice Products when they could have instead bought other less expensive alternative food products, and lost the opportunity to purchase and consume other, truly all natural and non-GMO foods.

12.     Plaintiffs bring claims for violations of California's Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq.* ("UCL"), the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), and the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA").  Plaintiffs seek an order requiring Defendant to, among other things: (1) cease the unlawful marketing alleged herein; (2) conduct a corrective advertising campaign; and (3) pay damages and restitution to Plaintiffs and Class members in the amounts paid to purchase the products at issue.

## JURISDICTION AND VENUE

13.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the proposed class has more than 100 members, the class contains at least one member of diverse citizenship from Defendant, and the amount in controversy exceeds $5 million.

14.     The Court has personal jurisdiction over Defendant because Defendant's headquarters and principal place of business are in the state of California.  Defendant is authorized to, and conducts, substantial business in California.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), because Defendant resides in this District, a substantial part of the events and omissions giving rise to this action occurred in this District and Defendant is headquartered in this District.

## THE PARTIES

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

16.      Plaintiff Natalie Pappas is a resident and citizen of Los Angeles, California.

17.      Plaintiff Russell Marchewka is a resident and citizen of Santa Ana, California.

18.      Plaintiff Christopher Evans is a resident and citizen of Los Angeles, California.

19.      Plaintiff Gina Park is a resident and citizen of Los Angeles, California.

20.      Defendant is a corporation with its principal place of business at 1333 S. Mayflower Avenue, Monrovia, California, 91016.  Defendant manufactures, markets, and sells the Naked Juice Products from its headquarters in California to consumers in California and throughout the United States at retail.

///

///

///

///

///

///
///
///
///

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

## SUBSTANTIVE ALLEGATIONS

### Defendant Deceptively Labels The Naked Juice Products As "All Natural"

21.     Through its advertising and labeling, Defendant has created a brand that is practically synonymous with its "natural" message.  As Defendant explains on its website, for example, the name "Naked" means that Defendant uses only natural ingredients, and no "other junk":



<http://nakedjuice.com/our-purpose> (last visited June 4, 2012).

///

///

///

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

22.     Defendant has prominently labeled and advertised its products as "All Natural," including, for example, as pictured below:



23.     The dictionary defines the term "natural" as "existing in or produced by nature:  not artificial."[1]  This common dictionary definition of the term "natural" is consistent with the expectations of a reasonable consumer.

24.     A reasonable consumer would not consider food products containing unnaturally processed, synthetic substances, substances created via chemical processing, or genetically modified organisms ("GMOs") to be "All Natural."

25.     Naked Juice Products contain substances that are synthetic, substances created via chemical processing, and/or GMOs, rendering Defendant's claims that the Products are "All Natural" false.  Without limitation, the following Naked Juice Products are labeled "All Natural" but contain non-natural ingredients and therefore are not "All Natural": Acai Machine, Berry Veggie, Blue Machine, Gold Machine, Green Machine, Mango Veggie, Mighty Mango, Pomegranate Acai, Power C Machine, Protein Zone, Protein Zone Double Berry, Protein Zone Mango, and Red Machine.  As

[1] WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 788 (1990).

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

reflected in **Exhibit A**, the following is a non-exhaustive list of non-natural ingredients contained in the Products:

26.     **ASCORBIC ACID**:  Defendant labels ascorbic acid as Vitamin C. Ascorbic acid occurs naturally in certain foods as Vitamin C, or L-ascorbic acid. However, ascorbic acid used as a Vitamin C supplement in foods is not naturally-occurring.  Rather, it is synthesized through a combined chemical-organic process known as the Reichstein Process.  The Reichstein Process uses the following steps:  (a) hydrogenation of D-glucose to D-sorbitol, an organic reaction with nickel as a catalyst under high temperature and high pressure; (b) Microbial oxidation or fermentation of sorbitol to L-sorbose with <u>acetobacter</u> at pH 4-6 and 30° C; (c) protection of the 4 hydroxyl groups in sorbose by formation of the acetal with acetone and an acid to Diacetone-L-sorbose (2,3:4,6−Diisopropyliden−α−L−sorbose); (d) Organic oxidation with potassium permanganate followed by heating with water to yield 2-Keto-L-gulonic acid; and (e) a ring-closing step or gamma lactonization with removal of water.  In recent years, Chinese chemists have developed a simplification of the Reichstein Process that substitutes biological oxidation using genetically engineered microorganisms for chemical oxidation.

