EXHIBIT A

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NATALIE PAPPAS,<br><br>        Plaintiff,<br><br>    v.<br><br>NAKED JUICE CO. OF GLENDORA, INC., a California corporation,<br><br>        Defendant. | CASE NO. LA CV 11-08276-JAK (PLAx)<br><br>**[PROPOSED] FINAL ORDER APPROVING CLASS ACTION SETTLEMENT**<br><br>Honorable John A. Kronstadt, presiding<br><br>Amended Consolidated Class Action Complaint Filed:  June 5, 2012 |

WHEREAS, the Parties have entered into a Stipulation of Settlement, with its attached exhibits (collectively, the "Stipulation of Settlement"), signed and filed with this Court on July 2, 2013, to settle *Natalie Pappas vs. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-08276 JAK (PLAx), pending in the United States District Court, Central District of California, which was related to and consolidated with *Marchewka v. Naked Juice Co. of Glendora, Inc.*, No. SA CV 11-01701 JAK (PLAx), *Evans v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-09414 JAK (PLAx), *Park v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-09677 JAK (PLAx), and *Sandys v. Naked Juice Co.*, No. LA CV 11-08007 JAK (PLAx) (collectively, the "Action").  The Court designated the *Pappas* action as the "Lead Case," and closed the *Marchewka*, *Evans*, *Park*, and *Sandys* actions, by order dated March 12, 2012.  (*Pappas* ECF Nos. 38 and 39; *see also Marchewka* ECF No. 23; *Evans* ECF No. 19; *Park* ECF No. 16; *Sandys* ECF No. 73).

WHEREAS, by order dated _____, 2013, this Court granted preliminary approval of the proposed class action settlement between the parties in the Action, ordering publication notice to potential Class Members, and providing potential Class Members with an opportunity either to exclude themselves from the Class or to object to the proposed settlement.

WHEREAS, the Court also provisionally certified a Class for settlement purposes only, approved the procedure for giving notice and forms of notice, and set a final fairness hearing to take place on _____, 2013.  On that date, the Court held a duly noticed final fairness hearing to consider:  (1) whether the terms and conditions of the Stipulation of Settlement are fair, reasonable and adequate; (2) whether a judgment should be entered dismissing the named Plaintiffs' complaints on the merits and with prejudice in favor of Defendant Naked Juice Co. of Glendora, Inc. ("Naked Juice") and PepsiCo, Inc. and against all persons or entities who are Class Members pursuant and subject to the terms of the Stipulation of Settlement; (3) whether

1

and in what amount to award incentive awards to the Plaintiffs; and (4) whether and in what amount to award attorneys' fees and expenses to Class Counsel.

WHEREAS, the Court considered all matters submitted to it at the hearing and otherwise, and it appears that notice substantially in the form approved by the Court was given in the manner that the Court ordered.  Notice was disseminated pursuant to the Declaration of the Settlement Administrator (attached as Exhibit "I" to the Stipulation of Settlement).  Notices were published as provided in the Declaration of _____ dated _____, 2013, and reached an estimated _____% of the class.

WHEREAS, the parties reached a settlement as a result of extensive arm's length negotiations that occurred over the course of several months and in four separate, in-person mediation sessions with a respected mediator—the Honorable Carl J. West (ret.) of JAMS—who is experienced in adjudicating and mediating class action disputes.  Counsel for the parties are highly experienced in this type of litigation, with full knowledge of the risks inherent in this Action.  The extent of written discovery, litigated motions, product inspections, consultation with industry personnel and experts, witness interviews, document productions, legal research, and independent investigations by counsel for the parties, and the factual record compiled, suffices to enable the parties to make an informed decision as to the fairness and adequacy of the settlement.

WHEREAS, the Court has determined that the proposed settlement of the claims of the Class Members against Naked Juice, as well as the release of Naked Juice and the Released Parties, the significant relief provided to the Class Members—in the form of Naked Juice's agreement to contribute Nine Million Dollars ($9,000,000.00) to create a Settlement Fund for the benefit of eligible Class Members; distribute the Settlement Fund Balance not used to pay claims (if any) to the Mayo Clinic, the National Association of IOLTA Programs, the Legal Aid Foundation of Los Angeles, Bay Area Legal Aid, the Legal Aid Society of the District of Columbia, Greater Boston Legal Services, the Legal Aid Society of Metropolitan Family Services (Chicago), Legal

Services of Greater Miami, Inc., and Texas RioGrande Legal Aid, *cy pres* beneficiaries that have been agreed by the parties and approved by the Court; and engage in injunctive relief as described in the Stipulation of Settlement—and the award of the requested attorney's fees and expenses and incentive awards to the representative Plaintiffs, are fair, reasonable and adequate.

