EXHIBIT I

1
2
3
4
5
6
7
8
9
10
11
12

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NATALIE PAPPAS,<br><br>              Plaintiff,<br><br>      v.<br><br>NAKED JUICE CO. OF<br>GLENDORA, INC.,<br><br>              Defendant. | CASE NO. LA CV 11-08276-JAK (PLAx)<br><br>Assigned to:  Hon. John A. Kronstadt<br><br>**DECLARATION OF ALAN VASQUEZ RE: DISSEMINATION OF NOTICE TO CLASS MEMBERS** |

I, ALAN VASQUEZ, declare and state as follows:

### MY BACKGROUND AND QUALIFICATIONS

1.     I am a member of the Larkspur Design Group ("LDG"), which is located at 3301 Kerner Blvd., San Rafael, California.  LDG is Gilardi & Co. LLC's in-house advertising agency specializing in notice plan design and implementation.  Gilardi was established in 1984 and is one of the largest full service class action notice and claims administrators in the United States.  In this matter, Gilardi will provide administration services, including any printing and mailing services necessary to the notice program, while LDG will handle the

1

implementation of the notice program's publication efforts.

2.      I hold a Bachelor of Science Degree in Business Administration Finance from California State University, Sacramento and have been involved in the development and implementation of media plans for class action notification for more than 10 years.  I have also spoken as faculty on CLE panels related to trends in Class Action Notice.

3.      For several years, courts have accepted my expert testimony regarding our firm's quantitative and qualitative evaluation of judicially approved notice plans. Media campaigns for which I have been directly responsible include but are not limited to *Mattel, Inc., Toy Lead Paint Products Liability Litigation, No. 07-ML-01897 (S.D. Cal.), Pecover et al. v. Electronic Arts Inc., No. 08-cv-02820 (N.D. Cal.), New Motor Vehicles Canadian Export Antitrust Litigation, No. MDL 03-1532 (D. Me.), and SRAM Antitrust Litigation, No. 07-MD-01819 (N.D. Cal).*  I have testified in person and was acknowledged as an expert in *Larson v. Sprint Nextel Corporation, Civil Action No. 07-5325 (JLL) (D. N.J.).*

4.      LDG has been involved with the design and implementation of more than 2,500 advertising and notification plans.  A more comprehensive list of notable matters for which I have been personally responsible for the notice planning and implementation services is attached as Exhibit 1.  Prior to my engagement with Gilardi, I spent 5 years with another nationally recognized claims administrator serving in a similar capacity.

5.      In addition to my Class Action Notice experience, I have previously held the position of Contract Manager for Lucasfilm Ltd's Business Affairs department where I managed the worldwide film licensing distribution database for ancillary markets.  In this capacity, my duties included marketing for overseas licensees as well as creating forecasting models for licensing revenue, acquiring elements and distribution of marketing materials, and tracking financial

obligations from those licensees.

6.     For more than a quarter-century, LDG has specialized in designing, developing and implementing unbiased legal notification plans.  LDG is familiar with, and guided by, Constitutional due process provisions, rules of states and local jurisdictions, and the relevant case law relating to legal notification.  In all matters, LDG customizes its legal notice campaign based on the specifics of the particular case to ensure compliance with Rule 23 of the Federal Rules of Civil Procedure and other applicable legal standards.  Notice plans designed and implemented by LDG have included both domestic and international newspapers and magazines, Internet-based banners, notices and websites, wire service, radio, television, point of purchase displays and direct mail.

7.     In my role, I oversee all of LDG's activity as it relates to these notice services, and I submit this declaration in order to provide the Court and parties in the above-captioned litigation my professional opinion regarding the best practicable manner of giving notice to class members of the settlement reached in this action.  I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify competently thereto.  I submit this declaration at the request of counsel in connection with the class settlement of the *Pappas v. Naked Juice Co. of Glendora, Inc.* litigation and the parties' request for preliminary approval of their settlement.

8.     LDG's capacity and experience extends to every segment of business, industry, governmental and consumer activity.  Prior LDG notification and advertising programs include cases related to antitrust, consumer protection, government investigations (FTC, SEC, DOJ, and every state's Attorney General), insurance, pharmaceutical products, product liability, and securities.  These cases have involved a wide range of industries, including apparel, automotive, computers, consumer fraud, communications, entertainment, environment,

financial services, healthcare, insurance, Internet shopping, labor, product liability, railroad, real estate, restaurants, securities fraud, technology, tobacco, and utilities.

9.      This declaration is based upon my personal knowledge, information requested by LDG and provided by counsel, and my independent research regarding the litigation and analysis of the defined class (including information obtained by LDG's staff and reliable industry sources), including Experian Simmons Market Research Bureau, Inc. ("Simmons"), U.S. Census Data, and Standard Rate and Data Service ("SRDS").  The information is of the type that is reasonably relied upon by professionals in the fields of legal notification, media, advertising and class action administration.

10.      LDG was retained to design and implement the notice plan in this litigation and for this Settlement.  I have reviewed the Stipulation of Settlement to which this declaration is an exhibit.  Capitalized terms used herein shall have the same force and meaning as those in the Stipulation of Settlement unless otherwise specifically defined.

## CASE BACKGROUND AND CLASS DEFINITION

11.      This lawsuit, *Natalie Pappas v. Naked Juice Co. of Glendora, Inc.*, and the consolidated actions allege that Naked Juice violated certain state and federal laws and consumer protection statutes in connection with the marketing and sale of certain Eligible Products since September 27, 2007.  Plaintiffs claim that Naked Juice, in connection with the marketing and sale of Eligible Products, misrepresented the nature of the Eligible Products (by labeling them as "All Natural" and "Non-GMO") to consumers.  Plaintiffs claim that Eligible Products contain ingredients that are not "All Natural" and contain genetically modified organisms (GMOs).  Naked Juice denies any and all claims and does not admit any fault, wrongdoing, or liability.

4

12.    LDG crafted this Notice Plan to ensure that the best practicable notice of settlement is provided to the Class, which is defined as follows:

"Class" means all persons and entities in the United States who purchased one or more of the Eligible Products from September 27, 2007 up to and including the Notice Date.  Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.

"Eligible Products" shall mean and are the following Naked Juice products: AÇAÍ MACHINE (formerly known as PURPLE MACHINE and RAIN FOREST AÇAÍ), APPLE, APPLE CRANBERRY, BERRY BLAST (formerly known as BERRY BLAST WELL BEING), BERRY PROBIOTIC, BERRY VEGGIE (formerly known as BERRY VEGGIE MACHINE), BLACK AND BLUEBERRY (formerly known as BLACK AND BLUEBERRY RUSH), BLUE MACHINE, CARROT, CHAI SPICED CIDER, CHERRY POMEGRANATE (formerly known as CHERRY POMEGRANATE POWER), CITRUS LEMONGRASS (REDUCED CALORIE) (formerly known as CITRUS LEMONGRASS), GOLD MACHINE, GREEN MACHINE, LYCHEE (REDUCED CALORIE), MANGO VEGGIE, MIGHTY MANGO (formerly known as MIGHTY MANGO WELL BEING), O-J, ORANGE CARROT, ORANGE MANGO (formerly known as ORANGE MANGO MOTION), ORGANIC CARROT, PEACH GUAVA (REDUCED CALORIE), PEACH MANGOSTEEN (formerly known as PEACH MANGOSTEEN BLISS), POMEGRANATE (formerly known as PLENTIFUL POMEGRANATE), POMEGRANATE AÇAÍ, POMEGRANATE BLUEBERRY, POWER-C MACHINE (formerly known as POWER-C), PROBIOTIC TROPICAL MANGO, PROTEIN ZONE, PROTEIN ZONE BANANA CHOCOLATE, PROTEIN ZONE DOUBLE BERRY, PROTEIN ZONE MANGO, RAZALICIOUS, RED MACHINE, STRAWBERRY BANANA (formerly known as STRAWBERRY BANANA C and STRAWBERRY BANANA WELL BEING), STRAWBERRY KIWI (formerly known as STRAWBERRY KIWI KICK), TANGERINE SCREAM, TROPICAL (REDUCED CALORIE) (formerly known as TROPICAL C and TROPICAL), and WATERMELON CHILL.  The Eligible Products are the juice and smoothie products at issue in the Complaints and arising out of or relating to the "100% Juice," "100% Fruit," "From Concentrate," "All Natural," "All Natural Fruit," "All Natural Fruit + Boosts," or "Non-GMO" statements,

through any medium (on-label, Internet, or otherwise).

13.    It is important to note that Naked Juice, like most beverage manufacturers that do not sell directly to customers and instead sell their product through retail outlets, reports that it does not possess an exact count on the total number of customers for a particular time period.  Accordingly, to calculate the approximate size of the class in these types of cases, it is customary to develop estimates based on reliable industry sources.

## THE PROPOSED NOTICE PLAN

14.    **Class Size**.  To estimate the approximate class size, LDG utilized census data, national consumer survey data obtained from Simmons (See Exhibit 2 for information about Simmons), Comscore and proprietary data from 24/7 Media and Steel Media, and independent online research performed by LDG's media staff.  The results of our analysis lead to a class size estimated to be 8.5 million. Naked Juice reports that its estimate of the class size is approximately 16.5 million class members. Because there is no reasonable way to identify the number of class members with absolute certainty, and to ensure a robust notice program, LDG developed the notice plan under the conservative assumption that the class size is approximately 21.5 million individuals.  In other words, LDG designed a notice plan to ensure that it would reach a class of this size.

15.    **Media**.  To develop the notice plan, LDG first evaluated the media behavior of putative class members.  This information was then used to select the most appropriate media vehicles to reach the class.  LDG used Quintile analysis of Simmons National Consumer data for individuals who, when shopping for juice, purchase Naked Juice "most often or at least sometimes." Quintile analysis involves dividing the target audience (in this case, Naked Juice purchasers) into 5 groups (or quintiles) based on usage of a given media. Examination of Quintile 1 (the highest or heaviest usage Quintile for a given media vehicle) for TV, Radio, Print, and Online advertising, showed that online media ranked highest and print

media second highest as the preferred mediums for the target audience.  LDG determined that a campaign incorporating online advertising and print publication was the best approach to reach the class members.  Accordingly, LDG has developed a media plan comprised of substantial online advertising and print publication in National consumer magazines likely to reach the class members.

