Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2355 Westwood Boulevard
Los Angeles, California 90064
Tel: 310-474-9111; Fax: 310-474-8585

*Interim Co-Lead Counsel for Plaintiffs*

Rosemary M. Rivas (SBN 209147)            Christopher Ridout (SBN 143931)
rrivas@finkelsteinthompson.com            c.ridout@ridoutlyonlaw.com
**FINKELSTEIN THOMPSON LLP**              **RIDOUT LYON + OTTOSON, LLP**
505 Montgomery Street, Suite 300          555 E. Ocean Blvd., Suite 500
San Francisco, California 94111           Long Beach, California  90802
Tel: 415-398-8700; Fax:  415-398-8704     Tel: 562-216-7380; Fax: 562-216-7385

*Interim Co-Lead Counsel for Plaintiffs*          *Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PAPPAS, on behalf of herself and all others similarly situated, | Case No. 2:11-cv-8276-JAK-PLA |
| Plaintiff, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| NAKED JUICE CO. OF GLENDORA, INC., a California Corporation, | Hearing Date: July 29, 2013 Time: 8:30 a.m. Place: Courtroom 750, 7th Floor Consolidated Class Action Complaint Filed: March 19, 2012 |
| Defendant. | Hon. John A. Kronstadt, presiding |

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that on July 29, 2013 at 8:30 a.m., in Courtroom 750 of the above-captioned Court before the Honorable John A. Kronstadt, Plaintiffs Natalie Pappas, Russell Marchewka, Christopher Evans and Gina Park will and hereby do move for an Order Granting Preliminary Approval of Class Action Settlement, pursuant to the Stipulation of Settlement filed concurrently herewith.

      This motion is made pursuant to Fed. R. Civ. P. 23 and is based upon: this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the Stipulation of Settlement; the declarations of Plaintiffs' Counsel Tina Wolfson, Christopher Ridout, Rosemary M. Rivas, and Marc Godino; the declarations of Kevin Malone, Shannon Scruggs, Jennifer Cesario, Jacquelynne J. Bowman, Kendra Reinshagen, Silvia Argueta, Heather Latino, Marcia Cypen and Robert Doggett, on behalf of the proposed *cy pres* recipients; and such evidence and argument as the Court may consider at the hearing on this motion.

Dated: July 2, 2013          Respectfully Submitted,

**AHDOOT & WOLFSON, PC**

/s/ Robert Ahdoot
Tina Wolfson
Robert Ahdoot
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Phone: (310) 474-9111/Fax: (310) 474-8585

*Interim Co-Lead Counsel for Plaintiffs*

**FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas
505 Montgomery Street, Suite 300
San Francisco, California 94111
Phone: (415) 398-8700/Fax: (415) 398-8704

1

1

*Interim Co-Lead Counsel for Plaintiffs*

**RIDOUT, LYON & OTTOSON, LLP**

<u>/s/ Christopher Ridout</u>
Christopher Ridout
555 E. Ocean Blvd., Suite 500
Long Beach, California  90802
Phone: (562) 216-7380/Fax: (562) 216-7385

*Interim Co-Lead Counsel for Plaintiffs*

**GLANCY BINKOW & GOLDBERG LLP**
Marc L. Godino
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Phone: (310) 201-9150/Fax: (310) 201-9160

*Attorneys for Plaintiff, Gina Park (Executive Committee to Interim Co-Lead Counsel)*

2

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................... 1

II. SUMMARY OF LITIGATION AND SETTLEMENT
    NEGOTIATIONS ................................................................................... 2

    A. Factual and Legal Investigation and Consolidation of the Actions ............ 2

    B. The Claims Against Defendant .................................................................. 4

    C. Plaintiffs Conducted Substantial Discovery Before Engaging in
       Settlement Negotiations ............................................................................ 4

    D. Plaintiffs Diligently Prepared for Class Certification and Fully
       Understood the Attendant Risks of Proceeding with the Litigation............ 6

    E. Settlement Negotiations Were at Arm's Length ........................................ 6

III. THE PROPOSED TERMS OF SETTLEMENT .................................... 7

    A. Monetary Consideration: A $9,000,000 in Cash Common Fund ............... 7

    B. The Plan of Allocation ............................................................................. 7

    C. *Cy Pres* Provisions .................................................................................. 8

    D. Non-monetary Consideration. ................................................................... 9

    E. Dissemination of Notice to the Settlement Class. .................................... 10

    F. Incentive Award and Attorneys' Fees and Expenses ............................... 11

    G. Release Provisions .................................................................................. 12

IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL.............. 12

    A. The Settlement Approval Process ........................................................... 12

    B. The Proposed Settlement is Fair and Meets the Requirements for
       Preliminary Approval .............................................................................. 13

       1. The Settlement Negotiations Were At Arm's Length..................... 14

       2. Plaintiffs' Counsel Had Ample Discovery to Make an
          Informed Judgment on the Merits of the Claims. ........................... 14

       3. Plaintiffs' Counsel, Who Are Highly Experienced in Class
          Action Procedure and the Claims at Issue in the Case,
          Believe the Settlement is Fair, Reasonable and Adequate................ 15

       4. The Risks of Litigation Support Approval. ..................................... 15

1

5.      The Settlement Presents No Deficiencies ........................................ 16

    a.      The *Cy Pres* Beneficiaries Meet Ninth Circuit Requirements .................................................... 16

    b.      Plaintiffs' Counsel's Anticipated Application for Attorneys' Fees .................................................... 17

V.      CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE .................................................................................. 18

1.      The Class Satisfies the Numerosity Requirement ........................... 18

2.      The Class Satisfies the Commonality Requirement ........................ 19

3.      Plaintiffs Meet the Typicality Requirement ................................... 19

4.      The Plaintiffs Satisfy the Adequacy Requirement .......................... 20

5.      The Class Satisfies the Criteria of Rule 23(b) ............................... 20

    a.      Common Questions Predominate ......................................... 21

    b.      A Class Action Is The Superior Method For The Fair  And Efficient Adjudication Of This Controversy .................................................... 21

        i.      The Individual Class Members' Interest in Controlling the Litigation ................................ 22

        ii.     Extent and Nature of Litigation Already Commenced by Class Members ......................... 22

        iii.    The Desirability of Concentrating the Litigation In a Particular Forum ......................... 22

        iv.    This Case is Manageable As a Class Action ............. 23

VI.     THE PROPOSED CLASS NOTICE IS CONSTITUTIONALLY SOUND ......................................................................................... 23

VII.    PROPOSED SCHEDULE ............................................................... 24

2

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

# TABLE OF CONTENTS

Page

### Cases

*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ...................................................... 14

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D. Cal. 2008) ............................................... 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................... 23

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S. Ct. 1184 (2013) ............................................................................................................ 21

