UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 119)**

### I.    Introduction

In 2011, five separate, putative class actions were brought against Naked Juice Co. of Glendora, Inc. ("Defendant"); each alleged that Defendant misrepresented various beverage products as "All Natural," "100% Juice," "100% Fruit," "From Concentrate," and "Non-GMO," among other things, in violation of state and federal law. Dkt. 119, pp. 2-3. The five cases were consolidated into this action on February 6, 2012. Dkt. 35. Lead counsel for the putative class members was designated by the Court on March 5, 2012. Dkt. 38. After extensive negotiations overseen by a mediator, the parties reached a settlement. They now bring this motion for preliminary approval of the class action settlement (the "Motion"). Dkt. 119. One of the original plaintiffs, Sara Sandys, objected to the proposed settlement. Dkt. 131. The Court conducted a hearing on this matter on July 29, 2013 and called for supplemental briefing as to certain issues. Dkt. 140. That briefing was submitted. Dkt. 137, 139, 141, 142. Sandys has not filed any further objections to the supplemental briefing. For the reasons stated in this Order, the Motion is GRANTED.

### II.    Factual and Procedural Background

As noted, this proceeding is the result of the consolidation of five separate, putative class actions initiated by five distinct plaintiffs. The actions were consolidated on February 6, 2012, with the *Pappas* case designated as the "Lead Case." Dkt. 35. Lead class counsel was designated on March 5, 2012. Dkt. 38. Plaintiffs then filed a Consolidated Class Action Complaint ("CAC") on March 19, 2012. Dkt. 40. Defendant filed a motion to dismiss the CAC. Dkt. 41. Defendant's motion to dismiss was granted in part, *i.e.*, with respect to the labels "100% Juice" and "From Concentrate," and Plaintiffs' federal warranty claims, but was denied as to the remaining claims. Plaintiffs then filed a Consolidated First Amended Complaint on June 5, 2012. Dkt. 63. It is the operative complaint in these actions.

The parties engaged in substantial document discovery over the course of several months. Certain discovery disputes arose that led to several motions to compel that were presented to Magistrate Judge

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Abrams. Dkt. 119, p. 5. Plaintiffs estimate that they received approximately 75,000 pages of documents from Defendant and an additional terabyte of electronic information through non-party discovery. *Id.* Plaintiffs' counsel also undertook substantial work preparing for class certification. *Id.* at 6.

Following the completion of this discovery, the parties began settlement negotiations. These discussions were overseen and facilitated by Judge Carl J. West, who retired from the bench after extensive service on the Los Angeles County Superior Court, which included presiding over many class action cases. The parties attended their first session with Judge West on October 10, 2012. *Id.* The first mediation did not result in settlement. *Id.* The parties attended a second mediation session with Judge West in December 2012. *Id.* The second mediation did not result in settlement. *Id.* The parties attended a third mediation session with Judge West in January 2013, at which they reached an agreement in principle. *Id.* The parties then spent the next several months finalizing the terms of their agreement and reducing it to writing. *Id.* Due to certain disputes that arose during this process, the parties attended a fourth session with Judge West in May 2013. *Id.* As a result, the parties were able to finalize their written agreement on July 2, 2013. *Id.* at 6-7.

### III.   The Terms of the Proposed Settlement

#### A.   Settlement Class

The proposed Settlement Class is defined as: "All persons and entities in the United States who purchased one or more of the Eligible Products[1] from September 27, 2007 up to and including the Notice Date."[2] Dkt. 119, p. 18. The parties contend that this Class should be certified for settlement purposes because it meets the requirements of Rule 23. *Id.*

#### B.   Settlement Fund

Under the terms of the proposed settlement, Naked Juice will pay $9 million to a Settlement Fund. Dkt. 119, p. 7. The Settlement Fund will be applied to the following: cash payments to Class Members; the costs of notice and settlement administration; payment of any attorney's fees and expenses awarded by the Court; and payment of any incentive awards to named Plaintiffs that are approved by the Court. *Id.* Defendant is not entitled to a reversion of any residual funds; any such funds will be distributed to certain, specified non-profit organizations under the *cy pres* doctrine. *Id.*

