Tina Wolfson (SB No. 174806)
twolfson@ahdootwolfson.com
Robert Ahdoot (SB No. 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2355 Westwood Boulevard
Los Angeles, CA 90064
Telephone: (310) 474-9111/Facsimile: (310) 474-8585

Rosemary M. Rivas (SB No. 209147)      Christopher Ridout (SB No. 143931)
rrivas@finkelsteinthompson.com         c.ridout@ridoutlyon.com
**FINKELSTEIN THOMPSON LLP**          **RIDOUT, LYON + OTTOSON LLP**
100 Bush Street, Suite 1450            555 E. Ocean Blvd., Suite 500
San Francisco, CA 94104                Long Beach, CA 90802
Telephone: (415) 398-8700              Telephone: (562) 216-7380
Facsimile: (415) 398-8704              Facsimile: (562) 216-7385

*Class Counsel*
[Additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PAPPAS, on behalf of him/herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NAKED JUICE CO. OF GLENDORA, INC., a California Corporation,<br><br>Defendants. | Case No. 2:11-cv-8276-JAK-PLA<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF SARA SANDYS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**<br><br>Date: December 2, 2013<br>Time: 8:30 a.m.<br>Ctrm: 750, Roybal<br>Judge: Honorable John A. Kronstadt |

i

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................1

II.  THE PURPORTED FEES AND EXPENSES ARE EXCESSIVE
     AND PROVIDED NO BENEFIT TO THE CLASS.......................................3

     A. Sandys' Counsel's Time Records Are Excessive And Reveal
        No Efforts That Resulted In The Settlement Or That Enhanced
        The Benefits To The Class..........................................................3

        1.  Work Devoted to the Complaint...........................................3

        2.  Work Devoted to Seeking Appointment as Interim Co-Lead
            Counsel, Disputing Consolidation, and Disputing the Appointment
            of Ahdoot & Wolfson, Finkelstein Thompson LLP, and Ridout
            Lyon & Ottoson LLP as Interim Co-Lead Counsel..............................4

        3.  Work Relating to Defendant's Motion to Dismiss............................6

        4.  Work Relating to Discovery.................................................7

        5.  Work Related to Objecting to the Settlement...............................7

     B.  The Expenses Claimed by Sandys' Counsel Are False and Excessive....................7

III. THE COURT SHOULD DENY PLAINTIFF SANDYS' MOTION...........................8

     A. Legal Standard Regarding Attorneys' Fees.........................................8

     B. Sandys' Counsel's Efforts Did Not Confer any Benefit to the Class and
        Do Not Merit an Award from the Common Fund Created by the Settlement..........9

     C. Sandys' Counsel Did Not Substantially Enhance the Benefits to the Class..........13

IV. CONCLUSION.................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ..........................................8

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) .......9, 13

*Hartless v. Clorox Co.*, 273 F.R.D. 630, 647 (S.D. Cal. 2011) ....................................8, 13

*In re Heritage Bond Litig.*, 02-ML-1475 DT, 2005 WL 1594403 at *24
   (C.D. Cal. June 10, 2005) ..............................................................................8, 10

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007) ......................10

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ..............................9

*In re People Soft, Inc. Sec. Litig.*, No. C99-00472 WHA, Slip op. at 15
   (N.D. Cal. Aug. 24, 2001)..............................................................................11

*Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002) ..............................9

*Robbins v. Alibrandi,* 127 Cal. App. 4th 438, 448 (2005)..........................................8

*Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012)..........................................9

*Staton v. Boeing,* 327 F.3d 938, 946 (9th Cir. 2003) ..........................................9

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051-52 (9th Cir. 2002) ....................8, 9, 13

# I.    **INTRODUCTION**

Plaintiff Sara Sandys' ("Sandys") Motion for Attorneys' Fees and Reimbursement of Expenses should be denied because her counsel did not perform ***any*** work that resulted in the Settlement or that substantially enhanced the benefits to Class members.  In fact, Sandys and her counsel were only minimally involved in the litigation at the outset when they filed a complaint and disputed the appointment of Interim Counsel, and then at preliminary approval when they filed written objections challenging the very Settlement from which they now seek an award of fees and costs.

