Joshua R. Furman, Bar No. 225461
jrf@furmanlawyers.com
JOSHUA R. FURMAN LAW CORPORATION
15260 Ventura Boulevard, Suite 2250
Sherman Oaks, California  91403
Telephone:   (818) 646-4300
Facsimile:    (818) 646-4301

Jon M. Zimmerman, *Pro Hac Vice* forthcoming
jon@seattletrafficattorneys.com
2825 Eastlake Avenue East, Suite 120
Seattle, Washington  98102
Telephone:   (206) 285-5060
Facsimile:    (206) 686-5076

*Attorneys for Objector,*
Joanne Rossignol

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PAPPAS, on behalf of herself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAKED JUICE COMPANY, a California corporation,<br><br>Defendant. | **CASE NO.  11-cv-8276-JAK (PLAx)**<br><br>**OBJECTIONS TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT; NOTICE OF INTENT TO APPEAR** |

**NOTICE OF INTENT TO APPEAR**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Objector Joanne Rossignol will appear through her counsel of record at the final approval hearing in this matter scheduled for December 2, 2013, for the purposes of objecting to this settlement and respectfully requesting the Court not approve the same.

Dated: November 11, 2013

JOSHUA R. FURMAN LAW CORP.
LAW OFFICES OF JON M. ZIMMERMAN

By: /s/ Joshua R. Furman
Joshua R. Furman
Jon M. Zimmerman, *PHV* forthcoming
*Attorney for Objector,*
Joanne Rossignol

Objector Joanne Rossignol objects to the proposed class action settlement in this case as follows:

## I. INTRODUCTION

This action was brought to rectify the wrong done to consumers when Naked Juice made false statements about the content of its products. Far from righting the wrong, this settlement creates more problems than it solves because it sets up an unfair and unjustified tiered recovery system based on an arbitrary determination about whether or not the class member kept receipts from grocery purchases for seven years; awards class counsel well in excess of cognizable standards; and tries to side step important consideration by the Court of the true reaction to the settlement by holding the final approval hearing before the claim filing cut-off.

Objector, who understandably does not have receipts for all of her Naked Juice purchases for the past several years, is forced to be relegated to a second-class class member when she ultimately files her claim. Objector takes issue with this proposition because, among other reasons, there is no class representative designated to look out for her interests as a non-receipt-bearing member. Instead, Objector's rights have been inadequately represented as the class representatives agree to a deal that limits her recovery without reasonable justification.

Objector submits that class counsel and class representatives need to go back to negotiate a settlement where the rights of all class members are considered, and arbitrary discrimination among class members is avoided. At a minimum, at least one class member needs to represent the interests of those class members who do not have receipts for their juice purchases.

## II. LEGAL ARGUMENT

### A. The Standard for Approving Class Action Settlements

#### 1. General Principles of Federal Rule of Civil Procedure 23

Class action settlements proposed under Federal Rule of Civil Procedure 23

are subject to a "universally applied standard." *National Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Under this standard, final approval for a class action settlement should only be granted where the proposed settlement is "fundamentally fair, adequate, and reasonable." *Id. quoting* 5 Moore Federal Practice, § 23.85 (Matthew Bender 3d ed.) *citing In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), cert. denied 506 U.S. 953 [113 S.Ct. 408, 121 L.Ed.2d 333] (1992). *See also*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) ("District courts must be skeptical of some settlement agreements put before them"), *citing Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 621 [117 S.Ct. 2231, 138 L.Ed.2d 689] (1997).

Generally, the Ninth Circuit applies an eight-factor analysis to determine if the proposed settlement meets this standard. The factors are: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; [8] and the reaction of the class members to the proposed settlement." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998), *citing Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

"Where, as here, the parties agree to settle the dispute prior to certification of the class, the court must be particularly vigilant in its scrutiny of the settlement." *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, C 06-3903 TEH (N.D. Cal. Oct. 22, 2008) p. 7, citing *Hanlon*, 150 F.3d at 1026.

