Darrell Palmer (SBN 125147)
darrell.palmer@gmail.com
Law Offices of Darrell Palmer
2244 Faraday Ave, Ste 121
Carlsbad, California 92008
Telephone: (858) 215-4064
Facsimile: (866) 583-8115

Attorney for Objector Dawn Weaver

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PAPPAS, On Behalf of Herself and All Other Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAKED JUICE CO. OF GLENDORA, INC.<br><br>Defendant. | Case No.: LA CV11-08276-JAK (PLAx)<br><br>**OBJECTION TO PROPOSED SETTLEMENT AND NOTICE OF INTENT TO APPEAR** |

DAWN WEAVER purchased Green Machine, Carrot and Strawberry Banana Naked Juice products during the class period. Her address is 208 via Morella, Encinitas, CA 92024.

## INTRODUCTION

Rule 23(e) of the Federal *Rules of Civil Procedure* provides that "[a] class action shall not be dismissed or compromised without the approval of the court and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." A settlement may only be approved after the court finds it

1

is fair, adequate and reasonable. *Id.* This rule has been read as a requirement for the court to " 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.' " *In Re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3rd 2001)*, citing In re General Motors Corp. Pickup Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 785 (3rd Cir. 1995). For guidance on these questions, a district court must consider several factors, including:

> (1)The strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F. 3d 938, 959 (9th Cir. 2003). This list of factors is "by no means an exhaustive list of relevant considerations." *Id.*

"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even absent objections, the court bears this responsibility." Committee Notes to Rule 23(h), 2003.

Ultimately, the goal of the district court is to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement, is fair, reasonable, and adequate to all concerned. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010). As is the case here, when the settlement was achieved before class certification, the court should view the settlement with "heightened scrutiny." *In re General Motors*, 55 F.3d at 807. This is because, "[t]he danger of a premature, even a collusive, settlement is increased when as in this case the status of the action as a class action is not determined until a settlement has been negotiated." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 680 (7th Cir. 1987).

## I.   *CY PRES* NOMINATIONS ARE IMPROPER

The doctrine of *cy pres* originated in the law of wills and trusts and allowed courts to redirect money from trusts and testamentary gifts that would otherwise fail for legal reasons. *In Re Wells Fargo Securities Litigation*, 991 F.Supp. 1193, 1194-95 (N.D. Cal. 1998). However, a court cannot direct excess funds to any seemingly worthwhile recipient instead the funds must be used in such a way that best serve the original intent of the settlor or testator. *Id* at 1195.

In class actions, distribution of funds through *cy pres* should be limited in two ways. *Id* at 1194. First, the doctrine of *cy pres* should only be invoked when "(1) no parties have equitable interests in the residue or (2) distribution to such parties would be

impractical." *Id*.  Second, "a court must be careful to direct the residue to an entity that will indirectly serve the interests of class members or "others similarly situated, e.g. *future class members* who engage in future transactions of the type involved in the class litigation." *Id* at 1195.

The Stipulation of Settlement (118) para 46:

> In the event the entire amount of the Settlement Fund Balance is not paid to Class Members who have submitted a timely and valid Claim Form, including, but not limited to, any funds remaining of the Settlement Fund Balance after all claims have been paid (the "Residual Funds"), the Settlement Administrator shall distribute the Residual Funds as follows:
> (a) Subject to the Court's approval, the Residual Funds shall be distributed to the following non-profit organizations as follows: (i) Fifty Percent (50%) of the Residual Funds shall be paid to the Mayo Clinic; (ii) Twenty-Five Percent (25%) of the Residual Funds shall be paid to the National Association of IOLTA Programs, which shall administer a grant process for the distribution of such funds to legal aid organizations in the fifty (50) United States of America that are active in providing consumer advocacy in false advertising cases and protecting consumers, except those organizations expressly awarded any portion of the Residual Funds as set forth herein; and (iii) Twenty-Five Percent (25%) of the Residual Funds shall be paid in equal shares to: (A) the Legal Aid Foundation of Los Angeles; (B) Bay Area Legal Aid; (C) the Legal Aid Society of the District of Columbia; (D) Greater Boston Legal Services; (E) the Legal Aid Society of Metropolitan Family Services (Chicago); (F) Legal Services of Greater Miami, Inc.; and (G) Texas RioGrande Legal Services, Inc.

There is nothing in the preliminary approval order or the motion for final approval to show how these *cy pres* nominees have a connection to or will provide an indirect benefit to the class.  In the class action context, courts require that "unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the

lawsuit, the interests of class members, and the interests of those similarly situated." *Id.* at 682; *Dennis v. Kellogg Co.*, 697 F.3d 858, 866 (9th Cir. 2012)[1] (reversing where *cy pres* beneficiary had "little or nothing to do with the purposes of the underlying lawsuit or the class of plaintiffs involved"2); *In re Baby Products Antitrust Litig.*, 708 F.3d 163 at 169 (3d Cir. 2013) (under certain circumstances "courts have permitted the parties to distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class."); *Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468 at 476 (5th Cir. 2011) ("[T]he court's discretion remains tethered to the interest of the class, the entity that generated the funds."); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F. 3d 423 (2d. Cir. 2007) ("[T]he purpose of [c]y [p]res distribution is to put the unclaimed fund to its *next best compensation use.*") (emphasis in original). The court is compelled to make such findings and even where the *cy pres* contingency may not occur, the nominated recipients must be proper. The settlement must be rejected until proper recipients are nominated and timely disclosure is made and opportunity provided to the class to comment on the nominations.

