GIBSON, DUNN & CRUTCHER LLP
DANIEL W. NELSON, *pro hac vice*
DNelson@gibsondunn.com
ANDREW TULUMELLO, SBN 196484
ATulumello@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:   202.467.0539

CHRISTOPHER CHORBA, SBN 216692
CChorba@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
DManthripragada@gibsondunn.com
JENNA MUSSELMAN YOTT, SBN 251901
JYott@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant
NAKED JUICE CO. OF GLENDORA, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| NATALIE PAPPAS,<br><br>                    Plaintiff,<br><br>          v.<br><br>NAKED JUICE CO. OF GLENDORA, INC., a California corporation,<br><br>                    Defendant. | CASE NO. LA CV 11-08276-JAK (PLAx), Lead Case (Consolidated with LA CV 11-08007; SA CV 11-01701; LA CV 11-09412; LA CV 11-09677)<br><br>**DEFENDANT NAKED JUICE CO. OF GLENDORA INC.'S RESPONSE TO OBJECTIONS AND STATEMENT IN SUPPORT OF FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Hearing<br>Date:        December 2, 2013<br>Time:        8:30 a.m.<br>Location:   750, 7th Floor<br>                 Hon. John A. Kronstadt<br><br>Amended Consolidated Class Action Complaint Filed:  June 5, 2012 |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................1

II.   ARGUMENT.......................................................................................1

    A.    The Considerable Risks And Expenses Of Continued
        Litigation Strongly Support Final Approval Of The
        Settlement ...............................................................................2

        1.    Plaintiffs Would Have Faced Significant Hurdles At
            Class Certification...................................................2

        2.    Plaintiffs Also Would Have Faced Significant
            Problems On The Merits...........................................7

        3.    When Balanced Against These Risks, The
            Settlement Is Reasonable. .......................................9

    B.    The Settlement Enjoys Overwhelming Support From The
        Settlement Class ...................................................................9

    C.    The Objectors' Unsupported Assertions Provide No Basis
        For Rejecting The Proposed Settlement And Depriving
        Class Members Of Its Benefits .............................................14

III.  CONCLUSION .................................................................................22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alliance to End Repression v. City of Chicago*,
  91 F.R.D. 182 (N.D. Ill. 1981) ....................................................................... 15

*Astiana v. Kashi Co.*,
  291 F.R.D. 493 (S.D. Cal. 2013) ....................................................................... 8

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ................................................................. 11

*Browning v. Yahoo! Inc.*,
  No. 04-1463, 2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) 2, 9, 15, 17

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ............................................................................. 3

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .......................................................................... 11

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1991) ........................................................................ 22

*Cohorst v. BRE Props., Inc.*,
  No. 10-2666, 2011 WL 7061923 (S.D. Cal. Nov. 14, 2011) .......................... 10

*Colgan v. Leatherman Tool Grp., Inc.*,
  135 Cal. App. 4th 663, 38 Cal. Rptr.3d 36 (2006) .......................................... 6

*Comcast Corp. v. Behrend*,
  569 U.S. __, 133 S. Ct. 1426 (2013) .............................................................2, 5

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ........................................................................ 12

*Coyle v. Hornell Brewing Co.*,
  No. 08-02797, 2011 WL 2147218 (D.N.J. May 26, 2011) ...............................5

*Dennis v. Kellogg*,
  No. 09-1786, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .......................... 11

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ............................................................ 10

*Fernandez v. Victoria Secret Stores, LLC*,
　　No. 06-04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ...............................11

*Fine v. ConAgra Foods, Inc.*,
　　No. 10-10848, 2010 WL 3632469 (C.D. Cal. Aug. 26, 2010)..............................5

*Freeman v. Time, Inc.*,
　　68 F.3d 285 (9th Cir. 1995) ....................................................................7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
　　No. 08-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...............................9

*Gemelas v. Dannon Co.*,
　　No. 08-236, 2010 U.S. Dist. LEXIS 99503 (N.D. Ohio Aug. 31, 2010) ..............15

*Gribble v. Cool Transps. Inc.*,
　　No. 06-4863, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ...............................15

*Hairston v. S. Beach Beverage Co.*,
　　No. 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................7

*Hanlon v. Chrysler Corp.*,
　　150 F.3d 1011 (9th Cir. 1998) .......................................................15, 17, 18

*Heekin v. Anthem, Inc.*,
　　No. 05-1908, 2013 U.S. Dist. LEXIS 26700 (S.D. Ind. Feb. 27, 2013) ..............15

*Hodes v. Van's Int'l Foods*,
　　No. 09-1530, 2009 WL 2424214 (C.D. Cal. July 23, 2009) .............................3, 5

*Huguley v. Gen. Motors Corp.*,
　　999 F.2d 142 (6th Cir. 1983) ..................................................................12

*In re Apple Inc. Sec. Litig.*,
　　No. 06-5208, 2011 WL 1877988 (N.D. Cal. May 17, 2011) ...............................10

*In re Bluetooth Headset Prods. Liab. Litig.*,
　　654 F.3d 935 (9th Cir. 2011) .....................................................................2

*In re Haier Freezer Consumer Litig.*,
　　No. 11-02911, 2013 WL 2237890 (N.D. Cal. May 21, 2013) ..............................17

*In re Heritage Bond Litig.*,
　　No. 02-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..............................16

Gibson, Dunn &
Crutcher LLP

iii

*In re Mego Fin. Corp. Secs. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................20

*In re Oil Spill*,
    2013 U.S. Dist. LEXIS 4595 (E.D. La. Jan. 11, 2013) ........................................15

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-1827, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ...............................16

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 93 Cal. Rptr. 3d 559 (2009) ........................................................4

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
    *& Prods. Liab. Litig.*,
    No. 10-ML-2151, 2012 WL 6733023 (C.D. Cal. Dec. 28, 2012) ........................18

*In re Uponor, Inc.*,
    No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140 (D. Minn. Sept. 11,
    2012) .............................................................................................................15

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ........................................................................19

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ..............................................................12

*Major v. Ocean Spray Cranberries, Inc.*,
    No. 12-03067, 2013 WL 2558125 (N.D. Cal. June 10, 2013) ..............................5

*Mazza v. Am. Honda Motor. Co.*,
    666 F.3d 581 (9th Cir. 2012) ...........................................................................4

*Moore v. Verizon Commc'ns, Inc.*,
    No. 09-1823, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013)..................11, 16, 17

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)................................................................10, 14

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................9

*Pelayo v. Nestle USA,*
No. 13-5213, 2013 U.S. Dist. LEXIS 154434 (C.D. Cal. Oct. 25, 2013)...........7, 8

*Pereira v. Ralph's Grocery Co.,*
No. 08-2012, 2010 WL 6510346 (C.D. Cal. July 1, 2010) ...................................10

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.,*
653 F.3d 241 (3d Cir. 2011) ......................................................................................8

*Red v. Kraft Foods, Inc.,*
No. 10-1028, 2011 WL 4599833 (C.D. Cal. Sept. 29, 2011)..................................4

*Reed v. GM Corp.,*
703 F.2d 170 (5th Cir. 1983) ..................................................................................12

*Rodriguez v. West Publ'g Corp.,*
563 F.3d 948 (9th Cir. 2009) ..................................................................................19

*Shames v. Hertz Corp.,*
No. 07-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ....................................11

