Name  SCOTT A. KRON, ESQ.

Address  23421 S. POINT DR., STE. 280

City, State, Zip  LAGUNA HILLS, CA 92653-1556

Phone  (949) 367-0520

Fax  (949) 613-8472

E-Mail  scott@kronandcard.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PAPPAS<br><br>PLAINTIFF(S),<br><br>v.<br><br>NAKED JUICE CO. OF GLENDORA, INC., a California corporation, et al.<br><br>DEFENDANT(S). | CASE NUMBER:<br><br>LA CV11-08276-JAK (PLAx)<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that _____ ADAM ANDERSEN _____ hereby appeals to
*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):

☒ Judgment (specify):
  Final Judgment 01/22/2014

☒ Other (specify):
  Appellant is challenging the approval and award of fees and costs to class counsel, et al., as reflected in the Final Judgment of 1/22/2014.

Imposed or Filed on ___ 01/22/2014 ___ . Entered on the docket in this action on 01/22/2014 ___ .

A copy of said judgment or order is attached hereto.

01/24/2014
Date

Signature
☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**   The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party.  Also, if not electronically filed in a criminal case,  the Clerk shall be furnished a sufficient number of copies of the Notice of  Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11                        WESTERN DIVISION

| | |
|---|---|
| NATALIE PAPPAS, | CASE NO. LA CV11-08276-JAK (PLAx) |
| Plaintiff, | **FINAL JUDGMENT** |
| v. | <mark>**JS-6**</mark> |
| NAKED JUICE CO. OF GLENDORA, INC., a California corporation, | Honorable John A. Kronstadt, presiding |
| Defendant. | Amended Consolidated Class Action Complaint Filed:  June 5, 2012 |

IT IS on this 17th day of January, 2014, HEREBY ADJUDGED AND DECREED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 58 THAT:

1.　　The settlement of *Pappas v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-08276 JAK (PLAx), pending in the United States District Court, Central District of California, which was related to and consolidated with *Marchewka v. Naked Juice Co. of Glendora, Inc.*, No. SA CV 11-01701 JAK (PLAx) ("*Marchewka*"), *Evans v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-09414 JAK (PLAx) ("*Evans*"), *Park v. Naked Juice Co. of Glendora, Inc.*, No. LA CV 11-09677 JAK (PLAx) ("*Park*"), and *Sandys v. Naked Juice Co.*, No. LA CV 11-08007 JAK (PLAx) ("*Sandys*") (collectively, the "Action"),[1] on the terms set forth in the parties' Stipulation of Settlement, with exhibits (collectively, the "Stipulation of Settlement"), and definitions included therein, signed and filed with this Court on July 2, 2013, is finally approved.

2.　　The following class is granted final certification for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3): all persons or entities in the United States who purchased one or more of the Eligible Products from September 27, 2007, up to and including the Notice Date. Excluded from the Class are: (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purpose of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in the Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.

3.　　"Eligible Products" shall mean and include the following Naked Juice products: AÇAÍ MACHINE (formerly known as PURPLE MACHINE and RAIN FOREST AÇAÍ),

---

[1]　　The Court designated the *Pappas* action as the "Lead Case," and closed the *Marchewka*, *Evans*, *Park*, and *Sandys* actions, by order dated March 12, 2012. (*Pappas* ECF Nos. 38 and 39; *see also Marchewka* ECF No. 23; *Evans* ECF No. 19; *Park* ECF No. 16; *Sandys* ECF No. 73).

1

APPLE, APPLE CRANBERRY, BERRY BLAST (formerly known as BERRY BLAST WELL BEING), BERRY PROBIOTIC, BERRY VEGGIE (formerly known as BERRY VEGGIE MACHINE), BLACK AND BLUEBERRY (formerly known as BLACK AND BLUEBERRY RUSH), BLUE MACHINE, CARROT, CHAI SPICED CIDER, CHERRY POMEGRANATE (formerly known as CHERRY POMEGRANATE POWER), CITRUS LEMONGRASS (REDUCED CALORIE) (formerly known as CITRUS LEMONGRASS), GOLD MACHINE, GREEN MACHINE, LYCHEE (REDUCED CALORIE), MANGO VEGGIE, MIGHTY MANGO (formerly known as MIGHTY MANGO WELL BEING), O-J, ORANGE CARROT, ORANGE MANGO (formerly known as ORANGE MANGO MOTION), ORGANIC CARROT, PEACH GUAVA (REDUCED CALORIE), PEACH MANGOSTEEN (formerly known as PEACH MANGOSTEEN BLISS), POMEGRANATE (formerly known as PLENTIFUL POMEGRANATE), POMEGRANATE AÇAÍ, POMEGRANATE BLUEBERRY, POWER-C MACHINE (formerly known as POWER-C), PROBIOTIC TROPICAL MANGO, PROTEIN ZONE, PROTEIN ZONE BANANA CHOCOLATE, PROTEIN ZONE DOUBLE BERRY, PROTEIN ZONE MANGO, RAZALICIOUS, RED MACHINE, STRAWBERRY BANANA (formerly known as STRAWBERRY BANANA C and STRAWBERRY BANANA WELL BEING), STRAWBERRY KIWI (formerly known as STRAWBERRY KIWI KICK), TANGERINE SCREAM, TROPICAL (REDUCED CALORIE) (formerly known as TROPICAL C and TROPICAL), and WATERMELON CHILL.  The Eligible Products are those juice and smoothie products at issue in the Complaints and subject to Plaintiffs' claims arising out of or relating to the "100% Juice," "100% Fruit," "From Concentrate," "All Natural," "All Natural Fruit," "All Natural Fruit + Boosts," or "Non-GMO" statements, through any medium (on-label, internet, or otherwise).

4. The dissemination of the Class Notice in accordance with the terms of the Stipulation of Settlement and this Court's Preliminary Approval Order, as described in the Settlement Administrator's Declaration filed before the Fairness Hearing: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, the terms of the Settlement and their rights under the Settlement, including, but not limited to, their right to object to

2

any aspect of the proposed Settlement or exclude themselves from the proposed Settlement and to appear at the Fairness Hearing, and the binding effect of the Final Orders and this Final Judgment on all persons and entities who did not request exclusion from the Class; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, the United States Constitution (including the Due Process Clause), and the Rules of this Court, as well as complied with the Federal Judicial Center's illustrative class action notices.

5.      Only those persons and entities listed in the Final Order Approving Class Action Settlement and issued concurrently herewith, a copy of which is attached hereto as Exhibit "A," have submitted timely and valid requests for exclusion from the Class and are therefore not bound by this Final Judgment and the accompanying Final Order Approving Class Action Settlement.

6.      The claims in this Action are dismissed on the merits and with prejudice pursuant to the terms (including the Release) set forth in the Parties' Stipulation of Settlement and in the Court's Final Order Approving Class Action Settlement and Final Order Approving Attorneys' Fees and Expenses and Incentive Awards, without costs to any party except as provided in these Final Orders.

7.      All Plaintiffs and Class Members and/or their representatives, and all persons acting on behalf of, or in concert or participation with such Plaintiffs or Class Members (including but not limited to the Releasing Parties), who have not been timely excluded from the Class are hereby permanently barred and enjoined from:  (a) filing, commencing, asserting, prosecuting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released Claims; and (b) bringing an individual action or class action on behalf of Plaintiffs or Class Members, seeking to certify a class that includes

Plaintiffs or Class Members, or continuing to prosecute or participate in any previously filed and/or certified class action, in any lawsuit based upon or asserting any of the Released Claims. Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over the Action.

8.     Class Counsel shall take all steps necessary and appropriate to provide Class Members with the benefits to which they are entitled under the terms of the Stipulation of Settlement and pursuant to the Orders of the Court.

9.     Class Counsel shall be awarded $2,526,091.50 in Attorneys' Fees and $81,524.41 in Expenses and Sandys' Counsel shall be awarded $52,800.00 in Attorneys' Fees and $5,665.00 in costs, which amounts are approved as fair and reasonable, in accordance with this Court's Order dated January 2, 2014. .

10.     Plaintiff Natalie Pappas, Plaintiff Russell Marchewka, Plaintiff Christopher Evans, and Plaintiff Gina Park are awarded a total of $6,676.00 in incentive awards— $1,740 for Plaintiff Pappas, $2,500 for Plaintiff Marchewka, $1,160 for Plaintiff Evans, and $1,276 for Plaintiff Park—in their capacity as representative Plaintiffs in the Action.

11.     The Court will retain continuing jurisdiction over the parties and the Action for the reasons and purposes set forth in this Final Judgment, the Final Order Approving Class Action Settlement, and the Final Order Approving Attorneys' Fees and Expenses and Incentive Awards. Without in any way affecting the finality of these Final Orders and/or this Final Judgment, this Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Stipulation of Settlement and of these Final Orders and this Final Judgment, and for any other necessary purpose. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-82 (1994).

DATED:  January 22, 2014

_____
The Honorable John A. Kronstadt
UNITED STATES DISTRICT JUDGE

4

### **Exhibit A** – List of Persons Who Requested Exclusion

1.     Krystina Alexander

2.     Gina Burnett

3.     Jana Michelle Craft

4.     La Conda J Everett

5.     Timothy Falloni

6.     Kimberley Francis

7.     Jim Haack

8.     Christopher Konieczny

9.     Matt Lahr

10.    Michelle Lowe

11.    Beverly B Mardis

12.    Amy C Mardis

13.    Nikos Markellos

14.    Erica Anne McDowell

15.    Joy McPherson

16.    Lee Momient

17.    Carly Nichols

18.    Kimberly Peters

19.    Jeremy Smith

20.    Simone Michelle Smith

21.    Emma Umbarger

22.    Michael Todd Young

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV11-08276 JAK (PLAx) | | Date | January 2, 2014 |
|---|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| Andrea Keifer | Alex Joko |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |

**Proceedings:** (IN CHAMBERS) ORDER RE PLAINTIFF SANDYS' MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES (DKT. 147)

CLASS COUNSELS' MOTION FOR INCENTIVE AWARDS AND AWARD OF ATTORNEYS' FEES AND COSTS (DKT. 148)

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 149)

OBJECTIONS TO SETTLEMENT (DKT. 157, 159, 162, 164)

I.      **Introduction**

In 2011, five separate, putative class actions were brought against Naked Juice Co. of Glendora, Inc. ("Defendant" or "Naked Juice"); each alleged that Defendant misrepresented various beverage products as "All Natural," "100% Juice," "100% Fruit," "From Concentrate," and "Non-GMO," in violation of state and federal law. Dkt. 119 at 2-3. The five cases were consolidated on February 6, 2012. Dkt. 35. Co-Lead Counsel for the putative class members were designated by the Court on March 5, 2012. Dkt. 38.