27.     Manufactured ascorbic acid is chemically identical to naturally-occurring Vitamin C, with both substances having the chemical formula $C_6H_8O_6$.  However, its chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

28.     **BETA CAROTENE**:  Defendant labels beta carotene as Vitamin A.  Beta carotene occurs naturally in many foods.  However, most, though not all, beta carotene added as a supplement to food is produced synthetically.  Synthetic beta carotene is produced in two ways:  (a) through a Wittig Reaction, a chemical reaction of an aldehyde or ketone with a triphenyl phosphonium yield (often called a Wittig reagent) to give an alkene and triphenylphosphine oxide; or (b) through a Grignard Reaction, an

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

organometallic chemical reaction in which alkyl- or aryl-magnesium halides (Grignard reagents) add to a carbonyl group in an aldehyde or ketone.

29.     Synthetic beta carotene's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

30.     Vitamin A is a compound also known as retinal, with the chemical formula $C_{20}H_{30}O$.  Beta carotene is a different substance, with the chemical formula $C_{40}H_{56}$. Beta carotene is a precursor to Vitamin A, with one molecule of ingested beta carotene being cleaved into two molecules of Vitamin A within the intestinal tract.  However, beta carotene is not itself Vitamin A.

31.     Thus, regardless of the provenance of the beta carotene in Naked Juice products, labeling it as Vitamin A is misleading.

32.     **BIOTIN**:     Biotin, also known as Vitamin H, occurs naturally in certain foods.  Biotin used as a food supplement is created synthetically using a process first developed by Leo Sternbach and Moses Wolf Goldberg in 1949.  The process involves (a) three steps to create an imidazolinone ring, using fumaric acid as a starting material; (b) 6 steps to install a side chain, by addition of a Grignard reagent, followed by malonate and decarboxylization; and (c) 6 steps to introduce chirality, by fractional crystallization of diastereomeric salts.  Various improvements to the original method have been developed, including (1) reduction of the second process to two steps via (i) a Fukuyama coupling between thiolactone and organozinc reagent; and (ii) reduction of $3°$ alcohol; and (2) substitution of enantioselective desymmetrization in the chirality-introduction process.

33.     Synthetic biotin is chemically identical to the naturally-occurring variety. However, its chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

34.     **CHOLINE BITARTRATE**:  The side labels of Naked Juice Products containing choline bitartrate on the ingredient list state that the products contain

choline.  Choline bitartrate is a synthetic substitute for choline (a B-complex vitamin) which is manufactured through the reaction of trimethylamine with ethylene oxide, followed by treatment with tartaric acid.

35.  Choline bitartrate's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

36.  Moreover, choline bitartrate, with the chemical formula $C_9H_{19}NO_7$, is a different substance from choline, which has the chemical formula $C_5H_{14}NO$.  Thus, Defendant's equation of choline bitartrate with choline on the labels of Naked Juice products is misleading, irrespective of the fact that it is produced via chemical processing.

37.  **CYANOCOBALAMIN**:  Defendant labels cyanocobalamin as Vitamin B12.  Cyanocobalamin is a synthetic substitute for Vitamin B12 (cobalamin).  It is manufactured via fermentation by a variety of microorganisms, yielding a mixture of methyl-, hydroxo-, and adenosylcobalamin. These compounds are then extracted and converted to cyanocobalamin by addition of potassium cyanide in the presence of sodium nitrite and heat.

38.  Cyanocobalamin's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

39.  Moreover, cyanocobalamin, with the chemical formula $C_{63}H_{88}CoN_{14}O_{14}P$, is a different substance from Vitamin B12 (cobalamin), which has the chemical formula $C_{62}H_{88}CoN_{13}O_{14}P$.  Thus, labeling cyanocobalamin as Vitamin B12 is misleading, irrespective of the fact that it is produced via chemical processing.