WHEREAS, the Court has considered the papers submitted by the Parties and by all other persons who timely submitted papers in accordance with the Preliminary Approval Order, and has heard oral presentations by the Parties and all persons who complied with the Preliminary Approval Order.

WHEREAS, based on all of the foregoing, together with this Court's familiarity with the Action, it is hereby

ORDERED, ADJUDGED AND DECREED as follows:

1.    Incorporation of Other Documents.  This Final Order Approving Class Action Settlement incorporates and makes a part hereof:  (a) the Stipulation of Settlement, including all amendments and exhibits thereto, and definitions included therein, which was signed and filed with this Court on July 2, 2013; (b) the briefs, affidavits, declarations, and other materials filed in support of the Settlement and Class Counsel's request for an award of attorneys' fees and reimbursement of expenses; (c) the record at the Fairness Hearing; (d) the documents listed on the docket sheet or otherwise submitted to the Court; and (e) all prior proceedings in the Action.  Except where otherwise noted, all capitalized terms used in this Final Order Approving Class Action Settlement shall have the meanings attributed to them in the Stipulation of Settlement.

2.    Jurisdiction.  The Court has personal jurisdiction over the Parties, and because due, adequate, and the best practicable notice has been disseminated and all potential Class Members have been given the opportunity to exclude themselves from or object to this Settlement, the Court has personal jurisdiction over all Class Members (as defined below and in the Stipulation of Settlement).  The Court has subject-matter

jurisdiction over the claims asserted in the Action pursuant to 28 U.S.C. §§ 1332 and 1367, including, without limitation, jurisdiction to approve the proposed Settlement and the Stipulation of Settlement and all exhibits attached thereto, grant final certification of the Class for settlement purposes, settle and release all claims arising out of the transactions alleged in this Action, and dismiss the Action on the merits and with prejudice and issue related orders.  The Court finds that venue is proper in this district pursuant to 28 U.S.C. § 1391.

3.    <u>Final Class Certification For Settlement Purposes Only</u>.  The Court finds, for settlement purposes only that the prerequisites for a class action under Rule 23 of the Federal Rules of Civil Procedure have been satisfied in that:  (a) the number of Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Class; (c) the claims of the Plaintiffs are typical of the claims of the Class they seek to represent for purposes of settlement; (d) the Plaintiffs have fairly and adequately represented the interests of the Class and will continue to do so, and the Plaintiffs have retained experienced counsel to represent them; (e) the questions of law and fact common to the Class Members predominate over any questions affecting any individual Class Member; and (f) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

The Court also concludes that, because this Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a class action involving the issues in this case.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In making these findings, the Court has considered, among other factors:  (i) the interests of Class Members in individually controlling the prosecution or defense of separate actions; (ii) the impracticability or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum.

4

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finally certifies for settlement purposes only, a Class consisting of all persons or entities in the United States who purchased one or more of the Eligible Products from September 27, 2007, up to and including the Notice Date.  Excluded from the Class are: (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purpose of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.