16.  **Objective**.  LDG has one objective in this matter: to provide the best notice practicable, consistent with the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure, to reach a large percentage of the class while meeting or exceeding the requirements of due process and all applicable state laws and court rules.  The proposed notice plan was designed to reach the greatest practicable number of Class Members ensuring that they will have an opportunity to be exposed to the Class Notice, to see, review, and understand it.  The Notice plan will reach a minimum of 85% of the target audience – and likely more than 90% – using reach calculation methodology that is consistent with many nationwide court-approved class action notice programs.  In addition, the plan will have an estimated minimum frequency (the average number of times each Class Member will have the opportunity to see the message) of at least 3 times per individual (and in some instances, many more times than that).

17.  In my professional opinion, the plan detailed below is the best practicable notice under the circumstances.

### NOTICE PLAN SUMMARY

18.  While each case is unique, the methods and tools used in developing the Notice Plan described below for this Settlement have been employed in many other court-approved notice plans.

19.  In this case, the parties have represented to LDG and Gilardi that direct notice to the class members is not a viable option; therefore the Notice Plan will be comprised of publication notice through the channels described below.

20.   LDG recommends a paid media program consisting of Internet ad networks and national consumer magazines in order to meet due process standards and provide the best notice practicable. LDG has chosen both effective and efficient media vehicles to ensure comprehensive reach and therefore ensure that Class members receive legal notice.  Specifically, the Notice Plan relies on the following elements:

a.   Publishing a summary notice one time, in a 2/5-page ad in *Parade* magazine;

b.   Publishing a summary notice two times, in a half-page ad in *People* magazine;

c.   Publishing a summary notice 4 times—once a week, for four successive weeks—in a ¼-page ad in *USA Today*'s San Francisco and Los Angeles zones, which cover all of California in addition to parts of Arizona and Nevada;

d.   Sponsored Links advertising on major search engines;

e.   Targeted Banner Advertising through 24/7 Media, with a focus on sites that fit within the class's demographic profile; and

f.   Targeted Content Advertising through Steel Media Network, with a focus on sites that fit within the class's demographic profile.

A summary of the Notice Plan vehicles is attached as Exhibit 3.

21.   In order to evaluate the overall strength and efficiency of the proposed Notice Plan, it is important to analyze how the media vehicles work together to direct legal notice to a large percentage of the Class.

22.   LDG will cause notice to be published in *Parade* magazine, *People* magazine, and *USA Today*.  Using the Internet in conjunction with print publication will also help those who see the print notice find the case website when searching online.  LDG is confident, based on its years of experience designing and

implementing many hundreds of court-approved notice plans in consumer class action settlements, that this notice plan complies with FRCP Rule 23.

23.   Given the Internet's massive communication power and high utilization rate, online advertising provides an effective and cost-efficient way to deliver notice to class members.   In this case, evaluation of Simmons consumer data for the target audience shows that over 95% of Naked Juice purchasers live in a household with access to a personal computer, 92% of those households subscribe to an Internet Service provider (ISP), and 90% have used the Internet for purposes other than email in the last 7 days.   These statistics illustrate that the class members are more likely to be reached online than average U.S. adults.

24.   An additional advantage of online notice is that the notice element offers tracking capabilities that include identifying the location of the viewers, how often the notice is viewed, and the number of clicks to the case website.   In other words, online notice is effective, practical, and when combined with print publication, extremely efficient at delivering legal notice to the class in almost any matter.   In this case, an Internet notice campaign offers not only cost and optimization advantages, but it is the means by which a large percentage of these Class Members obtain information about the products related to this case. It is worth noting that Naked Juice maintains a very active online presence.

**DESIGN OF LONG-FORM AND SUMMARY CLASS NOTICES**

25.   LDG has reviewed the Class Notice forms to ensure compliance with the guidelines outlined on the Federal Judicial Center's Class Action Notice website.   Specifically, LDG reviewed the Class Notice forms to evaluate compliance with the following requirements

    a.   The nature of the action

    b.   The definition of certified class

    c.   The class claims, issues, and defenses

d.    The method by which one may exclude oneself

e.    The timing and manner for requesting exclusion

f.    The timing and manner for objection

g.    The binding effect of the class judgment on the class members

h.    The manner by which to contact class counsel

i.    The manner by which to obtain copies of relevant documents

26.    Attached as Exhibits 4 and 5 to this Declaration are the Long Form Notice and the Summary Notice.

27.    These notices effectively communicate information about the Settlement.

28.    Rule 23(c)(2) of the Federal Rules of Civil Procedure requires class action notices to be written in "plain, easily understood language." Rule 23(e)(1) provides that in the context of a settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." LDG applies the plain language requirement in drafting notices in federal and state class actions. The firm maintains a strong commitment to adhering to the plain language requirement, while drawing on its experience and expertise to draft notices that effectively convey the necessary information to Class Members.

29.    The Summary Notice attached hereto is designed to capture the Class Member's attention with clear, concise, plain language. They direct readers to the case website for more information. The plain language text provides important information regarding the subject of the litigation, the Class definition, and the legal rights available to Class Members. No important or required information is missing or omitted. In fact, these notices state all required information, without omitting significant facts that Class Members need to understand their rights. These notices also refer readers to the settlement

website and the IVR line, where Class Members can obtain copies of the Long Form Notice with more information about the settlement.

30.     The Long Form Notice will be available at the website or by calling the toll-free number.  The Long Form Notice provides substantial information, including all specific instructions Class Members need to follow to properly exercise their rights, and background on the issues in the case.  It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.

31.     In preparing the Class Notices in this Settlement, I have employed communications methods that are well-established in my field. I have embraced the high standards embodied in the Advisory Committee's notes accompanying the 2003 changes to Rule 23(c)(2): "The direction that the class-certification notice be couched in plain easily understood language is added as a reminder of the need to work unremittingly at the difficult task of communicating with class members."

**PRINT MEDIA**

32.     For the paid print media portion of the plan, LDG utilized Simmons National Consumer Survey Data to evaluate the most effective national magazines to reach the class members.  The magazines were first ranked by coverage of Naked Juice purchasers.  *Parade* magazine and *People* magazine were selected based on their high coverage ranking for the defined target. Independent of the online efforts, one insertion in each of these publications will reach approximately 34% of Naked Juice purchasers after audience duplication is factored out.  In addition, LDG will insert the summary notice into the San Francisco and Los Angeles zone editions of *USA Today* once a week for four successive weeks with no less than 5 days between insertions.  Thus, the plan taken as a whole will be in compliance with Cal. Civ. Code § 1781 (d) and Cal.

Government Code § 6064.  A map of the areas covered by the *USA Today* San Francisco and Los Angeles zones insertion is attached as Exhibit 6.  As that document reflects, these zones cover the entire state of California.

33.     Based on the number of expected impressions from online efforts, LDG believes that publication in the magazines and newspaper referenced in paragraph 20 above deliver an acceptable reach to supplement the other media vehicles being contemplated for the plan.  When supplemented by the other media vehicles, the overall plan will result in notice efforts reaching in excess of 85% of the target audience and thus, 85% of the class members as well.

## ONLINE NOTICE CAMPAIGN

34.     In addition to the publication notice, LDG will implement a comprehensive online notice campaign.  Minimum estimated reach was calculated using random media combination, an approach used by other Notice experts in the industry to estimate the overall reach of a media campaign using multiple mediums.  A detailed explanation of the calculation is attached as Exhibit 7.  The reach of a given medium is defined as the opportunity for the audience to be exposed to the advertising message (i.e. the Notice) during a specific time frame.

35.     LDG's research regarding the class member demographics and online behavior indicates that Naked Juice purchasers are more likely to be reached online than average U.S. adults, and in fact trust information obtained online more than information obtained in print.  Analysis of lifestyle statement responses by target audience members in the Experian Simmons National Consumer Study displayed the following characteristics of Naked Juice purchasers.

  a. 83% of Naked Juice purchasers agree that the Internet has changed the way they obtain information about products and services,

  b. 77% of Naked Juice purchasers agree that when they need information, the Internet is the first place they look,

c. 65% of Naked Juice purchasers agree that they are getting more and more of their daily news from the Internet, and

d. Naked Juice purchasers are nearly 40% more likely than the average U.S. Adult to access the Internet through a mobile device.

36. The Internet notice efforts will offer many advantages to the Class, including interactivity, flexibility to adjust message during the campaign, and excellent support.  Specifically, to ensure an effective online campaign, LDG will utilize targeted content display advertising (both banner and text ads) – also known as contextual advertising, behavioral-targeted display advertising, and sponsored links.

37. The sponsored links portion of the campaign will target those individuals specifically looking for information about the case, while the contextual portion will be designed to reach those who may not be looking specifically for information about the case, but may be browsing content related to the subject matter.  Together, the sponsored links and banners will generate a minimum of 300 million gross impressions frequency capped to reach a minimum of 60 million unique individuals who fit within the behavioral profile of Naked Juice purchasers.  The banners will run for a sufficient period (not to exceed 60 days) commencing on the Notice Date.  Sponsored links will be maintained for the duration of the filing period to ensure the website is readily accessible to those who may see the notice in print and search for the website on a major search engine.

38. The Notice Plan will promote the website address for the case through multiple channels.  LDG will position the website URL within the top sponsored links of almost all searches related to the keywords selected for the campaign. As a result, these links will be positioned to reach class members when they are actually looking for the information.  Class members who see the

summary notice in a magazine may remember a few keywords about the matter, and then do research online.  Using sponsored links will ensure that when they search for the case online, the link to the website will be positioned high in search results on the major search engines.  LDG will develop the site content as early as possible in order to establish a presence on the Web and be indexed by the search engines.  Appropriate keywords will be selected, and LDG will optimize the budget and allocate resources to the most effective ads throughout the campaign.