*Beck-Ellman v. Kaz USA, Inc.,* No. 10-cv-02134, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013) .................................................................................... 13

*Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) ...................................................................... 24

*Bruno v. Eckhart Corp.*, 280 F.R.D. 540 (C.D. Cal. 2012) ................................. 23

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990) ................................................................................... 19

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) ......................................................................................................... 15

*Class Plaintiffs v. Seattle*, 995 F.2d 1268 (9th Cir. 1992) ................................. 12

*Dennis v. Kellogg Co.,* 697 F.3d 858 (9th Cir. 2012) ................................. 8, 16

*Erica P. John Fund, Inc. v. Halliburton Co.,* 133 S. Ct. 2179, 2184 (2011)................. 21

*Gribble v. Cool Transports,* No. CV 06-04863, 2008 WL 5281665, at *3 (C.D. Cal. Dec. 15, 2008) ......................................................................... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 19, 20

*In re Connecticut General Life Ins. Co.,* No. MDL 1136, CV 95-3566, 1997 WL 910387 (C.D. Cal. Feb. 13, 1997) ................................................ 18

*In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 WL 330595 (D. Minn. June 2, 1993).................................................................... 14

*In re Indep. Energy Holdings PLC*, No. 00-civ-6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................................................... 14

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2012 WL 2598819 (N.D. Cal. July 5, 2012)............................................................... 14

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................... 18

1

*In re Pom Wonderful LLC Mktg. & Sales Practices Litig.*, No. MDL 2199, 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. Sept. 28, 2012)..............................23

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450 (D.N.J. 1997) ..........................................................................................23

*In re Sumitomo Copper Litig.*, 189 F.R.D. 274 (S.D.N.Y. 1999) .........................13

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007)...........2, 13, 24

*In re Wash. Pub, Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ......................................................................................................17

*Johnson v. General Mills,* No. 10-00061, 2013 WL 3213832 (C.D. Cal. June 17, 2013)..................................................................................23

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) .........................................8

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ......................12

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001) ..........................................................22

*Mullane v. Central Hanover Trust,* 339 U.S. 306, 314 (1950) ...........................24

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................................................14

*Negrete v. Allianz Life Ins. Co. of North America,* 238 F.R.D. 482, 493 (C.D. Cal. 2006)...........................................................................22

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ..............................22

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)...................12, 13

*Tchoboian v. Parking Concepts, Inc.*, No. SACV 09-422, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009)......................................................22

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976), ......................12

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..................................19

*Westways World Travel, Inc. v. AMC Corp.,* 218 F.R.D. 223 (C.D. Cal. 2003)......................................................................................................22

*Williams v. Gerber*, 552 F.3d 934 (9th Cir. 2008) ...........................................21

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir. 2010)...............................................................................................22

*Yokayama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089, 1094 (9th Cir. 2010)...................................................................................................21

*Young v. Polo Retail,* No. C-02-4546 VRW, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) .................................................................................13

2

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

**Statutes**

15 U.S.C. § 2301 ......................................................................................... 3

21 U.S.C. §§ 301, *et seq*. ........................................................................... 3

Cal. Civ. Code § 1781 ................................................................................ 10

Cal. Gov. Code § 6064 .............................................................................. 10

**Rules**

Fed. R. Civ. P. 9 ......................................................................................... 4

Fed. R. Civ. Proc. 23 ............................................................ 12, 18, 20, 23, 24

**Regulations**

HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (4th
   ed. 2002) ....................................................................................... 12, 13, 14

**Other Authorities**

FEDERAL JUDICIAL CENTER, JUDGES' CLASS ACTION NOTICE AND CLAIMS
   PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE (2010) ........................... 11

MANUAL FOR COMPLEX LITIGATION (FOURTH) .................................... 2, 12, 13

3

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

After nearly two years of hard-fought litigation and four rounds of mediation sessions overseen by the Honorable Carl J. West (Ret.), Plaintiffs Natalie Pappas, Russell Marchewka, Christopher Evans and Gina Park ("Plaintiffs") and Interim Co-Lead Counsel are pleased to inform the Court that they have reached a settlement with Defendant Naked Juice Co. of Glendora, Inc. ("Defendant" or the "Company"). The settlement is memorialized in the Stipulation of Settlement ("Settlement" or "Stipulation")[1] and resolves claims that Defendant falsely advertised certain of its juice beverages and smoothies under the Naked Juice brand[2] as "All Natural," "non-GMO,"[3] "From Concentrate," "100% Fruit," and "100% Juice."

The proposed Settlement provides significant consideration for Class members and also benefits the public at large. In summary, the Settlement establishes a guaranteed and non-reversionary cash fund of $9 million dollars. The Settlement also provides significant injunctive relief valued at approximately $1.4 million dollars. Although Defendant vigorously disputes that its product labels were misleading and false, it has agreed to redesign them to eliminate and/or modify the challenged representations. Defendant has also agreed to establish a verification program through an independent testing organization to confirm the accuracy of the "Non-GMO" statement on product labels. The Company will also employ a quality control manager, for a period of five years, to oversee the independent testing process for the Naked Juice

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation, concurrently filed herewith. The Stipulation is filed concurrently herewith.

[2] The products are set forth in Paragraph 14 of the Stipulation and include, for example, Acai Machine, Apple, Apple Cranberry, Berry Blast, Protein Zone, Protein Zone Banana Chocolate, and Watermelon Chill, among others (hereinafter the "Products" or "Eligible Products"). Stipulation ¶ 14.

[3] "GMO" refers to genetically modified organisms in the food context.

1

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

product line.  Finally, Defendant will establish and maintain a database to electronically track and verify product ingredients for the Naked Juice line.  Stipulation ¶¶ 39, 50.

By this motion, Plaintiffs and Interim Co-Lead Counsel hereby commence the court approval process outlined in the MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.63 (2004) (hereinafter "MANUAL") for the settlement of class actions. Plaintiffs and their counsel respectfully request that the Court enter an order: (1) granting preliminary approval of the proposed Settlement; (2) certifying a Class as defined herein for settlement purposes; (3) approving the parties' proposed Notice Program and forms of notice; (4) directing that notice of the proposed Settlement be given to the Class; and (5) setting a final approval hearing to determine whether the proposed Settlement is fair, reasonable and adequate and whether an order awarding attorneys' fees, reimbursement of expenses and incentive awards should be approved.

As set forth below, the proposed Settlement is well "within the range of possible approval," such that the Court should grant preliminary approval, authorize notice to the Class, and schedule a final approval hearing.  *See, e.g.*, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Before engaging in settlement negotiations, Plaintiffs conducted a substantial amount of discovery and understood the strengths, weaknesses and risks of proceeding through to class certification and trial. The settlement discussions were always at arm's length and overseen by a retired judge familiar with the claims at issue.  Further, Plaintiffs are represented by counsel experienced in class action litigation and believe the Settlement is more than fair, reasonable and adequate.  Accordingly, Plaintiffs respectfully request that the Court grant this motion.