---

1. The "Eligible Products" are a list of Naked Juice products, set forth in Paragraph 14 of the Stipulation of Settlement. *See* Dkt. 118, ¶ 14.
2. Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

### C. Payments to Class Members

To qualify for a cash payment, a Class Member must complete and submit a short Claim Form. It can be submitted either by U.S. Mail or on the Settlement Website: www.NakedJuiceClass.com. *Id.* Class Members with a proof of purchase, *i.e.*, a receipt or other documentation showing the purchase of Eligible Products during the Class Period, are eligible to receive full reimbursement of the amounts paid for the purchase of the Eligible Products, up to a maximum of $75.00. *Id.* at 7-8. Class Members who do not have proof of purchase are eligible to receive payments between $5.00 and $45.00, depending on the amount paid at retail for the Eligible Products. *Id.* at 8.

### D. Attorney's Fees

Plaintiffs' counsel will apply to the Court for an award of attorney's fees and litigation costs in an amount not to exceed $3,120,000. *Id.* at 11. Plaintiffs' counsel will file an application for a fee award on or before October 18, 2013. *Id.*

### E. Incentive Awards for Lead Plaintiffs

Plaintiffs' counsel will apply for incentive awards in the amount of $2,500 for Plaintiffs Pappas, Marchewka, Park, and Evans. *Id.*[3]

### F. *Cy Pres* Awards

If after all the foregoing amounts are paid, and residual funds remain in the Settlement Fund, all such funds will be distributed to the following nonprofit organizations in the relative shares that are stated for each: Mayo Clinic (50%); National Association of IOLTA Programs ("NAIP") (25%); and equal, pro rata shares to seven legal aid organizations (combined 25%). *Id.* at 8.

### G. Injunctive Relief

The settlement also imposes injunctive relief as to Naked Juice. Thus, Defendant will:
- Redesign the products' labels, marketing, and advertising to eliminate the use of the "All Natural" language on future labels and marketing materials and media, and substantiate the "Non-GMO" claim, which Plaintiffs alleged were false and misleading.
- Establish, for at least three years, a verification program through an independent testing organization to confirm the accuracy of the "Non-GMO" statement on Naked Juice product labels. The program will involve, among other things, periodic testing of finished product to confirm the accuracy of the Non-GMO statement on the product label.

---

3. The settlement does not provide for an award to the fifth original plaintiff, Sara Sandys. There is no evidence presented that she was involved in the settlement negotiation process. Sandys states that she asked the Interim Co-Lead Class Counsel to provide her drafts of settlement papers, but that they were not sent to her. *See* Dkt. 131, p. 3 fn. 1-2. She has made no request for an incentive award.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

- Hire or assign, for a period of at least five years, a quality control manager to oversee the independent testing process for the Naked Juice product line.
- Establish and maintain a database to electronically track and verify product ingredients for the Naked Juice line.

*Id.* The settling parties contend that the cost of these actions will be approximately $1.4 million and that this amount should be included in the overall value of the settlement. *Id.* at 9-10; *see* Theodore Decl., Dkt. 118, Exh. H, ¶¶ 4-7.

### H.  Notice Procedures

The notice plan was designed by experts with substantial experience in this field. The plan resulted from negotiations between the parties. Dkt. 119, p. 10.

The primary means of providing notice will be through online banner and pop-up advertisements,[4] which will be displayed on relevant websites through two Internet ad agencies.[5] *Id.* at 10-11; Vasquez Decl., Dkt. 118, Exh. I, ¶ 40. Those advertisements will contain links to the Settlement Website, www.NakedJuiceClass.com. *See* Dkt. 139, Exh. A. In addition, there will be a sponsored link to the Settlement Website on various search engines that will appear when users search for keywords related to the campaign. *See* Vasquez Decl, Dkt. 118, Exh. I, ¶¶ 37-38.