While Sandys' Counsel frame their motion as one seeking an award of fees authorized by the Settlement agreement before the Court, that Settlement does not provide for an award of fees to Sandys' counsel.  ECF No. 118 ¶¶ 7, 22, 59-60.[1] Moreover, Sandys' Counsel actually filed an *opposition* to preliminarily approval of the Settlement. ECF No. 131.  Sandys' Counsel can hardly claim to be responsible for the Settlement they opposed, and Sandys' Counsel fail to enunciate how their efforts in this litigation have benefited the Class to whom the Settlement confers its benefits.

Additionally, the amount sought, $615,003.71, and the 1,051 hours claimed, are extremely excessive.  To put these figures in context, Sandys' Counsel's combined lodestar and expenses are higher than those of the Finkelstein Thompson LLP firm, which are approximately $529,546.  Appointed Class Counsel, Finkelstein Thompson LLP[2] was substantially involved throughout the entire duration of the litigation, and

---

[1]    All references to "ECF No." refer to entries on the docket of the Case, no. 2:11-cv-8276, unless otherwise specified. Capitalized terms have the meaning ascribed to them in the Settlement, ECF No. 118, unless otherwise stated.

[2]    On March 5, 2012, the Court appointed Finkelstein Thompson, LLP, Ridout, Lyon + Ottosson, LLP and Ahdoot & Wolfson PC as Interim Co-Lead Counsel (ECF Nos. 38 and 39).  The firm of Glancy, Binkow & Goldberg, LLP worked with Interim Lead Counsel as a member of the Executive Committee of counsel.

performed a significant portion of the work in this case, such as drafting numerous pleadings and briefs, which actually led to the Settlement.

Sandys' Counsel's claimed hours are also more than the hours expended by Ridout Lyon + Ottoson LLP, a firm also appointed Class Counsel, which expended 1,004 hours during the entire course of the litigation.  Among other things, Ridout Lyon + Ottoson LLP worked on the briefing and was one of the firms for Plaintiffs primarily involved in the hard-fought settlement negotiations with Defendant.

Sandys' Counsel's hours and lodestar are also double that of Plaintiffs' Counsel Glancy Binkow & Goldberg LLP which was involved throughout the litigation and expended 371 hours for a lodestar of $208,487.  Glancy Binkow & Goldberg LLP's contributions to this case included working on the motion for class certification and the overall Settlement.

Moreover, the 1,051 hours claimed by Sandys' Counsel are almost double the hours expended by Class Counsel Tina Wolfson of Ahdoot & Wolfson PC who led Plaintiffs' litigation efforts and was involved in every aspect of the litigation. Ms. Wolfson expended a total of 617.50 hours throughout the entire litigation and spearheaded Plaintiffs' discovery efforts, including successful discovery motion practice, argued various motions before the Court, worked on certification -related issues, worked with Plaintiffs' experts and consultants, and was one of Plaintiffs' primary contacts with Defendant's counsel, among other tasks.

To make matters worse, the records submitted by Sandys' counsel in support of their motion indicate they are seeking compensation for approximately ***571 hours, or $315,152 in fees, on seeking appointment of Interim Counsel***.  The records also show time spent working on entirely different matters – chiefly, unrelated litigation concerning "all natural" representations in connection with "Kashi" branded food products.

Simply put, Sandys' Counsel's fee and expense request from the Settlement Fund is untenable. Any such award will result in an unwarranted reduction in the amount of money available to pay Class member claims. Because Sandys' Counsel's work did not

1  produce the Settlement, or enhance the benefits it presents to Class members, there are no
2  valid reasons to charge the Class for the purported "work" Sandys' Counsel performed,
3  especially when such hours are significantly inflated.  Accordingly, Sandys' motion
4  should be denied.