As the court in *Hanlon* observed, of Supreme Court precedent:

> The *Amchem* Court also noted the problem of counsel "not prepared to try a case." Such counsel is, almost by definition,

> inadequate because an inability or unwillingness to try a case means the class loses all of the benefits of adversarial litigation. "Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer." *Amchem*, 117 S.Ct. at 2248-2249.  District courts must be skeptical of some settlement agreements put before them because they are presented with a "bargain proffered for … approval ***without benefit of an adversarial investigation***." *Id*. at 2249.
> These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or ***when the class receives no monetary distribution but class counsel are amply rewarded***.  *See, e.g.*, *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir.), cert. denied, 516 U.S. 824 (1995).

*Hanlon*, 150 F.3d at 1021 (emphasis added).

In this case, the *Linney* factors are conflated by the *Hanlon* analysis and only lead to the conclusion that this settlement is unapprovable.

One significant problem faced by the Court is that the timing of the final approval hearing coming before the claims deadline.  While the "reaction of class members" to the settlement agreement can, in part, be evaluated based on the filings of objectors, a better measure, particularly where as here there is a claims process for class members, is the claims history and the amounts therein.

While more recent filings seem to indicate that there are a significant number of claims (approximately 575,000 noted in the Vasquez declaration), there is no indication of how many of those claims will be honored, or how many of them will be found defective in some way.  There is no indication of how many of those claims include receipts, and there is no indication of the amounts of the

claims, or if they are able to be validated—as opposed to potentially representing fraudulent claims that dilute the benefit to the rest of the class. Ultimately, the Court does not have enough information to make the requisite findings.

### 2. Pre-Certification Settlements are Subject to Heightened Scrutiny

Because of the "special difficulties" a court encounters evaluating a class action settlement prior to (and in conjunction with) certification of the class, there must be an even greater showing of fairness and "much stronger indications of sustained advocacy by the *de facto* class counsel" before the settlement can be approved. *In re General Motors Corp. Pick-Up Truck Fuel Tank*, 55 F.3d 768, 805-806 (3rd Cir. 1995) (hereinafter "*General Motors*"), *citing Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3d Cir. 1971) ("[W]hen the settlement is not negotiated by a court designated class representative the court must be doubly careful in evaluating the fairness of the settlement to the plaintiff's class."); *In re General Motors Corp. Engine Interchange Lit.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (attributing a need for heightened scrutiny of the settlement to the potential for collusive settlement); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (higher showing of fairness required in pre-certification settlements, and special focus on assuring adequate representation and the absence of collusion); *Malchman v. Davis*, 706 F.2d 426, 434 (2d Cir. 1983); *Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir. 1987); *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990); Manual for Complex Litigation 2d § 30.42 (citing the informational deficiencies faced by the court and counsel in pre-certification settlements).

Class counsel who proceed directly to settlement negotiations without so much as litigating past the threshold question of certification may be seen as "confining" themselves to settlement and losing all benefit of the threat of litigation. *See*, *Hanlon*, 150 F.3d at 1021–22, *quoting Amchem*, 117 S.Ct. at 2248-

2249 ("Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer.")

Accordingly, when face with a pre-certification settlement, the court is well-served to consider these questions posed by the Third Circuit in *General Motors*:

> Is the relief afforded by the settlement significantly less than what appears appropriate in light of the preliminary discovery? Have major causes of action or types of relief sought in the complaint been omitted by the settlement? Did the parties achieve the settlement after little or no discovery? Does it appear that the parties negotiated simultaneously on attorneys' fees and class relief? Even acknowledging the possibility of some overpleading, these questions raise a red flag in this case.

*General Motors*, 55 F.3d at 806.

### B. The Class or Classes Must be Properly Identified and Represented

Class Plaintiffs have the burden of demonstrating that a proposed class is properly subject to certification pursuant to Rule 23(a). *Amchen Prods. Inc. v. Windsor*, 521 U.S. 591, 613–614 [117 S. Ct. 2231, 138 L. Ed. 2d 689] (1997).