## II.   CLASS COUNSEL'S FEE REQUEST CANNOT BE APPROVED

### A. Payments Made To Third Parties Should Not Be Part of Fee Calculations

---

[1] Objector's counsel was lead appellate counsel in *Dennis v. Kellogg*. The court might keep this in mind when class counsel responds with the usual *ad hominen* attacks.

The attorney fees should be based on the common fund distributed to class members, they should receive no portion of the administrative, notice or other expenses. *See,* Stipulation of Settlement, Doc. 118, para 39.  Without this exclusion, there will be no incentive control overbilling or waste by the administrator.  And it without this exclusion the fee is not 25% of the fund distributed to the class, it is closer to 39%. (3.1/8)

**B. The Fee Request is Unsupported and Unreasonable**

When a common fund is created for the class, the court has the discretion whether to use a lodestar method or the percentage of the fund approach. *In re Bluetooth Headset Prods. Liability Litig.,* 654 F.3d 935,942 (9th Cir. 2011).  Whichever option the court chooses, however, discretion must arrive at a reasonable result. *Id.*  Courts have held that when choosing the percentage of the fund approach, a benchmark of 25% is a reasonable starting place. *Id.*  Not all courts agree with this approach. See *In re Infospace Inc.*, 330 F. Supp. 2d 1203, 1210 (W.D. Wash. 2004) ("There is nothing inherently reasonable about a 25 percent recovery, and the courts applying this method have failed to explain the basis for the idea that a benchmark fee of 25 percent is logical or reasonable."); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 129 (9th Cir.1994) ("WPPSSS") ("[T]here is no necessary correlation between any particular percentage and a reasonable fee.").

It is a time honored notion that "a fee award should be assessed based on scrutiny of the unique circumstances of each case", and should be viewed with "a jealous regard to the rights of those who are interested in the fund."" *Goldberger v. Integrated Resources, Inc.* 209 F.3d 43, 53 (2d Cir. 2000). The court arrives at the lodestar figure by multiplying the number of hours reasonably spent on the litigation by a reasonable rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

But the court and class cannot accurately determine the lodestar because the claimed lodestar is completely unsupported. Less than two pages of information was submitted to the court and class. They give us the names, billing rate and number of hours billed to the case. We do not understand what the very expensive lawyers and paralegals did during those hours. Class counsel must submit their detailed billing records for review by the court and class. Nothing less will do. We don't know how many depositions and how many class counsel attended; how many strategy meetings with how many attendees. How many people attended the mediation? How many times was each motion and complaint reviewed? Once approved the settlement fund becomes the property of the class. The class then pays their lawyers but before they write that check, the client has the right to see exactly what they are paying for. Class counsel must disclose their billing records. Their disregard for informing their own clients demonstrates the fee driven conflict.

7

> During the fee-setting stage of common fund class action suits such as this one, "[p]laintiffs' counsel, otherwise a fiduciary for the class, . . . become[s] a claimant against the fund created for the benefit of the class." *Class Plaintiffs v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1302 (9th Cir. 1994) (internal quotation marks omitted). This shift puts plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class at odds with the class' interest in securing the largest possible recovery for its members. Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Id.* As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *Id.* Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests.

*In re Mercury Interactive Securities Lit.,* 618 F.3d 988 at 995 (9th Cir. 2010)

A full reading *Mercury* is instructive; class counsel did the same thing – a table summarizing names, hours and rates. It's just not enough. There's no entitlement; class counsel works for the class. They took on the burden of representation and with that goes the duty of full disclosure.

Likewise they cannot share the fees among themselves without full disclosure to the class. The court must correct that provision of the Settlement Stipulation. (Doc 118 para 62)\

### III.  THE COURT SHOULD NOT INFER ACCEPTANCE BY A LOW NUMBER OF OBJECTIONS

Any class action settlement, no matter how much it betrays the interests of the

8

class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought*, 2012 U.S. Dist. LEXIS 143595, at *60 (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Silence is *not* consent. *GMC Engine Interchange*, 594 F.2d at 1137 (7th Cir. 1979) ("Acquiescence to a bad deal is something quite different than affirmative support."). "[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 Fla. L. Rev. 71, 73 (2007).  Especially when the available information is complete.

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual.  The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors. *Vought*, 2012 U.S. Dist. LEXIS 143595, at *60-*61.

## IV.     ADOPTION AND JOINDER OF ALL OTHER OBJECTIONS

Weaver joins in and adopts all good faith objections and incorporates them by reference as if they appeared fully including Doc. 162.

## V.     CONCLUSION

**WHEREFORE**, these Objectors respectfully request this Court:

A. Upon proper hearing, sustain these Objections;

9

B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement; AND

C. Award attorneys' fees and an incentive award to these Objectors and their counsel for their service.

Dated:   November 12, 2013              By:   ____/s/ Darrell Palmer_____
                                              DARRELL PALMER
                                              Attorney for Objector

### CERTIFICATE OF SERVICE

I certify that on November 12, 2013, I electronically filed the foregoing with the Clerk of the Court of the United States District Court for the Central District of California by using the USDC CM/ECF system and all registered CM/ECF users, service will be accomplished by the USDC CM/ECF system.

___/s/ Darrell Palmer____
Darrell Palmer
Attorney for Objector