*Stoetzner v. U.S. Steel Corp.,*
897 F.2d 115 (3d Cir.1990) .....................................................................................11

*Sugawara v. PepsiCo,*
No. 08-01335, 2009 WL 1439115 (E.D. Cal. May 21, 2009)..................................8

*Taifa v. Bayh,*
846 F. Supp. 723 (N.D. Ind. 1994).........................................................................11

*TBK Partners, Ltd. v. Western Union Corp.,*
675 F.2d 456 (2d Cir. 1982) ...................................................................................12

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ................................................................................2, 21

*Van Horn v. Trickey,*
840 F.2d 604 (8th Cir. 1988) ..................................................................................12

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. __,131 S. Ct. 2541 (2011) .........................................................................2

*Walter v. Hughes Commc'n,*
No. 09-2136, 2011 WL 2650711 (N.D. Cal. July 6, 2011)...................................18

Gibson, Dunn &
Crutcher LLP

v

*Weiner v. Snapple Bev. Co.*,
No. 07-8742, 2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ..............................4, 6

*Werbel v. PepsiCo, Inc.*,
No. 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .................................8

*Williams v. Gen. Elec. Capital Auto Lease*,
No. 94-7410, 1995 WL 765266 (N.D. Ill. Dec. 26, 1995) ...................................12

*Wilson v. Airborne, Inc.*,
No. 07-770, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008)................................12

*Yong Soon Oh v. AT&T Corp.*,
225 F.R.D. 142 (D.N.J. 2004) ................................................................................6

**Statutes**

7 C.F.R. § 205.605(b) .............................................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

# I. **INTRODUCTION**

After careful scrutiny to ensure that the proposed class settlement was fair, reasonable, and adequate, this Court granted preliminary approval on August 7, 2013. There are no new facts or issues that change this conclusion in any respect.  To the contrary, it is bolstered by the class members' overwhelmingly positive reaction to the settlement:  there have been more than ***570,000*** valid claims, as compared to only ***3*** timely-filed objections, and ***22*** opt-outs.  The extraordinarily low number of objections and opt-outs relative to the number of class members and the number of claims is compelling evidence that the settlement enjoys overwhelming support from the class.

The objectors raise a number of assorted legal challenges, but notably, they do not address most of the factors used by courts in this Circuit to evaluate the fairness of a proposed class settlement.  Several courts have acknowledged that the risks and expense of further litigation is the most important of these factors, but the objectors completely ignore this factor altogether, and the very real possibility that if these claims were pursued through trial, class members would receive nothing.  The objectors also raise mostly boilerplate objections, many of which (such as notice and cy pres issues) were already considered and rejected by this Court before preliminary approval.  In sum, the objectors have offered no basis for refusing to grant final approval to a class settlement that has received an overwhelmingly positive response from class members.

For these and the other reasons discussed below, Defendant Naked Juice Co. of Glendora, Inc. ("Naked Juice") respectfully requests that the Court enter the Order Granting Final Approval and Final Judgment.

# II. **ARGUMENT**

As Plaintiffs explained in their Motion for Final Approval (ECF No. 149), the Ninth Circuit considers the following factors in assessing whether a settlement is fair, reasonable, and adequate:  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). Plaintiffs' brief analyzes each of these factors, but in the discussion below, Naked Juice focuses on the risks of further litigation and class members' reactions to the settlement. Each of these factors strongly supports final approval. Naked Juice then explains why the 4 objections (including the one late-filed objection) to the settlement lack merit.

## A. The Considerable Risks And Expenses Of Continued Litigation Strongly Support Final Approval Of The Settlement

Plaintiffs' claims in this case suffer from substantial weaknesses, and the courts in this Circuit frequently note that this is perhaps the most important factor approving a class settlement. *See, e.g.*, *Browning v. Yahoo! Inc.*, No. 04-1463, 2007 U.S. Dist. LEXIS 86266, at *16 (N.D. Cal. Nov. 16, 2007) (approving settlement and noting that "perhaps most importantly, [the] objections do not sufficiently consider . . . the considerable risks involved with continued litigation"). Yet the objectors completely ignore this factor, and the several hurdles that Plaintiffs would have faced if they pursued their claims through class certification and trial.

### 1. *Plaintiffs Would Have Faced Significant Hurdles At Class Certification.*

Plaintiffs would have faced significant hurdles satisfying the requirements of Rule 23(a) and (b) had the parties not reached settlement. Plaintiffs bear the burden of "affirmatively demonstrat[ing]" their compliance with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. __,131 S. Ct. 2541, 2551 (2011) (requiring "rigorous analysis" to ensure requirements of "Rule 23(a) have been satisfied"); *Comcast Corp. v. Behrend*, 569 U.S. __, 133 S. Ct. 1426, 1432 (2013) (noting that the "same analytical principles

govern Rule 23(b)" and that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)").[1]  If they had pursued further litigation, Plaintiffs would have faced several significant barriers in attempting to certify any class, and even class counsel has acknowledged that further litigation to establish liability poses a significant risk to any recovery for the class.  (Mot. for Final Approval, Oct. 28, 2013 [ECF No. 149], at 17-21.)

*First*, Plaintiffs would have had problems demonstrating that the class was ascertainable.  Naked Juice does not sell its products directly to consumers and it does not have a list of all purchasers, and only a very small percentage of the claimants so far have maintained their proof of purchase.  While the parties through their settlement agreement have permitted purchasers to recover some amount without proof of purchase, this would not necessarily be the case if the case were litigated through judgment.  *See, e.g.*, *Carrera v. Bayer Corp.*, 727 F.3d 300, 304 (3d Cir. 2013) (vacating district court's certification order because the class was not unascertainable due to the fact that class members were "unlikely to have documentary proof of purchase, such as packaging or receipts"); *Hodes v. Van's Int'l Foods*, No. 09-1530, 2009 WL 2424214, at *4 (C.D. Cal. July 23, 2009) (case not manageable under Rule 23(b)(3) because "the Court has concerns about how Plaintiffs will identify each class member and prove which brand of Van's frozen waffles each member purchased, in what quantity, and for what purpose[,]" and "[t]he likelihood that tens of thousands

---

[1] Naked Juice denies all of Plaintiffs' claims in these consolidated actions, denies any and all allegations of wrongdoing, fault, liability or damage of any kind to Plaintiffs and the putative class, and vigorously disputes that it has engaged in any actionable conduct.  (Stipulation of Settlement [ECF No. 118] ¶ 104.)  It agreed to resolve the cases to avoid the expenses, uncertainties, delays, and other risks inherent in continued litigation.  In particular, Naked Juice agreed to provisional certification of the proposed class for settlement purposes only, reserved all of its objections to class certification for litigation purposes, and did not consent to certification of the proposed class for any purpose other than to effectuate the settlement.  (*Id*.; *see also* Def.'s Stmt. in Support of Mot. for Prelim. Approval, July 3, 2013 [ECF No. 120].)

1    of class members saved their receipts as proof of their purchase of Van's waffles is

2    very low."); *Weiner v. Snapple Bev. Co.*, No. 07-8742, 2010 WL 3119452, at *13

3    (S.D.N.Y. Aug. 5, 2010) (class not ascertainable because plaintiffs "offer no basis to

4    find that putative class members will have retained a receipt, bottle label, or any other

5    concrete documentation of their purchases of Snapple beverages bearing the 'All

6    Natural' description," and further "putative class members are unlikely to remember

7    accurately every Snapple purchase during the class period, much less whether it was an

8    'All Natural' or diet beverage").  If the litigation continued, these issues would have

9    presented a significant barrier to class certification.