After extensive negotiations, which were overseen by a mediator, the parties named in four of the cases reached a global, proposed settlement as to the claims of all potential class members in all of the

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

five consolidated actions. Dkt. 119 at 5-6. Class Representatives Russell Marchewka, Gina Park, and Christopher Evans, and Lead Plaintiff Natalie Pappas (collectively, the "Pappas Plaintiffs" or "Plaintiffs") now move for final approval of the class action settlement ( "Final Approval Motion"), Dkt. 149, and for attorney's fees, costs, and incentive awards ("Co-Lead Counsel's Motion"), Dkt. 148. Defendants do not oppose the motions; however, four objections have been filed as to final approval of the class settlement. Dkt. 157, 159, 162, 164. Plaintiff Sara Sandys ("Sandys"), who brought a fifth action, has filed a separate request for an award of attorney's fees and the reimbursement of certain expenses ("Sandys' Counsel's Motion"). Dkt. 147. Defendant and the Pappas Plaintiffs oppose Sandys' Motion. Dkts. 160, 165.

A hearing on these matters was conducted on December 2, 2013. At the conclusion of the hearing, supplemental briefing was ordered as to certain issues. The responsive briefing was timely filed. Dkt. 174, 175.  For the reasons stated in this Order, the Court GRANTS Plaintiffs' Motion for Final Approval of the Settlement, GRANTS IN PART Co-Lead Counsel's Motion for Attorneys' Fees and Incentive Awards, GRANTS IN PART Plaintiff Sandys' Motion for Attorneys' Fees, and OVERRULES the objections to the class settlement.

## II.    Factual and Procedural Background

As noted, this proceeding is the result of the consolidation of five separate, putative class actions initiated by five different, named plaintiffs. Plaintiff Sandys filed the first action (the "Sandys Case"), *Sandys v. Naked Juice*, on September 27, 2011. CV 11-08007-JAK, Dkt. 1. Eight days later, on October 5, 2011, the complaint in *Pappas v. Naked Juice* was filed. CV 11-08276-JAK, Dkt. 1. The remaining three cases were filed in early November 2011. *See Marchewka v. Naked Juice*, CV-11-01701-JAK; *Evans v. Naked Juice*, CV-11-09412-JAK; *Park v. Naked Juice*, CV-11-09677-JAK.

### A.    Dispute as to Lead Counsel

On November 21, 2011, the Pappas Plaintiffs jointly moved for consolidation of all five cases: *Pappas v. Naked Juice*, CV 11-08276-JAK; *Sandys v. Naked Juice*, CV 11-08007-JAK; *Marchewka v. Naked Juice*, CV-11-01701-JAK; *Evans v. Naked Juice*, CV-11-09412-JAK. Dkt. 18.[1] In the joint motion, the Pappas Plaintiffs also sought the appointment of their counsel, Ahdoot & Wolfson, P.C., Ridout & Lyon, LLP, and Finkelstein Thompson LLP, as interim co-lead counsel pursuant to Fed. R. Civ. P. 23(g). *Id.* The Pappas Plaintiffs also proposed that Plaintiff Park's counsel, Glancy Binkow & Goldberg, LLP serve on the Executive Committee. Dkt. 29 at 5-6.

---

[1] *Park v. Naked Juice*, CV-11-09677-JAK (the "Park Case") was filed the same day as the motion to consolidate. Thus, it was not initially included in the consolidation motion. However, in their reply in support of the motion to consolidate, the Pappas Plaintiffs sought to include the Park Case in the consolidated proceedings, and represented that "Plaintiff Park supports consolidation and the Pappas Group's proposed leadership structure." Dkt. 32. The reply also stated that, "Proposed Interim Co-Lead Class Counsel support Glancy Binkow & Goldberg LLP [counsel for Park] as a member of the Executive Committee." *Id.* Sandys' Counsel objected to this leadership structure in an amended motion for appointment as interim lead class counsel. CV 11-08007-JAK, Dkt. 57.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Plaintiff Sandys opposed the motion and filed a competing motion for appointment as interim lead counsel in *Sandys*. CV 11-08007-JAK, Dkt. 22, 23. The Pappas Plaintiffs opposed this motion. They argued that, although Sandys filed the first complaint, her Texas-based counsel ("Sandys' Counsel") lacked adequate knowledge of the local rules in the Central District of California, California law, and class action procedures. Dkt. 29 at 8.

On February 6, 2012, the Court held a hearing on the Pappas Plaintiffs' motion to consolidate and appoint interim lead counsel. The Court ordered counsel to meet and confer regarding electing interim co-lead counsel, and continued the motion to a date that permitted such discussions. Dkt. 35. On March 1, 2012, the Pappas Plaintiffs filed a supplemental memorandum in support of their motion to appoint interim co-lead counsel, in which they stated that Sandys' Counsel had threatened to oppose any class settlement if the Pappas Plaintiffs' counsel did not agree to include it as interim co-lead counsel. Dkt. 37.

The Court held a scheduling and status conference on March 5, 2012. At that hearing, the motion to consolidate the five cases was granted, as were the motions to designate the Pappas Case as the lead case, and counsel for the Pappas Plaintiffs as interim, co-lead counsel ("Co-Lead Counsel"). Dkt. 38, 39.

**B.     The Consolidated Class Action Complaint and Course of Litigation**

On March 19, 2012, on behalf of all potential class members, Co-Lead Counsel filed a Consolidated Class Action Complaint ("CAC"). Dkt. 40. Subsequently, Defendant filed a motion to dismiss the CAC. Dkt. 41. That motion to dismiss was granted in part, *i.e.*, with respect to the labels "100% Juice" and "From Concentrate," and as to Plaintiffs' federal warranty claims, but was otherwise denied. Dkt. 52. A Consolidated First Amended Complaint ("CFAC") was filed on June 5, 2012. Dkt. 63. It is the operative complaint in these actions.

For several months following the filing of the CFAC, the parties engaged in substantial document discovery. Dkt. 119 at 4-5. Certain discovery disputes arose that led each side to bring motions to compel that were heard by Magistrate Judge Abrams. *Id.* at 5. Plaintiffs estimate that, during the course of this discovery, they received approximately 75,000 pages of documents from Defendant and an additional terabyte of electronic information through non-party discovery. *Id.* Plaintiffs' counsel also undertook substantial work preparing for class certification. *Id.* at 6.

Following the completion of this discovery, the parties began settlement negotiations. *Id.* These discussions were overseen and facilitated by Judge Carl J. West, who retired after extensive service on the Los Angeles County Superior Court. During that service, Judge West was assigned to, among others, the civil and complex civil litigation departments, where he presided over many class action cases. *Id.* The parties attended a first session with Judge West in October 2012, and a second one in December 2012; neither resulted in a settlement. *Id.* The parties then attended a third session with Judge West in January 2013, and reached an agreement in principle to settle the actions. *Id.* The parties then spent the next several months finalizing and memorializing the terms of their agreement.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

---

*Id.* Due to certain disputes that arose during this process, the parties attended a fourth session with Judge West in May 2013. *Id.* The parties then finalized their written agreement on July 2, 2013 (the "Proposed Settlement"). *Id.* at 7.

## III.   **The Proposed Settlement**

### A.   **Settlement Class**

The proposed Settlement Class is defined as: "All persons and entities in the United States who purchased one or more of the Eligible Products[2] from September 27, 2007 up to and including the Notice Date."[3] Dkt. 119, p. 18. The parties contend that this Class should be certified for settlement purposes because it meets the requirements of Civil Rule 23. *Id.*

### B.   **Settlement Fund**

Under the terms of the Proposed Settlement, Naked Juice will pay $9 million to a Settlement Fund. Dkt. 119 at 7. The Settlement Fund will be applied to the following: (i) cash payments to Class Members; (ii) costs of notice and settlement administration; (iii) payment of any attorney's fees and expenses awarded by the Court; and (iv) payment of any incentive awards to named Plaintiffs that are approved by the Court. *Id.* Defendant is not entitled to a reversion of any residual funds; any such funds will be distributed to certain, specified non-profit organizations under the *cy pres* doctrine.[4] *Id.*

### C.   **Payments to Class Members**

To qualify for a cash payment, a Class Member must complete and submit a short Claim Form by U.S. Mail or on the Settlement Website: www.NakedJuiceClass.com. *Id.* at 7. Class Members with a proof of purchase, *i.e.*, a receipt or other documentation showing the purchase of Eligible Products during the Class Period, are eligible to receive full reimbursement of the amounts paid for the purchase of the Eligible Products up to a maximum of $75.00. *Id.* at 7-8. Class Members who do not have proof of purchase are eligible to receive payments between $5.00 and $45.00, depending on the amount paid at retail for the Eligible Products. *Id.* at 8.

### D.   **Attorney's Fees**

---

[2] The "Eligible Products" are certain Naked Juice products that are listed in Paragraph 14 of the Stipulation of Settlement. *See* Dkt. 118, ¶ 14.
[3] Excluded from the Class are (a) all persons who are employees, directors, officers, and agents of Naked Juice or PepsiCo or their subsidiaries and affiliated companies; (b) persons or entities who purchased the Eligible Products primarily for the purposes of resale; (c) governmental entities; (d) persons who timely and properly exclude themselves from the Class as provided in this Stipulation of Settlement; (e) persons who purchased the Eligible Products via the Internet or other remote means while not residing in the United States; and (f) the Court, the Court's immediate family, and Court staff.
[4] At the hearing on the Motion, the parties stated that there likely would be no residual funds given the large number of class members who already had submitted claim forms.