40.  **D-CALCIUM PANTOTHENATE**:  Defendant labels d-calcium pantothenate as Vitamin B5.  D-calcium pantothenate is a chemical salt used as a substitute for Vitamin B5 (pantothenic acid).  It is produced synthetically for commercial use from isobutyraldehyde and formaldehyde via 1,1-dimethyl-2-hydroxy-propionaldehyde and pantolactone.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

41.     D-calcium pantothenate's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

42.     Moreover, d-calcium pantothenate, with the chemical formula $C_{18}H_{32}CaN_2O_{10}$, is a different substance from pantothenic acid (Vitamin B5), which has the chemical formula $C_9H_{17}NO_5$. Thus, labeling d-calcium pantothenate as Vitamin B5 is misleading, irrespective of the fact that it is produced via chemical processing.

43.     **FIBERSOL®-2**:  Fibersol®-2 is a proprietary digestion-resistant maltodextrin dietary fiber developed by Japan's Matsutani Chemical Industry Co., Ltd., and manufactured by Archer Daniels Midland in conjunction with Matsutani America, Inc.  Fibersol®-2 is produced by "a proprietary method of enzymatic hydrolysis of cornstarch."  The process is designed "*to purposefully rearrange corn starch molecules to convert a portion of normal alpha -1,4- glucose linkages to random 1,2-, 1,3-, and 1,4- alpha and beta linkages,*" thus rendering the substance largely indigestible.

44.     Fibersol®-2's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

45.     **FRUCTOOLIGOSACCHARIDES**:  Fructoologisaccharides are a category of long-chain carbohydrates used as sweeteners and as dietary fiber. Fructooligosaccharides occur naturally in certain fruits and vegetables, but fructooligosaccharides added to food are more commonly commercially synthesized using one of two chemical processes:  (a) Enzymatic or chemical degradation of inulin to a mixture of oligosaccharides with the general structure Glu-(Fru)$_n$ (GF$_n$) and Fru$_m$ (F$_m$), with n and m ranging from 1 to 7; or (b) transfructosylation action of a β-fructosidase of *Aspergillus niger* (a toxic black mold) on sucrose.

46.      The chemical manufacturing process of synthetic fructooligosaccahrides places them outside of a reasonable consumer's definition of "All Natural."

47.     **INULIN**:  Inulin is a fiber occurring in a number of plants.  The form of inulin added to food products is produced by (a) extracting natural inulin from the root

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

of the chicory plant via hot water diffusion; (b) enzymatically hydrolyzing the extracted inulin to yield oligofructose-enriched inulin; and (c) drying the resulting substance to a powder for use in food.

48.     Inulin's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

49.     **NIACINAMIDE**: Defendant labels niacinimide as Vitamin B3. Niacinimide is a synthetic substitute for Vitamin B3 (niacin) which is industrially produced by a variety of methods, including:  (a) esterifying nicotinic acid with methanol, followed by ammonolyis; (b)  passing ammonia gas into molten nicotinic acid (amidation); and (c) partial hydrolysis of 3-cyanopyridine.  Additionally, Lonza Fine Chemicals and Specialities, a Swiss company claiming to supply over half the world's niacinimide, employs a four-stage synthesis using nylon 6.6 byproduct 3-methyl-1,5-diaminopentane as starting material. This is transformed into picoline, which is ammoxidated and then biocatalytically hydrolysed to niacinamide.

50.     Niacinamide's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

51.     Moreover, niacinamide, with the chemical formula $C_6H_6N_2O$, is a different substance from Vitamin B3 (niacin), which has the chemical formula $C_6H_5NO_2$.  Thus, labeling niacinamide as Vitamin B3 is misleading, irrespective of the fact that it is produced via chemical processing.

52.     **PYRIDOXINE HYDROCHLORIDE**: Defendant labels pyridoxine hydrochloride as Vitamin B6.  Pyridoxine hydrochloride is a synthetic form of Vitamin B6 produced by the condensation of ethoxyacetylacetone with cyanoacetamide.

53.     Pyridoxine hydrochloride's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

54.     **SOY LECITHIN**:  Soy Lecithin is used in food as an emulsifier, as a lubricant, and to extend shelf life.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

55.     In order to extract soy lecithin from soybeans, the soybeans are immersed in hexane, a byproduct of petroleum refining, before further processing.