4.      "Eligible Products" shall mean and are the following Naked Juice products:  AÇAÍ MACHINE (formerly known as PURPLE MACHINE and RAIN FOREST AÇAÍ), APPLE, APPLE CRANBERRY, BERRY BLAST (formerly known as BERRY BLAST WELL BEING), BERRY PROBIOTIC, BERRY VEGGIE (formerly known as BERRY VEGGIE MACHINE), BLACK AND BLUEBERRY (formerly known as BLACK AND BLUEBERRY RUSH), BLUE MACHINE, CARROT, CHAI SPICED CIDER, CHERRY POMEGRANATE (formerly known as CHERRY POMEGRANATE POWER), CITRUS LEMONGRASS (REDUCED CALORIE) (formerly known as CITRUS LEMONGRASS), GOLD MACHINE, GREEN MACHINE, LYCHEE (REDUCED CALORIE), MANGO VEGGIE, MIGHTY MANGO (formerly known as MIGHTY MANGO WELL BEING), O-J, ORANGE CARROT, ORANGE MANGO (formerly known as ORANGE MANGO MOTION), ORGANIC CARROT, PEACH GUAVA (REDUCED CALORIE), PEACH MANGOSTEEN (formerly known as PEACH MANGOSTEEN BLISS), POMEGRANATE (formerly known as PLENTIFUL POMEGRANATE), POMEGRANATE AÇAÍ, POMEGRANATE BLUEBERRY, POWER-C MACHINE (formerly known as POWER-C), PROBIOTIC TROPICAL MANGO, PROTEIN ZONE, PROTEIN ZONE BANANA CHOCOLATE, PROTEIN ZONE DOUBLE BERRY, PROTEIN ZONE MANGO, RAZALICIOUS, RED MACHINE, STRAWBERRY BANANA (formerly known as STRAWBERRY BANANA C and STRAWBERRY BANANA WELL BEING), STRAWBERRY KIWI (formerly known

as STRAWBERRY KIWI KICK), TANGERINE SCREAM, TROPICAL (REDUCED CALORIE) (formerly known as TROPICAL C and TROPICAL), and WATERMELON CHILL.  The Eligible Products are those juice and smoothie products at issue in the Complaints and subject to Plaintiffs' claims arising out of or relating to the "100% Juice," "100% Fruit," "From Concentrate," "All Natural," "All Natural Fruit," "All Natural Fruit + Boosts," or "Non-GMO" statements, through any medium (on-label, internet, or otherwise).

5.     As defined in the Stipulation of Settlement, "Class Member(s)" means any member of the Class who does not elect exclusion or opt out from the Class pursuant to the terms and conditions for exclusion set out in the Stipulation of Settlement and the Class Notice.

6.     Requests for Exclusion.  Attached hereto as Exhibit "A" is the list of persons or entities who submitted timely and valid requests for exclusion from the Class.  The Court finds that only those persons and entities listed in Exhibit "A" and any other persons or entities who submit timely and valid requests for exclusion from the Class are not bound by this Final Order and the accompanying Final Judgment.

7.     Adequacy of Representation.  The Court designates Plaintiffs Natalie Pappas, Russell Marchewka, Christopher Evans, and Gina Park as the representatives of the Class, and finds that these Plaintiffs have adequately represented the Class for purposes of entering into and implementing the Stipulation of Settlement.  The Court appoints the law firms of Ahdoot & Wolfson, PC, Finkelstein Thompson, LLP, and Ridout, Lyon + Ottoson, LLP, as counsel for the Class ("Class Counsel").  The Court previously appointed interim Class Counsel by order dated March 5, 2012 (ECF No. 39).  For purposes of these settlement approval proceedings, the Court finds that Tina Wolfson and Robert Ahdoot, of Ahdoot & Wolfson, PC; Christopher Ridout, of Ridout, Lyon + Ottoson, LLP; and Rosemary Rivas, of Finkelstein Thompson, LLP, are experienced and adequate Class Counsel.  Plaintiffs and Class Counsel have satisfied the requirements of Fed. R. Civ. P. 23(a)(4), and 23(g).

8.     Class Notice.  The Court finds that the dissemination of the Class Notice in accordance with the terms of the Stipulation of Settlement and this Court's Preliminary Approval Order, as described in the Settlement Administrator's Declaration filed before the Fairness Hearing, a copy of which is incorporated herein and made a part hereof:

a.     constituted the best practicable notice to Class Members under the circumstances of the Action;

b.     constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of (i) the pendency of this class action; (ii) the terms of the proposed Settlement; (iii) their rights under the proposed Settlement; (iv) their right to exclude themselves from the Class and the proposed Settlement; (v) their right to object to any aspect of the proposed Settlement (including, but not limited to, final certification of the Class, the fairness, reasonableness or adequacy of the proposed Settlement, the adequacy of the Class's representation by Plaintiffs or Class Counsel and/or the award of attorneys' fees and expenses and representative awards); (vi) their right to appear at the Fairness Hearing – either on their own or through counsel hired at their own expense – if they did not exclude themselves from the Class; and (vii) the binding effect of the Orders and Final Judgment in this Action, whether favorable or unfavorable, on all persons and entities who did not request exclusion from the Class;

c.     constituted notice that was reasonable, due, adequate, and sufficient notice to all persons and entities entitled to be provided with notice; and

d.     constituted notice that fully satisfied all applicable requirements of the Federal Rules of Civil Procedure, including Rule 23(c)(2) and (e) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.