39.   For the contextual component of the campaign, LDG will implement a banner campaign targeting websites that are frequented by individuals who exhibit the demographic and consumer behavioral characteristics of the target audience.  It is well-established that placing website links on pages with content relevant to the case can be an effective way to generate interest from those individuals who may not be looking for the case website, but who may be class members nonetheless.  In fact, a study[1] on the impact of contextual advertising commissioned by Google in 2008 confirmed the following:

a.   Participants were three times more likely to associate messaging with an advertisers brand (or in this case, a lawsuit) when ads viewed were contextually relevant to the articles.

b.   Brands were six times more likely to make a participant's short list if ads were viewed in the context of relevant editorial content.

c.   Brands were three times more likely to be chosen as a participant's preferred vendor if ads were viewed in the context of relevant editorial content.

40.   For the display-advertising component of the online campaign, LDG will utilize both Steel Media's Network and 24/7 Media.  Steel Media, founded by Richard Steel, a member of the White House Business Advisory Council, is a

---

[1] TECH MARKETING RESULTS: IN CONTEXT:  How Innovations in Contextual Targeting are Taking Online Results to the Next Level, by Jason Young, CEO, Ziff Davis Media.

leader in digital advertising.  Steel Media works with websites to design campaigns to provide advertising that is as relevant and useful as possible.  Some online ads visitors see at a particular website may be based on the content of the webpage; others may be based on registration or other information provided to Steel or their partners; and other ads may be customized based on predictions about a viewer's interests generated from their visits to other websites.  LDG works with Steel to develop a custom channel for targeting the class members online while still providing broad coverage.

41.    LDG will utilize frequency capping over the lifespan of the program to ensure a minimum of 32 million unique individuals who fit within the profile of a Naked Juice purchaser are reached through Steel Media banner ads.   After providing Steel Media with the intended target of "Naked Juice Purchasers," Steel developed the online behavioral channel (sometimes referred to as a Behavioral Profile) of people likely to be Naked Juice purchasers using the methods described in Paragraph 40 above.   The banners will be posted to websites that these individuals are likely to visit on a regular basis.

42.    LDG will also leverage the services of 24/7 Media.  Founded in 1995 and now part of WPP, a multinational advertising and public relations company, 24/7 Media is a leading digital marketing company that provides targeted advertising solutions.   24/7 Media has one-to-one relationships with their publishers and does not buy or sell their inventory so they are able to deliver unduplicated reach across quality brand safe websites.  Similar to the way Steel develops their audience, 24/7 Media will utilize their proprietary data as well as third party filters to build a custom audience segment for premium juice shoppers likely to fit the profile of the class members in this case.  The data used will target these users across the 24/7 Media network of websites.

43.    By utilizing multiple vendors for banner advertising, the campaign

will benefit from the increase in the volume of impressions and from the distinct methodologies used by each vendor to target the class. LDG will work with the vendors to reduce duplication and increase the number of unique impressions.

44.     Given the importance of the online campaign to providing notice to the class, LDG will closely monitor campaign effectiveness and make any necessary adjustments to the notice plan.  LDG will compare audience response data with the response of class members.  LDG will do this by evaluating campaign data (e.g., placements, impressions, and clicks) against claims data to focus campaign ad spend on the sites providing the most relevant clicks.  In other words, LDG will focus impressions where the clicks are generating the most claims.

## SETTLEMENT WEBSITE

45.     Gilardi will create a case-specific website using the URL **www.NakedJuiceClass.com** and post relevant documents, answers to frequently asked questions, and a toll-free number through which class members can request further information.  Class Members have the option to download copies of case documents (including the complaints, the Stipulation of Settlement, the Long Form Notice, and any Court orders relating to the settlement) and to contact Gilardi for more information.  Importantly, the settlement website also will provide updates on the schedule for the final fairness hearing and other relevant settlement deadlines. Class Members will be encouraged in the Class Notice to visit the settlement website on a regular basis for updates.  In addition to the basic information about the settlement, the website will also allow class members to file their claims online.

46.     The filing process will allow for claims to be filed with or without supporting documentation.  The claim filing page will mirror the claim form provided by the parties and contain all relevant information needed for the class members to file their claim.

**TELEPHONE SUPPORT**

47.    With the guidance of counsel, Gilardi will develop a telephone support script and create an interactive toll-free telephone support or Interactive Voice Response ("IVR") line.  The purpose of the IVR is to provide the class with access to information about the case and to record names and addresses of those who call to request copies of the notice and/or other relevant documents.  Callers request the notice by recording their name and address, and those names are transcribed into a database that is downloaded at predetermined intervals (typically every week).  As a result, requests for the notice packet will be fulfilled on a weekly basis, but as we get closer to the filing deadline, we will download and fulfill requests more frequently.

**SUMMARY**

48.    This Notice Plan is the best practicable and complies with Rule 23.  It has four primary components: a) an extensive and measured Internet campaign; b) paid print media utilizing national consumer magazines; c) a case specific website; and d) live and pre-recorded telephone support.  While the measurement for audience duplication (i.e., the number of class members who may have the opportunity to view the notice in print and also see the notice online) is not certain, the reach of the print publication, combined with the online media efforts generating 300 million gross impressions expected to reach 60 million unique individuals (greater volume than the estimated class size) who fit within the profile of someone likely to purchase Naked Juice, LDG is confident that the overall reach of the efforts will result in a campaign that reaches 85% to 95% of the class with each class member having the opportunity to view the message a minimum of 3 times.

49.    Many courts have held that notice plans estimated to reach a minimum of 70% of the settlement class, are adequate and sufficient and thus

comply with Rule 23. When implemented, the Notice Plan will exceed this standard of reach using reach calculation methodology consistent with other national class action notice programs.  LDG believes that the plan results in a campaign that will reach large percentage of the class members and comport in all respects with Rule 23(c)(2) and Rule 23(e)(1) of the Federal Rules of Civil Procedure.

50.    The notice plan described above, as designed, is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution, and in my opinion, it is reasonable and the best practicable notice.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of July, 2013, at San Rafael, California.


ALAN VASQUEZ

# EXHIBIT 1

## LARKSPUR DESIGN GROUP
### Notice Plans Designed and Implemented by Alan Vasquez

**Automotive**

*Automobile Antitrust Coses I and II*, No. JCCP 4298 and 4303 (San Francisco Sup. Ct., CA)

*New Motor Vehicles Canadian Export Antitrust Litigation*, No. MDL 03-1532 (Dist. Court of Maine) & *New Motor Vehicles Canadian Export Antitrust Litigation*, No. 2:03-MD-1532-DBH (Dist. Court of Maine)

**Entertainment**

*Herbert et al. v. Endemol USA, Inc. et al.*, Case No. 2:07-cv-03537-JHN-VBKx (C.D. Cal.)

*Couch v. Telescope Inc., et al*, Case No. 2:07-cv-03916-JHN-VBKx

*McDonald v. RealNetworks, Inc.*, No. 816666 (Orange County Sup. Ct., CA)

*Pecover et al. v. Electronic Arts Inc.*, No. 08-cv-02820 CW (N.D. Cal.)

**Environment**

*Koepf et al. v. Hanjin Shipping, Co. et al.*, No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

*Loretz et al. v. Regal Stone Limited et al.*, No. 07-5800-SC (N.D. Cal.)

*Tarantino et al. v. Regal Stone et al.*, No. CGC-07-469379 (San Francisco County Sup. Ct., CA)

**Government**

*McKesson Governmental Entities Average Wholesale Price Litigation*, No. 1:08-cv-10843-PBS (D. Mass.)

**Product Liability**

*Mattel, Inc., Toy Lead Paint Products Liability Litigation*, No. 2:07-ML-01897-DSF-AJW (S.D. Cal.)

**Technology**

*SRAM Antitrust Litigation, No. 4:07-MD-01819-CW (N.D. Cal) & SRAM Antitrust Litigation, No. 4:07-md-1819 CW, MDL No. 1819 (N.D. Cal)*

**Telecommunications**

*White v. Cellco Partnership*, No. RG04-137699 (Alameda County Sup. Ct., CA)

*In re Universal Service Fund Telephone Billing Practices Litig., MDL No. 1468 (D. Kan.)*

**Consumer Products**

*Gallucci v. Boiron, Inc. et al., No. 11-cv-2039-JAH (NLSx)*

*Nigh v. Humphreys Pharmacal, Incorporated et al., Case No. 3:12-cv-02714-MMA-DHB*

*In re: Bayer Corp. Combination Aspirin Products Marketing and Sales Practices Litigation, No. 09-MD-2023*

*In Re: Aurora Dairy Corp. Organic Milk Marketing and Sales Practices Litigation, Civil Litigation No. 4:08-md-01907-ERW*

*Eliason v. Gentek Building Products, Inc., and Associated Materials, Inc.*, No. 1:10-cv-02093 (N.D. Ohio)

*Hart v. Louisiana-Pacific Corporation*, No. 2:08-cv-00047 (E.D.N.C.)

**Debt Collection Practices**

*Adams, et al., v. AllianceOne Receivables Management, Inc. (Case No. 08-CV-0248)*

*Pepper v. Midland Credit Management, Inc. and Encore Capital Group, Inc., No. 37-2011-00088752 (Cal. Super. Ct. San Diego County)*

# EXHIBIT 2



Experian.com   Personal   Business   Small Business   About Experian   Consumer Assistance                    United States  |  Global Sites



Latest news:
Experian Marketing Services announces 2013 Client Summit — empowering marke...

 Search

Products    Solutions    Services    Marketing Resources    About Us                    client login

**Consumer Insights**
**Make smarter marketing decisions through actionable insights**

Consumer Insights

Consumer Research
  National Research
  Local Research
  Global Research
  Simmons OneView^SM
  Simmons Client Resource Center

Cross-Platform Media Planning

Online Intelligence

Mobile Intelligence

Online Audience Segments

Store Traffic Counting

Services

Contact Us

## Simmons® National Consumer Studies

Our National Consumer Studies supply leading advertisers, agencies and media companies with the most timely, single-source consumer research insights available. We survey over 30,000 consumers annually, continuously measuring and updating consumer attitudes, product and brand preferences, media consumption habits and demographic and lifestyle characteristics.


### National Consumer Study
Bring consumer targets to life with vivid and complete profiles, including lifestyles, attitudes, brand preferences and media use.


### National Hispanic Consumer Study
Improve your Hispanic marketing efforts by providing unique insights and vivid profiles of Hispanic consumers including lifestyles, attitudes, brand preferences, media use and more.


### Simmons DataStream^SM
Assess advertising performance and detect shifts in consumer trends in a single-source solution.