## II.   SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.   Factual and Legal Investigation and Consolidation of the Actions

In the fall of 2011, Plaintiffs filed four of five cases in the Central District Court of California against Defendant alleging that it misrepresented the Products as "All Natural," "100% Juice," "100% Fruit," "From Concentrate," and "Non-GMO," among

2

other things, in violation of state and federal law.[4]

Plaintiffs' Counsel extensively investigated the products' labeling and analyzed the veracity of these claims.  They also researched Defendant's marketing, business practices and promotional efforts and interviewed Naked Juice consumers. Furthermore, Plaintiffs' Counsel researched and analyzed the merits of the potential causes of action, including the Federal Food Drug and Cosmetic Act, 21 U.S.C. §§ 301, *et seq*. ("FDCA") and accompanying Food and Drug Administration ("FDA") regulations, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. ("MMWA"), as well as state statutory and common law.

Plaintiffs' Counsel later cooperated in organizing a leadership structure to effectively and efficiently prosecute the claims on behalf of Plaintiffs and the proposed Class.  They filed a joint motion to consolidate the five-filed cases and appoint Ahdoot & Wolfson, P.C., Finkelstein Thompson LLP and Ridout Lyon + Ottoson, LLP as Interim Co-Lead Counsel, and the law firm Glancy Binkow & Goldberg, LLP as part of an Executive Committee.  (*Pappas* Docket ("Dkt.") No. 18).  The firms also cooperated in conducting extensive discovery, which included several sets of interrogatories and requests for documents to Defendant, a subpoena to a third party, and the Parties' Rule 26(f) conference.  On March 5, 2012, the Court closed the *Evans, Marchewka, Park* and *Sandys* actions, consolidated them with the *Pappas* action, designated the *Pappas* action as the "Lead Case," and appointed Interim Co-Lead Counsel (Dkt. Nos. 38, 39).

---

[4]  Each Plaintiff separately filed a complaint between the months of October and November 2011. These cases include: (1) *Pappas v. Naked Juice Co. of Glendora, Inc., et al.*, Case No. 11-cv-08276 JAK (PLAx) ("*Pappas*"); (2) *Marchewka v. Naked Juice Co. of Glendora, Inc*., Case No. 11-cv-1701 JAK (PLAx) ("*Marchewka*"); (3) *Evans v. Naked Juice Co. of Glendora, Inc*., Case No. 11-cv-9412 JAK (PLAx) ("*Evans*"); and (4) *Park v. Naked Juice Co. of Glendora, Inc*., Case No. 11-cv-9677 JAK (PLAx) ("*Park*").  An additional suit, entitled *Sandys v. Naked Juice Company*, Case No. 11-cv-8007 JAK (PLAx) ("*Sandys*"), was filed by another plaintiff.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

**B.**   **The Claims Against Defendant**

In March 2012, Plaintiffs filed a Consolidated Class Action Complaint ("CAC") alleging that Defendant, among other things, it falsely marketed, manufactured and sold the Products as "All Natural," "100% Juice," "All Natural Fruit," "From Concentrate," and/or "non-GMO", in violation of the UCL, FAL, CLRA and the MMWA.  (Dkt. No. 40).

Plaintiffs allege that Defendant's product labels are false and likely to deceive reasonable consumers because they contain unnatural and synthetic non-juice ingredients, including ascorbic acid, beta carotene, biotin, choline biturtrate, cyanocobalamin, D-calcium panthothenate, Fibersol®-2, niacinamide, pyridoxine hydrochloride, among other ingredients.  Plaintiffs further allege that certain of the ingredients in the products were made from genetically modified plants or organisms in contrast to Defendant's representations that the products were "non-GMO," and that Defendant did not adequately disclose that the Products were made from concentrate.

On April 9, 2012, Defendant moved to dismiss the CAC in its entirety arguing, among other things, that Plaintiffs' claims were expressly preempted by the FDCA and FDA regulations, that Defendant's representations were not likely to deceive reasonable consumers, and that Plaintiffs did not plead their claims with particularity as required by Fed. R. Civ. P. 9(b).  (Dkt. No. 41). Plaintiffs filed an opposition to Defendant's motion, which the Court granted in part and denied it in part, dismissing with prejudice Plaintiffs' claims based on the "100% Juice" and "From Concentrate" label statements and Plaintiffs' federal warranty claims, but allowing the remaining claims to proceed. (Dkt. No. 52).  Plaintiffs filed the First Amended Consolidated Complaint on June 5, 2012 (Dkt. No. 63), which Defendant answered on July 2, 2012.  (Dkt. No. 68).

**C.**   **Plaintiffs Conducted Substantial Discovery Before Engaging in Settlement Negotiations**

Discovery in this case was extensive and hard fought, and required significant efforts to obtain the evidence necessary to support class certification and Plaintiffs'

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

claims.  This discovery assisted Plaintiffs in negotiating the resulting Settlement.

While in the initial phase of discovery Defendant produced the products' current and historical labeling, and internal documents regarding the challenged ingredients in the products, obtaining other types of documents from the Company presented greater challenges for Plaintiffs.  For example, Plaintiffs met and conferred with Defendant to obtain research and marketing studies that Defendant or its retained consultants conducted; sales and revenue information; and purchase records of the challenged ingredients.  Plaintiffs also met and conferred with Defendant regarding search terms for the production of electronic communications regarding the products' labeling and marketing.  Plaintiffs also served subpoenas and demanded and obtained voluminous responses from third a party.

Although the taxing and intricate meet and confer process surrounding discovery on Defendant spanned over several months, obtaining additional seminal discovery from Defendant ultimately required Plaintiffs to prepare a motion to compel before Magistrate Judge Paul L. Abrams.  As a result of the motion to compel, Judge Abrams ordered Defendant to produce communications that addressed creative or advertising decisions that the products are "All Natural" or contain "non-GMO" ingredients; documents regarding testing, studies, or market research concerning claims that the Defendant's products are made from "non-GMO" ingredients and are "All Natural"; and purchase records of the challenged ingredients.  (Dkt. No. 80).  The parties also litigated two motions to compel filed by Defendant.

All in all, in addition to the documents they obtained from Defendant, which totaled 75,000 pages, Plaintiffs also reviewed approximately one terabyte of information through third-party discovery.