There will also be a print notice program. The Summary Notice will be published in *Parade* and *People* magazines and *USA Today*. *Id.* at ¶ 32. The publication in *People* will be nationwide, while the publications in *Parade* and *USA Today* will only appear in publications that are distributed in California, other western states, and certain northeast states. *Id.* The publications and geographic locations of such advertisements were selected based on a demographic analysis of where likely Class Members reside. *Id.* The Long Form Notice will be available at the settlement website and through a toll-free number. *Id.* at ¶¶ 45, 47. The parties estimate that the notice program will reach at least 85% of the Class Members, and that each such member will be reached at least three times during the notice process. Dkt. 119, p. 11; *see* Dkt. 118, Exh. I, Exh. 7. Plaintiffs' counsel will also place links to the settlement website on their respective homepages for the entire notice period. Dkt. 119, p. 11.

---

4. The parties submitted a sample pop-up ad, which reads: "If You Purchased Naked Juice Products DATE XX, XXXX Through DATE XX, XXXX You May Be Entitled to Cash Compensation. You are eligible for up to $75 with proof of purchase, or up to $45 without. Call 1-XXX-XXX-XXXX or Click Here To Learn More." Dkt. 134, Exh. A. Users who see the pop-up ad and click on the link will be directed to the Settlement Website.
5. The ad campaign will target websites that are frequented by individuals who exhibit the demographic and consumer behavioral characteristics of the target audience of likely Naked Juice consumers. Vasquez Decl., Dkt. 118, Exh. I, ¶¶ 40-42. Throughout the settlement period, the ad agencies will evaluate the effectiveness of the campaign and make adjustments designed to increase the number of claims by targeting those websites that generate higher numbers of clicks and submitted claims. *Id.* at ¶ 44.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

### IV. Analysis

#### A. The Standard for Preliminary Approval

Fed. R. Civ. Proc. 23(e) requires a two-step process in considering the approval of a class action settlement. First, the Court must determine whether the proposed settlement warrants preliminary approval. Preliminary approval is appropriate where the proposed settlement is within the range of what might be found fair, reasonable and adequate. *See Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007). Following preliminary approval, notification to class members, and the compilation of information as to any objections by class members, in the second step of the process, the Court is to determine whether final approval of the settlement should be granted.

Numerous factors apply in evaluating the fairness of a proposed class action settlement. In the Ninth Circuit, the following eight, non-exclusive factors may be considered:

1) the strength of the plaintiff's case;
2) the risk, expense, complexity, and likely duration of further litigation;
3) the risk of maintaining class action status throughout the trial;
4) the amount offered in settlement;
5) the extent of discovery completed and the stage of the proceedings;
6) the experience and view of counsel;
7) the presence of a governmental participant; and
8) the reaction of the class members to the proposed settlement.

*See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Each factor does not necessarily apply to every class action settlement. In determining whether preliminary approval is warranted, the Court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process.

#### B. Application

An initial application of the foregoing factors to the evidence presented in the Motion demonstrates that the Motion should be granted. The parties and their experienced counsel have engaged in extensive, arms-length negotiations before a sophisticated neutral who has substantial experience in overseeing class action proceedings. Such a process is likely to produce a settlement that fairly addresses the strength of Plaintiffs' case, the risks and expense of continued litigation, and the risks associated with maintaining class action status throughout a trial. In addition, the proposed settlement of $9 million, plus the injunctive relief valued at $1.4 million, is within the reasonable range of recovery for this case.[6] In addition, the parties engaged in substantial discovery, which supports a finding that the settlement is reasonable when measured against both the strength of Plaintiffs' case and the risks of continued litigation.

---

6. The Court has assessed the amount in light of information submitted under seal regarding Defendant's net profits with respect to the sales that underlie the claims in this case.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

As noted, Sara Sandys, has objected to the proposed settlement on three principal bases. Dkt. 131. None is persuasive.