5  **II.   THE PURPORTED FEES AND EXPENSES ARE EXCESSIVE AND**
6  **PROVIDED NO BENEFIT TO THE CLASS**

7  **A.   Sandys' Counsel's Time Records Are Excessive And Reveal No Efforts**
8  **That Resulted In The Settlement Or That Enhanced The Benefits To**
9  **The Class**

10  Sandys' Counsel's fee application, and the accompanying declarations and time
11  records, suggest that her counsel Francis & Mailman P.C., the Golan Law Firm, and Berg
12  & Androphy, supposedly performed work in five categories: (1) research and drafting of
13  a complaint; (2) consolidation and leadership structure; (3) motion to dismiss; (4)
14  discovery; and (5) drafting objections to the Settlement.[3]  However, a careful review of
15  these time records shows that Sandys' Counsel's hours are excessive for the work
16  performed and the work performed was unnecessary, duplicative and did not result in the
17  Settlement or enhance the benefits it delivers to the Class.

18  **1.   Work Devoted to the Complaint**

19  According to Sandys' Counsel's time records, approximately ***168 hours*** were spent
20  on a complaint that was filed on September 27, 2011 in the matter titled, *Sandys v. Naked*
21  *Juice of Glendora*, Case No. 11-cv-08007 ("Sandys Action").  *See* Sandys' Motion for

---

[3]   Class Counsel attempted to categorize the 1,052.45 hours Sandys' Counsel claim they expended in this matter.  Sandys' Counsel's hours can be broken down as follows: (1) 168:15 hours on work related to the complaint filed in Sandys; (2) 570:59 hours related to consolidation and the appointment of Interim Co-Lead Counsel; (3) 74:08 hours on the motion to dismiss; (4) 97.38 hours on discovery; (5) 129:18 hours on objections to the settlement; and (6) 12:29 on miscellaneous tasks.  *See* ECF Nos. 147-1 and 147-2.

Attorneys' Fees and Reimbursement of Expenses (hereinafter "Sandys' Motion"), ECF No. 147-3.  That equates to working on a single matter for 40 hours a week for an entire month.  Of the 168 hours, Yve Golan remarkably claims to have expended 140 hours during a period of 18 days, from September 9, 2011 through September 26, 2011.  *Id.*  All of Ms. Golan's time entries during this period, except for one, generally describe the work performed as "Research ingredients, investigate defendants and claims, examine product lines; draft complaint; confer with experts".  *Id.* at 1-2.  Ms. Golan also worked on another unrelated suit against the Kashi Company for falsely advertising its food products as "all natural," and her declaration seems to suggest that part of the hours claimed in this suit relate to hours expended in that unrelated action.  *See* Sandys' Motion, ECF No. 147-2 at ¶ 13. ("I also conducted the investigation and wrote the complaint in *Bates v. Kashi, et al.*, a class action that challenges food labeling fraud similar to the case here.").

> **2.** **Work Devoted to Seeking Appointment as Interim Co-Lead Counsel, Disputing Consolidation, and Disputing the Appointment of Ahdoot & Wolfson, Finkelstein Thompson LLP, and Ridout Lyon & Ottoson LLP as Interim Co-Lead Counsel**

Sandys' Counsel's records also show that they spent a combined total of ***571 hours*** on consolidation and the appointment of Interim Co-Lead Counsel.  On its face, this is plainly excessive.  Moreover, such work should not be compensated as it clearly was for the benefit of Sandys' Counsel and not for the benefit of the Class.

Of the 571 hours, Ms. Golan expended 262.7 hours (or 43% of her total hours) on issues relating to consolidation and the appointment of Interim Co-Lead Counsel.  Sandys' Motion, ECF No. 147-3.  Ms. Golan's records indicate she spent 106 hours alone opposing Class Counsel's motion for appointment of Interim Co-Lead and drafting her own motion for appointment of Interim Co-Lead Counsel.  *Id.*  Other hours were purportedly spent "conferring" with her co-counsel, searching for counsel to join her