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by

> overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re IPO Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1760, at 140 (3d ed. 2005). *See*, *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728 (4th Cir. 1989) ("Though not specified in the Rule, establishment of a class action implicitly requires both that there be an identifiable class and that the plaintiff or plaintiffs be a member of such class"), abrogated on other grounds, *Amchem Products, Inc.*, 521 U.S. at 591. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002).

Additionally, the proposed representatives promoting the settlement must be both typical of the class membership and adequate to represent the class. Fed. R. Civ. Proc. 23(a); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course

of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations omitted).

"Whether the class representatives satisfy the adequacy requirement depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010).

In the present case there is at least one significant obstacle to certification based on the present class relief, the distribution plan, and the typicality and adequacy of the proposed representatives: the tiered distribution plan. The settlement agreement calls for higher payouts for those class members who, through some twist of fate, have managed to save their receipts for purchases of juice over the course of seven years, and penalizes those class members who have not saved their receipts by providing them with a significantly lower potential recovery. In the context of a consumer food product class action, where the vast majority of class members would never save receipts, this arbitrary discrimination among members of the class is unjustifiable.

More importantly the class membership is unable to judge whether or not their representation by the class representatives was adequate or whether class representatives' claims are typical because there is no indication as to whether some or all of the class representatives are the receipt-bearing or non-receipt-bearing kind.

Considering the tiered relief, the class definition itself is simply inaccurate. The entire class membership is not being accorded equal relief. This is not a matter of differing amounts of claims for the same relief, this is a matter of drawing an arbitrary line having nothing to do with claim amount, and saying the absence or presence of receipts will be one of the single most significant deciding factors in determining any give class members' actual recovery.

Who is representing the interests of the receipt-bearing class? Who is representing the interests of the non-receipt-bearing class? What is the justification for increasing the distribution to the receipt-bearing class and what is the non-receipt-bearing class representatives' (assuming there are any) justification for agreeing to relegate the non-receipt-bearing class members to what is literally a "second class"?

These questions are not answered by the present settlement and the Court should deny final approval because of this arbitrary distinction among class members.

### C. Class Counsel's Requested Fee is Excessive and Unjustified

While "clear sailing" agreements, as this one is posed, are theoretically acceptable, the Court must scrutinize them all the same—because a large fee award points to less than ideal motivations by Class Counsel. *See*, *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328, fn. 20 (9th Cir. 1999) ("The evil feared in some settlements—unscrupulous attorneys negotiating large attorney's fees at the expense of an inadequate settlement for the client—can best be met by a careful district judge, sensitive to the problem, properly evaluating the adequacy of the settlement for the class and determining and setting a reasonable attorney's fee … ."), *quoting Parker v. Anderson*, 667 F.2d 1204, 1214 (5th Cir. 1982) (alteration in original).

Here, the settlement agreement provides for Class Counsel to recover over 30 percent of the total fund. This amount does not account for the additional amounts over $600,000 requested by former class representative Sandys's counsel, or the amounts to administer the settlement, which are already over $800,000 alone. These funds would consume at least half of the settlement fund and would be well out of proportion for acceptable fee agreements.

Class counsels' significantly reduced amount requested in their motion for attorneys' fees is noted. However, the amount claimed in the motion does not

change the amount stated in the settlement agreement. Whether or not the settlement agreement is approvable does not turn on class counsel's caprice, the determination must be based on the actual terms of the agreement as stated.

It is also noted that the link to class counsel's motion for fees on the notice website was not working as of this filing and the only way to obtain the motion was by paying for it through PACER.

### III.   CONCLUSION.

In light of the foregoing, Objector Joanne Rossignol respectfully requests the Court deny final approval of this class action settlement.

Dated:  November 11, 2013          JOSHUA R. FURMAN LAW CORP.
                                   LAW OFFICES OF JON M. ZIMMERMAN

                                   By:   /s/ Joshua R. Furman
                                        Joshua R. Furman
                                   Jon M. Zimmerman, *PHV* forthcoming
                                        *Attorney for Objector,*
                                        Joanne Rossignol