10        <u>Second</u>, Plaintiffs would also face a heavy burden of showing that they could

11   prove through common evidence that putative class members in fact reviewed—let

12   alone *relied upon*—the "All Natural Fruit + Boosts" and "non-GMO" labeling (all of

13   which is accurate) when making their purchase decisions.  *See, e.g., Mazza v. Am.*

14   *Honda Motor. Co.*, 666 F.3d 581, 595 (9th Cir. 2012) ("For everyone in the class to

15   have been exposed to the omissions . . . it is necessary for everyone in the class to have

16   viewed the allegedly misleading advertising." ); *Red v. Kraft Foods, Inc.*, No. 10-1028,

17   2011 WL 4599833, at *8 (C.D. Cal. Sept. 29, 2011) ("Here, there is, potentially, a

18   question whether Plaintiffs' proposed class—as now defined—included consumers

19   who were not exposed to the supposedly misleading product labeling claims," and "a

20   proposed class that includes 'non-harmed' class members 'is both imprecise and

21   overbroad.'").  As the Ninth Circuit has explained, "the relevant class must be defined

22   in such a way as to include only members who were exposed to advertising that is

23   alleged to be materially misleading" and "exclude those members who learned of . . .

24   the omitted limitations before they purchased" the product at issue.  *Mazza*, 666 F.3d

25   at 596.  This also plainly is not the type of "long-term advertising campaign" spanning

26   decades that would have excused Plaintiffs from demonstrating reliance.  *See, e.g., In*

27   *re Tobacco II Cases*, 46 Cal. 4th 298, 328, 93 Cal. Rptr. 3d 559 (2009).

28

Consumers purchase the beverages for a variety of reasons—principally, the products' taste, natural fruit, the absence of added sugar or preservatives, and the added vitamins, as well as for reasons such as availability, pricing promotions, and a host of other factors—that have nothing to do with the challenged statements. Consumers also vary in whether they considered (or even saw) the challenged statements, or found them to be material to their purchase decisions.  In sum, there are too many individualized issues to justify certification here, and many courts have refused to certify food and beverage class actions for similar reasons.  *See, e.g.*, *Major v. Ocean Spray Cranberries, Inc.*, No. 12-03067, 2013 WL 2558125, at *3-4 (N.D. Cal. June 10, 2013) (rejecting certification of proposed class of Ocean Spray juice purchasers); *Coyle v. Hornell Brewing Co.*, No. 08-02797, 2011 WL 2147218, at *5 (D.N.J. May 26, 2011) (denying class certification in "all natural" litigation relating to Arizona beverages containing allegedly synthetic ingredient); *Fine v. ConAgra Foods, Inc.*, No. 10-10848, 2010 WL 3632469, at *3 (C.D. Cal. Aug. 26, 2010) (denying class certification of popcorn purchasers); *Hodes*, 2009 WL 2424214, at *5 (denying certification in food labeling action because the common questions did not outweigh the individual issues regarding class size, damages, and proof).

*Third*, Plaintiffs would have faced the additional obstacles of showing injury on a classwide basis and also that the case is susceptible to awarding classwide damages. Not only would Plaintiffs have to propose a theory of classwide damages, but the theory would have to be objectively measureable and tethered to the challenged and allegedly deceptive statements.  *See, e.g.*, *Comcast*, 133 S. Ct. at 1433 (holding that plaintiffs' damages model "falls far short of establishing that damages are capable of measurement on a classwide basis" because "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class").

This particular hurdle has derailed several food and beverage lawsuits at the class certification stage.  For example, in a case presenting a challenge to the "All Natural" labeling of Snapple beverages, the district court held that "[i]ndividualized

1    inquiries would [] be required in order to determine whether members in fact paid a

2    premium for Snapple beverages, and whether any such premium was attributable to the

3    'All Natural' labeling," which "would require, among other things, an examination of

4    each of the millions of class members' Snapple purchases, which the evidence shows

5    were made in different locations, at different times, and for different prices." *Weiner*,

6    2010 WL 3119452, at \*10.  *See also, e.g.*, *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D.

7    142, 150 (D.N.J. 2004) (explaining that the risks of establishing damages weighs in

8    favor of the settlement because "[t]he logistics of establishing damages in this case

9    would have been a nightmare" and "[t]he evidence plaintiffs would have to present to

10   demonstrate the subjective intent and actual damages . . . would be extensive to say the

11   least").  The objectors ignore these weaknesses in Plaintiffs' case, which weigh in

12   favor of settlement.

13         Plaintiffs also would have had the same problems (and others) in trying to

14   formulate an objectively measurable amount of restitution for their UCL claim.  *See*

15   *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 697, 700, 38 Cal.

16   Rptr.3d 36 (2006) (finding no substantial evidence to support trial court's restitution

17   award measured by 25% of the allegedly mislabeled products' wholesale unit price,

18   and remanding for the trial court to award "either the dollar value of the consumer

19   impact or the advantage realized by [the defendant]").  For this reason, Objector

20   Andersen's assertion that "class members are entitled to know what the potential

21   recovery at trial might have been, i.e., full restitution" and that revenue data should be

22   provided (Andersen Obj. [ECF No. 162], ¶ 1), is not consistent with California law.

23   There is no basis for claiming "full restitution"; rather, if the parties continued to

24   litigate, Naked Juice would have argued that purchasers received exactly what was

25   promised and what they paid for—a super-premium juice made with real fruit.  There

26   is no measurable difference between what was promised and what was delivered, and

27   the evidence established there was no price "premium" attributable to the challenged

28   statements "All Natural Fruit + Boosts" on the Naked Juice label compared to similar

Gibson, Dunn & Crutcher LLP

1    beverages.

2        **2.        *Plaintiffs Also Would Have Faced Significant Problems On The Merits.***

3            The objectors also ignore the additional, significant hurdles that Plaintiffs and

4    any putative class would have faced on the merits.  As an initial matter, the labels are

5    not deceptive, and proving this deception on a classwide basis would have been very

6    difficult given different consumer perceptions of "natural."  Even Plaintiffs in this

7    action could not agree on a uniform definition of the term.  (*Compare, e.g.*, *Sandys*

8    Compl., Case No. 2:11-cv-8007 (C.D. Cal.) [ECF No. 1] ¶ 42 (defining "natural" as a

9    product "that does not contain any artificial or synthetic ingredient and does not

10   contain any ingredient that is more than 'minimally processed'"), and *Marchewka*

11   Compl., Case No. 2:11-cv-1701 (C.D. Cal.) [ECF No. 1] ¶ 18 ("The dictionary defines

12   the term 'natural' as 'existing in or produced by nature:  not artificial.'").)  As another

13   court in this District concluded just last month, there are "several conflicting

14   definitions of ['natural']" and the FDA has refused to define the term.  *Pelayo v. Nestle*

15   *USA*, No. 13-5213, 2013 U.S. Dist. LEXIS 154434, at *11, 14-15 (C.D. Cal. Oct. 25,

16   2013) (dismissing case with prejudice because plaintiffs did not allege a plausible

17   theory of "natural" and the definitions used in the complaint were in conflict).