---

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Co-Lead Counsel and Sandys' Counsel have submitted separate applications for the award of attorney's fees and costs. Co-Lead Counsel seek an award of $2,600,000 in fees and $81,524.41 in costs; Sandys' Counsel seek an award of $567,793.50 in fees and $18,880.27 in costs. The Notice of Pendency and Settlement of Class Action (the "Notice") states that Co-Lead Counsel will apply to the Court for an award of attorney's fees and litigation costs in an amount not to exceed $3,120,000. Dkt. 118-5 at 14. The Proposed Settlement also provides that Co-Lead Counsel "shall have the sole and absolute discretion to allocate the Attorneys' Fees and Expenses amongst Plaintiffs' Counsel and any other attorneys for Plaintiffs." Dkt. 118 ¶ 62.

### E.    Incentive Awards for Lead Plaintiffs

Class representatives Pappas, Park, Evans, and Marchewka submitted a joint application pursuant to which each seeks the approval of an incentive award of $2,500. The Notice states that the award for each class representative would be no more than $2,500. Dkt. 118-5 at 14.

### F.    *Cy Pres* Awards

If after all the foregoing amounts are paid, any residual funds remain in the Settlement Fund, they will be distributed to the following nonprofit organizations in the stated, relative shares: Mayo Clinic (50%); National Association of IOLTA Programs ("NAIP") (25%); and equal, pro rata shares to seven legal aid organizations (combined 25%). *Id.* at 8.

### G.    Injunctive Relief

The settlement also provides that Naked Juice will be subject to an affirmative injunction that will require it to:

- Redesign the products' labels, marketing, and advertising to eliminate the use of the "All Natural" language on future labels and marketing materials and media, and substantiate the "Non-GMO" claim, which Plaintiffs alleged were false and misleading.
- Establish, for at least three years, a verification program through an independent testing organization to confirm the accuracy of the "Non-GMO" statement on Naked Juice product labels. The program will involve, among other things, periodic testing of finished product to confirm the accuracy of the Non-GMO statement on the product label.
- Hire or assign, for a period of at least five years, a quality control manager to oversee the independent testing process for the Naked Juice product line.
- Establish and maintain a database to track electronically and verify product ingredients for the Naked Juice line.

*Id.* The settling parties contend that the cost to Defendant of complying with this injunction will be approximately $1.4 million. They also argue that this amount should be included as part of the overall

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

value of the settlement for purposes of determining whether it is fair and reasonable. *Id.* at 9-10; *see* Theodore Decl., Dkt. 118, Exh. H, ¶¶ 4-7.

### H. Notice Procedures

On August 7, 2013, the Court granted the motion for preliminary approval of the Proposed Settlement. Dkt. 144. The terms of the Proposed Settlement included a plan to provide notice to the Settlement Class. As of October 18, 2013, the total cost of the implementation of the Notice Procedures has been approximately $816,000. Vasquez Decl., Dkt. 149-2, ¶ 36. The Pappas Plaintiffs assert that the total costs of notice and administration of claims will not exceed $1.4 million. Dkt. 149 at 21. The Proposed Settlement provides that the notice costs will be deducted from the Settlement Fund. Dkt. 118 ¶ 32.

### I. Summary of Proposed Allocation of Settlement Amount

The following is a summary of the proposed allocation of the settlement amount, if the Court were to grant both Co-Lead Counsel and Sandys' Counsel's motions for attorneys' fees and costs in full:

| | |
|---|---|
| Gross Settlement Amount | $9,000,000.00 |
| | |
| Attorneys' Fees for Co-Lead Counsel | ($2,600,000.00) |
| Attorneys' Fees for Sandys' Counsel | ($567,793.50) |
| Awards for Class Representatives | ($10,000.00) |
| Costs of Co-Lead Counsel | ($81,524.41) |
| Costs of Sandys' Counsel | ($18,880.27) |
| Notice Costs | ($816,000.00) |
| | |
| Net Settlement Amount | $4,905,801.82 |

## IV. Analysis

### A. Motion for Final Approval of Class Action Settlement

Civil Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The application of Rule 23(e) "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Products, Inc. v. Windsor*, 521

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | LA CV11-08276 JAK (PLAx) | | Date | January 2, 2014 |
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | | |

U.S. 591, 623 (1997). Rule 23(e) sets forth the procedures that apply to a proposed settlement. Each requirement is addressed below.

### 1. Adequate Notice

Adequate notice and an opportunity for class members to opt-out are critical to court approval of a class settlement under Civil Rule 23(e). *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814 (1985) (due process requires notice and opportunity to opt-out of 23(b)(3) class action).[5] As part of the preliminary approval, the Court authorized notice through various means, including: (i) online banner and pop-up advertisements, which appeared on 24/7 Real Media, Microsoft Media, Specific Media, and Yahoo! Ad Networks, Vasquez Decl., Dkt. 149-2, ¶¶ 16-24; and (ii) published notice of the settlement in *People* and *Parade* magazines and in *USA Today*. *Id.* at ¶¶ 11-15. The advertisements allowed interested Internet users to be transferred directly to the Settlement Website, www.NakedJuiceClass.com. *Id.* at ¶¶ 16-24. Plaintiff's counsel also placed links to the Settlement Website on the websites of their respective law firms throughout the notice period. Wolfson Decl., Dkt. 149-1, ¶ 36. The published notice provided a general description of the lawsuit, the terms of the settlement relief, instructions on how to file a claim, and a general description of the legal rights of Class Members. *Id.* at ¶¶ 11-15. The Long Form Notice was made available on the Settlement Website, and by a request made through a toll-free number. *Id.* The program was designed to reach at least 85% of the Class Members nationwide. Vasquez Decl., Dkt. 149-2, ¶ 9.

The program was executed in accordance with its design under the terms approved by the Court. More than 85% of the members of the Class were reached. *Id.* at ¶¶ 4-9. As of November 22, 2013, 661,151 Class Members had submitted Claim Forms. Sherwood Decl. ¶ 29, Dkt. 167. Of the total claims submitted, 573,952 have been processed and believed valid, subject to an additional review. *Id.* at ¶ 29.[6] There have been 22 requests for exclusion and four objections to the settlement. Dkts. 157, 159, 162, 164; Sherwood Decl. ¶ 29, Dkt. 167. Thus, only .0003% of the class members objected.

### 2. Settlement Fairness Factors

The well-accepted standard for determining whether a court should grant final approval to a class action settlement is whether the settlement is "fundamentally fair, adequate, and reasonable." *In re Pacific Enters. Sec. Litig.,* 47 F.3d 373, 377 (9th Cir. 1995); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). The Ninth Circuit has identified the following as among the factors that may

---

[5] Rule 23(c)(2)(B) provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

[6] In addition to the 573,952 valid claims, the settlement administrator has received approximately 92,421 claims that it considers duplicative, invalid, and/or potentially fraudulent. Sherwood Decl. ¶ 30, Dkt. 167.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|----------|--------------------------|------|-----------------|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

be considered in determining whether a proposed class action settlement is fair, reasonable, and adequate:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed and the stage of the proceedings;
> (6) the experience and view of counsel;
> (7) the presence of a governmental participant; and
> (8) the reaction of the class members to the proposed settlement.

*See Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). All of these factors may not apply to every class action settlement. Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. *See, e.g., Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993).

> a) Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)); *see also Oppenlander v. Standard Oil Co. (Indiana),* 64 F.R.D. 597 (D. Colo.1974) ("It has been held proper to take the bird in the hand instead of a prospective flock in the bush.").

Plaintiffs contend that, although they believe their case against Defendant is strong, they faced considerable risk and expense had the litigation proceeded. Dkt. 149 at 17-19. In order to prevail, Plaintiffs would have had to obtain nationwide class certification. *Id.* at 17. Plaintiffs contend that "[c]lass certification always poses a risk and, in false advertising cases, often involve[s] prolonged and expensive battle of experts in connection with certification, merits and damages issues." *Id.* at 18. Defendant points out that Plaintiffs would have had difficulty demonstrating that a class of consumers who lacked receipts was ascertainable. Dkt. 168 at 10 (*citing Carrera v. Bayer Corp.,* 727 F.3d 300, 304 (3d Cir. 2013) (vacating district court's certification order -- the class was not ascertainable because class members were "unlikely to have documentary proof of purchase, such as packaging or receipts")). Additionally, Plaintiffs would have had to propose a measurable theory of class-wide damages. This may have been difficult given the individualized inquiries required to determine "whether members in fact paid a premium" for Defendant's beverages and "whether any such premium was attributable to the 'All Natural' labelling," which "would require, among other things, an examination of each of the millions of class members . . . purchases," made in different locations, at different times and for different prices. *See Weiner v. Snapple Bev. Co.,* 2010 WL 3119452 at * 10 (S.D.N.Y. Aug. 5, 2010) (applying this reasoning in a case challenging the "all natural" labeling of Snapple products).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Furthermore, even assuming the certification of a nationwide class, Plaintiffs would have faced challenges on the merits of their claims. These included proving that class members had reviewed and relied upon Defendant's "all natural" and "non-GMO" labelling when deciding to purchase Defendant's products, and showing that the statements on the labels were deceptive. Plaintiffs also argue that, even assuming class certification and liability, Defendant would likely have appealed any outcomes that were favorable to Plaintiffs. *Id.* at 19. Thus, absent a settlement agreement, Plaintiffs contend that it would have taken years for Class Members to obtain what would have been uncertain relief. *Id.*

Plaintiffs have shown that their ultimate success on the merits was not assured and that, absent the settlement, protracted, expensive, and complex litigation would have resulted. Thus, this factor favors approval of the settlement. *See Nat'l Rural*, 221 F.R.D. at 527 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

> b)      Risk of Maintaining Class Action Status

Plaintiffs assert that the risk of maintaining the class throughout trial supports approval of the settlement. Thus, even if Plaintiffs were successful in obtaining the certification of a nationwide class, Defendant could have sought its decertification at any time. Dkt. 149 at 19. However, Plaintiffs offer no evidence to support the hypothesis that the status of the class would have changed during trial. Thus, this factor is neutral; it does not add materially to the foregoing factors of uncertainty and protracted litigation.