56.     Soy Lecithin's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

57.     **SOY PROTEIN ISOLATE**:   Soy protein isolate is used in food to improve texture, to increase protein content, to enhance moisture retention, and as an emulsifier.

58.     In order to extract soy protein isolate from soybeans, the soybeans are first immersed in hexane, a byproduct of petroleum refining.  The beans are then processed into flour.  Aqueous extraction is then carried out at a pH below 9. The extract is clarified to remove the insoluble material and the "supernatant" is acidified to a pH range of 4-5. The precipitated protein-curd is collected and separated from the whey by centrifuge. The curd is usually neutralized with alkali to form a sodium proteinate salt before drying.

59.     Soy protein isolate's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

60.     **ZINC METHIONINE SULFATE**:  Zinc methionine sulfate is synthesized via a reaction between equimolar amounts of zinc sulfate and DL-methionine in purified water.

61.     Zinc methionine sulfate's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

62.     **ZINC OXIDE**:     Zinc oxide is synthesized using three main chemical processes:  (1) Indirect process:  Metallic zinc is melted in a graphite crucible and vaporized at temperatures above 907 °C (typically around 1000 °C).  Zinc vapor reacts with the oxygen in the air to give ZnO, accompanied by a drop in its temperature and bright luminescence. Zinc oxide particles are then transported into a cooling duct and collected in a bag house; (2) Direct process:  The direct process starts with diverse

contaminated zinc composites, such as zinc ores or smelter by-products.  The zinc precursors are reduced (carbothermal reduction) by heating with a source of carbon such as anthracite to produce zinc vapor.  The Zinc vapor is then oxidized as in the indirect process; and (3) Wet chemical process:  This process starts with aqueous solutions of purified zinc salts, from which zinc carbonate or zinc hydroxide is precipitated. The precipitate is then filtered, washed, dried and calcined at temperatures around 800 °C.

63.    Zinc oxide's chemical manufacturing process places it outside of a reasonable consumer's definition of "All Natural."

**Defendant Deceptively Labels the Naked Juice Products As "Non-GMO" and States That It Does Not Use GMO Ingredients As A Matter Of Principle**

64.    In addition to the "natural" claims, all of Defendant's Products claim to be "non-GMO" on the product packaging.  Additionally, Defendant's Product labels state that "Naked Juice does not use ingredients that were produced using biotechnology as a matter of principle."  *See* Exhibit A.

65.    A reasonable consumer would expect a food product labeled as "natural" or "all natural" to not contain genetically modified ingredients.

66.    A reasonable consumer would expect a food product labeled as "non-GMO" to not contain genetically modified ingredients.

67.    A reasonable consumer would expect a food product label stating that the product manufacturer does not use ingredients that were produced using biotechnology as a matter of principle to never use GMO ingredients and to implement quality control measures to assure the same.

68.    Genetically modified food has had its genetic makeup altered to exhibit traits that the food does not naturally contain.  This process is known as bio-engineering.  In general, genetically modified plants and organisms are made by copying desired traits from another organism and implanting them into the subject

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1    organism.  These bio-engineered organisms express traits that normally would not

2    appear in nature.  Thus, organisms produced through bio-engineering, i.e. GMOs, do

3    not occur naturally.

4         69.    Third party testing reveals that Defendant utilizes genetically modified soy

5    ingredients in the Products.  Based on this testing and discussions with consultants,

6    Plaintiffs allege that Defendant's "non-GMO" representations are false and deceptive

7    on the labels of the following Products, each of which includes Soy Protein Isolate

8    and/or Soy Lecithin: Acai Machine, Protein Zone, Protein Zone Double Berry, Protein

9    Zone Mango, and Pomegranate Acai.  *See* Exhibit A.

10        70.    It is unsurprising that the processed soy products that Defendant

11   incorporates into its Products include GMO soy, given that the vast majority of soy

12   products — particularly in the United States — now include GMOs.  *See, e.g.*, GMO

13   Compass, *USA: Cultivation of GM Plants in 2009, Maize, soybean, cotton: 88 percent*

14   *genetically modified* (2009), available at <http://www.gmo-

15   compass.org/eng/agri_biotechnology/gmo_planting/506.usa_cultivation_gm_plants_20

16   09.html> (last visited May 24, 2012).