9.     CAFA Notice.  The Court finds that Naked Juice provided notice of the proposed Settlement to the appropriate state and federal government officials pursuant

7

to 28 U.S.C. § 1715.  Furthermore, the Court has given the appropriate state and federal government officials the requisite ninety (90) day time period (pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(d)) to comment or object to the proposed settlement before entering its Orders and Final Judgment and no such objections or comments were received.

10.    <u>Final Settlement Approval</u>.  The terms and provisions of the Stipulation of Settlement, including any and all amendments and exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, the Plaintiffs and the Class Members, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, CAFA, the United States Constitution (including the Due Process Clause), and any other applicable law.  The Court finds that the Stipulation of Settlement is fair, adequate and reasonable based on the following factors, among other things:

a.    There is no fraud or collusion underlying this settlement, and it was reached as a result of extensive arms'-length negotiations, occurring over the course of several months and four separate, in-person mediation sessions with a respected mediator, warranting a presumption in favor of approval.  *See, e.g., Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948 (presence of a neutral mediator is a factor weighing in favor of a finding of non-collusiveness).

b.    The complexity, expense and likely duration of the litigation favor settlement—which provides meaningful benefits on a much shorter time frame than otherwise possible—on behalf of the Settlement Class.  *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) (affirming the district court's approval of a settlement where class counsel "reasonably concluded that the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (the Ninth Circuit has a "strong judicial policy that favors settlements,

particularly where complex class action litigation is concerned").  Based on the stage of the proceedings and the amount of investigation and discovery completed, the parties had developed a sufficient factual record to evaluate their chances of success at trial and the proposed settlement.  In addition, the parties negotiated the benefits to the class *before* discussing Plaintiffs' claim to attorneys' fees.  *See In re Apple Deriv. Litig.*, No. 06-4128, 2008 U.S. Dist. LEXIS 108195, at *11-12 (N.D. Cal. Nov. 5, 2008) (parties' negotiations free of collusion because, among other things, the parties negotiated the benefits to the class before discussing attorneys' fees); *In re Midland Nat. Life Ins. Co. Annuity Sales Prac. Litig.*, No. 07-1825, 2012 WL 5462665, at *2-3 (C.D. Cal. Nov. 7, 2012) (same).

      c.    The support of Class Counsel, who are highly skilled in class action litigation such as this, and the Plaintiffs, who have participated in this litigation and evaluated the proposed settlement, also favor final approval.  *See Class Plaintiffs*, 955 F.2d at 1291; *Fernandez v. Victoria Secret Stores, LLC*, No. 06-04149, 2008 WL 8150856, at *7 (C.D. Cal. July 21, 2008); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

      d.    The Settlement provides meaningful relief to the Class, including cash relief and injunctive relief and certainly falls within the range of possible recoveries by the Class.

The Settlement is approved and all objections to the Settlement are overruled as without merit.  The Parties and Class Members are hereby directed to implement and consummate the Stipulation of Settlement in accordance with its terms and provisions.  Class Counsel shall take all steps necessary and appropriate to provide Class Members with the benefits to which they are entitled under the terms of the Stipulation of Settlement.

11.   <u>Binding Effect</u>.  The terms of the Stipulation of Settlement and of this Final Order and the accompanying Final Judgment shall be forever binding on the Parties and all Class Members, as well the Class Members' heirs, guardians, executors,

administrators, representatives, agents, attorneys, partners,  successors, predecessors-in-interest,  and assigns, and those terms shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits or other proceedings maintained by or on behalf of any such persons, to the extent those claims, lawsuits or other proceedings involve matters that were or could have been raised in the Action or are otherwise encompassed by the Release.