### Kids and Teens Studies
Gain actionable insights into the behaviors, attitudes and brand preferences of America's youth through a comprehensive, continuously-fielded survey of approximately 4,200 kids and teenagers.


### LGBT Consumer Study
Discover the only syndicated, national LGBT research survey that measures the lesbian, gay, bisexual, transgender (LGBT) population.


### Multi-Media Engagement Study
Understand consumer engagement with nearly 800 different magazines, TV programs/networks and Websites.


### New Media Study
Discover how consumers use new and emerging media platforms, including mobile phones, social networking, instant messaging, blogs, gaming, social tagging/bookmarking, online video/audio and dozens of other media channels.


### Television BehaviorGraphics™
Link the deep consumer insights within the Simmons National Consumer Study with the Nielsen Television Index.


### Consumer Segmentation Systems
Better understand your consumer targets with various segmentation systems based on attitudes, preferences and behaviors.

### Request More Information
To learn more about how we can help improve your marketing efforts, please complete the following form and click "Get More Information" at the bottom.

First Name *

SHARE    BOOKMARK    PRINT

## 1 866 256 4468
Email us

**Read our latest research**

**The 2013 Lesbian, Gay, Bisexual, Transgendered Report**



**Read our latest blog posts**

The popularity (and challenges) of Big Data
02 July 2013
The big data bandwagon is moving forward, but ultimately organizations need accurate data to gain insight. Read More

Online search queries paint picture of DOMA ruling reactions
28 June 2013
Search activity surrounding gay marriage skyrocketed when the Supreme Court found DOMA unconstitutional. Top terms included ... Read More

Three ways to optimize emails for mobile
28 June 2013
Last week, the Cannes Lions awards were presented to some pretty spectacular mobile campaigns. These campaigns, which included ... Read More

Experian.com    Personal    Business    Small Business    About Experian    Consumer Science        United States    Global Sites



Latest news:
Experian Marketing Services releases critical new retail insights in global...

Search 

Products        Solutions        Services        Marketing Resources        About Us                    client login

**Consumer Insights**

**Make smarter marketing decisions through actionable insights**

Consumer Insights

Consumer Research

Cross-Platform Media Planning

Online Intelligence

Mobile Intelligence

Online Audience Segments

Store Traffic Counting

Services

Contact Us

## Simmons® National Consumer Study

SHARE        BOOKMARK        PRINT

**Delivering the mindset of the American consumer**

The Simmons National Consumer Study brings consumer targets to life with vivid and complete profiles, including lifestyles, attitudes, brand preferences and media use. The high quality, nationally representative study is the result of a comprehensive, continuously fielded survey of approximately 25,000 U.S. adults, including both English and Spanish speakers.

**The study, released quarterly, simplifies and enhances consumer and media research reporting on over 60,000 data elements, including:**

All major media usage, including traditional and emerging digital platforms

Over 1,000 distinct media properties

More than 500 product categories and over 8,000 brands

Over 600 consumer attitudes and opinions

In-depth demographic and lifestyle characteristics

The Simmons National Consumer Study utilizes a patented*, multi-frame sample design and is accredited by the Media Rating Council.

*U.S. Patent No. 7,246,035

**Learn More about Improving Media Research**

What's Measured in the Study?

Our Methodology

**Request More Information and View Product Sheet**

To learn more about  how Simmons can help you improve you improve consumer targeting and media research efforts, please complete the following form and click "Get More Information" at the bottom. If you would like to talk to a representative immediately, please call us at **1 866 256 4468**.

**First Name** *

**Last Name** *

**Company** *

**Email** *

**Phone** *

**Are you an existing Simmons client?** *

○ Yes

○ No

**I want to receive Simmons' monthly Consumer Insights?** *

## 1 866 256 4468
Email us

**Don't miss our latest webinar**

**Persona-driven search strategy drives better results: A Case Study with iAcquire**



Download Webinar Recording

**Read our latest blog posts**

**The popularity (and challenges) of Big Data**

02 July 2013

The big data bandwagon is moving forward, but ultimately organizations need accurate data to gain insight. Read More

**Online search queries paint picture of DOMA ruling reactions**

28 June 2013

Search activity surrounding gay marriage skyrocketed when the Supreme Court found DOMA unconstitutional. Top terms included ... Read More

**Three ways to optimize emails for mobile**

28 June 2013

Last week, the Cannes Lions awards were presented to some pretty spectacular mobile campaigns. These campaigns, which included ... Read More

# EXHIBIT 3

**NAKED JUICE CONSUMER SETTLEMENT**

**LARKSPUR DESIGN GROUP - NOTICE DISSEMINATION PLAN**

**CASE BACKGROUND**

Class means all consumers in the United States who purchased one or more of the Eligible Products from September 27, 2007 up to and including the Notice Date.  Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.

| PRINT PUBLICATION | CIRCULATION OR ESTIMATED IMPRESSIONS |
|---|---|
| **Publish Legal Notice in Consumer Magazines** | |
| 2/5 page B/W Parade Magazine - 1 insertion | **32,500,000** |
| Regional Editions for Zones covering West Coast and Northeast (zones 1, 2, 5, 6 & 7) | |
| 1/2 page B/W People Magazine - 2 insertions | **3,475,000** |
| **Publish CLRA Legal Notice in USA Today Edition Zoned for California** | |
| 1/4 page B/W San Francisco and Los Angeles zones (covers entire state and parts of Nevada and Arizona), 4 insertions, spaced a minimum of 5 days apart | **168,262** |
| **INTERNET** | |
| **Sponsored Links** | **750,000** |
| Google, Yahoo, & Bing | |
| $10,000 per month over 2 months | |
| **Banner Advertising - Contextual and Behavioral Targeting** | **302,222,222** |

**Steel Media**

**Online Display Custom Channel**
Top comScore 25 websites, Precision Profiles BT freq cap 5x over Lifetime of Campaign:
Targets:  A18+, natural juice purchaser, natural smoothie purchaser, natural foods purchaser, organic product shopper, health conscious

The banner campaign will be set with a frequency cap 5x over the lifespan of the campaign, meaning each unique individual will have a maximum of 5 exposures to the ad, ensuring comprehensive reach of juice drinkers and Naked Juice drinkers in particular.

Banners will run Nationwide with focus allocated to the western and northeastern states.  Campaign will be monitored and optimized daily with optimization allocating the most imressions to the highest performing areas.

**24/7 Media**

Contextual - Custom Channel across Food/Beverage, Shopping, News, Lifestyle and Health/Fitness sites.  Suggested frequency cap of 5 over campaign lifetime

Behavioral Targeting - Optimized performance across the 24/7 Access Platform reaching in market Premium Juice/Food shoppers.  Suggested frequency cap of 5 over campaign lifetime

This campaign will have a dedicated Account Manager, who will optimize aggressively towards the back end goals set forth at the onset of the campaign (goal - 65% to 75% reach of premium or natural juice drinkers.)  Setup of campaign will mirror previously

# EXHIBIT 4

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

# If You Bought an Eligible Naked Juice Product Any Time From September 27, 2007 to _____

### *You Could Get Up to $75 with proof of purchase, or up to $45 without proof of purchase, From a Proposed Class Action Settlement*

**READ THIS NOTICE CAREFULLY.  YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT.  PLEASE CHECK THE SETTLEMENT WEBSITE AT www.NakedJuiceClass.com REGULARLY FOR UPDATES AND FURTHER DETAILS**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- There is a Proposed Settlement in a class action lawsuit that claims Naked Juice violated state and federal laws regarding the marketing and sale of certain of its products (*see* Question 2).  Naked Juice denies it did anything wrong and denies all of the claims made in this lawsuit.  The Court did not rule in favor of either party.  Instead, the parties agreed to a Proposed Settlement in order to avoid the expense and risks of continuing the lawsuit.

- Anyone who bought an eligible Naked Juice product, referred to as the "Eligible Products" and listed below under Question 7, from September 27, 2007 to _____, is included in the Proposed Settlement.

- If you are eligible, you *may* be entitled to a cash payment of up to $75.00 if you have proof of purchase, and up to $45.00 if you do not have proof of purchase.

- The Proposed Settlement will provide $9,000,000 to pay (1) money to eligible Class Members who make claims, (2) the costs of notice and administration, (3) a special service payment to the Class Representatives, and (4) attorneys' fees and costs.  Naked Juice has also agreed to implement certain changes in connection with the Eligible Products.

- Your legal rights are affected whether you act or not.  **Read this notice carefully because it explains decisions you must make and actions you must take now.**

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | Get no payment.  Give up your rights. |
| **SUBMIT A CLAIM FORM** | Submitting a Claim Form by _____ is the only way to get a payment (*see* Question 14). |
| **EXCLUDE YOURSELF** | Exclude yourself by **November 11, 2013** and get no payment from the Proposed Settlement.  This is the only choice that allows you to ever be part of any other lawsuit against Naked Juice about the claims in this case (*see* Question 17). |
| **OBJECT** | You can write to the Court by **November 11, 2013** about why you don't agree with any aspect of the Proposed Settlement (*see* Question 22). |
| **GO TO A HEARING** | You can ask by **November 11, 2013** to speak in Court about the fairness of the Proposed Settlement (*see* Question 26). |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice. The deadlines may be moved, cancelled or otherwise modified, so please check the settlement website at www.NakedJuiceClass.com regularly for updates and further details.

- The Court in charge of this case still has to decide whether to approve the Proposed Settlement. If it does, and after any appeals are resolved in favor of the settlement, payments will be distributed to those who qualify. Please be patient.

- If you do not exclude yourself from the Class, the Proposed Settlement (if approved) will release certain claims and will affect your right to start or continue any other lawsuit or proceeding involving the Eligible Products. The release is set forth in a settlement agreement called the "Stipulation of Settlement," available at www.NakedJuiceClass.com, and has been reprinted in full below (*see* Question 12).

| WHAT THIS NOTICE CONTAINS |
| --- |

**BASIC INFORMATION**................................................................................4
  1.    Why was this notice issued?
  2.    What is this lawsuit about?
  3.    Why is this a class action?
  4.    Why is there a Proposed Settlement?