Thus, when Plaintiffs began settlement discussions before Judge West (as described in Section E, *infra*, below), Plaintiffs' Counsel had reviewed a significant amount of discovery that enabled them to negotiate the best settlement possible for Plaintiffs and the proposed Class.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

**D.**   **Plaintiffs Diligently Prepared for Class Certification and Fully**
**Understood the Attendant Risks of Proceeding with the Litigation**

The Court set an initial deadline of September 3, 2012 for Plaintiffs to file their motion for class certification.  (Dkt. No. 62).  Although this deadline was continued by the parties' agreement, Plaintiffs worked diligently on the motion and were prepared to proceed with the class certification hearing if they did not resolve the case on terms that were fair, reasonable and adequate to the Class.  They hired and consulted with various experts regarding the Products' ingredients, marketing and damages.  They also prepared expert reports and researched and drafted the motion for class certification.  Thus, when Plaintiffs engaged in mediation with Defendant, they were fully aware of the strengths and weaknesses of class certification.

**E.**   **Settlement Negotiations Were at Arm's Length**

The Parties attended their first mediation session on October 10, 2012 before the Honorable Carl J. West (Ret.), a well-respected and experienced mediator with JAMS in Los Angeles, California.  Judge West previously served on the Los Angeles County Superior Court's Complex Litigation Program, where he presided over thousands of class and mass actions.  In advance of mediation, the Parties submitted lengthy mediation briefs detailing the strengths and weaknesses of the claims and class certification.  Despite their best efforts, however, a settlement was not reached at that time.

The parties attended a second mediation session before Judge West in December 2012.  Again, the mediation did not produce a settlement.  The parties' next mediation session in January 2013, however, was successful.  Although the parties reached an agreement in principle in January 2013, over the next several months they worked on finalizing the terms of a written settlement agreement and ancillary documents and the plan for published notice.  The parties, however, needed further assistance from Judge West as to certain of the terms and thus attended a fourth mediation session in May 2013.  It took almost an additional two months of extensive and, often spirited

6

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

negotiations to reach final accord on all terms and conditions of the settlement.  The Parties were able to agree to final written terms on July 2, 2013.

At all times during the months long settlement discussions, the negotiations were at arms' length and hard fought.  It was always Plaintiffs and their counsel's primary goal to achieve the maximum substantive relief possible for the Class.

## III.   THE PROPOSED TERMS OF SETTLEMENT

### A.   Monetary Consideration: A $9,000,000 in Cash Common Fund

Naked Juice will pay $9 million in cash ("Settlement Fund") for the benefit of the Class defined as: All persons and entities in the United States who purchased one or more of the Eligible Products from September 27, 2007 up to and including the date that the Class Notice is initially published.[5]  Stipulation ¶¶ 6, 39.

The Settlement Fund will be used for cash payments to Class members, the costs of notice, settlement administration, any award of Attorneys' Fees and Expenses and Incentive Awards as approved by the Court, and other amounts ordered by the Court. *Id*. ¶ 41.  Importantly, Defendant is not entitled to a reversion of any of the Residual Funds.  *Id*. ¶ 46(b).

### B.   The Plan of Allocation

To receive a cash payment, Class Members must complete and submit a short Claim Form.  *Id*. ¶ 43.  The Claim Form may be submitted by U.S. Mail or via the Settlement Website at www.NakedJuiceClass.com via a user-friendly online process.

Class Members with proof of purchase are eligible to receive full reimbursement

---

[5] Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.  Stipulation ¶ 6.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

of amounts paid at retail for the Eligible Products up to a maximum of $75.00 in cash. *Id.* ¶ 45.  Proof of purchase means a receipt or other documentation showing purchase of the Eligible Products during the Class Period.  *Id.*  Class Members who do not have proof of purchase are eligible to receive between $5.00 and $45.00 in cash, depending on the amount they paid at retail for the Eligible Products.  *Id*. ¶ 44.

### C.   *Cy Pres* Provisions

In the event the entire amount of the Settlement Fund Balance is not paid to Class Members who have submitted timely and valid Claim Forms, the Settlement Administrator will distribute the Residual Funds as follows, subject to Court approval: (1) fifty-percent (50%) to the Mayo Clinic; (2) twenty-five percent (25%) to the National Association of IOLTA Programs ("NAIP");[6] and (3) twenty-five percent (25%) in equal shares to the following legal aid organizations: Legal Aid Foundation of Los Angeles, Bay Area Legal Aid, Legal Aid Society of District of Columbia, Greater Boston Legal Services, Legal Aid Society of Metropolitan Family Services (Chicago), Texas Rio Grande Legal Aid, and the Legal Services of Greater Miami, Inc. (collectively "Legal Aids").  *Id.* ¶ 46.  The Parties carefully selected these non-profit organizations in compliance with *Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012), and *Dennis v Kellogg*, 697 F.3d 858 (9th Cir. 2012).

For example, as set forth in the Declaration of Kevin Malone ("Malone Decl."), the Mayo Clinic is a non-profit organization committed to providing education to consumers on health and nutrition, including reading food labels.  Mayo Clinic recognizes that misinformation and confusion about nutrition-related issues, particularly stemming from reports in popular media sources and the Internet, are common.  It has committed to use any *cy pres* funds to support its mission of educating consumers on

---

[6] NAIP will administer a grant process for the distribution of such funds to legal aid organizations in the fifty (50) United States of America that are active in providing consumer advocacy in false advertising cases and protecting consumers, except those organizations expressly designated in the Stipulation.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

health and nutrition and combating misinformation, as well as its strong history of research in nutrition, including on issues of vitamins and GMO ingredients.  Malone Decl. ¶ 13.

As described in the Declaration of Shannon Scruggs ("Scruggs"), the NAIP works with IOLTA programs around the country.  Each state operates an IOLTA program that has longstanding relationships with local (statewide, regional, or county based) legal service providers.  If approved by the Court, the NAIP will distribute any *cy pres* funds to IOLTA programs, which in turn will use them to fund legal service organizations that have consumer protection units that assist low-income persons with matters involving false advertising or unfair business practices.  The NAIP has committed to conditioning any *cy pres* funds for such purposes.  Scruggs Decl. ¶ 9.

As described in the declarations of Jacquelynne J. Bowman, Jennifer Cesario, Kendra Reinshagen, Silvia Argueta, Heather Latino, Marcia Cypen and Robert Doggett, the Legal Aid organizations provide free legal services to low-income persons.  Each group has a consumer protection unit dedicated to handling matters involving false advertising and unfair and deceptive business practices, and have committed to expending any cy pres funds distributed from this case for such purposes.  *See, e.g.,* Bowman Decl. ¶ 7; Cesario Decl. ¶ 8.