*First*, Sandys objects to the $3,120,000 in attorney's fees and costs that Plaintiffs' counsel plans to seek upon a motion for final approval. Sandys contends that this amount is too high, considering the total amount of the award and the costs that will be incurred in notice and administration. *Id.* at 4. The precise amount of fees that will be awarded will not be determined until later in the proceedings. At that time, the Court will undertake the required analysis, using lodestar and other methodologies. For purposes of the Motion, the amount sought, which is approximately one-third of the total claimed value of the settlement, is not *per se* unreasonable or greater than the percentage of fees and costs awarded in other consumer products class actions.

*Second*, Sandys argues that the *cy pres* recipients are improper. *Id.* at 5-7. She argues that the work of the organizations selected is not sufficiently related to the types of consumer claims at issue in this case. *Id.* The other Plaintiffs argue that the *cy pres* recipients are proper under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). Dkt. 132, p. 7. The Court finds that the *cy pres* recipients are sufficiently related to the underlying claims to warrant their receipt of potential *cy pres* awards. Plaintiffs submitted declarations from each of the legal aid *cy pres* recipients, as well as NAIP, stating that the funds will be used for consumer protection work. *See, e.g.*, Scruggs Decl., Dkt. 126, ¶ 6 ("NAIP intends to direct *cy pres* funds . . . to legal aid programs and organizations in the strongest position to carry out consumer protection cases, including unfair and deceptive trade practices and false advertising cases."); Cypen Decl., Dkt. 127, ¶ 6 ("LSGMI intends to employ *cy pres* funds to protect consumers from false advertising and deceptive business practices, and promote consumer protection."). The Mayo Clinic performs substantial work educating the public on nutrition, vitamins, and food and beverage labels. Melvin Decl., Dkt. 119-5, ¶¶ 3-8. The Mayo Clinic states that it will use any funds to "support its nationwide education and research efforts around nutrition, vitamins, and food and beverage labels." *Id.* at ¶ 13.

*Third*, Sandys challenges the sufficiency of the notice that will be provided to Class Members. Dkt. 131, p. 7-9. She argues that the settlement provides notice only to potential class members in certain regions of the country, including through publications distributed in California, other western states and certain states in the northeast. *Id.* p. 8. In addition, she argues that there is no requirement of notice appearing on the home page of Naked Juice – www.NakedJuice.com. Instead, as noted, all settlement publications will appear on a special, settlement website – www.NakedJuiceClass.com. *Id.* p. 9. The other Plaintiffs argue that the notice plan targets "a population fitting the demographics of likely purchasers of Naked Juice." Dkt. 132, p. 12. The parties' Internet advertising campaign, which is the primary means for reaching Class Members, is not limited to particular geographic areas. And, it is sophisticated and designed to target likely Class Members. That the print notice will not appear in all geographic areas does not make the overall effort inappropriate or insufficient. These specific geographic areas are ones that have been identified as where a significant portion of the potential claimants live. Further, given that the core of notice effort is by the Internet through sophisticated methods of directing notice to the targeted class members, the selection of specific geographic areas for print notice is reasonable. The parties also explained, at the July 29, 2013 hearing, that their decision not to place information or a link to the settlement website on the Naked Juice website was the result of compromise among the parties, and was premised on experience that such notice is not particularly effective, and not more effective than the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | August 7, 2013 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

notice methods that have been selected. *See* Hearing Trans., Dkt. 135, pp. 20-21. In light of all of the elements of the notice process, Sandys' objections are unpersuasive.

### V.     Conclusion

For the foregoing reasons, the Motion is GRANTED. On or before August 14, 2013, the parties shall submit a stipulation and proposed order regarding their proposed schedule for completion of the notice and settlement approval process.

**IT IS SO ORDERED.**

:

Initials of Preparer     ak