4

team in order to bolster her application for appointment of Interim Co-Lead Counsel, and traveling from Texas to Los Angeles to appear at hearings regarding appointment of Interim Co-Lead Counsel, among other things. *Id.*

Berg & Androphy is a Texas firm that never physically appeared in this Court, which abandoned the Class after losing a leadership battle alongside Ms. Golan in the unrelated *Kashi* litigation, and which couldn't be bothered to submit a declaration attesting to the time records submitted by Ms. Golan in her motion. Nevertheless, the firm's time records indicate its attorneys began working on the case after the Sandys complaint was filed on September 27, 2011 and that they spent 173.3 hours (or 73% of their total hours) on consolidation and on the cross-motions for appointment of Interim Co-Lead Counsel. Sandys' Motion, ECF No. 147-4. They, along with Ms. Golan, sought appointment as Interim Co-Lead Counsel on the ground that Sandys filed the first complaint and that the other complaints were mere "copycats," which they were not. To that end, their time records show that Berg & Androphy spent a significant amount of time trying to find factual support for this argument. For example, their time records show tasks such as "set up queries in Westlaw to track all new copy cat and current copy cat cases," "research cases listed in disclosure statements by Atty Rivas and Atty Ridout for evidence of filing copycat suits on other class actions," "rights and remedies available to 'first to file' plaintiffs against copycat suits." Sandys' Motion, ECF No. 147-4 at 7, 10. Berg & Androphy's time records also inappropriately include work spent on another separate matter: *See* time entry "1/5/2012 JR" discussing correspondence with the court in reference to the hearing for Sethvanish, one of the named plaintiffs in the case titled *Sethvanish v. Kashi*, Case No. 11-cv-2356, pending in the United States District Court, Southern District of California. Sandys' Motion, ECF No. 147-4. Berg & Androphy never attended any hearings and ultimately withdrew from this case on February 9, 2012 (Sandys Action, ECF No. 67), shortly before the Court issued its order consolidating the cases and appointing Ahdoot & Wolfson, PC, Finkelstein Thompson LLP, Ridout, Lyon

5

+ Ottosson, LLP as Interim Co-Lead Counsel (ECF No. 38, 3/5/12 Order), which Sandys' counsel opposed.

After Berg & Androphy's departure, Ms. Golan partnered with Francis & Mailman.  Francis & Mailman's records show they spent 135 hours (65% of their total hours) on consolidation and appointment of Interim Co-Lead Counsel issues.  Sandys' Motion, ECF No. 147-1.  Interestingly, Francis & Mailman's records show work performed on a motion for reconsideration (ECF No. 147-1 at p.8 of 59) that was never filed in this action, but in the aforementioned, wholly unrelated, *Bates v. Kashi* case, Case No. 3:11-cv-01967 (S.D. Cal. Mar. 19, 2012) ("Bates Action").  *Bates* Action, ECF No. 59.

To put the 571 hours that Sandys' Counsel spent solely on consolidation and Interim Counsel issues in perspective, Rosemary Rivas of Finkelstein Thompson LLP had a *total of 379.60 hours over the course of the entire litigation*.  Mot. for Award of Attys.' Fees, ECF No. 148-3 at ¶ 35.  Additionally, the 571 hours Sandys' Counsel spent just on consolidation and the Interim Counsel dispute is only about 50 hours shy of the total amount of time that Tina Wolfson of Ahdoot & Wolfson, PC spent on the entire case: *617.50 hours*.  Mot. for Award of Attys.' Fees, ECF No. 148-1 at ¶ 37.

### 3.    Work Relating to Defendant's Motion to Dismiss

Sandys' Counsel's records indicate that they spent a total of 28 hours on Defendant's motion to dismiss.  Sandys' Motion, ECF No. 147-3 and ECF No. 147-1.  However, Class Counsel never sought assistance from Sandys' Counsel on the motion to dismiss.  Therefore, any work that Sandys' Counsel performed concerning the motion to dismiss was not only duplicative but unauthorized by Class Counsel.  Additionally, although Defendant filed a motion to dismiss in the Sandys case before the actions were consolidated, an opposition brief was never filed.