18            Further, to the extent Plaintiffs were able to establish a uniform meaning to the

19   term "natural" across a diverse class of consumers, Naked Juice fully discloses all of

20   the product ingredients on the front and side panels and the FDA-mandated ingredient

21   statement.  There is complete and total transparency about what is in the products, and

22   California law prohibits the imposition of liability predicated on a reading of labels out

23   of context or in isolation.  *See*, *e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th

24   Cir. 1995) (rejecting argument that "reasonable" consumers can selectively review

25   challenged advertising and ignore additional relevant information); *Pelayo*, 2013 U.S.

26   Dist. LEXIS 154434, at *15 ("to the extent there is any ambiguity regarding the

27   definition of 'All Natural' with respect to each of the Buitoni Pastas, it is clarified by

28   the detailed information contained in the ingredient list.") (collecting cases); *Hairston*

Gibson, Dunn &
Crutcher LLP

1  *v. S. Beach Beverage Co.*, No. 12-1429, 2012 WL 1893818, at *4-5 (C.D. Cal.

2  May 18, 2012) (noting that the challenged product "does not use the 'all natural'

3  language in a vacuum," and that "to the extent there is any ambiguity, it is clarified by

4  the detailed information contained in the ingredient list"); *Werbel v. PepsiCo, Inc.*,

5  No. 09-04456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (requiring that

6  consumers act "reasonabl[y]" when viewing product packaging); *Sugawara v.*

7  *PepsiCo*, No. 08-01335, 2009 WL 1439115, at *5 (E.D. Cal. May 21, 2009) (allowing

8  plaintiff to ignore the qualifying language on a cereal box "would require this Court to

9  ignore all concepts of personal responsibility and common sense").

10        The challenged claim here is demonstrably permissible because the statement on

11  most of the products was "All Natural Fruit" or "All Natural Fruit + Boosts."  The

12  named plaintiffs allege that they were confused about whether the "boosted" vitamins

13  were "all natural."  But most consumers understand that the use of "natural" applies to

14  the fruit (which has no added sugar or preservatives)—and which is indisputably

15  "natural" by any definition (even those used by Plaintiffs).  Most consumers also

16  understand that the added vitamin boosts are, in fact, good for them, which is why they

17  prefer a "boosted" smoothie product.  Moreover, many of the challenged vitamins—

18  which are indisputably good for consumers—are permissible in foods labeled

19  "organic" (*see* 7 C.F.R. § 205.605(b) (identifying ingredients, including nutrient

20  vitamins and minerals, allowed in products labeled as "organic")), and several courts

21  have held that an ingredient permissible in organic food is permissible in a food

22  bearing the "natural" label.  *See Pelayo*, 2013 U.S. Dist. LEXIS 154434, at *14 ("it is

23  implausible that a reasonable customer would believe ingredients allowed in a product

24  labeled 'organic' . . . would not be allowed in a product labeled 'all natural'"); *Astiana*

25  *v. Kashi Co.*, 291 F.R.D. 493, 508  (S.D. Cal. 2013) (holding that "consumers . . . often

26  equate 'natural' with 'organic' or hold 'organic' to a higher standard").

27        When read in full and not selectively, the labels are not deceptive.  *See, e.g.*,

28  *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 251 (3d Cir. 2011)

Gibson, Dunn &
Crutcher LLP

1   (rejecting attempt by plaintiffs in false advertising cases to read challenged statements

2   "in isolation").  This is also true of the "non-GMO" statements, which were correct, as

3   Class Plaintiffs' own testing and analysis demonstrated, and under the settlement

4   Naked Juice will continue to be labeled "Non-GMO."  (*See* Stip. of Settlement [ECF

5   No. 118] ¶ 50.)

6          **3.      *When Balanced Against These Risks, The Settlement Is Reasonable.***

7          By ignoring these weaknesses and potential risks, the objectors fail to recognize

8   that but for this settlement, the class would very likely receive nothing at all.  *See*, *e.g.*,

9   *Browning*, 2007 U.S. Dist. LEXIS 86266, at *25 (overruling objections that portrayed

10  an unreasonably rosy view of the potential success of the claims by ignoring the

11  substantial hurdles to class certification, including the denial of certification in a

12  related case).  Balancing the benefits offered in this settlement against the substantial

13  uncertainties, risks, and problems that Plaintiffs would have faced, including the strong

14  possibility that they and the class would have recovered nothing if they proceeded with

15  the litigation, weighs heavily in favor of approving this settlement.  *See*, *e.g.*, *Officers*

16  *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled

17  law that a cash settlement amounting to only a fraction of the potential recovery will

18  not *per se* render the settlement inadequate or unfair.  . . . It is the complete package

19  taken as a whole, rather than the individual component parts, that must be examined

20  for overall fairness.").

21         But that is not the case here, as 90% of claimants should receive at least $7.54 in

22  cash, which equates to approximately two Naked Juice beverages, and 63% of

23  claimants will receive almost $10, the equivalent of three beverages.  These are very

24  generous recoveries given the absence of injury or deception.

25  **B.     The Settlement Enjoys Overwhelming Support From The Settlement Class**

26         This "Court 'may appropriately infer that a class settlement is fair, adequate, and

27  reasonable when few class members object to it.'"  *Garner v. State Farm Mut. Auto.*

28  *Ins. Co.*, No. 08-1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (internal

Gibson, Dunn &
Crutcher LLP

citations omitted).  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (internal quotation marks omitted); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010) ("[A] small number of class members seeking exclusion or objecting indicates an overwhelming positive reaction of the class.").[2]

Here, the class members have had an overwhelmingly favorable response to the settlement.  The robust notice program, which included pervasive internet notice including targeted Internet banner advertisements that this Court has already found to be "sophisticated and designed to target likely Class Members" (*see* Prelim. Approval Order [ECF No. 144], Aug. 7, 2013, at 6) and notices published in PEOPLE, USA TODAY and PARADE magazines—and which was supplemented by news coverage by several nationwide media outlets, including Yahoo! News, ABC News, the Huffington Post, and dozens of local newspapers and television stations (*see* Motion For Final Approval [ECF 149], at 19)—reached more than *85%* of a target audience numbering 21.5 million individuals, or 18.3 million potential class members (Vasquez Decl. [ECF No. 149-2], ¶ 9), with more than 197 million impressions (*id*. ¶ 22).  Despite the

---

[2] Objectors Dawn Weaver and Darrell Palmer argue in their late-filed objection that "[t]he Court should draw no inference in favor of the settlement from the number of objections." (Weaver/Palmer Objection, Nov. 12, 2013 [ECF No. 164], at 9.)  In addition to being untimely (*see infra* p. 16, n.4), this objection ignores that it is well-established in this Circuit that a small number of objections raises a "*strong presumption*" that the settlement terms are favorable to the class.  *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (emphasis added); *see also In re Omnivision Techs.*, 559 F. Supp. 2d at 1043; *Pereira v. Ralph's Grocery Co.*, No. 08-2012, 2010 WL 6510346, at *4 (C.D. Cal. July 1, 2010); *Cohorst v. BRE Props., Inc.*, No. 10-2666, 2011 WL 7061923, at *18 (S.D. Cal. Nov. 14, 2011); *In re Apple Inc. Sec. Litig.*, No. 06-5208, 2011 WL 1877988, at *3 (N.D. Cal. May 17, 2011).