> c)      Settlement Amount

The settlement terms compare favorably with the risks of continued litigation. The Proposed Settlement provides for a $9 million Settlement Fund for the benefit of the Class Members and the payment of class counsel, as well as non-cash benefits valued at $1.4 million. Dkt. 149 at 1. The proposed settlement terms provide that each Class Member who files a claim may receive up to $45.00 without proof of purchase, and up to $75.00 with proof of purchase, based on the amount the individual Class Member spent on Eligible Products. Dkt. 149 at 8.

As of November 22, 2013, 661,151 Class Members had submitted Claim Forms. Sherwood Decl. ¶ 29, Dkt. 167. As noted, 573,952 have been processed and are believed to be valid, subject to additional fraud review. *Id.* at ¶ 29. Given that Defendants estimated the class size is 16.5 million, and the settlement administrator estimated the class size was 8.5 million, Sherwood Decl. ¶ 28, $9 million may be less than the total potential recovery by Plaintiffs had this matter proceeded to trial. However, Defendant submitted certain evidence to the Court under seal as to the range of Plaintiffs' possible recovery at trial. Dkt. 141, 142. Based on this information, the Court concludes that, although $9 million does not approach the maximum possible recovery, it is well within the reasonable range of potential recovery at trial. Furthermore, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|----------|--------------------------|------|------------------|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp., 495 F.2d 448, 455, n.2 (2nd Cir.1974)*).

Finally, the Proposed Settlement provides for significant benefits through the affirmative injunctive relief that will be imposed, and which was described above. Dkt. 118 ¶ 50. And, as also stated, Defendant estimates that its cost of this injunctive relief will be $1.4 million. Theodore Decl. ¶ 407, Dkt. 118-8.

For all of these reasons, the settlement amount weighs in favor of the approval of the settlement.

d)      Extent of Discovery Completed and Stage of the Proceedings

Plaintiffs assert that, at this stage in the proceedings, they had sufficient information to evaluate the strengths and weaknesses of their case. Dkt. 149 at 17. Plaintiffs point out that they had conducted an extensive investigation of the facts and an extensive amount of discovery prior to entering into settlement negotiations. *Id.* Indeed, before attending the mediation sessions with Judge West, Plaintiffs obtained and reviewed 75,000 pages of documents, as well as one terabyte of electronic discovery. *Id.* Moreover, the positions of the parties had been extensively briefed in response to Defendant's motion to dismiss, and in anticipation of Plaintiffs' motion for class certification. *Id.* In light of Plaintiffs' fact gathering and discovery, as well as the nature of the proceedings at the time of the settlement, *i.e.*, after Defendant's second motion to dismiss had been denied and the parties were in the process of briefing the issue of class certification, Plaintiffs were well-positioned to evaluate the strengths and weaknesses of their case. Thus, this factor weighs in favor of approval of the settlement.

e)      Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural*, 221 F.R.D. at 528 (citing *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y.1997)). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pacific Enters. Sec. Litig.,* 47 F.3d at 378. Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural,* 221 F.R.D. at 528 (citing *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977); *Hanrahan v. Britt,* 174 F.R.D. 356, 366-368 (E.D. Pa. 1997)).

Co-Lead Counsel are experienced in consumer and other complex class action litigation. They have demonstrated their competence in the litigation of this case. Dkt. 149 at 16. Co-Lead Counsel believe that the Proposed Settlement is a fair, adequate, and reasonable resolution, which is preferable to continued litigation. *Id.* Again, this factor favors approval of the settlement.

f)      Reaction of Class Members to the Proposed Settlement

"The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court." *See Nat'l Rural*, 221 F.R.D. at 528 (citation omitted). In this regard, "[t]he representatives' views may be important in shaping the agreement and will usually be presented at the fairness hearing; they

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

may be entitled to special weight because the representatives may have a better understanding of the case than most members of the class." *Id.* (citing *Manual for Complex Litigation, Third,* § 30.44 (1995)).

As mentioned, as of November 22, 2013, 661,151 Class Members had submitted Claim Forms. Sherwood Decl. ¶ 29, Dkt. 167. There have been 22 requests for exclusion and four objections to the settlement. Dkts. 157, 159, 162, 164; Sherwood Decl. ¶ 29, Dkt. 167. The small number of objections is itself evidence that the settlement is fair and reasonable. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (that there was only one opt-out supported upholding district court's approval of settlement).

Moreover, the four objections do not demonstrate that the Proposed Settlement is unfair or unreasonable. One objection, filed jointly by Bradley Lewis Henry and Sarah Marie Henry (the "Henry Objection") adopts Sandys' Opposition to the motion for preliminary approval of the class action settlement. *See* Dkt. 157, 131. The Court addressed and rejected those arguments when the motion for preliminary approval was granted. *See* Dkt. 144. The other three objections argue that the Proposed Settlement does not identify the maximum possible recovery at trial and provides for a more substantial recovery for those class members who retained receipts. Dkt. 159, 162, 164. These objections do not provide substantial evidence to support a finding that the settlement is unfair, inadequate, or unreasonable, particularly in light of the evidence as to damages submitted by Defendant that the Court reviewed.

The Ninth Circuit has rejected the argument that a notice must disclose the potential value of the claims released by the settlement. *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2013) ("Notice provided pursuant to Rule 23(e) . . . . does not require an estimate of the potential value of [the class'] claims."). Moreover, the greater potential recovery for those class members with receipts is based on legitimate considerations regarding fraudulent claims. At the hearing on the Motions, Defendant noted that the distinction between receipt and non-receipt bearing class members reflects the likelihood that Plaintiffs would have been unable to demonstrate that a class of non-receipt bearing class customers was ascertainable. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 304 (3d Cir. 2013) (vacating district court's certification order because the class was not ascertainable due to the fact that class members were "unlikely to have documentary proof of purchase, such as packaging or receipts"). Further, of the 573,952 claims that have been processed and deemed valid on a preliminary basis, only 2,997, which is approximately .005% of the total, included proofs of purchase. Dkt. 168 at 20. And, based on the $75 per member limitation, the total additional amount that may be paid to these class members is approximately $90,000. This is approximately 1% of the settlement value. When this amount is divided by the number of non-receipt bearing class members, it results in a cost of approximately $0.16 per class member. This difference is not material. Finally, "[a] class action settlement need not benefit all class members equally." *White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1107 (C.D. Cal. 2011), *rev'd on other grounds*, 715 F.3d 1157 (9th Cir. 2013).

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Several objectors also argue that the requested attorney's fees are too high. This issue is separately addressed below, with the fee requests modified and thereby deemed reasonable. Therefore, these objections do not weigh substantially against approval.

In sum, as the Ninth Circuit has recognized:

> Of course it is possible, as many of the objectors' affidavits imply, that the settlement could have been better. But this possibility does not mean the settlement presented was not fair, reasonable, or adequate. Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.

*Hanlon*, 150 F.3d at 1027. Accordingly, this factor favors the approval of the settlement.

g)      Arms-Length Negotiations

Although not specifically identified as a factor in *Linney*, 151 F.3d 1234, the presence of arms-length negotiations in the settlement process supports the acceptance of the settlement as "fundamentally fair, adequate, and reasonable." *See Pacific Enters. Sec. Litig.*, 47 F.3d at 377; *Hanrahan v. Britt*, 174 F.R.D. 356, 366-68 (E.D. Pa. 1997) (presumption of correctness applies to a class action settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery). Here, the Proposed Settlement was the product of extensive, arms-length negotiations, and was reached with the assistance of Judge West. Dkt. 149 at 16. That he played such a role supports a finding that the settlement amount and other terms are fair and reasonable.

h)      Conclusion

A consideration and balancing of all the foregoing factors shows that the settlement is reasonable and fair. Therefore, the Court GRANTS Plaintiffs' Motion for Final Approval of the Class Action Settlement.

### B.      Plaintiffs' Motion for Attorney's Fees, Costs, and Incentive Awards

1.      <u>Attorney's Fees</u>

a)      Legal Standard

Pursuant to Fed. R. Civ. P. 23(h) attorneys' fees may be awarded in a certified class action where authorized by law or pursuant to the parties' agreement. However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In determining whether the award is reasonable, the district court has discretion to use the lodestar approach or the percentage of the fund method in common fund cases. *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 109 F.3d 602, 607 (9th Cir.1997).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

The common fund doctrine was developed to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The Ninth Circuit has established a "benchmark" for fees that is 25% in common fund cases, *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and has expressly approved the use of the common fund approach in class actions, *see Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993). In recent years, many courts have shifted to the percentage of the common fund method in awarding fees in class actions. They have reasoned that this aligns the interests of the lawyers and class members, and simplifies the approval analysis. *See, e.g., In re Activision Secs. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989); *Kirchoff v. Flynn*, 78 F.2d 320, 325-2 (7th Cir. 1986).

Under the lodestar approach, a court determines the hours reasonably expended by counsel, and applies to them reasonable hourly rates. The product of these two factors is the "lodestar" to which a multiplier may be applied in appropriate circumstances. *See Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 11 (3d. Cir. 1973). The Ninth Circuit has adopted 12 factors that a reviewing court should consider in connection with such a fee request:

(1) The time and labor required;
(2) The novelty and difficulty of the questions involved;
(3) The skill requisite to perform the legal service properly;
(4) The preclusion of other employment by the attorney due to acceptance of the case;
(5) The customary fee;
(6) Whether the fee is fixed or contingent;
(7) Time limitations imposed by the client or the circumstances;
(8) The amount involved and the results obtained;
(9) The experience, reputation, and ability of the attorneys;
(10) The 'undesirability' of the case;
(11) The nature and length of the professional relationship with the client; and
(12) Awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Furthermore, "it is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates." *Petroleum Prods.*, 109 F.3d at 607.

        b)       Application

        (1)      The Common Fund Approach

Co-Lead Counsel requests approval of an award of $2,600,000. Based on a percentage of the common fund approach, this is 28.9% of the monetary settlement amount and 25% of the settlement amount if

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

the value of the injunctive relief is included.[7] As stated above, the Ninth Circuit has established 25% of the fund recovered as the "benchmark" in common fund cases. This amount may be adjusted based on the circumstances presented by any particular case. *Id.* at 607. Courts regularly approve awards of approximately 30% "even after thorough application of . . . the lodestar method." *Activision*, 723 F. Supp. at 1377-78.