17        71.    Defendant's representations that it does not use ingredients "produced

18   using biotechnology" is entirely incompatible with its use of ingredients such as

19   Fibersol-2, which according to its manufacturers, Archer Daniels Midland Company

20   and Matsutani Chemical Industry Co., is made from corn, including genetically

21   modified corn.  *See* Archer Daniels Midland Company, *ADM Corn Sweeteners: Origin*

22   *of ADM Corn Sweetener Products — Fibersol-2* (Dec. 23, 2002), available at

23   <http://www.matsutaniamerica.com/pdf/origin_of_fibersol.pdf> (last visited May 29,

24   2012); <http://www.fibersol2.com/Solve/faq.asp> ("When Fibersol®-2 is made in the

25   U.S. it is made from both genetically modified and non-genetically modified corn. The

26   corn processing supply chain simply does not allow for segregation of these types of

27

28

_____

14

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1  corn.") (last visited May 29, 2012).  Thus, Blue Machine, which contains Fibersol-2,

2  contains GMO ingredients contrary to Defendant's label representations.

3       72.     Much information concerning the GMO content in Defendant's Products is

4  known only to Defendant, and Plaintiffs expect that discovery in this action will reveal

5  further information showing that Defendant's "non-GMO" representations are false.

6       73.     Indeed, the FDA recognizes that "[a] manufacturer who claims that a

7  food or its ingredients, including foods such as raw agricultural commodities, is not

8  bioengineered should be able to substantiate that the claim is truthful and not

9  misleading," preferably through "validated test methods" or, where testing may not be

10 effective because a given ingredient is highly processed, through careful

11 documentation concerning the source of such ingredients.  FDA, *Guidance for*

12 *Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not Been*

13 *Developed Using Bioengineering; Draft Guidance* (2001), available at < http://

14 www.fda.gov/food/guidancecomplianceregulatoryinformation/guidancedocuments/foo

15 dlabelingnutrition/ucm059098.htm> (last visited May 24, 2012).  Defendant must have

16 substantiation for its "non-GMO" claims.

17       **PLAINTIFFS PURCHASE NAKED JUICE PRODUCTS IN RELIANCE ON**

18                    **DEFENDANT'S MISREPRESENTATIONS**

19       74.     Ms. Pappas purchased many Naked Juice Products in California in the past

20 four years in reliance on Defendant's representations and omissions that the Products

21 contained only: "All Natural" ingredients" and "non-GMO" ingredients.  These

22 representations and omissions were material to Ms. Pappas' decision to purchase the

23 Products.  Ms. Pappas was willing to pay for the Products because of these

24 representations and omissions, and would not have purchased, would not have paid as

25 much for the Products, or would have purchased alternative products in absence of

26 these representations and omissions.

27

28

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

75.     Specifically, Ms. Pappas has purchased all of the Products, in addition to other Naked Juice beverages.

76.     Mr. Marchewka purchased many Naked Juice Products in California in the the past four years in reliance on Defendant's representations and omissions that the Products contained only:  "All Natural" ingredients and  "non-GMO" ingredients. These representations and omissions were material to Mr. Marchewka's decision to purchase the Products.  Mr. Marchewka was willing to pay for the Products because of these representations and omissions, and would not have purchased, would not have paid as much for the Products, or would have purchased alternative products, in absence of these representations and omissions.

77.     Specifically, Mr. Marchewka purchased at least the following Naked Juice Products: Acai Machine, Blue Machine, Green Machine, Mighty Mango, Power C Machine, Protein Zone, Protein Zone Double Berry, Protein Zone Mango and Red Machine.

78.     Mr. Evans purchased many Naked Juice Products in California in the past four years in reliance on Defendant's representations and omissions that the Products contained only:  "All Natural" ingredients and "non-GMO" ingredients.  These representations and omissions were material to Mr. Evan's decision to purchase the Products.  Mr. Evans was willing to pay for the Products because of these representations and omissions, and would not have purchased, would not have paid as much for the Products, or would have purchased alternative products in absence of these representations and omissions.