      12.   <u>Settlement Consideration</u>.

      a.   As described in the Stipulation of Settlement, Naked Juice has agreed to contribute Nine Million Dollars ($9,000,000.00) to create the Settlement Fund for the benefit of eligible Class Members pursuant to the terms of the Stipulation of Settlement.

      b.   The Settlement Fund Balance not used to pay claims (if any) shall be paid to the following *cy pres* beneficiaries agreed by the parties and approved by the Court:  (i) Fifty Percent (50%) of the Residual Funds shall be paid to the Mayo Clinic; (ii) Twenty-Five Percent (25%) of the Residual Funds shall be paid to the National Association of IOLTA Programs; and (iii) Twenty-Five Percent (25%) of the Residual Funds shall be paid in equal shares to:  (A) the Legal Aid Foundation of Los Angeles; (B) Bay Area Legal Aid; (C) the Legal Aid Society of the District of Columbia; (D) Greater Boston Legal Services; (E) the Legal Aid Society of Metropolitan Family Services (Chicago); (F) Legal Services of Greater Miami, Inc.; and (G) Texas RioGrande Legal Aid.

      c.   In addition, Naked Juice will implement the following changes in connection with the Eligible Products:

      (i)   Not later than three (3) months after the Effective Date, Naked Juice shall establish a product verification program through the independent testing organization Eurofins GeneScan to substantiate the Non-GMO statement on Naked Juice product labels.  The product verification program will apply a standard at least as strict as that set forth in Regulation (EC)

10

No 1829/2003 of the European Parliament and of the Council of 22 September 2003, and amendments thereto, on genetically modified food and feed, which permits no more than 0.9% GMO content in each ingredient and only when such presence is adventitious.  This program will be implemented for a minimum of three (3) years, and will include the following:  (A) testing of lots of raw material for which a GMO variety exists; (B) periodic testing of finished product; (C) auditing of production sites; (D) validation of test laboratories; and (E) auditing of ingredient suppliers' supply chain.

(ii)    Not later than three (3) months after the Effective Date, Naked Juice shall hire or assign a quality control manager to oversee the independent testing process for the Naked Juice product line.  In the event that the quality control manager is transferred or assigned from within Naked Juice, the expense incurred by Naked Juice with respect to the Quality Control manager will be in addition to existing Naked Juice personnel costs or other expenses.  This person/position will be retained for a minimum of five (5) years.

(iii)    Not later than three (3) months after the Effective Date, Naked Juice shall establish and maintain a database that will permit the electronic tracking and verification of product ingredients for the Naked Juice line.  This electronic database will serve as a repository of all information contained in Naked Juice's raw material dossiers, and it will allow Naked Juice personnel to quickly retrieve and track information regarding product ingredients, suppliers, and other information.  According to Naked Juice, it has engaged an external consultant to create this database.

(iv)    Not later than six (6) months after the Effective Date, Naked Juice shall modify future labeling, advertising, and marketing of the Eligible Products so that, on a going forward basis, Naked Juice does not use labeling, advertising, and marketing claiming that the Eligible Products are "All Natural" (including the "All Natural," "All Natural Fruit," and "All Natural Fruit +

11

Boosts" statements).  According to Naked Juice, this process includes engaging an outside firm to design the new labels, developing the new images for the labels, and constructing the plates used to print the actual labels.

        d.      The terms and requirements of the injunctive relief described in the preceding subparagraph (c) shall expire the earliest of the following dates:  (i) three (3) years after the Effective Date; or (ii) the date upon which there are such changes in the formulation or manufacture of Naked Juice products and/or the product ingredients that would render the relabeling described in Paragraph 12(c)(iv) inaccurate; or (ii) the date upon which there are changes to any applicable statute, regulation, or other law that Naked Juice reasonably believes would require a modification to the labeling, advertising, and/or marketing described in subparagraph (c) in order to comply with the applicable statute, regulation, or law.

        13.      Nothing in this Order and the accompanying Final Judgment shall prevent Naked Juice from implementing the changes referenced in Paragraph 12 (or other product changes) prior to the Effective Date.  The terms and requirements of the injunctive relief described in Paragraph 12 shall expire the earliest of the following dates:  (a) three (3) years after the Effective Date; or (b) the date upon which there are such changes in the formulation or manufacture of Naked Juice products and/or the product ingredients that would render the relabeling, marketing, and advertising described in Paragraph 12 inaccurate; or (c) the date upon which there are changes to any applicable statute, regulation, or other law that Naked Juice reasonably believes would require a modification to the labeling described in Paragraph 12 in order to comply with the applicable statute, regulation, or law.