**WHO IS PART OF THE SETTLEMENT?**...........................................................5
  5.    Who is included in the Proposed Settlement?
  6.    Are there exceptions to being included?
  7.    Which products are included?
  8.    What if I'm still not sure if I'm included?

**THE SETTLEMENT BENEFITS – WHAT YOU CAN GET**.....................................6
  9.    What does the Proposed Settlement provide?
  10.   What can I get from the Proposed Settlement?
  11.   What happens if there are any funds remaining?
  12.   What am I giving up if I stay in the Class?
  13.   When will I get my payment, if any?

**HOW TO RECEIVE A PAYMENT**...................................................................10
  14.   How can I get a payment?
  15.   What is the claim process?
  16.   What if I do nothing?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**........................................12
  17.   How can I get out of the Proposed Settlement?
  18.   If I exclude myself, can I still get a payment?
  19.   If I don't exclude myself, can I sue Naked Juice for the same thing later?

**THE LAWYERS REPRESENTING THE CLASS**................................................13
  20.   Do I have a lawyer in this case?
  21.   How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**..............................................................13
  22.   How can I tell the Court if I do not like the Proposed Settlement?

**QUESTIONS? VISIT www.NakedJuiceClass.com, OR CALL 1-(888) 283-2947 TOLL FREE**

23.     What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING**………..……………………………………………………**..15**
24.     When and where will the Court decide whether to approve the Proposed Settlement?
25.     Do I have to come to the hearing?
26.     May I speak at the fairness hearing?

**GETTING MORE INFORMATION**……………………………………….…………………………**16**
27.     How can I get more information?

**QUESTIONS? VISIT www.NakedJuiceClass.com, OR CALL 1-(888) 283-2947 TOLL FREE**

## BASIC INFORMATION

**1.  Why was this notice issued?**

The Court ordered that this Notice be given because you have the right to know about a proposed settlement of a class action lawsuit, and about your rights and options, before the Court decides whether to approve the proposed settlement.  You will be informed of the progress of this proposed settlement and may receive a cash payment if you are a Class Member (as described in the response to Question 5) and submit a completed and timely Claim Form.

This Notice explains: (1) this lawsuit, (2) the proposed settlement, (3) your legal rights, (4) what payments are available, (5) who is eligible for what payments under the settlement, (6) how to get a payment, and (7) other important information.

Information about the settlement is summarized below.  The settlement agreement called the "Stipulation of Settlement," available on the settlement website (www.NakedJuiceClass.com), gives greater detail on the rights and duties of the parties and Class Members.

The persons who sued are called the "Plaintiffs."  Naked Juice is the "Defendant."

**2.  What is this lawsuit about?**

This lawsuit is a combination of five separate class action lawsuits filed against Naked Juice.  The consolidated lawsuit concerns claims that Naked Juice violated certain state and federal laws and consumer protection statutes in connection with the advertising, labeling, or marketing of the Eligible Products listed below in the response to Question 7 and arising out of or relating to the "100% Juice," "100% Fruit," "From Concentrate," "All Natural," "All Natural Fruit," "All Natural Fruit + Boosts," or "Non-GMO" (or Non-Genetically Modified Organism) statements, through any medium (on-label, internet or otherwise).  The lawsuit claims that the Eligible Products contain ingredients that are not "All Natural" and contain GMOs (or Genetically Modified Organisms).  Naked Juice denies all these claims.

The Court in charge of this lawsuit is the United States District Court for the Central District of California.  The consolidated class action lawsuit is called *Pappas v. Naked Juice Co. of Glendora, Inc.*, Case No. LA CV 11-08276-JAK (PLAx).

Information about the Settlement is summarized in this notice.  More detail is provided in the settlement agreement called the "Stipulation of Settlement" and other documents (including the consolidated class action complaint), all available at www.NakedJuiceClass.com.

**3.  Why is this a class action?**

In a class action, one or more people called "Class Representatives" sue on behalf of themselves and other people who have similar claims.  Together, all of these people are "Class Members."  One Court resolves the issues for all Class Members in a Class Action, except for those who exclude themselves from the Class (*see* Question 17).

**4.  Why is there a Proposed Settlement?**

The Court has not decided in favor of the Plaintiffs or Naked Juice.  Instead, both sides have agreed to the Proposed Settlement.  By agreeing to the Proposed Settlement and if the Proposed Settlement is approved

by the Court, they avoid the costs and uncertainty of a trial, and Class Members receive the benefits described in this notice.  The Proposed Settlement does not mean that any law was broken or that Naked Juice did anything wrong, or that the Plaintiffs and the Class would or would not win their case if it were to go to trial.  The parties believe that the Proposed Settlement is fair, reasonable, and adequate and will provide substantial benefit to the Class.

## WHO IS PART OF THE SETTLEMENT?

**5.  Who is included in the Proposed Settlement?**

Except as noted below under Question 6, the Class includes all persons or entities in the United States who bought one or more of the Eligible Products (listed below under Question 7) from September 27, 2007 through _____.

**6.  Are there exceptions to being included?**

The Proposed Settlement does not include:
- All persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies;
- Persons or entities who purchased the Eligible Products primarily for purposes of resale;
- Any claims for personal injury relating to the use of the Eligible Products;
- The judge and magistrate judge presiding over the class action, their immediate families, and the Court staff;
- Governmental entities;
- Any person who timely and properly excludes him or herself from the Class (*see* Question 17); and
- Anyone who purchased the Eligible Products via the Internet or other remote means while not residing in the United States.

**7.  Which products are included?**

The following Naked Juice products are the "Eligible Products":

- **AÇAÍ MACHINE** (formerly known as PURPLE MACHINE and RAIN FOREST AÇAÍ)
- **APPLE**
- **APPLE CRANBERRY**
- **BERRY BLAST** (formerly known as BERRY BLAST WELL BEING)
- **BERRY PROBIOTIC**
- **BERRY VEGGIE** (formerly known as BERRY VEGGIE MACHINE)
- **BLACK AND BLUEBERRY** (formerly known as BLACK AND BLUEBERRY RUSH)
- **BLUE MACHINE**
- **CARROT**
- **CHAI SPICED CIDER**
- **CHERRY POMEGRANATE** (formerly known as CHERRY POMEGRANATE POWER)
- **CITRUS LEMONGRASS** (REDUCED CALORIE) (formerly known as CITRUS LEMONGRASS)
- **GOLD MACHINE**
- **GREEN MACHINE**

5

- **LYCHEE** (REDUCED CALORIE)
- **MANGO VEGGIE**
- **MIGHTY MANGO** (formerly known as MIGHTY MANGO WELL BEING)
- **O-J**
- **ORANGE CARROT**
- **ORANGE MANGO** (formerly known as ORANGE MANGO MOTION)
- **ORGANIC CARROT**
- **PEACH GUAVA** (REDUCED CALORIE)
- **PEACH MANGOSTEEN** (formerly known as PEACH MANGOSTEEN BLISS)
- **POMEGRANATE** (formerly known as PLENTIFUL POMEGRANATE)
- **POMEGRANATE AÇAÍ**
- **POMEGRANATE BLUEBERRY**
- **POWER-C MACHINE** (formerly known as POWER-C)
- **PROBIOTIC TROPICAL MANGO**
- **PROTEIN ZONE**
- **PROTEIN ZONE BANANA CHOCOLATE**
- **PROTEIN ZONE DOUBLE BERRY**
- **PROTEIN ZONE MANGO**
- **RAZALICIOUS**
- **RED MACHINE**
- **STRAWBERRY BANANA** (formerly known as STRAWBERRY BANANA C and STRAWBERRY BANANA WELL BEING)
- **STRAWBERRY KIWI** (formerly known as STRAWBERRY KIWI KICK)
- **TANGERINE SCREAM**
- **TROPICAL** (REDUCED CALORIE) (formerly known as TROPICAL C and TROPICAL)
- **WATERMELON CHILL**

## 8.  What if I'm still not sure if I'm included?

If you are not sure whether you are a Class Member, or have any other questions about the Settlement, visit the website, www.NakedJuiceClass.com, or call the toll free number, 1-888-283-2947.  You may also send questions to the Settlement Administrator via e-mail at info@nakedjuiceclass.com or via U.S. Mail at Gilardi & Co., LLC, P.O. Box 8090, San Rafael CA 94912-8090.

# THE SETTLEMENT BENEFITS – WHAT YOU CAN GET

## 9.  What does the Proposed Settlement provide?

If the Settlement is approved and becomes final, it will provide benefits to Class Members. Naked Juice will pay $9,000,000 to a Settlement Fund to make payments to Class Members who file valid claims by submitting a Claim Form (*see* Question 14), as well as to pay for costs associated with the notice and administration of the Settlement, attorneys' fees and costs (*see* Question 21), and a special service payment to the Class Representative (*see* Question 21).

In addition, Naked Juice has agreed to change the future labeling, advertising, and marketing of the Eligible Products so that on a going forward basis, Naked Juice does not use labeling, advertising, and marketing campaigns claiming that the Eligible Products are "All Natural" (including the "All Natural," "All Natural Fruit," and "All Natural Fruit + Boosts" statements). Naked Juice will also establish a product verification program to make sure that any Non-GMO statement on the Eligible Products is true, hire or assign a quality control manager to oversee the independent testing process for the Naked Juice product line, and establish and maintain a central database to permit the electronic tracking and verification of product ingredients. The settlement agreement called the "Stipulation of Settlement," available at www.NakedJuiceClass.com, has more information.

| **10.  What can I get from the Proposed Settlement?** |
|---|

You may be entitled to a cash payment of up to $75.00 if you have proof of purchase, and up to $45.00 if you do not have proof of purchase.  The amount of your payment will depend on the total amount of money you spent on the Eligible Products at any time from September 27, 2007 until _____, whether you have proof of purchase for the products you bought, and on the number of Class Members who choose to make a claim.

**If you have Proof of Purchase**:  If you submit proof of purchase of the products listed in response to Question 7, such as receipt(s) or other documentation demonstrating any purchase of the listed products from September 27, 2007 until _____, with a timely and valid Claim Form, you will receive a full reimbursement of what you paid for the listed products up to a maximum of Seventy-Five Dollars ($75.00). Payment amounts will be adjusted to ensure that all eligible Class Members receive a payment, as follows: If the total value of all approved claims is greater than the amount of money available to pay claims (after costs and fees have been deducted), eligible Class Members' payments will be reduced on a *pro rata* basis.