### D.   <u>Non-monetary Consideration.</u>

Although Defendant has denied, and continues to deny, Plaintiffs' allegations of false advertising, as a compromise and to resolve this matter, Defendant nevertheless has agreed to take certain significant measures over the next five years.  As described in the Declaration of Andrea Theodore, these measures will cost Defendant $1.4 million dollars to implement.  According to the terms of the Settlement, Defendant will:

(a) Redesign the products' labels, marketing, and advertising to eliminate the use of the "All Natural" language on future labels and marketing materials and media, and substantiate the "Non-GMO" claim, which Plaintiffs alleged were false and misleading.  The cost of the product labeling changes is

9

approximately $450,000.00;

(b) Establish, for at least three years, a verification program through an independent testing organization to confirm the accuracy of the "Non-GMO" statement on Naked Juice product labels.  The program will involve, among other things, periodic testing of finished product to confirm the accuracy of the Non-GMO statement on the product label.  The cost of this program is approximately $300,000.00;

(c) Hire or assign, for a period of at least five years, a quality control manager to oversee the independent testing process for the Naked Juice product line.  The cost of this employee/position is approximately $500,000.00; and

(d) Establish and maintain a database to electronically track and verify product ingredients for the Naked Juice line at a cost of approximately $150,000.

Stipulation ¶ 50 & Exh. H.

### E. Dissemination of Notice to the Settlement Class.

Class Members' contact information is not available for direct, individual notice because they purchased the products from third party retailers and not directly from the Defendant.  The Parties, however, retained the Larkspur Design Group ("LDG"), an in-house division with the Parties' proposed Settlement Administrator, Gilardi & Co. LLC, specializing in notice plan design and implementation to assist them.  Stipulation Exh. I, Declaration of Alan Vasquez ("Vasquez Decl.") ¶ 1.

Over the course of several months, the Parties worked diligently to develop a robust notice program utilizing national consumer publications and Internet ad networks.  *Id.*  The Summary Notice will be published in *Parade* and *People* magazines, and *USA Today*.[7]  *Id.* ¶ 32.  Additionally, there will be Internet advertising,

---

[7] The Notice Plan also complies with the CLRA by publishing the Summary Notice into the San Francisco and Los Angeles zone editions of *USA Today* once a week for four successive weeks with no less than five days between insertions.  Cal. Civ. Code § 1781(d); Cal. Gov. Code § 6064.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

such as banner ads, on 24/7 Media.  *Id.* ¶ 20.  The Long Form Notice will be made

available at a settlement website (www.NakedJuiceClass.com) and upon request

through a toll-free number.  *Id.* ¶ 45.  The notice program will reach at least eighty-five

percent (85%) of the estimated number of Class Members with an average frequency of

3 times.  *Id.* ¶ 16. This is more than reasonable.  FEDERAL JUDICIAL CENTER, JUDGES'

CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE

3 (2010).

The Summary Notice will refer Class Members to the Settlement Website, which

will make available the Long Notice, Claim Form, Stipulation, and other relevant Court

documents.  Stipulation ¶ 55 & Exh. I.

The Settlement Administrator will also establish a toll-free number that will

provide Settlement-related information.  *Id.* ¶ 57.

Plaintiffs' Counsel also will place links to the Settlement Website on the

respective homepages of their websites from the Notice Date through the Effective

Date.

**F.**  **Incentive Award and Attorneys' Fees and Expenses**

Plaintiffs' Counsel will apply for an Incentive Award for Plaintiffs Pappas,

Marchewka, Park and Evans in the amount of $2,500 (to be paid from the Settlement

Fund), which Defendant does not oppose.  Stipulation ¶ 59.  Plaintiffs' Counsel believe

the awards are appropriate and recognize Plaintiffs' efforts during the action that

resulted in the Settlement, including retaining counsel, reviewing and authorizing the

filing of the complaint, responding to discovery, making themselves available for

deposition, reviewing the proposed Settlement, and keeping abreast of the litigation.

Plaintiffs' Counsel will also apply to the Court for an award of attorneys' fees

and reimbursement of litigation expenses in an amount not to exceed $3,120,000 ("Fee

and Expense Award").  The Attorneys' Fees and Expense Award will be paid from the

Settlement Fund.  Plaintiffs' Counsel will file an application to the Court for a Fee and

Expense Award by October 18, 2013.

### G.    Release Provisions

If the Court grants final approval of the proposed Settlement, Class Members will be deemed to have released Defendant of all claims that were asserted or could have been asserted in the litigation, including the claims alleged in the five actions filed. Claims for personal injury, however, are excluded.  Stipulation at ¶ 25.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Settlement Approval Process

The Ninth Circuit has a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992)); *see also* HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise.").  There is an "overriding public interest in settling and quieting litigation," *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), and the Ninth Circuit "has long deferred to the private consensual decision of the parties" to settle, *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) *vacated on other grounds* 688 F.3d 645.

Where, as here, the parties propose to resolve the claims of a certified class through settlement, they must obtain the court's approval.  *See* Fed. R. Civ. Proc. 23(e)(1)(A).  The typical process for approving class action settlements is described in the MANUAL at §§ 21.632-.635 and is comprised of three steps:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing," or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*Id.* at §§ 21.632-.635.

This procedure, commonly employed by federal courts, serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of class members' interests.  *See* NEWBERG § 11.25.

Plaintiffs ask that the Court grant preliminary approval of the proposed Settlement.  At this stage, the Court "must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."  MANUAL § 21.632.  Courts should grant preliminary approval and direct notice to the class if the settlement has no obvious deficiencies and "falls within the range of possible judicial approval."  *Beck-Ellman v. Kaz USA, Inc.,* No. 10-cv-02134, 2013 WL 1748729, at *5 (S.D. Cal. Jan. 7, 2013); *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 666 (E.D. Cal. 2008); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079; NEWBERG, *supra*, § 11.25.

## B.  The Proposed Settlement is Fair and Meets the Requirements for Preliminary Approval

A proposed class action settlement is fair and should be preliminarily approved if the Court finds that:  (1) the negotiations leading to the proposed settlement occurred at arm's length; (2) there was sufficient discovery in the litigation for the plaintiff to make an informed judgment on the merits of the claims; and (3) the proponents of the settlement are experienced in similar litigation.  *Young v. Polo Retail,* No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *see also Rodriguez*, 563 F.3d at 965, ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999) ("a 'presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery'") (quoting MANUAL § 30.42 (3d ed. 1995)); NEWBERG, *supra*, § 11.41.  The Settlement easily satisfies these requirements.

13

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1.      **The Settlement Negotiations Were At Arm's Length.**

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented for Court approval."   NEWBERG, *supra*, §11.41; *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (great weight given to the recommendation of counsel who are the most closely acquainted with the facts of the litigation); *In re Employee Benefit Plans Secs. Litig.*, No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) (same).