### 4.    Work Relating to Discovery

Sandys' Counsel's records indicate that approximately 94 hours were spent on discovery.  As with purported work on Defendant's motion to dismiss, Class Counsel did not authorize Sandys' Counsel to work on *any* discovery, nor did Sandys' Counsel share any thoughts regarding, or written drafts of, any discovery with Class Counsel.  Nor did Sandys' Counsel ever propound any discovery on the Defendant.  *See* ECF Nos. 147-1 and 147-2 (describing work performed).  To the extent Sandys' Counsel drafted discovery requests, such work was duplicative of that performed by Class Counsel. Moreover, Sandys' Counsel's "efforts" did not lead to the discovery of any documents or other information that helped Class Counsel in prosecuting the case or in negotiating the Settlement.

### 5.    Work Related to Objecting to the Settlement

According to Sandys' Counsel's records, approximately 129 hours were spent *objecting* to the Settlement at the preliminary approval stage.  Sandys' Motion, ECF No. 147-1 and ECF No. 147-3.  Of these hours, approximately 103 were spent entirely by Ms. Golan, and 26 hours were spent by Francis & Mailman.  *See id.*  Importantly, the Court granted preliminary approval over these objections.

### B.    **The Expenses Claimed by Sandys' Counsel Are False and Excessive**

Sandys' Counsel seeks $34,130.21, which is more than any expenses sought by the individual firms appointed to represent the Class.  Furthermore, even a cursory review of the claimed expenses does not support approval for payment from the Settlement Fund. For example, Ms. Golan spent $1,471.10 on meals, hotel and lodging, and $2,501.65 on airfare, but none of these expenditures were for a hearing where Ms. Golan was representing the Class.  Sandys' Motion, ECF No. 147-3.

Similarly, Francis & Mailman claims to have incurred $7,480.90 in expenses including $5,102.50 for airfare and $1,548.93 for meals, hotels and lodging.  Sandys' Motion, ECF No. 147-1.  Again, none of these expenditures were for a hearing where this

7

firm represented the Class. In fact, Francis & Mailman never even spoke at any of the hearings in this case.

Finally, Berg & Androphy, which **never** appeared in this Court and abandoned the Class in this case after losing a lead counsel fight in *Kashi*, seek $21,944.21 in expenses. Sandys' Motion, ECF No. 147-4. Moreover, this firm is inappropriately requesting costs for hotel stays at the U.S. Grant Hotel in San Diego for a hearing on January 17, 2012. *Id.* at 10. There was never a hearing in this case on January 17, 2012, and obviously this Court is located in Los Angeles. These hotel costs and other claimed expenses are mostly related to the *Bates v. Kashi* matter, which is pending in San Diego.

## III.   THE COURT SHOULD DENY PLAINTIFF SANDYS' MOTION

### A.   Legal Standard Regarding Attorneys' Fees

In class actions, "a litigant or lawyer who recovers a common fund for the benefit of [the class] is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051-52 (9th Cir. 2002) ("The equitable common fund / common benefit doctrine 'authorizes attorney fees only when the litigants preserve or create a common fund for the benefit of others as well as themselves.'") (citations omitted). Non-lead counsel requesting such fees have the burden of demonstrating that they "increase[d] the fund or otherwise substantially benefit[ed] the class members." *Vizcaino*, 290 F.3d at 1051; *In re Heritage Bond Litig.*, 02-ML-1475 DT, 2005 WL 1594403 at *24 (C.D. Cal. June 10, 2005) ("An attorney submitting an application for an award of fees and expenses has the burden of establishing entitlement to such monies.").