Gibson, Dunn &
Crutcher LLP

1   success of the notice program in reaching class members and apprising them of the

2   settlement, very few individuals have expressed displeasure with the settlement:  there

3   were only *3* timely objections, and only *22* opt-out requests.

4          The small number of objections and complaints in this case is further mitigated

5   by the fact that one of the objectors (Andersen) also submitted a claim form.  *See*

6   *Fernandez v. Victoria Secret Stores, LLC*, No. 06-04149, 2008 WL 8150856, at *8

7   (C.D. Cal. July 21, 2008) (finding that the small number of objections is further

8   mitigated because two of the objectors filed claim forms).

9          Accordingly, the portion of the class taking issue with the settlement (whether

10  by objection or opt-out) is miniscule (around *ten-thousandth* of 1%) relative to the over

11  18 million potential class members who received the notice—particularly given the

12  media attention received by this settlement and the large number of claims.  This very

13  small percentage also weighs strongly in favor of approving the settlement.  *See, e.g.,*

14  *Churchill Vill.*, 361 F.3d at 577 (affirming final approval order in settlement involving

15  45 objections out of 90,000 notices); *Dennis v. Kellogg*, No. 09-1786, 2013 WL

16  6055326, at *4 (S.D. Cal. Nov. 14, 2013) (granting final approval where the putative

17  class covered hundreds of thousands of purchasers and there were only six objections);

18  *Moore v. Verizon Commc'ns, Inc.*, No. 09-1823, 2013 WL 4610764, at *8 (N.D. Cal.

19  Aug. 28, 2013) (describing 28 objections and 621 opt-outs  as a "relatively small

20  number" in a class with potentially 8,089,893 members); *Shames v. Hertz Corp.*,

21  No. 07-2174, 2012 WL 5392159, at *8 (S.D. Cal. Nov. 5, 2012) (granting final

22  approval of settlement where of the 3.5 million potential class members "only 143

23  class members opted out" and the court received "only 9 formal objections").

24         By comparison, courts have repeatedly approved settlements with objection

25  rates as high as 10% or more, often finding such rates as strongly favoring settlement

26  and persuasive evidence that the settlement is fair and adequate.  *See, e.g., Boyd v.*

27  *Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (objections from only 16% of

28  the class was "persuasive" that the settlement was adequate); *Stoetzner v. U.S. Steel*

Gibson, Dunn & Crutcher LLP

11

1  *Corp.*, 897 F.2d 115, 119 (3d Cir.1990) (objections from a little over 10% of the class

2  "strongly favors settlement"); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994)

3  (same); *Huguley v. Gen. Motors Corp.*, 999 F.2d 142, 145 (6th Cir. 1983) (court

4  previously approved a settlement over objections of 15% of the class).[3]

5        Next, the number of opt-outs/objections in equally miniscule compared to the

6  more than 570,000 claims filed (around *four-thousandths* of 1%), which also weighs in

7  favor of approving the settlement.  *See, e.g.*, *Wilson v. Airborne, Inc.*, No. 07-770,

8  2008 WL 3854963, at *7 (C.D. Cal. Aug. 13, 2008) (granting final approval of

9  settlement where the opposition rate was approximately 0.1% compared to claims

10  filed); *Williams v. Gen. Elec. Capital Auto Lease*, No. 94-7410, 1995 WL 765266,

11  at *5 (N.D. Ill. Dec. 26, 1995) (granting final approval of settlement where the

12  opposition rate was 4.8% compared to claims filed); *Lipuma v. Am. Express Co.*, 406

13  F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (granting final approval of settlement where

14  8,822,803 notices were mailed, and there were 830,976 claims filed, 1,159 opt-outs,

15  and 41 objections, constituting an opposition rate of 0.1% compared to claims filed).

21  [3]  While plainly not the situation here, it is worth noting that courts have even
22  approved settlements where 40%-50% of class members objected.  *See, e.g.*, *Reed
     v. GM Corp.*, 703 F.2d 170, 174 (5th Cir. 1983) (affirming district court's approval
23  of settlement despite "the objections of twenty-three of twenty-seven named
     plaintiffs and nearly 40% of the 1,517 member class"); *Van Horn v. Trickey*, 840
24  F.2d 604, 606 (8th Cir. 1988) (affirming settlement approval order even though
     approximately 40% of class members objected); *TBK Partners, Ltd. v. Western
25  Union Corp.*, 675 F.2d 456, 462 (2d Cir. 1982) (affirming approval of settlement in
26  securities class action over objection of holders of between 54% and 58% of
     shares); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (approving
27  settlement over objections of counsel purporting to represent almost 50% of class).

Gibson, Dunn &
Crutcher LLP

12

Here are the claims numbers as of the date of this filing:

| Amount Claimed | Capped Individual Amount | Number of Claims | Total Value of Claimed Amounts | Amount After Pro Rata Reduction (as of 11/22/13) |
|---|---|---|---|---|
| $00.01 to $10.00 (no proof of purchase) | $5.00 | 10,990 | $54,950 | $1.08 |
| $10.01 to $15.00 (no proof of purchase) | $10.00 | 5,792 | $57,920 | $2.15 |
| $15.01 to $25.00 (no proof of purchase) | $15.00 | 16,074 | $241,110 | $3.23 |
| $25.01 to $35.00 (no proof of purchase) | $25.00 | 17,519 | $437,975 | $5.38 |
| $35.01 to $45.00 (no proof of purchase) | $35.00 | 158,239 | $5,538,365 | $7.54 |
| $45.01 to $75.00 (no proof of purchase) | $45.00 | 112,340 | $5,055,300 | $9.69 |
| $75.00 to $99.99 (no proof of purchase) | $45.00 | 250,001 | $11,250,045 | $9.69 |
| Up to $75 (with proof of purchase) | (Up to $75, depending on amount of proof) | 2,225 | $96,429 | (Up to $16.15, depending on amount of proof) |
| Over $75 (with proof of purchase) | $75.00 | 772 | $66,557 | $16.15 |
| **TOTAL** | -- | 573,952 | $22,798,651 | -- |

In addition, the claims administrator has processed approximately 92,421 additional claims that are duplicative, invalid, and/or fraudulent:

- There were ***9,476*** duplicate claims (totaling **$411,310**).

- ***51,536*** of the claims (totaling **$2,471,925**) were invalid because the claimants completed both section "B" ("Claims With Proof of Purchase") and section "C" ("Claims Without Proof of Purchase").  The settlement did not allow claimants to select both categories, and the Claim Form was designed to be an exceedingly simple, straightforward form that clearly

explained the terms of the different categories and instructed claimants to complete only one section.

- There were approximately *15,000* claims (totaling **$675,000**) that the experienced claims administrator determined to be irregular or fraudulent, because they were filed multiple times by the same individual through identical IP addresses or contained nearly identical or identical address and transactional information, and in many cases were filed within minutes of each other.

- There were approximately *16,409* claims (totaling **$841,025.69**) that are invalid because they purported to claim an amount with proof and yet no proof of purchase was submitted.

(*See* Declaration of Markham Sherwood ("Sherwood Decl.") [ECF No. 167] ¶ 30.) Settlement Class Members also have two additional weeks after the final approval hearing in this matter to submit claims. The parties will report updated claims numbers at the final approval hearing on December 2 and will provide a prompt, final update only two weeks later.