The Ninth Circuit has established that district courts should "take into account the present nonmonetary benefit bestowed upon plaintiffs' class" in determining the appropriateness of a fee award. *Loring v. City of Scottsdale, Ariz.*, 721 F.2d 274, 275 (9th Cir. 1983*); see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970) (concluding that attorneys' fees may be awarded when the litigation has conferred a substantial benefit on the class even where a suit "has not yet produced, and may never produce, a monetary recovery" under the "common fund" doctrine); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (considering that "counsel's performance generated benefits beyond the cash settlement fund" in awarding fees greater than 25% of that fund). Here, the Settlement imposes affirmative injunctive relief on the Defendant whose cost will be approximately $1.4 million. Dkt. 148 at 25. Accordingly, the total settlement can be valued at $10.4 million because the injunctive relief is designed to increase the possibility that consumers will make informed decisions about the purchase of Defendant's products that are at issue based on reliable information from, and practices by, Defendant.

Based on this analysis, the fee request here bears the indicia of reasonableness.

(2)     Comparison with the Lodestar

Plaintiff argues that the lodestar in this case would be approximately $2,661,161.50, Dkt. 148 at 2. The following charts summarize the basis for this claim:

| Firm[8] | Total Hours | Lodestar Amount |
|---|---|---|
| Ahdoot & Wolfson, PC | 2,276.4 | $1,327,203.50 |
| Finkelstein Thompson, LLP | 1,183.1 | $502,827.50 |
| Glancy, Binkow & Goldberg LLP | 371.1 | $210,607.50 |
| Ridout Lyon + Ottoson, LLP | 1,004.5 | $620,523.00 |

**Ahdoot & Wolfson, PC, Wolfson Decl. ¶ 37, Dkt. 148-1**

Tasks Performed: fact investigation (including review and analysis of Defendant's advertising,

---

[7] The sum of the fee requests of Co-Lead Counsel and Sandys' Counsel's total about 35% of the $9 million monetary settlement amount and 30% of the $10.4 million total settlement amount.
[8] Wolfson Decl. ¶¶ 35-41; Rivas Decl. ¶¶ 29-38; Ridout Decl. ¶¶ 19-26 & Exh. 2; Godino Decl. ¶ 10 & Exh. B.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

analysis of ingredients and chemical composition of Naked Juice), drafting and filing pleadings, motion to consolidate, consulting with experts and preparing expert reports, filing motion to compel, responding to Defendant's two motions to compel, attending four mediation sessions, supervising dissemination of notice

| Attorney[9] | Hours | Rate |
|---|---|---|
| Tina Wolfson (P) | 617.5 | $695 |
| Robert Ahdoot (P) | 541.4 | $695 |
| Theodore Maya (A) | 572.2 | $625 |
| Bradley King (A) | 496 | $320 |
| Law Clerks | 49.3 | $110 |

**Finkelstein Thompson, LLP, Rivas Decl. ¶¶ 7-26, 35 , Dkt. 148-3**

Tasks Performed: client intake, fact investigation, legal research, drafting pleadings, respond to Defendants' motion to dismiss, document production, document review, settlement negotiations, filing preliminary approval motion

| | | |
|---|---|---|
| Burton H. Finkelstein (P) | 16 | $850 |
| Douglas G. Thompson (P) | 6.8 | $850 |
| Mila F. Bartos (P) | 14.8 | $700 |
| Tracy D. Rezvani (P) | 65.5 | $625 |
| Rosemary M. Rivas (P) | 379.6 | $600 |
| Elizabeth R. Makris (A) | 34.7 | $350 |
| Robert O. Wilson (A) | 75.2 | $350 |
| Danielle A. Stoumbos (A) | 282.8 | $350 |
| Eugene J. Benick (A) | 2.7 | $350 |
| Caitlyn D. Finley (A) | 55 | $300 |
| Paralegals | 140 | $220 |
| Law Clerks | 110 | $170 |

**Ridout Lyon + Ottoson, LLP, Ridout Decl., Dkt. 148-2 ¶ 7, Exh. 2**

Tasks Performed: factual investigation, document review, conferring with co-counsel, reviewing pleadings, participating in mediation sessions, reviewing discovery requests

| | | |
|---|---|---|
| Chris Ridout (P) | 686.4 | $695 |

---

[9] Attorneys' positions are signified in parentheses insofar as they have been provided by Plaintiffs' Counsel. Partner is signified by (P), associate by (A).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | | Date | January 2, 2014 |
|---|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | | |

| | | |
|---|---|---|
| Devon Lyon (P) | 87.4 | $550 |
| David McKay (Of Counsel) | 9.3 | $450 |
| Caleb Marker (Of Counsel) | 170.4 | $450 |
| Cindy Nguyen (A) | 0.9 | $450 |
| Brian Johnson | 3.9 | $450 |
| Marisa Acedo (parelegal) | 1 | $150 |
| Michael Knieling (paralegal) | 0.8 | $150 |
| Elaine Acedo (paralegal) | 3.5 | $150 |
| Julie Saunders (paralegal) | 30.6 | $150 |
| **Glancy, Binkow & Goldberg LLP, Godino Decl., Dkt. 148-4 ¶¶ 9-10, Exh. B** | | |
| Tasks Performed: client intake, fact investigation, legal research, drafting pleadings, revise pleadings, attending hearings, settlement negotiations, co-counsel conferences | | |
| Mark Godino (P) | 286.5 | $615 |
| Dale MacDiarmid (A) | 2.5 | $525 |
| Kara Wolke (Senior Counsel) | 28.1 | $475 |
| Elizabeth Gonsiorowski | 1.5 | $395 |
| Casey Sadler (A) | 16.5 | $395 |
| Vahn Alexander | 8 | $615 |
| Tia Reiss  (paralegal) | 13 | $295 |
| Harry Kharadjian (paralegal) | 8.5 | $290 |
| Devanshi Patel (paralegal) | 3 | $240 |
| Andrew Katz (paralegal) | 3 | $240 |

Based on these figures, the fee request represents 98% of the lodestar. Co-Lead Counsel contends that, although their requested fee represents less than the lodestar, a positive multiplier may be warranted given the results obtained for the Class, the contingent nature of the representation, and the riskiness of the litigation. Dkt. 148 at 29 (*citing* 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992) ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.")). Co-Lead Counsel have cited cases in which hourly rates similar to those stated above were approved as to attorneys with similar skill and experience of those whose fees are at issue in this action. Wolfson Decl. ¶ 42, Dkt. 148-1.

The Court has conducted an independent review of the basis for the lodestar figures. This included an assessment of the claimed hourly rates as well as the time spent by particular attorneys on specific tasks. Based on many years of experience in reviewing such requests, the Court has familiarity with both issues. Many of the hours charged by the attorneys in this action were at rates between $695 and $850. This is in the high range even of the rates approved in cases cited by Co-Lead Counsel. Based on the Court's experience, it is also at the high end of hourly rates of similar work in this District performed by attorneys with like backgrounds and experience. Moreover, the fee requests show that, by far, most of the hours expended in the litigation were by partners who charged the highest billing rates among all counsel. The Court also notes that several attorneys billed for only a few hours of work

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

on the matter, raising significant questions as to efficiency. Based on an application of these factors, the Court has reduced the number of compensable hours by 35 hours and the hourly rates of the partners and more experienced associates to a range between $525 and $650. The following table summarizes the reductions to Co-Lead Counsels' fee request:

| Attorney | Hours Awarded (Hours Claimed) | Rate Awarded (Rate Claimed) | Amount Reduced |
|---|---|---|---|
| Wolfson | 617.5 (617.5) | $650 ($695) | $27,787.50 |
| Ahdoot | 541.4 (541.4) | $650 ($695) | $24,363 |
| Maya | 572.2 (572.2) | $590 ($625) | $20,027 |
| Finkelstein | 8 (16) | $650 ($850) | $8,400 |
| Thompson | 3.4 (6.8) | $650 ($850) | $3,570 |
| Bartos | 7.4 (14.8) | $650 ($700) | $5,550 |
| Makris | 10 (34.7) | $350 ($350) | $8,645 |
| Benick | 0 (2.7) | $350 ($350) | $945 |
| Ridout | 686.4 (686.4) | $650 ($695) | $30,888 |
| McKay | 4.65 (9.3) | $450 ($450) | $2092.50 |
| Nguyen | 0 (0.9) | $450 ($450) | $405 |
| Johnson | 1.95 (3.9) | $450 ($450) | $877.50 |
| M. Acedo | 0 (1) | $150 ($150) | $150 |
| Knieling | 0 (0.8) | $150 ($150) | $120 |
| MacDiarmid | 1.25 (2.5) | $525 ($525) | $656.25 |
| Gonsiorowski | 0 (1.5) | $395 ($395) | $592.50 |
| | | | |
| Total Reduction | | | $135,070 |

This results in a reduction of the lodestar figure by $135,070, from $2,661,161.50 to $2,526,091.50. After this reduction, the request of Co-Lead Counsel for $2,600,000 in fees exceeds the proper lodestar amount. "[I]t is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates." *Petroleum Prods.*, 109 F.3d at 607. Thus, the Court determines that Co-Lead Counsel's fees should be reduced to align with the appropriate lodestar amount.

(3)     *Kerr* Factors

An analysis of the relevant *Kerr* factors also demonstrates the reasonableness of the fee award, as modified by the Court.