79.     Specifically, Mr. Evans purchased at least the following Naked Juice Products: Blue Machine, Pomegranate Acai, Acai Machine, Berry Veggie, Mango Veggie, Power C Machine, Protein Zone, Protein Zone Double Berry, Protein Zone Mango.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

80.     Ms. Park purchased many Naked Juice Products in California in the past four years in reliance on Defendant's representations and omissions that the Products contained only:  "All Natural" ingredients and "non-GMO" ingredients.  These representations and omissions were material to Ms. Park's decision to purchase the Products.  Ms. Park was willing to pay for the Products because of these representations and omissions, and would not have purchased, would not have paid as much for the Products, or would have purchased alternative products in absence of these representations and omissions.

81.     Specifically, Ms. Park purchased at least the following Naked Juice Products: Pomegranate Acai and Protein Zone Mango.

## CLASS ACTION ALLEGATIONS

82.     Plaintiffs seek relief in their individual capacity and seek to represent a class consisting of all others who are similarly situated.  Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiffs seek certification of a class initially defined as follows:

**All consumers in the United States who from September 27, 2007 until the final disposition of this case (the "Class Period"), purchased the following Naked Juice Products:  (1) Acai Machine; (2) Berry Veggie; (3) Blue Machine; (4) Gold Machine; (5) Green Machine; (6) Mango Veggie; (7) Mighty Mango; (8) Pomegranate Acai; (9) Power C Machine; (10) Protein Zone; (11) Protein Zone Double Berry; (12) Protein Zone Mango; and (13) Red Machine.**

83.     Excluded from the Class are Defendant and its subsidiaries and affiliates, Defendant's executives, board members, legal counsel, all judges and court personnel assigned to this matter, and their immediate families.

84.     Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or division into subclasses after they have had an opportunity to conduct discovery.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

85.     <u>Numerosity</u>.  Fed. R. Civ. P. 23(a)(1).  The potential members of the Class as defined are so numerous that joinder of all members is unfeasible and not practicable. While the precise number of Class members has not been determined at this time, Plaintiffs are informed and believe that many thousands or millions of consumers have purchased the listed products.

86.     <u>Commonality</u>.  Fed. R. Civ. P. 23(a)(2) and (b)(3).  There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members.  These common questions of law and fact include, without limitation:

a.      Whether Defendant falsely and/or misleadingly misrepresented Naked Juice Products as being "All Natural";

b.      Whether Defendant falsely and/or misleadingly misrepresented Naked Juice Products as being "non-GMO";

c.      Whether Defendant's misrepresentations and omissions are likely to deceive reasonable consumers;

d.      Whether Defendant violated California Civil Code § 1750, *et seq*.;

e.      Whether Defendant violated California Business and Professions Code § 17500, *et seq*.;

f.      Whether Defendant violated California Business and Professions Code § 17200, *et seq*.;

g.      The nature of the relief, including equitable relief, to which Plaintiff and the Class members are entitled.

87.     <u>Typicality</u>.  Fed. R. Civ. P. 23(a)(3).  The claims of Plaintiffs are typical of the claims of the Class.  Plaintiffs and all Class members were exposed to uniform practices and sustained injury arising out of and caused by Defendant's unlawful conduct.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

88.     <u>Adequacy of Representation</u>.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions.

89.     <u>Superiority of Class Action</u>.  Fed. R. Civ. P. 23(b)(3).  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the claims asserted herein.  There will be no difficulty in the management of this action as a class action.

90.     <u>Injunctive and Declaratory Relief.  Fed. R. Civ. P. 23(b)(2)</u>.  Defendant's actions regarding the misrepresentations and omission on Naked Juice Products are uniform as to members of the Class.  Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or declaratory relief as requested herein is appropriate respecting the Class as a whole.