        14.      Nothing in this Order and the accompanying Final Judgment shall prevent Naked Juice from making further changes to its product labels:  (a) that Naked Juice reasonably believes are necessary to comply with any statute, regulation, or other law of any kind; (b) that are necessitated by product and/or ingredient changes, and/or that are

necessary to ensure that Naked Juice provides accurate descriptions of its products; or (c) that are more detailed than those required by the Stipulation of Settlement.

15.    Release.  The following Release, which is also set forth in Section VII of the Stipulation of Settlement, and provided in return for the settlement consideration set forth above and in the Stipulation of Settlement (Section IV) is expressly incorporated herein in all respects, including all defined terms used in the Stipulation of Settlement, is effective as of the date of this Final Order and the accompanying Final Judgment, and by operation of this Final Order and the accompanying Final Judgment shall have fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties.  Released Claims means and includes any and all claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action under common law or statutory law (federal, state, or local) of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including unknown claims (as described in Paragraph 66 below) as of the Notice Date by all of the Plaintiffs and all Class Members (and Plaintiffs' and Class Members' respective heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) that:

a.    were asserted or that could have been reasonably asserted in the *Pappas*, *Evans*, *Marchewka*, *Park*, and *Sandys* actions against the Released Parties (as hereinafter defined), or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to in the *Pappas*, *Evans*, *Marchewka*, *Park*, and *Sandys* actions (including, but not limited to, alleged violations of state consumer protection, unfair competition, and/or false or deceptive advertising statutes (including, but not limited to, Cal. Bus. & Prof. Code § 17200 *et seq*., Cal. Bus. & Prof. Code § 17500 *et seq*., Cal. Civ. Code § 1750 *et seq*., N.Y. Gen. Bus. Law §§ 349-350, and N.Y. Gen. Bus. Law § 392-b)); breach of express or implied warranty (including, but not limited to, claims arising under state law and/or the Magnuson-Moss

13

Warranty Act); fraud; negligence; product liability; conspiracy; assault and battery; unjust enrichment, restitution, declaratory or injunctive relief, and other equitable claims or claims sounding in contract and tort); and

        b.    relate in any way to the advertising, labeling, or marketing of the Eligible Products and arising out of or relating to the "100% Juice," "100% Fruit," "From Concentrate," "All Natural," "All Natural Fruit," "All Natural Fruit + Boosts," or "Non-GMO" statements, through any medium (on-label, internet, or otherwise).

Plaintiffs and Class Members are not releasing any claims relating to personal injuries.

Class Members who have opted out of the Settlement are not releasing their claims and will not obtain any benefits of the Settlement.

The Released Claims include known and unknown claims relating to the Action. Plaintiffs, Class Members, and Naked Juice hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs, Class Members, and Naked Juice expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims and the Plaintiff Released Claims.  In connection with such waiver and relinquishment, Plaintiffs, the Class Members, and Naked Juice hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in

addition to or different from those that they now know or believe exist with respect to the Released Claims and the Plaintiff Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims and the Plaintiff Released Claims known or unknown, suspected or unsuspected, that they have against the Released Parties.  In furtherance of such intention, the Release herein given by Plaintiffs, the Class Members, and Naked Juice to the Released Parties and the Plaintiff Released Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts.  Each of the Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section.  Plaintiffs and Class Members are not releasing any claims for personal injuries.  Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this Release is a part.

16.   <u>Permanent Injunction</u>.  The Court orders that, upon the Effective Date, the Stipulation of Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Class Members.  All Plaintiffs and Class Members and/or their representatives, and all persons acting on behalf of, or in concert or participation with such Plaintiffs or Class Members (including but not limited to the Releasing Parties), who have not been timely excluded from the Class are hereby permanently barred and enjoined from:  (a) filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released Claims; (b) bringing an individual action or class action on behalf of Plaintiffs or Class Members, seeking to certify a class that includes Plaintiffs or Class Members, or continuing to prosecute or

participate in any previously filed and/or certified class action, in any lawsuit based upon or asserting any of the Released Claims.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action.

17.     <u>Enforcement of Settlement</u>.  Nothing in this Final Order or in the accompanying Final Judgment shall preclude any action to enforce the terms of the Stipulation of Settlement; nor shall anything in this Final Order or in the accompanying Final Judgment preclude Plaintiffs or other Class Members from participating in the Claim Process described in the Stipulation of Settlement if they are entitled to do so under the terms of the Stipulation of Settlement.