**If you do not have Proof of Purchase**: If you purchased any of the products listed in response to Question 7 and do not have proof of your purchases, you may submit a Claim Form before the deadline and be eligible for the following:

| IF YOU SPENT: | YOU COULD RECEIVE A MAXIMUM OF: |
|---|---|
| $45.01 or more | $45.00 |
| $35.01 to $45.00 | $35.00 |
| $25.01 to $35.00 | $25.00 |
| $15.01 to $25.00 | $15.00 |
| $10.01 to $15.00 | $10.00 |
| $0.01 to $10.00 | $5.00 |

Payment amounts will be adjusted to ensure that all eligible Class Members receive a payment, as follows: If the total value of all approved claims is greater than the amount of money available to pay claims (after costs and fees have been deducted), eligible Class Members' payments will be reduced on a *pro rata* basis.

The actual amount available for each eligible Class Member, whether or not proof of purchase is submitted with a Claim Form, will not be determined until after _____ and all Claims Forms have been received,

and may not be determined until after the Proposed Settlement is final. The values above ($75.00, $45.00, etc.) are the maximum amounts a Class Member could receive assuming there is no reduction in the value of the claims as explained above.

### 11. What happens if there are any funds remaining?

If there are any funds remaining after all claims are processed, those funds will be distributed to the following non-profit organizations: Mayo Clinic, the National Association of IOLTA Programs, the Legal Aid Foundation of Los Angeles, Bay Area Legal Aid, Legal Aid Society of the District of Columbia, Greater Boston Legal Services, Legal Aid Society of Metropolitan Family Services (Chicago), The Texas Rio Grande Legal Aid, and Legal Services of Greater Miami. The remaining funds will not be returned to Naked Juice.

### 12. What am I giving up if I stay in the Class?

Unless you exclude yourself from the Settlement, you can't sue Naked Juice or be part of any other lawsuit against Naked Juice about the issues in this case. Unless you exclude yourself, all of the decisions by the Court will bind you. The settlement agreement called the "Stipulation of Settlement" is available at www.NakedJuiceClass.com and describes the claims that you give up if you remain in the Settlement.

By staying in the Class, you become a Class Member and you will automatically release Naked Juice and the Released Parties from any claims set forth below and will give up your rights to pursue or continue any action against Naked Juice relating to the Eligible Products and the claims at issue in this lawsuit. **A word-for-word copy of the Release sections from the Stipulation of Settlement is copied below.** Because Class Members will release a wide range of claims, **please carefully read** the following "Release and Waiver of Claims":

"Released Claims" means and includes any and all claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action under common law or statutory law (federal, state, or local) of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing or claimed to exist, including unknown claims (as described further below) as of the Notice Date by all of the Plaintiffs and all Class Members (and Plaintiffs' and Class Members' respective heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns) that:

(i)   were asserted or that could have been reasonably asserted in the *Pappas*, *Evans*, *Marchewka*, *Park*, and *Sandys* actions against the Released Parties (as hereinafter defined), or any of them, and that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged or referred to in the *Pappas*, *Evans*, *Marchewka*, *Park*, and *Sandys* actions (including, but not limited to, alleged violations of state consumer protection, unfair competition, and/or false or deceptive advertising statutes (including, but not limited to, Cal. Bus. & Prof. Code § 17200 *et seq*., Cal. Bus. & Prof. Code § 17500 *et seq*., Cal. Civ. Code § 1750 *et seq*., N.Y. Gen. Bus. Law §§ 349-350, and N.Y. Gen. Bus. Law § 392-b)); breach of express or implied warranty (including, but not limited to, claims arising under state law and/or the Magnuson-Moss Warranty Act)); fraud; negligence; product liability; conspiracy; assault and battery; unjust enrichment, restitution, declaratory or injunctive relief, and other equitable claims or claims sounding in contract and tort); and

(ii)     relate in any way to the advertising, labeling, or marketing of the Eligible Products and arising out of or relating to the "100% Juice," "100% Fruit," "From Concentrate," "All Natural," "All Natural Fruit," "All Natural Fruit + Boosts," or "Non-GMO" statements, through any medium (on-label, internet, or otherwise).

Notwithstanding any other provision of this Stipulation of Settlement, "Released Claims" do not include claims for personal injuries. Plaintiffs and Class Members are not releasing any claims, demands, rights, damages, obligations, suits, debts, liens, and causes of action relating to personal injuries.

"Released Claims" shall be construed as broadly as possible to effect complete finality over this litigation involving Naked Juice advertising, labeling, and/or marketing of the Eligible Products as set forth herein.

"Released Parties" shall be defined and construed broadly to effectuate a complete and comprehensive release, and means:

(a)     Naked Juice and PepsiCo, Inc. ("PepsiCo"), and each of their past, present, and future employees, assigns, attorneys, agents, advertising agencies, consultants, officers, and directors;

(b)     All of Naked Juice's and PepsiCo's past, present and future parents, subsidiaries, divisions, affiliates, predecessors, and successors, and each of their respective employees, assigns, attorneys, agents, resellers, officers, and directors; and

(c)     Any and all persons, entities, or corporations involved in any way in the development, creation, sale, advertising, labeling, or marketing of the Eligible Products or their ingredients, and any other vendor or any company that supplied any ingredients to Naked Juice or PepsiCo.

"Releasing Parties" means Plaintiffs and all Class Members, and each of their heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns.

Upon the Effective Date, the Releasing Parties shall be deemed to have, and by operation of the Final Order and Final Judgment shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against the Released Parties. Further, Naked Juice will release, waive, and discharge, on the Effective Date, all legal claims, causes of actions, cross-claims, or counter claims against Plaintiffs, the Class Members, Plaintiffs' Counsel, the attorneys of record in any of the actions consolidated in the Action, and Class Counsel (collectively, "Plaintiff Released Parties") arising from or related to the Products and claims at issue or in the Action or in any of the actions consolidated into the Action (the "Plaintiff Released Claims"). The Released Claims shall be construed as broadly as possible to effect complete finality over this litigation involving Naked Juice advertising, labeling, and/or marketing of the Eligible Products as set forth herein.

Members of the Class who have opted out of the Settlement by the date set by the Court do not release their claims and will not obtain any benefits of the Settlement.

The Released Claims and the Plaintiff Released Claims include known and unknown claims relating to the Action, and this Stipulation of Settlement is expressly intended to cover and include all such injuries or damages, including all rights of action thereunder. Plaintiffs, Class Members,

9

and Naked Juice hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiffs, Class Members, and Naked Juice expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims and the Plaintiff Released Claims. In connection with such waiver and relinquishment, Plaintiffs, the Class Members, and Naked Juice hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Released Claims and the Plaintiff Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims and the Plaintiff Released Claims known or unknown, suspected or unsuspected, that they have against the Released Parties. In furtherance of such intention, the release herein given by Plaintiffs, the Class Members, and Naked Juice to the Released Parties and the Plaintiff Released Parties shall be and remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Parties expressly acknowledges that he/she/it has been advised by his/her/its attorney of the contents and effect of Section 1542, and with knowledge, each of the Parties hereby expressly waives whatever benefits he/she/it may have had pursuant to such section. Plaintiffs and Class Members are not releasing any claims for personal injuries. Plaintiffs acknowledge, and the Class Members shall be deemed by operation of the Final Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this release is a part.

### 13.  When will I get my payment, if any?

Class Members who submit valid claims will receive their payments only after the Court grants final approval to the Settlement and after any appeals are resolved (*see* "The Court's Fairness Hearing" below). If there are appeals, resolving them can take time. Please be patient.

## HOW TO RECEIVE A PAYMENT

### 14.  How can I get a payment?

To get a payment under the Settlement, you must send in a Claim Form. A Claim Form and directions are attached as **Appendix B** to this Class Notice. You may also obtain and print a Claim Form and other relevant documents by visiting www.NakedJuiceClass.com. Please read the instructions carefully, and fill out the form completely and accurately. Claim Forms can be submitted two ways: electronically or by mail. Your Claim Form must be submitted electronically at www.NakedJuiceClass.com no later than **December 10, 2013** or by mail postmarked no later than **December 10, 2013** and addressed to:

Gilardi & Co., LLC

**QUESTIONS? VISIT www.NakedJuiceClass.com, OR CALL 1-(888) 283-2947 TOLL FREE**

P.O. Box 8090
San Rafael, CA 94912-8090

## 15. What is the claim process?

The Settlement Administrator will review each Claim Form. If you do not submit proof of purchases, in some cases, you may be asked to verify your purchase(s) of any of the Eligible Products, by providing receipt(s) or other documentation. If you do not respond to these requests, it may result in the denial or reduction of your claim.

If a claim is not contested, you will receive payment for that claim in accordance with the terms of the Stipulation of Settlement. All usual and customary steps to prevent fraud and abuse in the claim process will be taken. This includes denying claims in whole or in part to prevent fraud or abuse. Class Counsel and Naked Juice will be provided a report on the denial of any claim due to insufficient documentation and may recommend additional action including payment.

The payment of approved claims will begin one-hundred and twenty (120) days after the close of the Claim Period so long as this period is after the date the settlement is final and approved, including any appeals that must be resolved in favor of the settlement (the "Effective Date").

The Court will hold a Fairness Hearing on _____ at ___ to decide whether or not to approve the proposed settlement. The Court must finally approve the proposed settlement before any payments can be made. The Court will grant its approval only if it finds that the proposed settlement is fair, reasonable, and adequate.

In addition, the Court's order may be subject to appeals. It is always uncertain whether these appeals can be resolved, and resolving them takes time, sometimes more than a year. Finally, there remains a possibility that this settlement may be terminated for other reasons.

Everyone who sends in a Claim Form will be informed of the progress of the settlement by contacting the Settlement Administrator, Class Counsel, or by visiting www.NakedJuiceClass.com. Please be patient. The Settlement Administrator will begin to pay approved Claims within one hundred and twenty (120) days after the close of the Claim Period, so long as this period is after the Effective Date. In the event the Effective Date falls after the close of the Claim Period, then the Settlement Administrator shall begin to pay approved Claims commencing no later than one hundred and twenty (120) days after the Effective Date. Not later than one hundred sixty (160) days after either the occurrence of the Effective Date or the close of the Claim Period, whichever is later, the Settlement Administrator shall have completed the payment to Class Members who have submitted timely, valid and approved Claims pursuant to the Claim Process. Please note, however, that the Parties may, only upon their joint agreement, commence this payment period after final approval of the settlement by the Court, but before the attainment of the Effective Date.