There is no doubt that the proposed Settlement was reached through arm's length bargaining.  For approximately 15 months, the parties engaged in extensive, adversarial motion practice and discovery.  After key rulings on Defendant's Rule 12(b)(6) motion and motions to compel, but while the parties continued their work on briefing class certification, the Plaintiffs and Defendant engaged in formal mediation before a well-respected mediator, armed with sufficient discovery and well-researched and thought-out assessment of the likelihood of success at certification and the merits.  Moreover, the parties finalized a written settlement agreement after *four* mediation sessions, spanning a period of over seven months.

Additionally, the fact that the Settlement was overseen by an experienced mediator indicates the Settlement was anything but collusive.  *See, e.g., Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007); *In re Indep. Energy Holdings PLC*, No. 00-civ-6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003); *see also In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2012 WL 2598819, at *1, 2 (N.D. Cal. July 5, 2012).

2.      **Plaintiffs' Counsel Had Ample Discovery to Make an Informed Judgment on the Merits of the Claims.**

As described above, before engaging in settlement negotiations, Plaintiffs' Counsel undertook substantial factual discovery regarding class certification, liability and damages/restitution.  Plaintiffs' counsel reviewed more than 75,000 pages of

14

documents, approximately a terabyte of electronic data, and compelled additional responses to discovery by Defendant.  Moreover, Plaintiffs' Counsel undertook a significant amount of informal factual discovery and research.  Counsel analyzed all this information in light of relevant rulings by California District Courts and the Ninth Circuit.  Accordingly, Plaintiffs' Counsel made informed decisions when negotiating the proposed Settlement.

### 3.    Plaintiffs' Counsel, Who Are Highly Experienced in Class Action Procedure and the Claims at Issue in the Case, Believe the Settlement is Fair, Reasonable and Adequate.

In negotiating the proposed Settlement, Plaintiffs had the benefit of highly skilled and experienced counsel, as detailed in the Declarations of Marc L. Godino, Christopher Ridout, Rosemary M. Rivas, and Tina Wolfson and the firm resumes attached thereo.  Plaintiffs' Counsel have broad experience litigating and trying consumer and class action cases, particularly on behalf of plaintiffs.  In their view, the Settlement provides substantial benefits to the Settlement Class, especially when one considers the attendant expense, risks, delays, and uncertainties of litigation, trial and post-trial proceedings.

### 4.    The Risks of Litigation Support Approval.

The Settlement provides all of the significant benefits described above to the Class without the risks, costs, and delays inherent in continued litigation, trial, and appeal of Plaintiff's claims.  The expense, complexity, and duration of litigation are important factors considered in evaluating the reasonableness of a settlement.  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004).  Litigating this class action through trial would be time-consuming and expensive.  As with most class actions, the claims at issue are complex and risky.

Class certification always poses a risk and, in false advertising cases, often involves an expensive and prolonged battle of the experts in connection with certification, merits and damages issues.  If Plaintiffs were unable to certify a class, the

15

1   case would effectively be over, and the Class would gain nothing from continued

2   litigation.  Assuming Plaintiffs prevailed at class certification, proving liability on the

3   merits would require further risky litigation and additional expert work.  Even if

4   Plaintiffs successfully passed the certification and liability hurdles, a battle would ensue

5   concerning whether Plaintiffs and other Class Members have sustained damages and, if

6   so, the proper measure of those damages, requiring yet more expert testimony and

7   entailing further risks to Plaintiffs' and the Class's chances of recovery.  Although

8   Plaintiffs were and remain confident in the strength of their case and have been

9   prepared to litigate it through trial at all times, the risks were numerous and real.

10          By contrast, the Settlement provides significant cash benefits to the Class based

11   on the *full* retail price of their purchases within the Class Period, a remedy that Class

12   Members could hope to obtain through litigation only when and if they successfully

13   passed each and every one of the above hurdles.  Additionally, the Settlement provides

14   a stop to the "all natural" labeling and marketing practices at issue in the lawsuit, as

15   well as an extensive auditing process to ensure that the "non-GMO" marketing is

16   accurate.  A settlement that provides significant monetary relief to the Class, modifies

17   Defendant's advertising, and puts in place new standards regarding the composition of

18   Defendant's products is fair, reasonable and adequate.

19              **5.      The Settlement Presents No Deficiencies**

20                  **a.      The *Cy Pres* Beneficiaries Meet Ninth Circuit**

21                            **Requirements**

22          In *Dennis v. Kellogg Co.,* 697 F.3d 858, 865 (9th Cir. 2012), the Ninth Circuit

23   held that there must be a "driving nexus between the plaintiff class and the *cy pres*

24   beneficiaries[.]"  That case involved claims for false advertising where the parties

25   reached a settlement that provided for $5.5 million "worth" of Kellogg's food to be

26   donated to charities that feed the indigent.  In reversing the district court's order

27   granting final approval, the Ninth Circuit stated that any *cy pres* award must be "guided

28   by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class

members, and (3) must not benefit a group 'too remote from the plaintiff class.'" *Id.* at 865.

Here, to the extent the Settlement Fund Balance is not fully distributed to Class Members, any Residual Amount would be distributed to the Mayo Clinic, the NAIP and the Legal Aids.  The Class in this case is comprised of U.S. consumers who bought juices and smoothies labeled as "all natural," "non-GMO," "From Concentrate," "100% Fruit," and "100% juice," demonstrating that these Class Members have an interest in consuming healthy and nutritious foods.  Moreover, the underlying statutes alleged in the litigation are intended to protect the public from false advertising and unfair and deceptive business practices.

The Mayo Clinic meets the Ninth Circuit's requirements as one of its missions is to combat misinformation and provide consumers with education on reading food labels and the most up to date knowledge on nutrition issues, thereby benefiting the interests of the Class and meeting the objectives of the underlying claims.  Malone Decl. ¶¶ 3-13.

The NAIP and the Legal Aids also meet the requirements articulated in *Dennis.* Any *cy pres* funds received by NAIP and the Legal Aids will be used for promoting consumers' rights, including educating, advising, and representing consumers are the victims of false advertising and unfair and deceptive business practices.  *See, e.g.,* Scruggs Decl. ¶¶ 6-8; Bowman Decl. ¶ 7; Cesario Decl. ¶ 8.  The NAIP and the Legal Aids benefit the interests of Class members and serve the objectives of the underlying statutes at issue in the litigation.

### b.   Plaintiffs' Counsel's Anticipated Application for Attorneys' Fees

District courts have the discretion to award attorneys' fees based on a percentage of the common fund or based on the lodestar method.  *See In re Wash. Pub, Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994).   Additionally, attorneys may recover their reasonable expenses from a common fund.  *See In re Omnivision*

*Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008).  Here, Plaintiffs' counsel will apply to the Court no later than October 18, 2013 for an award of attorneys' fees and expenses not to exceed $3,120,000 and will make a full presentation in their application for attorneys' fees.  Ultimately, this Court will determine the amount of fees to award and this should not prevent granting preliminary approval to the settlement.