Objectors are eligible for attorneys fees' only if their objection conferred a significant benefit that is "actual and concrete not conceptual or doctrinal." *Hartless v. Clorox Co.*, 273 F.R.D. 630, 647 (S.D. Cal. 2011) (citing *Robbins v. Alibrandi,* 127 Cal. App. 4th 438, 448 (2005)). "[W]here objectors do not add any new legal argument or expertise, and do not participate constructively in the litigation or confer a benefit on the

class, they are not entitled to an award premised on equitable principles." *Rodriguez v. Disner*, 688 F.3d 645, 659 (9th Cir. 2012) (citing *Vizcaino,* 290 F.3d at 1051-52). In the Ninth Circuit, absent a showing that the objections "substantially enhanced the benefits to the class under the settlement," objectors are not entitled to attorneys' fees "as a matter of law." *Vizcaino*, 290 F.3d at 1052; *see also Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 288 (7th Cir. 2002) (citing *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) ("The principles of restitution that authorize such a result also require, however, that the objectors produce an improvement in the settlement wealth more than the fee they are seeking otherwise they have rendered no benefit to the class")).

Sandys' counsel did not negotiate the Settlement, and in fact opposed its approval. ECF No. 131. Sandys' counsel cannot now claim to somehow be responsible for the benefits conveyed on Class Members by the Settlement, so as to merit an award of attorneys' fees from the common fund it creates. Sandys' Counsel did not create a common fund, so there is no basis for awarding the requested fees.

## B.   Sandys' Counsel's Efforts Did Not Confer any Benefit to the Class and Do Not Merit an Award from the Common Fund Created by the Settlement

The Ninth Circuit considers various factors when determining whether to award attorneys' fees from a common fund created by those attorneys, such as: (i) the results achieved; (ii) the risks of litigation; (iii) the complexity of the case; (iv) the skill required and quality of work performed by counsel; (v) the length the case has transpired; (vi) the contingent nature of the fee and financial burden carried by Plaintiffs; (vii) awards made in similar cases; (viii) percentages in standard contingency-fee agreements in similar individual cases; (ix) the non-monetary benefits obtained; (x) the reaction of the class to the proposed fee and expense requests; and (xi) a lodestar cross-check. *See e.g., Vizcaino,* 290 F.3d at 1048-50; *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *Staton v. Boeing,* 327 F.3d 938, 946 (9th Cir. 2003); *In re Omnivision Techs.,*

9

559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007). None of these factors support the
significant fees and reimbursement of expenses that Sandys' Counsel demands.

         i.     *Results Achieved*. Sandys' Counsel claim that their "efforts have
helped achieve a successful outcome and have resulted in settlement benefits." Sandys'
Motion, ECF No. 147 at 1:11-12. Sandys' Counsel achieved nothing of the sort. While
Ms. Golan did file the first complaint on behalf of Sandys (the other two firms had no
participation in that), it was only a mere 8 days before Ahdoot & Wolfson filed the
*Pappas* action. Additionally, the "all natural" claims against Naked Juice were not so
novel such that had Sandys never filed her action that the other plaintiffs would not have,
as Sandys seems to suggest.[4] Moreover, Ms. Golan raised claims that would likely never
be certified, such as claims for assault and battery, and with a Texas plaintiff who,
Defendant argued, could not assert California law claims. *See* Def.'s Mot. to Dismiss,
Sandys Action, ECF No. 26. In any event, the mere filing of a complaint does not
produce a settlement and does not merit compensation, in and of itself, especially when
the lawyers actually harm the Class as in this case, where Sandys failed to file a motion
for class certification as required by Local Rule 23-3, and thereafter objected to the
Settlement from which they now seek compensation. *See, e.g., In re Heritage Bond
Litig.,* No. 02-ML-1475, 2005 WL 1594403, at *25 (C.D. Cal. June 10, 2005) (rejecting
arguments from lawyers who claimed their work resulted in the settlement by filing the
first complaint and developing the core evidence and noting that such counsel actually
harmed the class). Further, while Sandys' counsel provided GMO test results, Class
Counsel also performed GMO testing.