Accordingly, class members' overwhelming support for this settlement—as reflected in the very large number of claims and the extremely small number of objections and opt-outs—weighs heavily in favor of final approval. The objector has it exactly backwards: the significant and positive response and participation in the settlement *confirms* that the settlement is fair, adequate, and reasonable. *Nat'l Rural Telecom.*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

## C.   The Objectors' Unsupported Assertions Provide No Basis For Rejecting The Proposed Settlement And Depriving Class Members Of Its Benefits

Without considering the compelling evidence that the settlement enjoys overwhelming support from the class, the significant hurdles facing Plaintiffs and the class if they pursue litigation, or any of the other factors followed by Courts in the Ninth Circuit, the objectors raise mostly boilerplate objections, many of which were

1  already considered and rejected by this Court prior to preliminary approval.  The

2  objections essentially argue that the settlement could have been "better" without

3  specifying how, but this is not a valid basis for rejecting a settlement.  As the Ninth

4  Circuit has explained:

5              Of course it is possible, as many of the objectors' affidavits
6              imply, that the settlement could have been better.   But this
              possibility does not mean the settlement presented was not fair,
7              reasonable or adequate.      Settlement is the offspring of
              compromise; the question we address is not whether the final
8              product could be prettier, smarter or snazzier, but whether it is
9              fair, adequate and free from collusion.

10  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998); *see also Browning*,

11  2007 U.S. Dist. LEXIS 86266, at *17 (objection that the settlement did not provide a

12  full cash refund "is tantamount to complaining that the settlement should be 'better,'

13  which is not a valid objection"); *Alliance to End Repression v. City of Chicago*, 91

14  F.R.D. 182, 195 (N.D. Ill. 1981) ("By definition, a fair settlement need not satisfy

15  every concern of the plaintiff class, but may fall anywhere within a broad range of

16  upper and lower limits.").

17       And of course, customers who believe they would be forfeiting valuable claims

18  were free to opt out of the class and preserve those claims.  The overwhelming

19  majority of putative class members (***99.9999%***) have not done so.  *See*, *e.g.*, *Gribble v.*

20  *Cool Transps. Inc.*, No. 06-4863, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008)

21  (noting "it is important to remember that the [settlement agreement] is a better option

22  than not receiving any compensation, which is a reasonable possibility given the

23  questions surrounding Plaintiff's claims and class certification").

24       Nevertheless, Naked Juice received 4 objections, including one untimely

25  objection from an individual represented by attorney Darrell Palmer who has boasted

26  publicly that "objecting is a hobby," that he has made "a lot" of money on these

27  objections, and that the only way to stop objectors like him is to stop paying them (*see*

28  http://classactionblawg.com/2011/10/17/notes-from-the-15th-annual-national-institute-

Gibson, Dunn &
Crutcher LLP

15

on-class-actions/).  Several federal courts have deemed Mr. Palmer to be a "serial

objector."  *See, e.g.*, *In re Oil Spill*, 2013 U.S. Dist. LEXIS 4595, at *154 n.40 (E.D.

La. Jan. 11, 2013); *Heekin v. Anthem, Inc.*, No. 05-1908, 2013 U.S. Dist. LEXIS

26700, at *9 (S.D. Ind. Feb. 27, 2013); *Gemelas v. Dannon Co.*, No. 08-236, 2010 U.S.

Dist. LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010); *In re Uponor, Inc.*, No. 11-MD-

2247, 2012 U.S. Dist. LEXIS 130140, at *8-9 (D. Minn. Sept. 11, 2012) (Mr. Palmer

"is believed to be a serial objector to other class-action settlement[s]").  Mr. Palmer's

objection should be rejected as untimely, which it is, and rejecting his objection on that

basis will present a clean and straightforward legal issue that can be summarily

disposed of in any appeal he may take to the Ninth Circuit for the purpose of delaying

the settlement and seeking payment from the Parties by using the appeal as leverage.[4]

  None of the objections provides a basis for rejecting the settlement.

  1.  Proposed Cy Pres Recipients.  Two objectors raise the very same complaints

about the proposed *cy pres* beneficiaries that were raised before preliminary approval,

with one objector "adopt[ing] the arguments initially asserted" in that earlier objection.

(Henry Obj. [ECF No 157], at 1, 2.)  But this Court has already considered and

rejected this objection, and it concluded "that the *cy pres* recipients are sufficiently

---

[4]  The Weaver/Palmer objection (ECF No. 164) is untimely and should be denied on
that basis.  The deadline for class members to submit objections to the proposed
settlement was November 11, 2013.  (Order Granting Schedule for Completing
Class Notice & Final Settlement Approval Process, Aug. 12, 2013 [ECF No. 146].)
In addition, the notices provided the same instruction.  (*See* Stip. of Settlement
[ECF No. 118], Exs. E & G.)  As the docket reflects, only three objections
complied with this order.  (*See* Andersen Obj., Nov. 8, 2013 [ECF Nos. 155 &
162]; Henry Obj., Nov. 11, 2013 (ECF No. 157); Rossignol Obj., Nov. 11, 2013
[ECF No. 159].)  No other objection is properly before the Court.  The Weaver/
Palmer Objection was filed late and, accordingly, should be rejected on that basis.
*See, e.g.*, *Moore*, 2013 WL 4610764, at *12 (overruling objections because they are
untimely); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2011 WL
7575004, at *3 (N.D. Cal. Dec. 27, 2011) (same); *In re Heritage Bond Litig.*,
No. 02-1475, 2005 WL 1594403, at *10 n.9 (C.D. Cal. June 10, 2005) (same).

Gibson, Dunn &
Crutcher LLP

1   related to the underlying claims to warrant their receipt of potential *cy pres* awards."

2   (Prelim. Approval Order [ECF No. 144], Aug. 7, 2013, at 6.)  Moreover, this point is

3   moot at this stage because there have been enough claims by class members such that

4   the common fund will be distributed entirely to class members and there will be no *cy*

5   *pres* recovery.  (*See* Sherwood Decl. [ECF No. 167] ¶ 29.)

6          2.  <u>Requirement to File Objection</u>.  Another objection complains that it "seems

7   overly harsh" to require putative class members to file written objections and a notice

8   of appearance with the Court.  (Andersen Obj. [ECF Nos. 155 & 162], ¶ 9.)  This is in

9   essence a complaint against the procedures outlined in the Court's Local Rules, which

10  require that papers to be considered by the Court and a notice of appearance must be

11  filed.  (*See* L.R. 5-4, 83-2.)  Courts regularly require objections to be filed.  *See, e.g.*,

12  *Moore*, 2013 WL 4610764, at *8 (settlement required objections to be filed with the

13  court); *In re Haier Freezer Consumer Litig.*, No. 11-02911, 2013 WL 2237890, at *6

14  (N.D. Cal. May 21, 2013) (ordering objectors to file notices of objection with the

15  court).  Accordingly, the Court should reject this objection.