*First*, Co-Lead Counsel obtained a substantial monetary settlement and an excellent result for the class. In connection with their claims, Plaintiffs sought damages in the form of a refund of amounts paid for Naked Juice Products as well as injunctive relief prohibiting Defendant from using false advertising,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

and requiring that it implement a corrective advertising campaign. CFAC ¶¶ 112, Dkt. 63. The Settlement establishes a fund of $9 million as well as the required injunctive relief designed to confer substantial benefits on the class. Thus, Plaintiffs' Counsel obtained a significant amount of the relief requested in their pleadings.

*Second*, Co-Lead Counsel are experienced attorneys. Co-Lead Counsel specialize in consumer class action matters and have had extensive experience litigating class action issues. Wolfson Decl.; Ridout Decl.; Rivas Decl.; Godino Decl.

*Third*, the issues in the matter were complex. Substantial time and labor was required. Questions regarding whether Defendant's product labels were false or misleading and whether Plaintiffs' claims were preempted by the Federal Food Drug and Cosmetic Act, 21 U.S.C. §§ 301, et seq. ("FDCA") were presented in motions to dismiss. Multiple discovery motions were litigated. Moreover, discovery conducted over a 15-month time period involved the production and review of approximately 75,000 pages of documents from Defendant and a terabyte of electronic information from non-parties. Dkt. 148 at 28.

*Fourth*, Co-Lead Counsel took the case on a contingency basis. Dkt. 148 at 29. In such circumstances, attorneys take on the substantial risk of non-payment should the claims fail. Further, counsel must advance the costs. For these reasons, attorneys who work on a contingency basis are often paid "a premium over their normal hourly rates for winning contingency cases." Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986). Here, Plaintiffs' Counsel does not request a "premium" over their hourly rates. Therefore, the amount requested is within a reasonable range for an award in this action.

*Finally*, the risks of litigation were significant. Class certification in false advertising cases "often involves an expensive and prolonged battle of experts." Dkt. 148 at 28. Furthermore, experts would have been required to establish liability as well as the amount of sustained damages to class members.

For the foregoing reasons, Plaintiffs' fee request, as modified, is reasonable. Therefore, Plaintiffs' Motion for Attorneys' Fees is GRANTED IN PART. Co-Lead Counsel are awarded $2,526,091.50 in fees. This figure represents 28% of the $9 Million settlement fund and 24.3% of the total value of the settlement including injunctive relief. Thus, it is within the benchmark range established by the Ninth Circuit, and reflects the value of the lodestar.

       2.     Costs

Numerous courts have held that, under Fed. R. Civ. P. 54 and 28 U.S.C. § 1920, attorneys are entitled to reimbursement for out-of-pocket expenses that would normally be charged to a fee-paying client. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994*); In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (2007). Here, Counsel requests reimbursement out of the common fund for

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

filing fees, expert fees, service of process fees, investigation expenses, discovery costs, and mediation expenses. These total $81,524.41.[10] The following chart summarizes the claimed expenses:

| Firm[11] | Expense Description | Total Expenses |
|---|---|---|
| Ahdoot & Wolfson, PC | Litigation Fund Contribution: $17,075[12]<br>Filing & Attorney Service Fees: $2,458.14<br>Expert Fees: $1,047.32<br>Expert & Investigative Fees: $593.74<br>Service of Process: $198.16<br>Transcript Fees: $73.20<br>Postage & Federal Express: $968.14 | $22,413.70 |
| Finkelstein Thompson, LLP | Litigation Fund Contribution: $14,000.00<br>Commercial Copies: $41.78<br>Phone/Facsimile: $270.51<br>Filing and Pacer Fees: $1,285.26<br>Postage/Messenger Fees: $1,377.45<br>Internal Copies: $1,276.40<br>Travel: $8,414.36<br>Miscellaneous: $52.32 | $26,718.08 |
| Glancy, Binkow & Goldberg LLP | Copies: $54.31<br>Filing & Attorney Service Fees: $459.31<br>Expert Research: $3,471.44<br>Mediators: $750.00<br>Assessments: $12,773.56<br>Online Research: $1,494.22<br>Parking: $158.00 | $19,160.84 |
| Ridout Lyon + Ottoson, LLP[13] | | $15,151.11 |

Because these expenses were reasonable in amount and appropriate to incur in connection with the prosecution of this action, Plaintiffs' Motion for Reimbursement of Expenses is GRANTED.

3.   Incentive Awards

---

[10] Plaintiffs also note that these costs will increase somewhat because there will be additional work necessary to complete the Settlement process. Dkt. 148 at 17.

[11] Wolfson Decl. ¶¶ 43-44; Rivas Decl. ¶¶ 39; Ridout Decl. ¶ 23 & Exh. 2; Godino Decl. ¶ 11 & Exh. C.

[12] The "Litigation Fund" refers to a joint account which was established by Interim Co-Lead Counsel and Executive Committee Member, Glancy, Binkow, and Goldberg, LLP. The fund was used for expert, electronic discovery, mediation, service of process, attorney service, bank charges, phone, parking, and postage fees. Wolfson Decl. ¶ 46, Dkt. 148-1.

[13] Ridout Lyon + Ottoson, LLP did not provide a breakdown of their expenses. *See* Ridout Decl. ¶ 23, Exh. 2.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

"Incentive awards are fairly typical in class action cases, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk . . . , and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 98-59 (9th Cir. 2009).

Here, Plaintiffs seek a $2,500 incentive award for each class representative in connection with reasonable costs and expenses incurred through their representation of the case. Plaintiffs cite case law in which greater awards than those sought here were approved. *See, e.g., Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) ($20,000 awarded to two class representatives).

Plaintiffs assert that the class representatives assisted in gathering facts and responding to discovery. Dkt. 148 at 33. In addition, Plaintiffs contend that the class representatives assumed risks in filing litigation "against a well-funded corporate defendant," including incurring possible responsibility for Defendant's costs in the event Defendant prevailed. *Id.* The class representatives have filed declarations in support of the applications for incentive awards. Pappas Decl., Dkt. 148-5; Marchewka Decl., Dkt. 148-3; Evans Decl., Dkt. 148-6; Park Decl., Dkt. 154. All of the class representatives declare that they reviewed the consolidated complaint and amended consolidated complaint, searched for documents in response to discovery requests, and discussed the settlement agreement with Plaintiffs' counsel. Pappas Decl., Dkt. 148-5; Marchewka Decl., Dkt. 148-3; Evans Decl., Dkt. 148-6; Park Decl., Dkt. 154.

Natalie Pappas states that she spent time preparing for a deposition that did not occur, and remained involved in the case despite having moved and taken on the responsibility to care for a family member. Pappas Decl., Dkt. 148-5 ¶¶ 2-5. Class representative Russell Marchewka states that he "searched for and produced over a thousand pages of documents requested by the Defendant" and verified responses to interrogatories. Marchewka Decl. ¶ 4, Dkt. 148-3. Further, he states that he made himself available by phone during mediation. *Id.* ¶ 5.

The following table reflects the hours each class representative estimates he or she spent assisting with the litigation:

| Class Representative | Estimate of Hours Expended |
|---|---|
| Gina Park (Dkt. 174-6) | 22 |
| Russell Marchewka (Dkt. 174-5) | 43 |
| Natalie Pappas (Dkt. 176) | 30 |
| Christopher Evans (Dkt. 179) | 20 |

| |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Based on the work performed by class representatives, an award of $2,500 per class representative is the equivalent of hourly rates between $125 per hour for Evans and $58 per hour for Marchewka. Although Marchewka and Pappas estimate they worked more hours than Park and Evans, their awards are capped at $2,500 to be consistent with the limitations in the notice of proposed settlement. Dkt. 118-5 at 14. Based on a consideration of the work performed by each class member and in recognition of the fact that Marchewka cannot obtain more than $58 per hour for his work, the Court concludes that awards of $58 per hour are reasonable. Thus, the Court awards the following amounts to each class representative:

| Class Representative | Estimate of Hours Expended | Amount Awarded |
|---|---|---|
| Gina Park | 22 | $1276 |
| Russell Marchewka | 43 | $2500 |
| Natalie Pappas | 30 | $1740 |
| Christopher Evans | 20 | $1160 |
| Total | | $6676 |

\*     \*     \*

Based on the foregoing analysis, the Court GRANTS IN PART the Co-Lead Counsel's Motion. Co-Lead Counsel are awarded $2,526,091.50 in fees and $81,524.41 in costs, and the lead plaintiffs are awarded a total of $6,676 in incentive awards.

**C.     Plaintiff Sandys' Motion for Attorney's Fees and Costs**

**1.     Legal Standard**

"An attorney's right to common fund fees arises from equitable principles of restitution." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602, 608 (9th Cir. 1997) (internal citations omitted). "It is well-established that an award of attorneys' fees from a common fund depends on whether the attorneys' 'specific services benefitted the fund—whether they tended to create, increase, protect or preserve the fund.'" *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) (quoting *Lindy Bros. Builders, Inc. v. American Radiator, Etc.*, 540 F.2d 102, 112 (3d Cir. 1976) (hereinafter "*Lindy II*"). In evaluating an application for common fund fees, "the district court must act with jealous regard to the rights of those who are interested in the fund and must not only avoid awarding 'windfall fees,' but avoid every appearance of having done so." *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1325 (C.D. Cal. 1977) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d. Cir. 1974)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

2.   Application

a)   Sandys' Entitlement to Fees from the Common Fund

Defendant argues that Sandys' Counsel is not entitled to any fees, because they were not present at any settlement negotiations, and the settlement agreement contemplates an award of fees only to Co-Lead Counsel. Dkt. 160 at 5 (citing Dkt. 118 ¶ 40). Co-Lead Counsel do not argue that Sandys' Counsel are barred from seeking funds from the common fund under the terms of the settlement, but assert that Sandys' Counsel should not be awarded fees because their work did not benefit the class. Dkt. 158.