## FIRST CAUSE OF ACTION

**(California Consumers Legal Remedies Act – Cal. Civ. Code § 1750, *et seq.*)**

91.     Plaintiffs incorporate by reference and reallege all previous paragraphs.

92.     Defendant is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Civil Code §§ 1761(a) and 1770.  Defendant's customers, including Plaintiffs and Class members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.  Each purchase of Defendant's Naked Juice Products by Plaintiffs and each Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

93.     The Consumers Legal Remedies Act makes it unlawful for a company to:

(a)  Represent that goods have characteristics, ingredients uses, benefits, or quantities, which they do not have.  Cal. Civ. Code § 1770(a)(5);

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

(b)  Represent that goods are of a particular standard, quality, or grade, if they are of another.  Cal. Civ. Code § 1770(a)(7); and

(c)  Advertise goods with intent not to sell them as advertised.  Cal. Civ. Code § 1770(a)(9).

94.  Defendant's acts, practices, representations, omissions, and courses of conduct with respect to the production, promotion and marketing of Naked Juice Products violated the Consumers Legal Remedies Act in that, among other things:

(a)  Defendant represented that the Naked Juice Products have characteristics, ingredients, uses, benefits, or qualities, which they do not have, in violation of Cal. Civil Code § 1770(a)(5);

(b)  Defendant represented that Naked Juice Products were of a particular standard, quality or grade when they were of another standard, quality, or grade in violation of Cal. Civil Code § 1770(a)(7); and

(c)  Defendant advertised Naked Juice Products with an intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

95.  Plaintiffs reasonably relied on Defendant's misrepresentations and omissions.

96.  As a direct and proximate result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

97.  Plaintiffs, on behalf of themselves and Class members, seek damages, restitution and injunctive relief.  Plaintiffs seek an order requiring Defendant to refund Plaintiffs and all Class members all monies they paid for Naked Juice Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein and performing a corrective advertising campaign.

98.  Plaintiffs have complied with California Civil Code § 1782(a) by serving a preliminary notice before seeking damages under the Consumers Legal Remedies Act.  Defendant has not provided the relief requested in Plaintiffs' CLRA notice.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

99.     Affidavits in compliance with Cal. Civil Code § 1780(c) will be filed.

## SECOND CAUSE OF ACTION

**(California False Advertising Law – Cal. Bus. & Prof. Code § 17500, *et seq.*)**

100.    Plaintiffs incorporate by reference and reallege all previous paragraphs.

101.    Defendant publicly disseminated untrue or misleading advertising or intended not to sell its Naked Juice Products as advertised in violation of California Business & Professional Code § 17500, *et seq.*, by, *inter alia*:

         (a) Representing that Naked Juice Products are "All Natural," when they are not; and

         (b) Representing that the Naked Juice Products are "non-GMO," when they are not.

102.    Defendant committed such violations of the False Advertising Law with actual knowledge or in the exercise of reasonable care should have known was untrue or misleading.

103.    Plaintiffs reasonably relied on Defendant's representations and/or omissions made in violation of California Business & Professional Code § 17500, *et seq*.

104.    As a direct and proximate result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

105.    Plaintiffs, on behalf of themselves and Class members, seek equitable relief in the form of an order requiring Defendant to refund Plaintiffs and all Class members all monies they paid for Naked Juice Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein and performing a corrective advertising campaign.

## THIRD CAUSE OF ACTION

**(California Unfair Competition Law – Cal. Bus. & Prof. Code § 17200, *et seq.*)**

106.    Plaintiffs incorporate by reference and reallege all previous paragraphs.

21

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

107.    Defendant engaged in unlawful, unfair, and/or fraudulent conduct under California Business & Professional Code § 17200, *et seq.*, by, *inter alia*:

        (a)   Representing that Naked Juice Products are "All Natural," when they are not; and

        (b)   Representing that Naked Juice Products are "non-GMO," when they are not.

108.    Defendant's conduct is unlawful in that it violates the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*, the False Advertising Law, California Business & Professions Code § 17500, *et seq.*

109.    Defendant's conduct is unfair in that it offends established public policy and/or is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to Plaintiffs and Class members.  The harm to Plaintiffs and Class members arising from Defendant's conduct outweighs any legitimate benefit Defendant derived from the conduct.  Defendant's conduct undermines and violates the stated spirit and policies underlying the Consumers Legal Remedies Act, False Advertising Law, Sherman Food, Drug & Cosmetic Law, and FDA regulations as alleged herein.