18.     <u>Attorneys' Fees and Expenses and Incentive Awards</u>.  The Court is concurrently issuing a separate Order with respect to attorneys' fees and expenses and incentive awards to the representative Plaintiffs, entitled Final Order Approving Attorneys' Fees and Expenses and Incentive Awards.

19.     <u>Modification of Settlement Agreement</u>.  The Parties are hereby authorized, without needing further approval from the Court, to agree to written amendments, modifications, or expansions of the Stipulation of Settlement and its implementing documents (including all exhibits) without further notice to the Class or approval by the Court if such changes are consistent with this Final Order and the accompanying Final Judgment and do not materially alter, reduce, or limit the rights of Class Members under the Stipulation of Settlement.

20.     <u>Retention of Jurisdiction</u>.  The Court has jurisdiction to enter this Final Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, and the accompanying Final Judgment.  Without in any way affecting the finality of these Final Orders and/or the accompanying Final Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Stipulation of Settlement and of these Final Orders and the accompanying Final Judgment, and for any other necessary purpose,

including, without limitation (*see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994)):

   a. enforcing the terms and conditions of the Stipulation of Settlement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Stipulation of Settlement, this Final Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, or the accompanying Final Judgment (including, without limitation, whether a person or entity is or is not a Class Member; and whether claims or causes of action allegedly related to this case are or are not barred by this Final Order and the accompanying Final Judgment; and whether persons or entities are enjoined from pursuing any claims against Naked Juice);

   b. entering such additional Orders, if any, as may be necessary or appropriate to protect or effectuate this Final Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, the accompanying Final Judgment, and the Stipulation of Settlement (including, without limitation, orders enjoining persons or entities from pursuing any claims against Naked Juice), or dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement; and

   c. entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction; provided, however, that nothing in this paragraph is intended to restrict the ability of the Parties to exercise their rights as provided in the Stipulation of Settlement.

  21. <u>No Admissions</u>. Neither the Stipulation of Settlement, nor any of its provisions, nor any negotiations, statements or court proceedings relating to its provisions in any way be, shall be:

   a. construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce the Stipulation of Settlement or the rights of the Parties or their counsel;

17

b.      construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, Naked Juice, the Released Parties, Plaintiffs, the Class, or Class Counsel or as a waiver by Naked Juice, the Released Parties, Plaintiffs, or the Class of any applicable privileges, claims or defenses;

c.      deemed a presumption, concession, or admission by Naked Juice of any default, liability or wrongdoing as to any facts or claims alleged or asserted in the Action, or in any actions or proceedings; and/or

d.      interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any person in the Action, or in any other action or proceeding, whether civil, criminal or administrative.

Notwithstanding the foregoing, Naked Juice may file the Stipulation of Settlement, this Final Order and accompanying Final Judgment, and/or any of the documents or statements referred to therein in support of any defense or claim that is binding on and shall have *res judicata*, *collateral estoppel*, and/or preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and/or any other Class Members, and each of them, as well as their heirs, executors, administrators, successors, assigns, and/or any other of the Releasing Parties.

22.     <u>Dismissal of Action</u>.  The Action (including all individual and Class claims presented therein) are hereby dismissed on the merits and with prejudice, without fees or costs to any Party except as otherwise provided in this Final Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, and the accompanying Final Judgment, and the Stipulation of Settlement.  Specifically, the following matters are to be dismissed with prejudice:  (a) *Pappas v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-08276 JAK (PLAx); (b) *Marchewka v. Naked Juice Co. of Glendora, Inc.*, No. SA CV 11-01701 JAK (PLAx); (c) *Evans v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-09414 JAK (PLAx); (d) *Park v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-09677 JAK (PLAx); and (e) *Sandys v. Naked Juice Co.*, No. LA CV 11-08007 JAK (PLAx).

23.     In the event that the Effective Date does not occur, certification shall be automatically vacated and this Final Order, the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, and the accompanying Final Judgment, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void.

DATED: _____        _____
                                  The Honorable John A. Kronstadt
                                  UNITED STATES DISTRICT JUDGE

**Exhibit A** – List of Persons Who Requested Exclusion