## 16. What if I do nothing?

If you are a Class Member and you do nothing, you will not get any payment from the Settlement and you will be bound by the Court's decisions and the Settlement's "Release and Waiver of Claims" (see Question 12). To receive a payment, you must complete and submit a Claim Form on or before _____ (see Question 14).

Unless you exclude yourself from the Class, if the settlement is approved you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Naked Juice about the claims in this lawsuit ever again, regardless of whether you submit a Claim Form.

11

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this Settlement, but you want to keep the right to sue or continue to sue Naked Juice on your own about the legal issues in this case, then you must take steps to get out of the Class. This is called excluding yourself – or it is sometimes referred to as "opting out" of the Class.

### 17.  How can I get out of the Proposed Settlement?

To exclude yourself from the Class, you must send by U.S. mail a letter or written request to the Settlement Administrator.  Your request must include all of the following:

1.  Your full name and current address;
2.  A clear statement that you wish to be excluded from the Class;
3.  The case name and case number (*Pappas v. Naked Juice of Glendora, Inc.,* Case No. LA CV 11-08276-JAK (PLAx)); and
4.  Your signature (you must personally sign the letter).

Please write "**EXCLUSION REQUEST**" on the lower left-hand corner of the front of the envelope.

Your exclusion request must be postmarked no later than _____.  Send your request to:

Gilardi & Co., LLC
P.O. Box 8090
San Rafael, CA 94912-8090

### 18. If I exclude myself, can I still get a payment?

No.  You will not get a payment if you exclude yourself from the Settlement.  If you request exclusion from the Class, then:

- You will <u>not</u> be eligible for payment under the Proposed Settlement;
- You will <u>not</u> be allowed to object to the terms of the Proposed Settlement; and
- You will <u>not</u> be bound by any subsequent rulings entered in this case if the Proposed Settlement is finally approved.

However, if your request for exclusion is late or not complete, you will still be a part of the Class, you will be bound by the settlement and by all other orders and judgments in this lawsuit, and you will not be able to participate in any other lawsuits based on the claims in this case.

### 19.  If I don't exclude myself, can I sue Naked Juice for the same thing later?

No.  If the Court approves the proposed Settlement and you do not exclude yourself from the Class, you give up (or "release") all claims that have been made in this lawsuit (this means that you are agreeing to fully, finally and forever release, relinquish, and discharge all Released Claims against the Released Parties, as set forth above in response to Question 12).

As part of this Settlement, the Court has preliminarily stopped all Class Members and/or their representatives (who do not timely exclude themselves from the Class) from filing, participating in, or

12

continuing litigation against Naked Juice (or against any of its related parties or affiliates), and/or from receiving any benefits from any other lawsuit relating to the claims being resolved in this case.

Upon final approval of the Settlement, Plaintiffs and Naked Juice will ask the Court to enter a permanent ruling forbidding all Class Members and/or their representatives and/or personnel from engaging in the activities described above.  All Class Members will be bound by this order.

## THE LAWYERS REPRESENTING THE CLASS

**20.  Do I have a lawyer in this case?**

The Court has appointed attorneys at the law firm of Ahdoot & Wolfson, PC, Finkelstein Thompson, LLP, and Ridout, Lyon + Ottoson, LLP to represent you and the other Class Members in this lawsuit.  The lawyers representing you and the Class Members are called "Class Counsel."  You will not be charged for the services of these lawyers.

You may contact Class Counsel as follows:

| | | |
|---|---|---|
| Robert Ahdoot<br>Ahdoot & Wolfson, PC<br>2355 Westwood Boulevard, #337<br>Los Angeles, CA 90064-2109<br>info@ahdootwolfson.com<br>Tel: 888-333-8996 | Christopher P. Ridout<br>Ridout, Lyon + Ottoson, LLP<br>555 East Ocean Boulevard, #500<br>Long Beach, CA 90802<br>c.ridout@rlollp.com<br>Tel: 562-216-7380 | Rosemary M. Rivas<br>Finkelstein Thompson, LLP<br>505 Montgomery Street, # 300<br>San Francisco, CA 94111<br>RRivas@finkelsteinthompson.com<br>Tel: 415-398-8700 |

You have the right to retain your own lawyer to represent you in this case, but you are not obligated to do so.  If you do hire your own lawyer, you will have to pay his or her fees and expenses.  You also have the right to represent yourself before the Court without a lawyer.

**21.  How will the lawyers be paid?**

Class Counsel have worked on this case since 2011 and have not been paid anything to date for their work on this case.  Class Counsel will request attorneys' fees and expenses of up to $3,120,000 to be paid out of the $9,000,000 Settlement Fund.  The Court has to approve any attorneys' fees and expenses awarded in this case.  The attorneys' motion(s) for fees, costs, and expenses and Class Representative payment will be filed on or before **October 18, 2013**.  The motion(s) will be posted on the website at www.NakedJuiceClass.com.

Class Counsel will also ask the Court for a special service payment of up to $2,500 for each of the Class Representatives (Natalie Pappas, Russell Marchewka, Chris Evans, and Gina Park) for their work on behalf of the Class.  Any special service payment also must be approved by the Court and any awarded amounts also will be paid out of the $9,000,000 Settlement Fund.

## OBJECTING TO THE SETTLEMENT

You have the right to tell the Court that you do not agree with the Settlement or any or all of its terms.

**22.  How can I tell the Court if I do not like the Proposed Settlement?**

If you choose to remain a Class Member, you have a right to object to any part of the proposed Settlement. The Court will consider your views.

To object, you must **file** a timely, written objection with the Court, through the Court's Case Management/Electronic Case Files ("CM/ECF") system or through any other method in which the Court will accept filings, if any, send the written objection by U.S. mail or e-mail to the Settlement Administrator, and send by U.S. mail or e-mail a copy to Class Counsel and Defense Counsel postmarked no later than **November 11, 2013**.  Members of the Class who fail to file and serve timely written objections as described here and in the Stipulation of Settlement shall be deemed to have waived all objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

Your written objection must include:

    (1)  your full name;
    (2)  your current address;
    (3)  a written statement of your objection(s) and the reasons for each objection;
    (4)  a statement of whether you intend to appear at the Fairness Hearing;
    (5)  your signature; and
    (6)  the case name and case numbers: *Pappas v. Naked Juice Co. of Glendora, Inc.*,  Case No. LA
        CV 11-08276-JAK (PLAx).

If you choose to object, in order to be considered by the Court, your written objection(s) must be **filed with the Court and served by U.S. Mail or e-mail on the Settlement Administrator, Class Counsel, and Defense Counsel <u>no later</u> than November 11, 2013**.  Objections that are mailed to the Court (and not filed pursuant to the Court's CM/ECF system, or any other method in which the Court will accept filings, if any), or objections that are served on the Parties but not filed with the Court, shall not be received or considered by the Court at the Fairness Hearing.
Objections must be served:

              **Upon Settlement Administrator at**:

              Gilardi & Co., LLC
              P.O. Box 8090
              San Rafael, CA 94912-8090
              info@nakedjuiceclass.com

              **Upon Class Counsel at**:

              Robert R. Ahdoot
              AHDOOT & WOLFSON, PC
              2355 Westwood Boulevard, Suite 337
              Los Angeles, California 90064-2109
              E-mail: info@ahdootwolfson.com

              Christopher P. Ridout
               RIDOUT, LYON + OTTOSON, LLP
              555 East Ocean Boulevard, Suite 500
              Long Beach, California 90802
               E-mail: c.ridout@rlollp.com

Rosemary M. Rivas
FINKELSTEIN THOMPSON, LLP
505 Montgomery Street, Suite 300
San Francisco, California 94111
E-mail: RRivas@finkelsteinthompson.com

**Upon Defense Counsel at**:

Christopher Chorba
Dhananjay S. Manthripragada
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071
E-mail: DManthripragada@gibsondunn.com

If you file objections, but the Court approves the settlement as proposed, you can still complete a Claim Form to be eligible for payment under the settlement, subject to the terms and conditions discussed in this Notice and in the settlement agreement called the "Stipulation of Settlement."

**23.  What is the difference between objecting and asking to be excluded?**

Objecting is simply a way of telling the Court that you don't like something about the Proposed Settlement. You can only object if you stay in the Class.  You will also be bound by any subsequent rulings in this case and you will not be able to file or participate in any other lawsuit based upon or relating to the claims of this lawsuit.  If you object to the Settlement, you still remain a Class Member and you will still be eligible to submit a Claim Form.  Excluding yourself is telling the Court that you don't want to be a part of the Class. If you exclude yourself, you have no basis to object to the Settlement and appear at the Fairness Hearing because it no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a final hearing (called a Fairness Hearing) to decide whether to finally approve the Settlement.  You may attend and ask to speak, but you don't have to.

**24.  When and where will the Court decide whether to approve the Proposed Settlement?**

On _____, at ____ the Court will hold a Fairness Hearing at the United States District Court for the Central District of California, before the Honorable John A. Kronstadt, District Judge, in Courtroom 750, Edward R. Roybal Federal Building and United States Courthouse, 7th Floor, 255 East Temple Street, Los Angeles, California 90012-3332.

The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.NakedJuiceClass.com for updates.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate.  The Court will also decide whether to award attorneys' fees and costs, as well as a special payment to the Class Representatives.  If there are objections, the Court will consider them at that time.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

15

**25.  Do I have to come to the hearing?**

No.  Class Counsel will answer questions the Court may have at the Fairness Hearing.  But you are welcome to come at your own expense.  Please note that the Court has the right to change the date and/or time of the Fairness Hearing without further notice, so it is a good idea to check the settlement website (www.NakedJuiceClass.com) for updates.  If you are planning to attend the hearing, you should confirm the date and time on this website before going to the Court.