## V.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

The use of settlement classes is common and proper in the resolution of class action lawsuits.  *See, e.g., Gribble v. Cool Transports,* No. CV 06-04863, 2008 WL 5281665, at *3 (C.D. Cal. Dec. 15, 2008) (certifying class for settlement purposes only); *In re Connecticut General Life Ins. Co.,* No. MDL 1136, CV 95-3566, 1997 WL 910387, at *1 (C.D. Cal. Feb. 13, 1997) (certifying for the purposes of settlement, the settlement class defined in the settlement agreement).

Here, the Class is defined as:

> All persons and entities in the United States who purchased one or more of the Eligible Products from September 27, 2007 up to and including the Notice Date.

Settlement ¶ 6.

The Settlement sets forth an identifiable class.  Because it meets all the requirements of Rule 23, it should be certified for settlement purposes.

### 1.   The Class Satisfies the Numerosity Requirement

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable."  Numerosity is undisputed.  Defendant is one of the largest fruit beverage manufacturers in the United States.  Plaintiffs allege, and discovery confirmed, that hundreds of thousands of Defendant's products were sold nationwide during the Class Period.  Although Plaintiffs do not know the precise numbers of Class Members, the Settlement Administrator estimates a class size of approximately 8.5

1    million and Defendant estimates that there are 16.5 million Class Members.

2    Stipulation, Exh. I ¶ 14.  Either figure easily satisfies the numerosity requirement.

3    ###  2.      The Class Satisfies the Commonality Requirement

4         Rule 23(a)(2) requires that "there [be] questions of law or fact common to the

5    class."  "Commonality requires the plaintiff to demonstrate that the class members have

6    suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

7    (2011).  This means that the class members' claims "must depend on a common

8    contention . . . of such a nature that it is capable of classwide resolution – which means

9    that determination of its truth or falsity will resolve an issue that is central to the

10   validity of each one of the claims in one stroke."  *Id.*  This requirement is also satisfied.

11        The commonality requirement is met for the Class because the claims of all Class

12   Members arise from the same contentions, namely, that Defendant misleadingly labeled

13   its Products as "All Natural" and "non-GMO" even though they contained synthetic,

14   man-made and genetically modified substances.  Thus, the determination of whether the

15   Defendant's advertising is or is not misleading will resolve a central issue on a class-

16   wide basis in "one stroke."

17   ###  3.      Plaintiffs Meet the Typicality Requirement

18        Rule 23(a)(3) requires that "the claims or defenses of the representative parties

19   are typical of the claims or defenses of the class."  This requirement is also satisfied.

20   Courts consistently find that the typicality requirement is met if the claims arise from a

21   common course of conduct. Typicality does not require the claims to be substantially

22   identical.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Rather, the

23   Ninth Circuit has found typicality if the requisite claims "'share a common issue of law

24   or fact' . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all

25   claims for relief.'"  *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d

26   1171, 1175 (9th Cir. 1990) (citations omitted), amended, 937 F.2d 465 (9th Cir. 1991).

27        Plaintiffs, like other Class Members, bought Defendant's Products based upon

28   identical, written representations prominently displayed on the labeling that the juices

---

19

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1   and smoothies were "All Natural" and "non-GMO," among other things.  Because

2   Plaintiffs are members of the proposed Class, and assert consumer fraud claims on

3   behalf of themselves and all absent Class Members based upon Defendant's uniform

4   conduct and series of identical misrepresentations, their claims are typical.

5               **4.      The Plaintiffs Satisfy the Adequacy Requirement**

6           Rule 23(a)(4) requires that "the representative parties will fairly and adequately

7   protect the interests of the class."  "Resolution of two questions determines legal

8   adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest

9   with other class members, and (2) will the named plaintiffs and their counsel prosecute

10  the action vigorously on behalf of the class?"  *Hanlon,* 150 F.3d at 1020.  There are no

11  conflicts of interest alleged or that could possibly exist here.  Plaintiffs seek the exact

12  same remedy as all class members: namely, relief to address the claims that Defendant

13  misrepresented and misbranded its Products for purposes of enticing individuals to buy

14  its Products when in fact they contained synthetic, man-made substances and

15  genetically modified organisms that rendered them non-natural.  Plaintiffs' interests,

16  therefore, are perfectly aligned with the interests of the Class.

17          The adequacy of Plaintiffs and their counsel is evidenced by the Settlement

18  negotiated with Defendant, which provides for significant relief to the Class and the

19  public at large.  Further, counsel for Plaintiffs are highly experienced in class action

20  litigation, and have been involved in many class action settlements and actions which

21  further warrants preliminary approval of the Settlement.

22              **5.      The Class Satisfies the Criteria of Rule 23(b).**

23          To certify a class under Rule 23(b)(3), this Court must find that the questions of

24  law or fact common to class members predominate over any questions affecting only

25  individual members, and the class action is superior to other available methods for the

26  fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

27          Both criteria are met in this case.  The primary purpose behind Rule 23(b)(3) is

28  the vindication of the rights of people who would not have the economic power or

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

1   incentive to bring a wrongdoer into court to redress a wrong imposed on them.

2                        **a.      Common Questions Predominate**

3          The predominance inquiry considers whether "questions of law or fact common

4   to the class will predominate over any questions affecting only individual members as

5   the litigation progresses." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds,* 133 S.

6   Ct. 1184, 1195 (2013).  This analysis starts with the underlying causes of action.  *Erica*

7   *P. John Fund, Inc. v. Halliburton Co.,* 133 S. Ct. 2179, 2184 (2011).

8          Plaintiffs' claims here center on two questions:  (1) the alleged falsity of

9   Defendant's representations; and (2) whether reasonable consumers were likely to be

10  deceived.  Under the California consumer protection laws at issue, whether consumers

11  were likely to be deceived is an objection standard and most importantly, the focus is on

12  the defendant's conduct, not the plaintiff's.  *Williams v. Gerber*, 552 F.3d 934, 938 (9th

13  Cir. 2008); *Yokayama v. Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1089, 1094 (9th

14  Cir. 2010).  Given the objective standard and focus on Defendant's conduct, common

15  questions of law and fact predominate.

16                  **b.      A Class Action Is The Superior Method For The Fair  And**
17                           **Efficient Adjudication Of This Controversy**

18         This case also meets the second requirement of Rule 23(b)(3): that the class

19  action be "superior to other available methods for the fair and efficient adjudication of

20  the controversy."  To determine the issue of "superiority," Rule 23(b)(3) enumerates the

21  following factors for courts to consider:

22
23         (A) [T]he interest of members of the class in individually controlling the
           prosecution . . . of separate actions; (B) the extent and nature of any litigation
24         concerning the controversy already commenced by . . . members of the class; (C)
           the desirability . . . of concentrating the litigation of the claims in the particular
25         forum; and (D) the difficulties likely to be encountered in the management of a
           class action.
26
27  Each of these factors counsels in favor of certifying the Class.