      Moreover, Sandys' Counsel actually delayed the litigation. They initially refused
to consolidate the actions and rebuffed all attempts by Class Counsel to work together.
ECF No. 18-3 at ¶ 20. Instead, Ms. Golan fought tooth and nail to be appointed Interim-
Lead Counsel, first enlisting the help of Berg & Androphy to act as her co-counsel, and

---

[4]In fact, "all natural" claims were alleged as early as 2010. *See, e.g., Weiner v. Snapple
Beverage Corp.,* NO. 07 Civ. 8742, 2010 WL 3119452, *1 (S.D. N.Y. 2010).

1  when that firm dropped out, enlisting the help of Francis & Mailman. *See* Sandys Action,

2  ECF Nos. 22, 57.  As noted above, together, these firms spent a staggering ***571 hours*** (for

3  a total of $315,152 in fees, which is about 55% of their total lodestar) on consolidation

4  and litigating the appointment of Interim Lead Counsel.  None of that work benefitted the

5  Class and it certainly did not lead to the Settlement in this case.  Rather, any "work"

6  performed in this regard was solely to benefit Sandys' Counsel. This work is not

7  compensable.  *See e.g. In re People Soft, Inc. Sec. Litig.,* No. C99-00472 WHA, Slip op.

8  at 15 (N.D. Cal. Aug. 24, 2001) ("[Non-lead counsel's] time spent vying to become class

9  counsel or promoting their lead plaintiff candidate is not compensable.  There was no

10  material benefit to the class.").

11       In short, Sandys' Counsel did not do any of the "heaving lifting" in terms of

12  briefing, discovery, negotiation, participation in mediation, or drafting of the Settlement

13  documents that led to the Settlement.  Their work was minimal, primarily for their own

14  benefit, and did not benefit the Class, and their request for fees should be denied.

15       *ii.*     *Risks of Litigation*.  Sandys' Counsel merely assumed the risk that

16  they would not be compensated for their minimal efforts in filing the complaint, disputing

17  the appointment of Interim Counsel, and in raising objections to the Settlement, which

18  stand in stark contrast to the huge risks faced by Class Counsel in litigating for nearly 2

19  years against a formidable Defendant with significant resources.  Therefore, the risk

20  assumed by Ms. Golan and the other two firms working with her hardly warrants a fee

21  and expense award of more than half a million dollars.  *See* ECF No. 147 at 1.

22       *iii.*    *Complexity of the Case*.  Although this is a complex action, Sandys'

23  Counsel's efforts did not involve any complex tasks.  They only filed a single complaint,

24  which was seriously deficient in numerous aspects; disputed the appointment of Interim

25  Counsel; and later filed objections to the same sSettlement from which they seek fees.

26  The real work of this matter – investigating and researching the claims as facts were

27  discovered, defending Plaintiffs' claims from a Motion to Dismiss, engaging in complex

28  discovery against not only the Defendant but various third parties, bringing and

defending discovery motions, preparing for class certification (including drafting a motion and retaining and working with experts), and negotiating a complex settlement agreement over a period of six months – was conducted exclusively by Class Counsel and the Executive Committee member, without any work whatsoever by Sandys' lawyers. Indeed Sandys' Counsel more often stood as obstacles to the efforts of Class Counsel.

        *iv.*    *The Skill Required and Quality of Work Performed by Counsel.*  There was nothing remarkable about the quality of Sandys' Counsel's work.  In fact, alleging claims for assault and battery and strict liability underscores Sandys' Counsel's lack of experience in class action cases and the unreasonableness of Ms. Golan's rate of $600 per hour.  Ms. Golan admits in her declaration in support of the present motion that she lacks experience prosecuting class actions on behalf of plaintiffs.  ECF 147-2.  Further, Sandys actually missed the deadline for filing a motion for class certification under Local Rule 23-3, which requires a plaintiff to file a motion for class certification within 90 days from the date of service of a pleading proposing a class action.  This failure was detrimental to the proposed Class that Sandys sought to represent.

        *v.*    *The Length of the Case.*  While the case has been litigated since 2011, Sandys' Counsel's participation has been very minimal.  A complaint was prepared over the course of 18 days, and the remainder of the time they spent in the case was devoted solely to litigation regarding appointment as Interim Counsel and raising objections to the Settlement for which they now take credit.  Sandys' Motion, ECF No. 147-3 and ECF No. 147 at 1:23-2:1.

        *vi.*    *The Contingent Nature of the Fee and Financial Burden Carried.* While Sandys' Counsel claim to have worked on this contingency case, most of the time they devoted was not for the interests of the Class but simply to be appointed as Interim Counsel.  In addition, their out-of-pocket costs they claim to have "advanced," $34,130.20, include costs that were never expended in this case.  In fact, these expenses were mostly spent on travel to California for hearings regarding the appointment of Interim Counsel, the motion to dismiss (which they did not brief or argue), and to object

1    to the Settlement at preliminary approval.  Sandys' Motion, ECF Nos. 147-1, 147-3, and

2    147-4.  Hence, these "expenses" were not for the benefit of the Class and therefore do not

3    merit reimbursement.

4          *vii.    Awards Made in Similar Cases and Percentages in Standard*

5    *Contingency-Fee Agreements in Similar Individual Cases*.  Class Counsel refers the Court

6    to numerous cases where attorneys who filed unsuccessful claims, motions, and

7    objections in similar cases that did not substantially enhance the benefits to the class

8    generally receive no fees for their unsuccessful efforts.  *See e.g.,Vizcaino*, 290 F.3d at

9    1051 (affirming trial court's denial of objectors' request for fees since they "did not

10   increase the fund or otherwise substantially benefit the class members"); *Class Plaintiffs,*

11   19 F.3d at 1308-09 (affirming trial court's denial of fees for attorneys responsible for

12   parallel state claim because it was not sufficiently related to the class claim and it only

13   incidentally benefitted class); and *Hartless*, 273 F.R.D. at 647 (denying incentive award

14   to objector since objection did not confer benefit to class).  The same result is merited

15   here.

16   **C.    Sandys' Counsel Did Not Substantially Enhance the Benefits to the**
         **Class**
17

18         Nowhere in their motion does Sandys or her counsel claim that they increased the

19   Settlement Fund or otherwise substantially benefitted the Class members as objectors

20   such that they merit an award of attorneys' fees.  Their only claim is that their "work"

21   somehow led to the creation of the Settlement Fund, which, as shown above, is simply

22   not true.  Accordingly, Sandys and her counsel are not entitled to fees or expenses for

23   objecting to the Settlement.

24

25

26   ///

27

28   ///

PLAINTIFFS' MPA IN OPP TO SANDYS' MOTION FOR ATTORNEYS' FEES
CASE NO. 2:11-cv-8276-JAK-PLA

IV.    **CONCLUSION**

Based on the foregoing, Class Representative Plaintiffs respectfully request that the Court deny Sandys' Counsel's motion for attorneys' fees and expenses in its entirety.

DATED: November 11, 2013

Respectfully submitted,

**AHDOOT & WOLFSON, P.C.**

/s/ Robert Ahdoot
Tina Wolfson
Robert Ahdoot
Theodore Maya
10850 Wilshire Boulevard, Suite 370
Los Angeles, California 90024
Phone: (310) 474-9111
Fax: (310) 474-8585

**FINKELSTEIN THOMPSON LLP**

/s/ Rosemary M. Rivas
Rosemary M. Rivas
505 Montgomery Street, Suite 300
San Francisco, CA 94111
Phone: (415) 398-8700
Fax: (415) 398-8704

**RIDOUT LYON & OTTOSON, LLP**

/s/ Christopher Ridout
Christopher Ridout
Devon Lyon
555 E. Ocean Blvd., Ste. 500
Long Beach, California  90802
Phone: (562) 216-7380
Fax: (562) 216-7385

*Class Counsel*

**GLANCY BINKOW & GOLDBERG LLP**
Marc L. Godino
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Phone: (310) 201-9150
Fax: (310) 201-9160

*Executive Committee Class Counsel*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Attestation of Filer**

Pursuant to Local Rule 5-4.3.4, the undersigned filer hereby attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 11, 2013            <u>/s/ Robert Ahdoot</u>