16         3.  <u>Amounts Available With and Without Proof of Purchase</u>.  Next, an objector

17  argues that the settlement "sets up an unfair and unjustified tiered recovery system"

18  based on whether or not a class member has receipts.  (Rossignol Obj. [ECF No. 159]

19  at 2.)  But this assertion essentially boils down to a claim that the settlement could

20  have been "better" for customers without receipts, which is not a valid ground for

21  rejecting the settlement.  *See, e.g.*, *Hanlon*, 150 F.3d at 1027 ("Settlement is the

22  offspring of compromise; the question we address is not whether the final product

23  could be prettier, smarter or snazzier, but whether it is fair, adequate and free from

24  collusion."); *Browning*, 2007 U.S. Dist. LEXIS 86266, at *17 (noting that objectors'

25  complaints that the settlement did not provide a full cash refund "is tantamount to

26  complaining that the settlement should be 'better,' which is not a valid objection").

27         In fact, the low number of receipts is actually a reason to *approve* the settlement,

28  because this failure of proof has derailed several other litigated class actions, as

1    discussed above (*supra* at pp. 5-6, citing *Carrera*, 727 F.3d at 304; *Hodes*, 2009 WL

2    2424214, at *4; *Weiner*, 2010 WL 3119452, at *13).  Accordingly, but for this

3    settlement, it would be very unlikely that class members without receipts could recover

4    anything at all, even if Plaintiffs overcame the other hurdles discussed above.  Even if

5    "the average class member payment . . . appears to be less than $10" (Andersen Obj.

6    [ECF Nos. 155 & 162] ¶ 5), this all-cash award still equates to three full bottles of

7    Naked Juice to consumers without any proof of purchase, in a case where Naked Juice

8    denies all allegations, where plaintiffs received exactly what was promised and what

9    they paid for—a super-premium juice made with real fruit, and where there is no

10   measurable difference between what was promised and what was delivered.  Again,

11   "the question . . . is not whether the final product could be prettier, smarter, or

12   snazzier, but whether it is fair, adequate, and free from collusion." *Hanlon*, 150 F.3d

13   at 1027.

14         4.  <u>Fraudulent Claims</u>.  One objector contends that "class members have no real

15   protection against claims dilution by people who are not true class members."

16   (Andersen Obj. [ECF Nos. 155 & 162] ¶ 6.)  This is pure speculation that is belied by

17   the extensive efforts that the parties and their experienced claims administrator

18   (Gilardi) have implemented.  Specifically, Gilardi's fraud detection experts (including

19   former FBI agents) actively monitored all claims made on a real-time basis through

20   both automated processes and daily analyses of trends in claims.  (*See* Sherwood Decl.

21   [ECF No. 167] ¶ 24.)  This monitoring led to immediate investigation and invalidation

22   of fraudulent claims.  (*Id*. ¶ 25.)  For example, on November 7, 2013, Gilardi noticed a

23   spike in activity and determined that approximately 1,900 claims had been generated

24   from one of two IP addresses and included the same or similar mailing address; these

25   claims were rejected as fraudulent.  (*Id.*)

26         5.  <u>Notice</u>.  Another objector claims that it is "not fair" to require class members

27   to read a lengthy class notice that was not in "plain language."  (Andersen Obj. [ECF

28   Nos. 155 & 162] ¶¶ 3, 7.)  But this Court already reviewed and approved the notice,

which was modeled on the Federal Judicial Center's ("FJC") exemplar.  This objection effectively amounts to an attack on the FJC's recommendations, which parties to class action settlements have been urged to follow.  *Compare In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 10-ML-2151, 2012 WL 6733023, at \*3 (C.D. Cal. Dec. 28, 2012) (approving the class notice in part because it complied with the FJC's sample notice); *with Walter v. Hughes Commc'n*, No. 09-2136, 2011 WL 2650711, at \*15 (N.D. Cal. July 6, 2011) (finding the proposed notice inadequate in part because it did not comply with the guidance). Further, the extensive reach of the notice (Vasquez Decl. [ECF No. 149-2], ¶ 9), and the 570,000 valid claims received to date, plainly demonstrate that class members were able to read and understand the plain language of the notice.

6.  <u>Potential Recovery at Trial</u>.  One objection complains, without any legal support or analysis, that "the notice does not say what the potential recovery at trial is" and "class members are entitled to know what the potential recovery at trial might have been, i.e., full restitution."  (Andersen Obj. [ECF Nos. 155 & 162], ¶ 1.)  This objection is flawed for several reasons:  *First*, the Ninth Circuit has repeatedly and explicitly rejected such objections:  "Notice provided pursuant to Rule 23(e) must **generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard**.  That standard . . . **does not require an estimate of the potential value of [the class'] claims**."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) ("We disagree" with "[o]bjectors' argu[ment] that the notice provided to class members during the opt-out period was insufficient because it did not describe the value of the plaintiffs' statutory claims") (emphasis added) (internal citations omitted).  Put simply, "notice need not include '**expected value of fully litigating the case**.'"  *Id.* (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (emphasis in original)).  In *Rodriguez*, the Ninth Circuit rejected an objection that the settlement notice failed to include "the expected value of fully litigating the case," based on the following sound

rationale that applies equally here:

> [T]he Notice contains adequate information, presented in a neutral manner, to apprise class members of the essential terms and conditions of the settlement.   The Notice advises class members that . . . the class representatives approve the settlement.  It describes the aggregate amount of the settlement fund and the plan for allocation, thereby complying with what we require . . . .   We therefore conclude that the Notice communicated the essentials of the proposed settlement in a sufficiently balanced, accurate, and informative way to satisfy due process concerns.

563 F.3d at 962-63 (internal citations omitted).

*Second*, this objector has confused his responsibilities with those of the Court.  It "is committed to the sound discretion of the trial judge"—not objecting class members—"to approve or reject a settlement . . . because he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citation omitted).  The Court has already "assessed the [settlement] in light of information . . . regarding Defendant's net profits with respect to the sales that underlie the claims in this case," and found this to be a factor in favor of preliminary approval:  "the proposed settlement of $9 million, plus the injunctive relief valued at $1.4 million, is within the reasonable range of recovery for this case" and "the parties engaged in substantial discovery, which supports a finding that the settlement is reasonable when measured against both the strength of Plaintiffs' case and the risks of continued litigation."  (Prelim. Approval Order [ECF No. 144], Aug. 7, 2013, at 5.)[5]

*Third*, this objection rests on the premise that gross revenues standing alone are a valid measure under California law for claiming restitution, which is mistaken and contrary to the law (*see supra* at p. 6).

---

[5] Moreover, Defendant's financial data is designated "Highly Confidential— Attorneys' Eyes Only" pursuant to the Protective Order dated July 12, 2012 and cannot be widely disseminated to the Class under this Order.

7.  <u>Number of Class Members</u>.  One objector asks "how can class members
assess whether the relief is fair" without any estimates as to "the number of class
members" and "the number of bottles sold."  (Andersen Obj. [ECF Nos. 155 & 162]
¶ 2).  This objector apparently failed to review the detailed papers filed by the parties
in July in support of the settlement, which estimated the number of class members.
(*See* Stipulation of Settlement, Ex. I [ECF No. 118] (Vasquez Decl.), at 6.)  Again,
because Naked Juice does not sell directly to consumers, it was unable to identify each
and every class member or individual bottle sold with mathematical precision.  The
Stipulation of Settlement and the notices also carefully described the method for pro-
rata reduction.  (*See id*. [ECF No. 118], ¶ 47; Long Form Notice [ECF No. 118-5],
at 7-8; Banner Ads [ECF No. 134], Ex. A.)  Further, although the objector suggests in
paragraph 2 that he is unable to calculate the pro rata reduction, he was able to do so
two paragraphs later.  (*See* Andersen Obj. [ECF Nos. 155 & 162] ¶¶ 2, 5.)  And the
Ninth Circuit has already rejected such objections based on the purported inability to
precisely calculate each class member's potential recovery.  *Torrisi*, 8 F.3d at 1373-74
(notice adequate where it "clearly stated the aggregate amount of the settlement and
the formula for computing awards" because class members' "potential recovery was a
matter of conjecture since it was unknown how many class members would opt out or
submit claims") (citations omitted).  In any event, the parties have reported on the total
claims and pro rata reduction to date.  (Sherwood Decl. [ECF No. 167], ¶ 29.)  This
objection is meritless.

8.  <u>Up-To-Date Claims Information</u>.  Two objectors argue that the Court should
not grant final approval until it has complete claims information.  (Andersen Obj. [ECF
Nos. 155 & 162] ¶¶ 4, 5; Rossignol Obj. [ECF No. 159] at 4-5.)  But the parties have
already provided up-to-date claims information as of November 25 (*supra* p. 13;
Sherwood Decl. [ECF No. 167], ¶ 29) and October 18 (*see* Mot. for Final Approval
[ECF No. 149], at 2, 13).  And the parties will provide a final report from the claims
administrator by December 19, only two days after the claims deadline.  Accordingly,

there is no need to continue the fairness hearing on this basis, especially where the parties will provide up-to-date information promptly, and it is exceedingly unlikely that the claims made in the two-week period between the fairness hearing and the claims deadline will impact pro-rata reduction (and by definition no other part of the settlement can even potentially be affected).

9. <u>Release</u>.  One objection states, with no support or analysis, that "it is unclear whether *other* advertising claims are being released or just those that were at issue in the case."  (Andersen Obj. [ECF Nos. 155 & 162] ¶ 7.)  Even a cursory review of the record proves otherwise.  The Notice specifically quotes the release from the settlement agreement (*see* Long Form Notice [ECF No. 118-5], at 8-10), and the parties tied the release to the facts and claims in the lawsuit.  *See*, *e.g.*, *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1288 (9th Cir. 1991) (permitting a release of claims that "arise from the same common nucleus of operative fact" as those in the case pending before it).

### III.   CONCLUSION

Given the substantial benefits conferred on the class by the settlement, particularly in light of the substantial weaknesses concerning Plaintiffs' claims on the merits and for purposes of class certification, coupled with the very low number of objections and opt-outs, Naked Juice respectfully requests that the Court approve the settlement as fair, reasonable, and adequate.

Dated:  November 25, 2013           GIBSON, DUNN & CRUTCHER LLP

                                    By:  _____/s/ Christopher Chorba_____
                                              Christopher Chorba

                                    Attorneys for Defendant
                                    NAKED JUICE CO. OF GLENDORA, INC.

# CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2013, I served via electronic and first-class mail the foregoing document to Plaintiffs' Interim Co-Lead Counsel, Sandys' Counsel, and Objectors/Objectors' Counsel at the below-listed addresses:

| Plaintiffs' Interim Co-Lead Counsel | |
|---|---|
| Tina Wolfson<br>twolfson@ahdootwolfson.com<br>Robert Ahdoot<br>rahdoot@ahdootwolfson.com<br>AHDOOT & WOLFSON, PC<br>1016 Palm Avenue<br>West Hollywood, California 90069<br>Tel:  310-474-9111<br>Facsimile:  310-474-8585 | Rosemary M. Rivas<br>rrivas@finkelsteinthompson.com<br>Danielle A. Stoumbos<br>dstoumbos@finkelsteinthompson.com<br>FINKELSTEIN THOMPSON, LLP<br>505 Montgomery Street, Suite 300<br>San Francisco, California 94111<br>Telephone:  (415) 398-8700<br>Facsimile:  (415) 398-8704 |
| Christopher P. Ridout, Esq.<br>c.ridout@rlollp.com<br>Ridout, Lyon + Ottoson, LLP<br>555 E. Ocean Blvd., Ste. 500<br>Long Beach, California 90802<br>Tel:  562-216-7380<br>Facsimile:  562-216-7385 | Marc L. Godino<br>mgodino@glancylaw.com<br>Glancy Binkow & Goldberg, LLP<br>925 Century Park East, Suite 2100<br>Los Angeles, California 90067<br>Telephone:  (310) 201-9150<br>Facsimile:  (310) 201-9160 |
| Sandys' Counsel | |
| James A. Francis<br>jfrancis@consumerlawfirm.com<br>David A. Searles<br>dsearles@consumerlawfirm.com<br>FRANCIS & MAILMAN P.C.<br>100 S. Broad Street, 19th Floor<br>Philadelphia, PA 19110<br>Tel:  215-735-8600<br>Facsimile:  215-940-8000<br><br>Stephen Gardner<br>sgardner@cspinet.org<br>Center for Science in the Public Interest<br>5646 Milton Street Suite 211<br>Dallas, TX 75206<br>Tel:  214-827-2774<br>Facsimile:  214-827-2787 | Yvette Golan<br>ygolan@tgfirm.com<br>The Golan Law Firm<br>1919 Decatur St.<br>Houston, TX 77007<br>Tel:  866-298-4150<br>Facsimile:  928-441-8250<br><br>Shirish Gupta<br>sgupta@flashpoint.com<br>Flashpoint Law, Inc.<br>1900 S. Norfolk Street, Suite 350<br>San Mateo, CA 94403<br>Tel:  650-539-4019 |

| **Objectors/Objectors' Counsel** | |
|---|---|
| Joseph Darrell Palmer<br>darrell.palmer@palmerlegalteam.com<br>Darrell Palmer Law Offices<br>2244 Faraday Avenue Suite 121<br>Carlsbad, CA 92008<br>Tel:  858-215-4064<br>Facsimile:  866-583-8115<br><br>*Attorney for Objector Dawn Weaver*<br><br>Scott A Kron<br>scott@kronandcard.com<br>KRON & CARD LLP<br>23421 South Point Drive<br>Suite 280<br>Laguna Hills, CA 92653-1556<br>Tel:  949-367-0520<br>Facsimile:  949-613-8472<br><br>*Attorney for Objector Adam Andersen*<br><br>Joshua R, Furman<br>jrf@furmanlawyers.com<br>Joshua R Furman Law Corporation<br>15260 Ventura Boulevard Suite 2250<br>Sherman Oaks, CA 91403<br>Tel:  818-646-4300<br>Facsimile:  818-646-4301<br><br>*Attorney for Objector Joanne Rossignol* | Bradley Lewis Henry<br>234 E Blair St.<br>Chicago, IL 60185<br><br>Sarah Marie Henry<br>234 E Blair Street<br>Chicago, IL 60185<br>502-631-0348<br><br>*For Self-Represented Objectors<br>Bradley and Sarah Henry* |

Dated:  November 25, 2013        GIBSON, DUNN & CRUTCHER LLP

By:  _____/s/ Dhananjay S. Manthripragada_____
        Dhananjay S. Manthripragada

Attorneys for Defendant
NAKED JUICE CO. OF GLENDORA, INC.