Although they were not appointed as interim co-lead counsel in the consolidated class action, Sandys' Counsel contend that they are entitled to a fee award because "[t]heir efforts have helped achieve a successful outcome and have resulted in settlement benefits." Dkt. 147 at 3. Sandys' Counsel argue that their work on the following matters benefited the class: (i) drafting the first complaint and conducting the investigation that first identified the factual and legal claims that were ultimately settled; (ii) leading the investigation behind the GMO allegations and ensuring the GMO claims were not dismissed; and (iii) convincing Co-Lead Counsel to broaden the settlement terms to include claims beyond those alleged in the CFAC. *Id.* at 3-4.

That Sandys' Counsel were not appointed as interim co-lead counsel is not determinative of their eligibility to petition for fees. The settlement agreement does not expressly bar their fee application. Civil Rule 23(f) contemplates fee awards to non-lead counsel. Thus, in considering an application for such a fee award from the common fund, the relevant inquiry is whether the services of Sandys' Counsel's provided a benefit to the common fund. As one court described the inquiry, "whether they tended to create, increase, protect or preserve the fund." *Jaffe & Schlesinger*, 19 F.3d at 1308.

i.   Work Devoted to the Complaint and the GMO Claims

Sandys' Counsel seeks approximately $85,400.00 in fees for 142 hours of work prior to the filing of the initial complaint. *See* Dkt. 165 at 8; Golan Decl., Dkt. 147-2, ¶ 15.[14] Although Co-Lead Counsel are correct that "the mere filing of a complaint does not produce a settlement," it does not follow that the filing of a complaint "does not merit compensation." Dkt. 158 at 10. Indeed, there exists a "long line of common fund cases that hold that attorneys 'whose efforts create, discover, increase, or preserve a [common fund]'... are entitled to compensation." *In re Cendant Corp. v. Sec. Litig.*, 404 F.3d 173, 205 (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)). "Thus, an attorney who discovers a valid claim on behalf of a class, and makes use of his findings in a complaint that ultimately enhances the class's recovery, will be entitled to compensation out of that recovery." *Id.*

---

[14] These estimates are based on the analysis of the time records of Sandys' Counsel undertaken by Co-Lead Counsel and Defendant. *See* Dkt. 158, 160. Sandys' reply did not dispute these calculations, except as to the hours spent seeking appointment as interim lead counsel. That issue is discussed below.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

The work of Sandys' Counsel in investigating claims against Defendant and preparing the initial complaint provided certain benefits to the class. Defendant and Co-Lead Counsel point out that Sandys' complaint contained certain claims that were unlikely to be certified for class treatment, *e.g.* those for assault and battery. However, they do not dispute that the complaint that Sandys' Counsel drafted was the only one that presented the GMO claims. These claims were included in the subsequent CAC and CFAC and formed a basis for a portion of the settlement agreement.

At the hearing on Sandys' Motion, the Court requested that both Co-Lead Counsel and Sandys' Counsel submit supplemental briefing as to the hours spent investigating the GMO claims up to the time when Co-Lead Counsel were appointed. Sandys' Counsel assert that they spent a total of 158.08 hours on the GMO claims prior to the March 5, 2012 appointment of Co-Lead Counsel. Dkt. 175 at 4-5.[15] This portion of Sandys' Counsel's work in connection with the GMO claims benefitted the class. Thus, to the extent these hours and rates were reasonable and not duplicative of the work of Co-Lead Counsel on the same claims, Sandys' Counsel may receive compensation. The reasonableness of the hours and hourly rates that are requested is discussed below. In contrast, the 236.30 hours for which Sandys' Counsel seeks compensation, because they claim that it was necessarily related to both the "all natural" and the GMO claims, is not appropriate for an award. In short, this work was not tied solely to the GMO claims and, therefore, is duplicative of that undertaken by Co-Lead counsel. This is confirmed by a review of the relevant time records. Therefore, this work did not confer a sufficient benefit to the class to warrant an award of any portion of the approximately $141,500 that has been requested.[16]

ii.    Work Seeking Appointment as Interim Lead Counsel

Nearly half of Sandys' Counsel's fee request relates to its work seeking appointment as interim lead counsel, opposing Co-Lead Counsel's motion to consolidate, and opposing their appointment as co-lead counsel. Sandys' Counsel seeks fees for approximately 400 hours as to such work. Dkt. 165 at 8. Sandys' Counsel argues that, in opposing appointment of interim lead counsel, they were able to maintain a role in the litigation, and that this continued participation benefitted the class. *Id.* at 9. However, Sandy's Counsel fail to allege how the 400 hours that was spent in an unsuccessful effort to seek interim lead counsel and prevent the appointment of others as interim lead counsel helped to "create discover, increase, or preserve" the common fund. Accordingly, Sandys' Counsel is not entitled to compensation for time spent opposing consolidation and appointment of interim lead counsel.

iii.    Dismissal Proceedings

Sandys' Counsel seeks fees for approximately 28 hours of work responding to Defendant's motion to dismiss. Dkt. 147-1; Dkt. 147-3. Even assuming, as they claim, that Sandys' Counsel were

---

[15] This figure exceeds the number of hours spent preparing the complaint because it includes both pre-filing and post-filing investigative work.
[16] Based on the declarations submitted in support of the fee request, the hours and hourly rates for this work are as follows: Godoury (19.75 hours at $600 per hour); Berg (2.25 hours at $800 per hour); Francis (25.1 hours at $525 per hour); Searles (23.95 hours at $650 per hour) and Golan (165.25 hours at $600 per hour).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|----------|--------------------------|------|-----------------|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

"instrumental in ensuring the [GMO] claims were not dismissed," Co-Lead Counsel never sought assistance from Sandys' Counsel with respect to Defendant's motion to dismiss. Dkt. 158 at 6. Thus, any work performed by Sandys' Counsel after Co-Lead Counsel was appointed was unauthorized and has not been shown to have added significant value. It was duplicative of the work of co-lead counsel. "Work that is duplicative of the efforts of lead counsel…will not normally be compensated." *Cendant*, 404 F.3d at 191; *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994) ("We hold that the district court acted within the bounds of its discretion in reducing the lodestar for unnecessary and duplicative work"); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1996) ("It is the opinion of this Court that counsel should not be allowed reimbursement for retaining experts whose services, in some instances, duplicate the work assigned to counsel."). Accordingly, Sandys' Counsel is not entitled to compensation for their involvement in the dismissal proceedings.

iv.  Discovery

Sandys' Counsel spent approximately 94 hours on discovery that was not authorized by Co-Lead Counsel. Dkt. 158 at 7. Once again, any work performed by Sandys' Counsel after Co-Lead Counsel was appointed that was not authorized was inappropriate. It necessarily overlapped with the discovery plans implemented by Co-Lead Counsel. It was the role of such counsel to determine the areas of discovery to be pursued. For these reasons, Sandys' Counsel is not entitled to compensation for discovery work.

v.  Objecting to Settlement

Sandys' Counsel spent approximately 129 hours objecting to the Proposed Settlement at the preliminary approval stage. Dkt. 158 at 7. Sandys' Counsel contend that "[t]he settlement was improved as a result" of their objection to preliminary approval. Dkt. 165 at 10. The Court granted preliminary approval notwithstanding the objections of Sandys' Counsel. *See* Dkt. 144. Accordingly, these objections did not benefit the class, and Sandys' Counsel is not entitled to compensation for presenting them.

vi.  Conclusion

For the foregoing reasons, Sandys' Counsel will be compensated for time expended and costs incurred as a result of work performed on the GMO claims prior to the appointment of Co-Lead Counsel, but not for the later unauthorized, duplicative work that did not benefit the class.

b)  Reasonableness of the Lodestar Amount

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | | Date | January 2, 2014 |
|---|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | | |

Based on Sandys' Counsel's time records submitted with their supplemental briefing, the claimed lodestar for the GMO claims is $96,173. Dkt. 175.[17] The following chart summarizes the amount claimed:

| Attorney/Firm | Tasks Performed | Total Hours | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Yvette Golan<br>The Golan Firm<br>(Dkt. 175-6) | • Investigating and drafting the complaint's GMO allegations<br>• Post-filing investigative work | 89.08<br><br>(49.83 pre-filing 39.25 post-filing) | $600 | $53,448 |
| David Berg<br>Berg & Androphy<br>(Dkt. 175-5) | • Meetings with Ms. Golan and Mr. Gadoury | 6.5 hours | $800 | $5,200 |
| Chris Gadoury<br>Berg & Androphy<br>(Dkt. 175-5) | • Research regarding GMO claims<br>• Research testing labs<br>• Review GMO test results | 44.5 hours | $600 | $26,700 |
| James Francis<br>Francis & Mailman<br>(Dkt. 147-1, 175-2) | • Analyzing GMO legal strategy | 7 hours | $525 | $3,675 |
| David Searles<br>Francis & Mailman<br>(Dkt. 147-1, 175-9) | • Analyzing GMO claim and developing legal strategy | 11 hours | $650 | $7,150 |
| Total | | 158.08 | | $96,173 |

Sandys' Counsel argues that this amount is reasonable because it reflects the time spent drafting the complaint and investigating potential claims. Dkt. 147, 165. However, Co-Lead Counsel point out that 51 of these hours were billed by Berg & Androphy for "post-filing investigative and legal work." That firm was not listed on the original complaint and never appeared in the action. Dkt. 180 at 2. Further, Co-Lead Counsel contend that none of the work performed by Berg & Androphy was shared with Co-Lead Counsel. *Id.* Moreover, although Golan states that she spent 89.08 hours on the GMO claims, her time sheets are vague. They include 15 entries with the same description: "Research ingredients, investigate defendants and claims, examine product lines; draft complaint; confer with experts." *See* Golan Supp. Decl., Dkt. 175-7.

---

[17] In their supplemental briefing, Sandys' Counsel seeks additional fees for work that "served both the GMO claims and the 'all natural' claims equally," Dkt. 175 at 5, and for work performed after the appointment of Co-Lead Counsel, *id.* at 7-8. However, as discussed above, in evaluating an application for common fund fees, "the district court must act with jealous regard to the rights of those who are interested in the fund and must not only avoid awarding 'windfall fees,' but avoid every appearance of having done so." *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. at 1325. Applying this standard, the Court has determined that Sandys' Counsel is only entitled to seek fees for work performed solely as to the GMO claims and that was undertaken prior to the appointment of Co-Lead Counsel.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

Co-Lead Counsel also claims that, prior to their March 5, 2012 appointment as interim lead counsel, they spent 54.1 hours on GMO-related issues, *e.g.*, testing Defendant's products, researching Defendant's labeling regarding GMO ingredients, and researching the legal basis for the GMO claims. Dkt. 174 at 1.[18]

Based on the time sheets and declarations presented by both Sandys' Counsel and Co-Lead Counsel, the Court concludes that some of the work performed by Sandys' Counsel was duplicative of the work performed by Co-Lead Counsel. Further, given the nature of the work -- investigating the potential GMO claims, conferring with experts about them, and drafting a portion of the Sandys' complaint – some of the work of these five lawyers was duplicative, and some of the work could have been completed in fewer hours. Finally, the hourly rates proposed for the lodestar calculation are too high given the experience of counsel, the work performed, and the rates with which the Court is familiar as to cases litigated in the Central District. For all of these reasons the following award is reasonable and appropriate:

| Attorney | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Gadoury | 22 | $500 | $11,000 |
| Berg | 3 | $600 | $1,800 |
| Francis | 7 | $500 | $3,500 |
| Searles | 5 | $600 | $3,000 |
| Golan | 67 | $500 | $33,500 |
| Total | | | $52,800 |

These reductions result in an award of $52,800 in fees.

The foregoing amount is significantly less than the $567,793.50 that has been requested. Dkt. 165 at 1. However, as discussed above, much of the time incurred by Sandys' Counsel was the result of unauthorized and duplicative work, or work that failed to benefit the class. Moreover, the Court is mindful that any fee awarded to Sandys' Counsel will reduce the funds available for distribution to class members or *cy pres* beneficiaries. An award of the full amount of fees requested by Sandys' Counsel when combined with the award to Co-Lead Counsel would amount to 35% of the $9 million monetary settlement amount and 30% of the $10.4 million total settlement amount. As modified, the fee awards to Sandys' Counsel and Co-Lead Counsel comprise 28.7% of the $9 Million settlement fund and 24.8% of the total value of the settlement including injunctive relief, which more closely aligns with the benchmark established by the Ninth Circuit.

c)      Costs

Sandys' Counsel originally sought $18,880.27 in expenses. Dkt. 165 at 1. Sandys' Counsel may only be awarded costs incurred in connection with the GMO claims. Sandys' Counsel's supplemental

---

[18] Co-Lead Counsel have submitted declarations to support this claim. No billing records were attached to these declarations. *See* Dkt. 174-1, 174-2, 174-3, 174-4.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV11-08276 JAK (PLAx) | Date | January 2, 2014 |
|---|---|---|---|
| Title | Natalie Pappas v. Naked Juice Co of Glendora, Inc., et al. | | |

briefing demonstrates that $5,665 in costs were so expended. This concerned the testing of Defendant's products and the retention of a suitable expert. Dkt. 175. These costs were reasonable expenses incurred in connection with the investigation by Sandys' Counsel of the GMO allegations. Therefore, Sandys' Counsel is awarded $5,665 in costs.

\*       \*       \*

For the foregoing reasons, the Court concludes that both Co-Lead Counsel and Sandys' Counsel's requested fees should be reduced. The following is a summary of the allocation of the settlement amount, as modified by the Court's order:

| | |
|---|---|
| Gross Settlement Amount | $9,000,000.00 |
| | |
| Attorneys' Fees for Co-Lead Counsel | ($2,526,091.50) |
| Attorneys' Fees for Sandys' Counsel | ($52,800.00) |
| Awards for Class Representatives | ($6,676.00) |
| Co-Lead Counsel's Costs | ($81,524.41) |
| Sandys' Counsel's Costs | ($5,665.00) |
| Notice Costs | ($816,000.00) |
| | |
| Net Settlement Amount | $5,511,243.09 |

## V.    Conclusion

For the foregoing reasons, the Court GRANTS the Motion for Final Approval of the Settlement and GRANTS IN PART Co-Lead Counsel and Sandys' Counsel's Motion for Attorneys' Fees and Costs.

**IT IS SO ORDERED.**

_____ :  _____

Initials of Preparer    ak
_____

SCOTT A. KRON, ESQ. [State Bar No. 237769]
scott@kronandcard.com
ANNE L. CARD, ESQ.   [State Bar No. 273435]
anne@kronandcard.com
KRON & CARD LLP
A Limited Liability Partnership
23421 S. POINTE DR., STE. 280
LAGUNA HILLS, CA 92653-1556
Telephone:   (949) 367-0520
Facsimile:   (949) 613-8472

Attorney for Objector,
Adam Andersen

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PAPPAS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NAKED JUICE CO. OF GLENDORA, INC., a California Corporation,<br><br>Defendant. | Case No.: LA CV11-08276-JAK (PLAx)<br><br>**CERTIFICATE OF SERVICE** |

KRON & CARD LLP
23421 S. POINTE DR., STE. 280
LAGUNA HILLS, CA 92653-1556

-1-

**CERTIFICATE OF SERVICE**

*Pappas v. Naked Juice Co. of Glendora, Inc..*
United States District Court, Central District of California
Case No.: LA CV11-08276-JAK (PLAx)

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Laguna Niguel, California; my business address is 23421 S. Pointe Dr., Ste. 280, Laguna Hills, CA 92653-1556.

On the date below I served a copy, with all exhibits, of the following document(s):

**NOTICE OF APPEAL**

on all interested parties in said case addressed as follows:

| | |
|---|---|
| Christopher Chorba | Robert R. Ahdoot |
| Dhananjay S. Manthripragada | Bradley K. King |
| Andrew S. Tulumello | Theodore W. Maya |
| Jenna Musselmann Yott | Tina Wolfson |
| GIBSON, DUNN & CRUTCHER LLP | AHDOOT & WOLFSON, PC |
| 333 South Grand Avenue | 2355 Westwood Boulevard, Ste. 337 |
| Los Angeles, CA 90071 | Los Angeles, CA 90064-2109 |
| cchorba@gibsondunn.com | rahdoot@ahdootwolfson.com |
| DManthripragada@gibsondunn.com | bking@ahdootwolfson.com |
| ATulumello@gibsondunn.com | tmaya@ahdootwolfson.com |
| JYott@gibsondunn.com | twolfson@ahdootwolfson.com |
| | |
| Christopher P. Ridout | Rosemary M. Rivas |
| Devon Marie Lyon | Danielle A. Stoumbos |
| Caleb L H Marker | Robert O Wilson |
| RIDOUT, LYON + OTTOSON, LLP | FINKELSTEIN THOMPSON, LLP |
| 555 East Ocean Boulevard, Ste. 500 | 505 Montgomery Street, Ste. 300 |
| Long Beach, CA 90802 | San Francisco, CA 94111 |
| c.ridout@rlollp.com | RRivas@finkelsteinthompson.com |
| d.lyon@ridoutlyonlaw.com | dstoumbos@finkelsteinthompson.com |
| c.marker@ridoutlyonlaw.com | RWilson@finkelsteinthompson.com |
| | |
| Sarah Marie Henry | Bradley Lewis Henry |
| 234 E. Blair Street | 234 E. Blair St. |
| Chicago, IL 60785 | Chicago, IL 60785 |
| VIA MAIL ONLY | bradlewishenry@gmail.com |
| | |
| Gilardi & Co. LLC | Joshua R. Furman |
| P.O. Box 8090 | Joshua R. Furman Law Corporation |
| San Rafael, CA 94912-8090 | 15260 Ventura Boulevard, Ste. 2250 |
| info@nakedjuiceclass.com | Sherman Oaks, CA 91403 |
| | jrf@furmanlawyers.com |

-2-

KRON & CARD LLP
23421 S. POINTE DR., STE. 280
LAGUNA HILLS, CA 92653-1556

KRON & CARD LLP
23421 S. POINTE DR., STE. 280
LAGUNA HILLS, CA 92653-1556

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Lionel Zevi  Glancy
Marc L. Godino
Michael M. Goldberg
Glancy Binkow and Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
lglancy@glancylaw.com
mgodino@glancylaw.com
mmgoldberg@glancylaw.com

Jon M. Zimmerman
Jon M. Zimmerman Law Offices
2825 Eastlake Avenue East, Ste. 120
Seattle, WA 98102
jon@seattletrafficattorneys.com

James A. Francis
David A. Searles
Francis and Mailman PC
100 South Broad Street, 19th Floor
Philadelphia, PA 19110
jfrancis@consumerlawfirm.com
dearles@consumerlawfirm.com

Stephen H. Gardner
Center for Science in the Public Interest
5646 Milton Street, Ste. 714
Dallas, TX 75206
sgardner@cspinet.org

Yvette Golan
The Golan Firm
1919 Dectur Street
Houston, TX 77007
ygolan@tgfirm.com

Shirish Gupta
Flashpoint Law
18662 MacArthur Boulevard, 2nd Floor
Irvine, CA 92612
sgupta@flashpointlaw.com

Joseph Darrell Palmer
Darrell Palmer Law Offices
2244 Faraday Avenue, Ste. 121
Carlsbad, CA 92008
darrell.palmer@palmerlegalteam.com

XX  **(Service By Mail)**  By placing the document(s) in an envelope or package addressed to Sarah Marie Henry and causing such envelope, with postage thereon, fully prepaid, to be placed for deposit at 23421 S. Pointe Dr., Ste. 280, Laguna Hills, CA 92653-1556, in the United States Postal Service.

XX  **(Via Electronic Transmission)** By sending a file of the above document(s) via electronic transmission (e-mail) at 1:00 p.m. using e-mail address scott@kronandcard.com to the e-mail address designated for each party identified above.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed January 27, 2014 at Laguna Hills, California.

_____
SCOTT A. KRON

-3-

**CERTIFICATE OF SERVICE**
**Case No. LA CV11-08276-JAK (PLAx)**