110.    Defendant's actions and practices constitute "fraudulent" business practices in violation of the UCL because, among other things, they are likely to deceive reasonable consumers.  Plaintiffs relied on Defendant's representations and omissions.

111.    As a direct and proximate result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

112.    Plaintiffs, on behalf of themselves and Class members, seek equitable relief in the form of an order requiring Defendant to refund Plaintiffs and all Class members all monies they paid for Naked Juice Products, and injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein and performing a corrective advertising campaign.

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1

## PRAYER FOR RELIEF

2
**WHEREFORE**, Plaintiffs, on behalf of themselves and Class members, pray for

3
relief as follows:

4
      A.      For an order that this action may be maintained as a class action under

5
Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed Class

6
representative, and that Plaintiffs' counsel be appointed as counsel for the Class;

7
      B.      For damages according to proof;

8
      C.      For an order requiring Defendant to refund Plaintiffs and all Class

9
members for the deceptively advertised beverages;

10
      D.      For an order prohibiting Defendant from engaging in the misconduct

11
described herein;

12
      E.      For an award of attorneys' fees;

13
      F.      For an award of the costs of suit incurred herein, including expert

14
witness fees;

15
      G.      For an award of interest, including prejudgment interest, at the legal

16
rate; and

17
      H.      For such other and further relief as this Court deems just and proper.

18

## DEMAND FOR JURY TRIAL

19
Plaintiffs hereby demand trial by jury of all claims so triable.

20
Dated:  June 4, 2012          **AHDOOT & WOLFSON, APC**

21

22
                            Tina Wolfson

23
                            Robert Ahdoot

24
                            Bradley King
                            10850 Wilshire Blvd., Suite 370

25
                            Los Angeles, California 90024

26
                            Telephone: 310-474-9111
                            Facsimile: 310-474-8585

27

28
                            *Interim Co-Lead Counsel for Plaintiffs*

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1    Dated:  June 4, 2012                    **FINKELSTEIN THOMPSON LLP**

2

3                                            By: /s/ Rosemary M. Rivas
                                             Rosemary M. Rivas
4                                            Danielle A. Stoumbos
                                             100 Bush Street, Suite 1450
5                                            San Francisco, California 94104
                                             Telephone: (415) 398-8700
6                                            Facsimile: (415) 398-8704

7

8                                            *Interim Co-Lead Counsel for Plaintiffs*

9

10   Dated:  June 4, 2012                    **RIDOUT & LYON, LLP**

11                                           /s/ Christopher P. Ridout
                                             Christopher P. Ridout, Esq.
12                                           555 E. Ocean Blvd., Ste. 500
                                             Long Beach, California  90802
13                                           Telephone: 562-216-7380
                                             Facsimile: 562-216-7385
14

15

16                                           *Interim Co-Lead Counsel for Plaintiffs*

17

18   Dated:  June 4, 2012                    **GLANCY BINKOW & GOLDBERG LLP**

19                                           /s/ Marc L. Godino
20                                           Marc L. Godino
                                             1925 Century Park East, Suite 2100
21                                           Los Angeles, California 90067
                                             Telephone: 310-201-9150
22                                           Facsimile: 310-201-9160

23

24                                           *Executive Committee Counsel for Plaintiffs*

25

26

27

28

24

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1   Dated:  June 4, 2012               **FRANCIS & MAILMAN, P.C.**

2

3                         /s/ David A. Searles
                          David A. Searles

4                          100 South Broad Street
                          Philadelphia, Pennsylvania 19110

5                          Telephone: 215-735-8600
                          Facsimile: 310-940-8000

6

7   Dated:  June 4, 2012                **CENTER FOR SCIENCE IN THE PUBLIC**
                          **INTEREST**

8

9                          /s/ Stephen Gardner
                          Stephen Gardner

10                        Director of Litigation
                        5646 Milton Street, Suite 211

11                        Dallas, Texas 75206

12                        Telephone: 214-827-2774 ext. 381
                        Facsimile: 214-827-2787

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT





AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT



AMENDED CONSOLIDATED CLASS ACTION COMPLAINT