**26.  May I speak at the fairness hearing?**

Yes, you may ask the Court for permission to speak at the hearing.  To do so, you must **file** a document called a "Notice of Intention to Appear" through the Court's Case Management/Electronic Case Files ("CM/ECF") system or through any other method in which the Court will accept filings, if any. If you or your attorney wants to appear and speak at the Fairness Hearing, you (or your attorney) must, in addition to filing a Notice of Intention to Appear at the Fairness Hearing with the Court, mail or e-mail copies to the Settlement Administrator, Class Counsel, and Defense Counsel, whose addresses are listed above in Question 22. Your notice of intention to appear at the Fairness Hearing must be filed and received by the Court, and mailed and/or e-mailed to the Settlement Administrator, Defense Counsel, and Class Counsel no later than **November 11, 2013**.

### GETTING MORE INFORMATION

**27.  How can I get more information?**

This notice summarizes the Proposed Settlement.  More details are in the settlement agreement which is called the "Stipulation of Settlement."  For a complete, definitive statement of the Settlement terms, refer to the Stipulation of Settlement at www.NakedJuiceClass.com.  You also may write with questions to the Settlement Administrator at Naked Juice Settlement, Gilardi & Co., LLC, P.O. Box 8090, San Rafael, CA 94912-8090, call the toll-free number, 1-888-283-2947, or e-mail questions to info@nakedjuiceclass.com.

### PLEASE DO NOT CALL THE COURT

Dated: _____, 2013                Clerk of the Court for the United States District Court for
                                        the Central District of California

# EXHIBIT 5

**If You Bought An Eligible Naked Juice Product Any Time From**
September 27, 2007 to ▓▓▓▓▓

*You Could Get Up to $75 with proof of purchase, or up to $45 without proof of purchase, From a Proposed Class Action Settlement*

*Para una notificación en Español, por favor llame o visite nuestro website.*

There is a proposed class action Settlement involving Naked Juice Co. of Glendora, Inc.'s ("Naked Juice") products. The lawsuit claims that Naked Juice violated state and federal laws regarding the marketing ands sale of certain products.  Naked Juice denies it did anything wrong.

**WHO IS INCLUDED IN THE PROPOSED SETTLEMENT?**

Anyone who bought an eligible Naked Juice product at any time from September 27, 2007 to ▓▓▓▓. A full list of the eligible products is available at the website located at www.NakedJuiceClass.com or by calling 1-(888) 283-2947.

**WHAT DOES THIS PROPOSED SETTLEMENT PROVIDE?**

A settlement fund of $9 million has been set up to pay (i) money to eligible Class Members who make claims, (ii) the costs of settlement notice and administration, (iii) a special service payment to the Class Representatives, and (iv) attorneys' fees and expenses. In addition, Naked Juice has agreed to change the future labeling, advertising, and marketing of the Eligible Products so that on a going forward basis, Naked Juice does use labeling, advertising, or marketing claiming that the Eligible Products are "All Natural" (including the "All Natural," "All Natural Fruit," and "All Natural Fruit + Boosts" statements). Naked Juice will also establish a product verification program to ensure that the Non-GMO statement on Naked Juice product labels is true, hire or assign a quality control manager to oversee the independent testing process for the Naked Juice product line, and establish and maintain a central database to permit the electronic tracking and verification of product ingredients. Full details about the Proposed Settlement are in the settlement agreement (called the "Stipulation of Settlement") and available at www.NakedJuiceClass.com).

**HOW CAN I GET A PAYMENT?**

Submit a Claim Form online at www.NakedJuiceClass.com or by mail by ▓▓▓▓. The payment amount your receive will be based in part on the amount of products you purchased and total number of claims made.  **Payments could be up to $75 (with proof of purchase) or up to $45 (without proof of purchase), depending on the number of Eligible Products you purchased.**

**WHAT ARE YOUR OPTIONS?**

If you are a Class Member, you may (1) do nothing; (2) exclude yourself; (3) send in a Claim Form; (4) object to the settlement; and/or (5) go to a hearing about the fairness of the Proposed Settlement.

If you don't want to be bound by the settlement, you must exclude yourself by letter postmarked by **November 11, 2013**. If you exclude yourself, you can't get a payment, but you can be part of another lawsuit against Naked Juice about the claims in this case. If you stay in the Class, you may submit a Claim Form and/or object to the settlement. Claim Forms must be submitted by ▓▓▓▓. Objections must be filed with the Court and served on the Settlement Administrator, Class Counsel, and Defense Counsel by **November 11, 2013**.

**PLEASE SEE THE DETAILED NOTICE** at www.NakedJuiceClass.com or call (888) 283-2947 for complete instructions on how to file a claim, object, or exclude yourself, and other important information. The Court will hold a hearing in this case on ▓▓▓▓▓ **at** ▓▓▓▓ in Courtroom 750 of the Edward R. Roybal Federal Building & United States Courthouse, 7th Floor, 255 East Temple Street, Los Angeles, California 90012, to consider approval of the settlement, payment of attorneys' fees and expenses of up to $3,120,000 to lawyers for the Class (Ahdoot & Wolfson, PC, Ridout, Lyon + Ottoson, LLP, and Finkelstein Thompson LLP), and payments of up to $2,500 for each of the four Class Representatives, and related issues. The motion(s) by Class Counsel for those fees, costs, and incentive awards will be available on the Settlement website after they are filed and before the above hearing.

You may appear at the hearing, but you don't have to.

**HOW CAN YOU GET MORE INFORMATION?**

Visit www.NakedJuiceClass.com or call, 1-(888) 283-2947, write to the Settlement Administrator at Gilardi & Co. LLC, P.O. Box 8090, San Rafael, CA, 94912-8090, or email the Settlement Administrator at info@nakedjuiceclass.com.

# EXHIBIT 6

# USA TODAY ADVERTISING PRINT MARKETS



**ATLANTA**
Monday-Thursday: 63,973
Friday: 72,197

**BOSTON**
Monday-Thursday: 68,090
Friday: 78,607

**CAROLINAS**
Monday-Thursday: 99,714
Friday: 116,257

**CHICAGO**
Monday-Thursday: 88,045
Friday: 102,782

**CINCINNATI**
Monday-Thursday: 55,165
Friday: 63,113

**DALLAS**
Monday-Thursday: 68,452
Friday: 76,334

**DENVER**
Monday-Thursday: 53,053
Friday: 61,452

**DETROIT**
Monday-Thursday: 59,659
Friday: 71,691

**HOUSTON**
Monday-Thursday: 61,651
Friday: 69,332

**KANSAS CITY**
Monday-Thursday: 45,710
Friday: 51,832

**LOS ANGELES**
Monday-Thursday: 111,750
Friday: 130,713

**MINNEAPOLIS**
Monday-Thursday: 38,877
Friday: 44,333

**NASHVILLE**
Monday-Thursday: 46,111
Friday: 53,331

**NEW ORLEANS**
Monday-Thursday: 38,740
Friday: 44,861

**NEW YORK**
Monday-Thursday: 126,325
Friday: 146,211

**NORTH CENTRAL FLORIDA**
Monday-Thursday: 93,922
Friday: 108,297

**PHILADELPHIA**
Monday-Thursday: 45,130
Friday: 52,238

**PHOENIX**
Monday-Thursday: 52,445
Friday: 61,841

**PITTSBURGH/CLEVELAND**
Monday-Thursday: 80,195
Friday: 92,248

**SAN FRANCISCO**
Monday-Thursday: 56,512
Friday: 66,089

**SEATTLE**
Monday-Thursday: 44,126
Friday: 54,708

**SOUTH FLORIDA**
Monday-Thursday: 48,900
Friday: 52,238

**ST. LOUIS**
Monday-Thursday: 36,654
Friday: 41,982

**WASHINGTON/BALTIMORE**
Monday-Thursday: 93,769
Friday: 106,056

Note: Alaska is part of Seattle

*Source: September 2012 ABC Publisher's Statement (print copies only)

# EXHIBIT 7

### NOTICE CAMPAIGN MEDIA VEHICLE REACH

| Media | Unit | Insertions | Reach |
|---|---|---|---|
| Parade[1] | 2/5pg | 1 | 23.5% |
| People | 1/3pg | 2 | 10.8% |
| USA Today | 1/4pg | 4 | 1.53% |
| Google, Yahoo, Bing[2] | Text Links | 60 days | .25% |
| Steel Media Banners[3] | Multiple sizes | 30-60 days | 68% |
| 24/7 Media[4] | Multiple sizes | 30-60 days | 70% |

**Reach Calculation Methodology**

The combined reach of one media schedule and another media schedule (for example print and online) is calculated on the probability that neither reached the target. For example, if one media vehicle in a schedule has 30% reach of the target, then that vehicle has a .30 probability of reaching the target and .70 probability of not reaching the target. If the other media vehicle in the schedule has 60% reach, then that vehicle has a .60 probability of reaching the target and .40 probability of not reaching the target. To calculate the combined reach, multiply the probability that they do not reach the audience, .70 x .40 which results in .28. Subtract .28 from 1 to get the approximate reach of the two combined mediums at 72% (1 - .28 = .72). The table below illustrates the above formula applied to the suggested media plan:

| | | | | | |
|---|---|---|---|---|---|
| Parade | 1 | - | 0.2350 | = | 0.7650 |
| People | 1 | - | 0.1080 | = | 0.8920 |
| USA Today | 1 | - | 0.0153 | = | 0.9847 |
| Google.com/Yahoo.com/Bing.com | 1 | - | 0.0025 | = | 0.9975 |
| Steel Media Banners | 1 | - | 0.6850 | = | 0.3150 |
| 24/7 Media | 1 | - | 0.6500 | = | 0.3500 |
| 0.765*0.892*0.9847*0.9975*0.315*0.35 | | | | = | 0.0739 |

**Minimum Estimated Reach:**                                         **92.61%**

---

[1] DATA SOURCE: Experian Simmons Winter 2013 National Consumer Study. Reach for Parade, People, and USA Today (CA only) based on target audience of approximately 21.5 million organic premium juice purchasers.
[2] Reach based on past experience with similarly situated notice plans and impressions generated with similar budget. Estimated conservatively due to unverified data.
[3] DATA SOURCE: Comscore and Steel Media proprietary data for premium juice drinkers.
[4] DATA SOURCE: Comscore and 24/7 Media proprietary data for premium juice drinkers.