28

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

**i.      The Individual Class Members' Interest in Controlling the Litigation**

First, there is little interest or incentive for Class Members to individually control the prosecution of separate actions.  Each Class member's individual claim is too small to justify the potential litigation costs that would be incurred by prosecuting these claims individually.  *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas*, 244 F.3d 1152, 1163 (9th Cir. 2001); *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175–76 (9th Cir. 2010).  Although the injury resulting from Defendant's alleged misrepresentations to the Class are real and significant, the cost of individually litigating such a case against Defendant would easily exceed the value of any relief that could be obtained by any one purchaser.  This factor alone warrants a finding that a class action is a superior method of adjudication.  *See Tchoboian v. Parking Concepts, Inc*., No. SACV 09-422, 2009 WL 2169883, at *7 (C.D. Cal. Jul. 16, 2009).  Because the claims of each Class Member in this case are virtually identical, no one member of the Class would have a materially greater interest in controlling the litigation.  *See Westways World Travel, Inc. v. AMC Corp.,* 218 F.R.D. 223, 240 (C.D. Cal. 2003).

**ii.      Extent and Nature of Litigation Already Commenced by Class Members**

Except for the underlying cases that were consolidated in this Court, Plaintiffs are unaware of any other actions by Class Members against Defendant asserting similar claims as here.  This factor also militates in favor of certification.

**iii.      The Desirability of Concentrating the Litigation In a Particular Forum**

Third, certification would be superior because concentrating this litigation in one forum would not only prevent the risk of inconsistent outcomes but would also "reduce litigation costs and promote greater efficiency."  *Negrete v. Allianz Life Ins. Co. of North America,* 238 F.R.D. 482, 493 (C.D. Cal. 2006).  This "factor emphasizes the

22

desirability of the forum selected, not the desirability of claims concentration generally." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 524 (D.N.J. 1997). The Central District is a compelling forum for this action as Defendant markets the Products from this District and the alleged conduct emanated from this District.

### iv.   This Case is Manageable As a Class Action

Finally, the question here is "whether reasonably foreseeable difficulties render some other method of adjudication superior to class certification." *Id.* at 525. As the Supreme Court has held, manageability issues will not foreclose certification for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). Therefore, there are no serious manageability difficulties presented by conditionally certifying this case for settlement purposes, such as choice of law issues. A number of recent decisions from the Central District of California have certified nationwide classes under California law for litigation and settlement purposes. *See In re Pom Wonderful LLC Mktg. & Sales Practices Litig.*, No. MDL 2199, 2012 U.S. Dist. LEXIS 141150 (C.D. Cal. Sept. 28, 2012) (litigation class certified); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 546-47 (C.D. Cal. 2012) (same); *Johnson v. General Mills,* No. 10-00061, 2013 WL 3213832, at *1 (C.D. Cal. June 17, 2013) (settlement purposes). As this case will not go to trial if finally approved, all that would remain is claims administration if the Settlement is granted final approval. Hence, Plaintiffs have satisfied the requirements of Rule 23(b)(3).

## VI.   <u>THE PROPOSED CLASS NOTICE IS CONSTITUTIONALLY SOUND</u>

Class notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Trust,* 339 U.S. 306, 314

23

(1950).  Notice also must satisfy Rule 23(c)(2)(B), which provides that the notice must clearly and concisely state the following in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the proposed notice program is designed to reach 80% of the Class, which is reasonable under the circumstances.  *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080 ("because defendants do not have a list of class members [] the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and [] settlement"); *Bellows v. NCO Fin. Sys.*, No. 3:07-cv-01413-W-AJB, 2008 WL 4155361, at *9 (S.D. Cal. Sept. 5, 2008) (summary notice in *USA Today*, with national distribution further directing class members to a settlement website was the best notice practicable under the circumstances).  Moreover, the Summary Notice and Long Form Notice are written in easy and plain language and contain the information required by Rule 23(c)(2)(B).  Stipulation, Exhs. E and G.  Accordingly, the forms of notice and plan of dissemination should be approved.

## VII.   <u>PROPOSED SCHEDULE</u>

Plaintiffs propose the following schedule for the approval process.  If the Court grants preliminary approval, these dates will be incorporated in the [Proposed] Order Certifying Class for Settlement Purposes, Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to the Class.

| Event | Date |
|-------|------|
| Initial Date for Publishing Notice | **August 12, 2013** |
| Deadline for Completing Notice Program | **October 12, 2013** |
| Deadline for Plaintiffs' Counsel to file any Motion for Award of Attorneys' Fees and Service Payments | **October 18, 2013** |
| Deadline for Plaintiffs' Counsel to file Motion for Final Approval of Class Action Settlement and Report Verifying Dissemination of Notice | **October 28, 2013** |
| Deadline for Class members to submit objections to the proposed Settlement or requests for exclusion | **November 11, 2013** |
| Deadline for Parties to Respond to any Objections | **November 25, 2013** |
| Final Approval Hearing | **December 2, 2013** |
| Deadline to Submit a Claim Form | **December 10, 2013** |

## IX.   CONCLUSION

The proposed Settlement is fair, presents no obvious deficiencies, and therefore falls within the range of possible approval.  Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Order Certifying Class for Settlement Purposes, Granting Preliminary Approval of Class Action Settlement and Directing Dissemination of Notice to Class.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

Dated: July 2, 2013          Respectfully Submitted,

**AHDOOT & WOLFSON, PC**

/s/ Robert Ahdoot
Tina Wolfson
Robert Ahdoot
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Phone: (310) 474-9111/Fax: (310) 474-8585

*Interim Co-Lead Counsel for Plaintiffs*

**FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas
505 Montgomery Street, Suite 300
San Francisco, California 94111
Phone: (415) 398-8700/Fax: (415) 398-8704

*Interim Co-Lead Counsel for Plaintiffs*

**RIDOUT, LYON & OTTOSON, LLP**

/s/ Christopher Ridout
Christopher Ridout
555 E. Ocean Blvd., Suite 500
Long Beach, California 90802
Phone: (562) 216-7380/Fax: (562) 216-7385

*Interim Co-Lead Counsel for Plaintiffs*

**GLANCY BINKOW & GOLDBERG LLP**
Marc L. Godino
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Phone: (310) 201-9150/Fax: (310) 201-9160

*Attorneys for Plaintiff, Gina Park (Executive Committee to Interim Co-Lead Counsel)*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL

### **Attestation of Filer**

Pursuant to Local Rule 5-4.3.4, the undersigned filer hereby attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  July 2, 2013                                    /s/ Robert R. Ahdoot
                                                       Robert R. Ahdoot

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL